UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JENNIFER HOUGH,

                                           Docket No. 21-cv-04568-ENV-JRC

                *Plaintiff,*

           -- against--

ONIKA TANYA MARAJ, AKA ("NICKI
MINAJ") and KENNETH PETTY, AKA
("ZOO"),

                *Defendants*.
-------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ONIKA TANYA MARAJ'S MOTION FOR LEAVE TO FILE
A LATE LETTER REQUESTING A PRE-MOTION
CONFERENCE IN ANTICIPATION OF A MOTION TO
DISMISS THE AMENDED COMPLAINT**


JUDD BURSTEIN, P.C.
260 Madison Avenue, 15th Floor
New York, New York 10016
(212) 974-2400
*Attorneys for Defendant Onika Tanya Maraj*

Defendant Onika Tanya Maraj ("Defendant") submits this Memorandum of Law in support of her motion seeking leave to file a late letter requesting a pre-motion conference in anticipation of a motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12.[1]  A copy of the letter which Defendant seeks to file is annexed as Exhibit A to the accompanying Declaration of Judd Burstein ("Burstein Dec.").

## INTRODUCTION

This case is founded upon Defendant's husband's 1995 conviction for an attempted rape that occurred 27 years ago in 1994.  **The Amended Complaint does not allege that Defendant, who was only 12 years-old at the time and is now a hugely successful and famous recording artist, had any involvement in that underlying conduct**.  Rather, it alleges only that she engaged in patently non-actionable conduct, allegedly commencing in 2018, in response to Plaintiff Jennifer Hough's ("Plaintiff") demands for money.  As against Defendant, the Amended Complaint is just the next stage of Plaintiff's efforts to extract money from Defendant arising out of conduct in which she had no involvement.  It is frivolous amalgam of implausible and illogical factual allegations unsuccessfully searching for a cognizable legal theory.

In truth, Defendant has been sued for two reasons -- neither of which are tied to the merits.  **First**, as evidenced by the fact that Plaintiff did not seek damages for harm suffered in 1994 until after Defendant publicly married her husband in 2019, Defendant has been sued because she is the proverbial "deep pocket."  **Second**, Plaintiff's counsel has named her as a defendant in an effort to garner media attention for himself.

---

[1]     Defendant seeks permission to file a pre-motion letter instead of a motion because Section III(A) of Your Honor's Individual Practice & Rules require that a request for a pre-motion conference be made before a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12 may be filed.

Plaintiff's counsel's motives are well-demonstrated by the fact that, due to Plaintiff's counsel's pursuit of media attention, Defendant has been forced to bring a motion concerning a dispute which should have been resolved by counsel without the Court's intervention.

On October 11, 2021, just five days after the date by which Defendant would have been required to respond to the Amended Complaint **if** she had been properly served (which she was not), Plaintiff's counsel filed a Request for a Certificate of Default from the Clerk of the Court. (Doc. No. 15)

Just two days later, on October 13, 2021, Defendant's counsel sent Plaintiff's counsel an email asking him to withdraw his request for a certificate of default and instead agree to an extension of time to just November 1, 2021 for Defendant to answer or move against the Amended Complaint. (Exhibit B to the Burstein Dec.)

Plaintiff's counsel responded as follows: "You can file your opposition and explain to the court why your client believes that her and her husband are above the law.  I do not consent to an extension."  (*Id*.)

But for what happened next, Plaintiff's counsel's refusal to make a reasonable accommodation might be excused as a genuine, albeit erroneous, assumption that the only relevant question for the Court to decide is whether Defendant can adequately explain why she "believes that her and her husband are above the law."   However, subsequent events show that Plaintiff's counsel refused to agree to Defendant's counsel's request because he wanted to use it as an excuse to secure a media article for himself.  Hence, the next day, October 14, 2021, *The Daily Beast* posted an article about which Plaintiff's counsel surely planted:

2

Hough's attorney, Tyrone Blackburn, says he received an email Thursday night from attorney Judd Burstein on Minaj's behalf—in which he requested that Blackburn withdraw the petition and grant an extension to respond.

"I said NO!" Blackburn told The Daily Beast in an email. "I told him to prepare his opposition to my request for default judgment and explain to the court why his client and her husband believe they're both above the law."

(Exhibit C to the Burstein Dec.)

Obviously, Plaintiff's counsel had a right in this instance to seek out press coverage. But that does not change the fact that he is burdening the Court with unnecessary motion practice just so that he can secure some cheap and transitory media attention.

## STATEMENT OF THE FACTS

The facts relevant to a determination of this motion are set forth in both the Burstein Dec., the accompanying Declaration of Defendant ("Def. Dec.").

## ARGUMENT

### DEFENDANT SHOULD BE PERMITTED TO FILE A LATE MOTION TO DISMISS THE AMENDED COMPLAINT

At the outset, we note that the current procedural posture of this case is unusual because, in contrast to most motions of this type, it has not been filed after the Clerk of the Court has actually entered a default pursuant to Fed. R. Civ. P. 55(a). Hence, there is no entry of a default by the Clerk's office which Defendant can seek to vacate pursuant to Fed. R. Civ. P. 55(c). In other words, Plaintiff's counsel is forcing Defendant to make this motion because, in violation of established standards of courtesy, he has refused to grant Defendant a short extension of time to answer or move against the Amended Complaint.

3

Presumably, Plaintiff's counsel is relying upon the fact that the Clerk of the Court has no discretion to refuse to enter a default.  But that would only result in Defendant making a motion to vacate the default pursuant to Rule 55(c), thereby resulting in litigation of the same issues which Defendant seeks to pursue in a motion to dismiss the Amended Complaint.

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause...." There is abundant "good cause" here.

In the first instance, "[t]here is good cause to vacate entry of default when a plaintiff fails to properly serve a defendant with a summons and complaint....  In the absence of proper service, the putative defendant has no obligation to 'plead or otherwise defend' as required by Rule 55(a)...." *Crawford v. US Sec'y Assocs.*, 2019 U.S. Dist. LEXIS 156275, at *7 (S.D.N.Y. Sep. 11, 2019).

Here, Defendant has submitted a Declaration demonstrating that she was not properly served with the Summons and Complaint.  According to the Affidavit of Service filed by Plaintiff (Doc. No. 14), service of Defendant was purportedly accomplished on September 15, 2021 by her process server personally serving a copy of the Summons and Complaint upon her husband and co-Defendant Kenneth Petty, who was described as a "Black Male, 40 Years Old,  200 lbs. Black hair, brown eyes."

However, Defendant has submitted a Declaration stating:

 I am advised that Plaintiff has filed an Affidavit of Service from a process server who claims that my husband and I were served because he personally handed the Summons and Complaint to my husband, who he describes as a "Black Male, 40 Years Old, 200 lbs. black hair, brown eyes."

The process server is not telling the truth, as this never happened.  In fact, my husband is approximately 5'9" tall and weighs no more than 175 pounds.  Further, there is no person who resides in our house or who was present there on September 15, 2021, who fits the description contained in the Affidavit of Service

4

(Def. Dec., at ¶¶ 2-3)[2]

Apart from the failure to effect proper service upon Defendant, there are additional reasons

demonstrating why there is "good cause" to vacate a default.  As explained by the Court in *Enron*

*Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993):

> [B]ecause defaults are generally disfavored and are reserved for rare occasions, when
> doubt exists as to whether a default should be granted or vacated, the doubt should
> be resolved in favor of the defaulting party.  In other words, "good cause" ... should
> be construed generously....
>
> Because Rule 55(c) does not define the term "good cause," we have established three
> criteria that must be assessed in order to decide whether to relieve a party from
> default or from a default judgment. These widely accepted factors are: (1) whether
> the default was willful; (2) whether setting aside the default would prejudice the
> adversary; and (3) whether a meritorious defense is presented....  Other relevant
> equitable factors may also be considered, for instance, whether the failure to follow
> a rule of procedure was a mistake made in good faith and whether the entry of default
> would bring about a harsh or unfair result.  Although the factors examined in
> deciding whether to set aside a default or a default judgment are the same, courts
> apply the factors more rigorously in the case of a default judgment....

(Citations omitted); *accord*, *LG Capital Funding, LLC v. On4 Communs. Inc.*, 796 F. App'x 57 (2d

Cir. 2020).

Turning **first** to the issue of whether a default was "willful," the Second Circuit has

"interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely

negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained....'" *Bricklayers*

*& Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir.

---

[2]     As explained in his proposed letter seeking a pre-motion conference, Defendant's
counsel believes that the Amended Complaint is also subject to dismissal because the Court lacks
long-arm jurisdiction over Defendant.  However, given the urgency of this motion and the limited
time in which he has been forced to prepare it, counsel believes that he has a Rule 11 obligation to
conduct further investigation of the facts and research of the law before committing to making a
motion on that ground.

2015).   Here, Defendant's Declaration demonstrates that her failure to timely respond to the

Amended Complaint within 21 days of the date of its alleged service was not willful:

> My failure to respond to the Complaint by the date which Plaintiff claims was my last
> date to do so was the product of series of innocent miscommunications:
>
> a.    After learning about the Complaint, I sought out recommendations for a
>       lawyer in New York;
>
> b.    On September 22, 2021, Mr. Burstein was recommended to me and we met
>       on a Zoom conference the next evening;
>
> c.    At the end of that conference, I believed that I had agreed to Mr. Burstein
>       representing me, and I told him to work out the financial details with my
>       manager, Angela Kukawski;
>
> d.    From that point on, I believed that Mr. Burstein was my lawyer and that I
>       would hear from him when he needed to speak with me.  I note that I have
>       not had extensive experience with court cases and I did not know that I was
>       at risk of a default while waiting to hear from Mr. Burstein;
>
> e.    I did not learn until October 12, when I received papers concerning a default,
>       that Ms. Kukawski had not understood that I had approved Mr. Burstein as
>       my lawyer and therefore he had not been retained; and
>
> f.    Mr. Burstein was not available to speak with me until the evening of October
>       12, at which time the misunderstanding was cleared up and Mr. Burstein
>       agreed to represent me upon approval of a retainer agreement and the
>       payment of his advance retainer.
>
> My failure to respond to the Complaint was the product of an innocent mistake, and
> I ask the Court to excuse the delay so that I can defend what I believe to be an
> entirely frivolous case which Plaintiff's counsel has brought against me in an effort
> to use my name to generate publicity for himself.

(Def. Dec., at ¶¶ 4-5)[3]

       Defendant's explanation of the reasons for her purported default renders it impossible to

conclude that she engaged in conduct which can be deemed willful under the Second Circuit's

---

[3]      Mr. Burstein confirms Defendant's account of the facts.  (Burstein Dec., at ¶ 6)

definition of that term in *Bricklayers*.  *See Plumbers, Union No. 112 Pension Fund v. Fendick Plumbing, Heating & Air Conditioning, Inc*., 2008 U.S. Dist. LEXIS 75118, at *4 (N.D.N.Y. Sep. 29, 2008) ("[T]he failure to file an answer was the result of a 'miscommunication' within the law firm representing defendant in this matter. Thus, there is no evidence of willfulness.").

Moreover, if Defendant did in fact default, she did so at a time when she was not represented by counsel.  As the Court held in *Enron*, "as a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*."  10 F.3d at 96.

Also, the fact that this motion has been filed less than 48 hours after she retained counsel, and only nine days after the alleged due date for a response to the Amended Complaint, further demonstrates that Defendant's purported default was not "willful."  *See New Falls Corp. v. Soni Holdings, LLC*, 2020 U.S. Dist. LEXIS 83499, at *13 (E.D.N.Y. May 8, 2020) ("Drawing all inferences in favor of the Moving Defendants and noting the relatively brief period of time the Moving Defendants were in default - as well as the prompt application to vacate the default -- the Court finds that the default was not willful.").

*United States Herbals v. Sybervision, Inc*., 2008 U.S. Dist. LEXIS 144947, at *6-7 (S.D.N.Y. Nov. 13, 2008), is on point:

> Defendants ... argue that the willfulness element is not met here because they spent several weeks locating and securing counsel and because they quickly moved to vacate the default....  While Plaintiffs allege that Steven DeVore was aware of the nature of the action prior to being served with the Complaint..., De Yore's affidavit avers that his search for counsel was delayed by previously scheduled travel. Moreover, Defendants moved to set aside the entry of default just four days after the Clerk of the Court issued the certificates of default....  Given the facts here and the high standard for willfulness imposed by precedent, the Court finds the Defendants did not act willfully.

As for the **second** factor -- prejudice to the plaintiff -- to be considered under *Enron*, "delay alone is not a sufficient basis for establishing prejudice....  Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion....'"  *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *accord United States CFTC v. Safety Capital Mgmt.*, 2017 U.S. Dist. LEXIS 108123, at *7 (E.D.N.Y. July 11, 2017).  Plaintiff cannot possibly meet this burden.  *See Lion-Aire Corp. v. Lion Air Installation, Inc.*, 2020 U.S. Dist. LEXIS 120938, at *17 (E.D.N.Y. July 8, 2020) ("[V]acating the default judgment will not cause substantial prejudice to Plaintiff where, as here, the case is in its infancy and the parties have not yet engaged in discovery.").

Finally, **third**, on the issue of whether Defendant has meritorious defenses to the Amended Complaint, we respectfully refer the Court to the proposed pre-motion conference letter attached as Exhibit A to the Burstein Dec.  In addition, we note that "[a] plaintiff's failure to state a claim for which relief may be granted may constitute a meritorious defense."  *New Falls*, 2020 U.S. Dist. LEXIS 83499 at *17.

8

<u>**CONCLUSION**</u>

For the foregoing reasons, together with those set forth in the Burstein Dec. and the Def. Dec., the Court should grant Defendant's motion and permit her to file the proposed pre-motion conference letter annexed as Exhibit A to the Burstein Dec.

Dated: New York, New York
      October 15, 2021

                                  Respectfully submitted,

                                  JUDD BURSTEIN, P.C.

                                  By: /s/ Judd Burstein
                                      Judd Burstein (JB-9585)
                                  260 Madison Avenue, 15th Floor
                                  New York, New York 10016
                                  Tel.: (212) 974-2400
                                  Fax: (212) 974-2944
                                  jburstein@burlaw.com

9