**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Jennifer Hough,

                          Plaintiff,

          -against

Onika Tanya Maraj, AKA ("Nicki Minaj")
an individual,
Kenneth Petty, AKA ("Zoo"),
an individual
                          Defendants.

Motion for Entry of Default Judgment

Civil Action No. 21-cv-4568

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST**</u>
<u>**DEFENDANT KENNETH PETTY**</u>

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

PRELIMINARY STATEMENT ......................................................................................... 5

FACTUAL BACKGROUND .............................................................................................. 8

ARGUMENT ....................................................................................................................... 8

I.   AS AN PRELIMINARY MATTER, THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS................................................................................................ 8

II.   THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST DEFENDANT PETTY PURSUANT TO FRCP 55 FOR FAILURE TO TIMELY RESPOND TO PLAINTIFF'S AMENDED COMPLAINT ........................................................................ 10

III.   THE FACTORS FOR ENTERING DEFAULT JUDGMENT AGAINST DEFENDANT PETTY WEIGH HEAVILY IN FAVOR OF GRANTING PLAINTIFF'S INSTANT APPLICATION ................................................................................................. 12

   A.   Defendant Petty Is Unlikely To Satisfy His Burden To Show That His Failure to Timely Respond Or Otherwise Defend the Instant Action Was Not Willful Nor That He Has A Meritorious Defense To All, If Any, Of the Causes of Action Against Him ...................... 13

   B.   Plaintiff Will Be Greatly Prejudiced By The Court's Failure To Enter Default Judgment Against Defendant Petty .................................................................................................... 16

IV.   PLAINTIFF'S AMENDED COMPLAINT SUFFICIENT PLEADS PLAUSIBLE CAUSES OF ACTION AGAINST DEFENDANT PETTY .................................................... 19

   A.   Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress Against Defendant Petty under New York Law ................................................................................ 19

   B.   Plaintiff Has Sufficiently Plead A Claim for Assault and Battery Against Defendant Petty Under New York Law ............................................................................................... 22

   C.   Plaintiff Pleads A Viable Claim for Sexual Assault Against Defendant Petty Under New York Law .......................................................................................................................... 23

   D.   Plaintiff Pleads A Viable Claim Against Defendant Petty For Negligent Infliction of Emotional Distress Under New York & California Law ..................................................... 24

   E.   Plaintiff Pleads A Viable Claim For Harassment Under California And Georgia Law  26

   F.   Plaintiff Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law ....................................................................................... 27

V.   IF THE COURT ENTERS DEFAULT AGAINST DEFENDANT PETTY, PLAINTIFF SEEKS AN INQUEST HEARING TO DETERMINE DAMAGES ....................................... 29

CONCLUSION ................................................................................................................... 29

**TABLE OF AUTHORITIES**

**Cases**

*77 Charters, Inc. v. SYC Realty LLC*, No. CV 2010 01681 SLT, 2012 WL 1077706, at \*12
  (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, No. 10-CV-1681 SLT MDG,
  2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012)..................................................................... 18

*Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991) ..................................... 13

*Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at \*1 (E.D.N.Y.
  Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL
  905224 (E.D.N.Y. Mar. 31, 2008).......................................................................................... 15

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)............................................... 15

*Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 106 (E.D.N.Y. 2020)................................... 23

*Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002)............................................... 16

*Artmatic USA Cosmetics v. Maybelline Co.*, 906 F.Supp. 850, 853–54 (E.D.N.Y.1995) ............. 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................................................ 19

*Bastein v. Sotto*, 299 A.D.2d 432, 433, 749 N.Y.S.2d 538, 539 (App. Div. 2002).............. 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)........................................................................ 19

*Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996).............................................................. 20

*Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1103 (N.D. Cal. 2009)........................ 10

*Bialik v. E.I. DuPont De Nemours & Co.*, 142 Misc.2d 926, 539 N.Y.S.2d 605, 606
  (N.Y.Sup.1988) ...................................................................................................................... 20

*Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry &
  Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) .........................................................12, 13, 16

*Coopersmith v. Gold*, 172 A.D.2d 982, 984, 568 N.Y.S.2d 250, 252 (3d Dep't 1991)................... 22

*Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983) ............................................................................. 16

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 169 F. App'x 45, 46 (2d
  Cir. 2006)................................................................................................................................ 11

*Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood* ........................................ 15

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) ......................................................... 16

*F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002) .................................... 15

*Flamm v. Van Nierop*, 56 Misc.2d 1059, 291 N.Y.S.2d 189, 190–91 (N.Y.Sup.1968) ................. 20

*Frederick v. City of N.Y.*, No. 13-CV-897 (MKB), 2016 U.S. Dist. LEXIS 39828, at 81
  (E.D.N.Y. Mar. 25, 2016)....................................................................................................... 19

*Girden*, 262 F.3d at 203, quoting *United National Insurance Co.*, at 108 (2d Cir. 1993)............. 23

*Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 621 (2d Cir. 1998) ................................................ 13

*Halperin v. Salvan*, 117 A.D.2d 544, 499 N.Y.S.2d 55, 57–58 (1st Dep't 1986) ............................ 20

*Holtz v. Wildenstein & Co.*, 261 A.D.2d 336, 693 N.Y.S.2d 516 ...................................................... 22

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) .......... 19

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employer – Officer John,
  # 1765 Badge Number v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)........ 22

*Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ....................................... 15

*Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 144 (E.D.N.Y. 2013) ....................................... 18

*Kaminski v. UPS*, 120 A.D.2d 409, 501 N.Y.S.2d 871, 872, 873 (1st Dep't 1986) ........................ 20

*Keen v. American Home Mortg. Servicing Inc.*, 664 F. Supp. 2d 1086, 1096 (E.D. Cal. 2009) .. 25

*Khourie v. Sabek,* 220 Cal.App.3d 1009, 1015, 269 Cal.Rptr. 687 (1990) ..................................... 10

*Macey v. NYSEG*, 80 A.D.2d 669, 436 N.Y.S.2d 389, 391–92 (3d Dep't 1981) ............................. 20

*Mack Finanical Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4
(E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS
ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011) ................................................................... 15

*Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339, 78 Cal. Rptr. 2d 525 (1998) ....... 25

*Merzon v. County of Suffolk*, 767 F.Supp. 432, 448 (E.D.N.Y.1991) ............................................. 22

*Mountjoy v. Bank of Am. N.A.*, No. 2:15-cv-02204-TLN-DB, 2018 U.S. Dist. LEXIS 3216, at 28
(E.D. Cal. January 8, 2018)........................................................................................................ 25

*Naughright v. Weiss*, No. 10 Civ. 8451, 826 F. Supp. 2d 676, 2011 U.S. Dist. LEXIS 133742, at
45-46 (S.D.N.Y. November 18, 2011) ......................................................................................... 24

*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ..............................................................10, 12

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) ........................................... 15

*Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012). ............................................. 24

*S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. Aug. 13, 2004)
...................................................................................................................................................13, 14

*SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998) ........................................................................ 13

*Seltzer v. Bayer*, 272 A.D.2d 263, 264-265, 709 N.Y.S.2d 21 (2000) ........................................... 19

*Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) ........... 24

*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) ................................................................... 20

*Sullivan v. Board of Educ.*, 131 A.D.2d 836, 517 N.Y.S.2d 197, 199, 200 (2d Dep't 1987) ........ 20

*Time Warner Cable of New York v. Cabada*, No. 97 CV 4172 (SJ), 1997 WL 797533, at *1
(E.D.N.Y. Dec. 31, 1997)........................................................................................................... 12

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) ............................................. 19

*United National Insurance Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d. Cir.1993) .... 22,
23

*United States v. Brow*, 267 F. App'x 96, 97 (2d Cir. 2008) ......................................................... 10

*Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011) ...................... 13

*Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014) ............................... 27

**Statutes**

Cal. Code Civ. Proc., § 527.6 ......................................................................................................... 26

FRCP 55(a).......................................................................................................................................... 9

Ga. Code Ann. § 16–11–90 .............................................................................................................. 26

Local Rule 55.1 ................................................................................................................................... 9

Local Rule 55.2 ................................................................................................................................... 9

**Other Authorities**

6 N.Y.Jur.2d – Assault § 1, at 194 (1990) ...................................................................................... 22

6A N.Y. Jur. 2d Assault – Civil Aspects § 2.  Rape indisputably encompasses civil assault and
battery under New York law ....................................................................................................... 23

## PRELIMINARY STATEMENT

This case is about whether fame and fortune make one immune to the law.  On September 16, 1994, Plaintiff Jennifer Hough's ("Plaintiff" or "Ms. Hough") life changed forever.  No one should ever go through what she did on that day. But it is part of Ms. Hough's story.  A part that she wishes she did not remember.  A part for which she has blamed herself for over twenty-seven years.  In or about November 2018, Defendant Onika Tanya Maraj, aka "Nicki Maraj" ("Defendant Maraj"), used her celebrity status to force Ms. Hough to revisit that day.  She used her fame to defame and denigrate Ms. Hough to rehabilitate her husband, Defendant Kenneth Petty's ("Defendant Petty") tarnished reputation.  On that September day in 1994, Defendant Petty did the unspeakable.  He violently raped Ms. Hough; ultimately, leading to his arrest and incarceration for four years while he was sixteen.  Indeed, the prosecutors saw his crime as so heinous that even when he accepted a plea deal, Defendant Petty was charged as an adult and required to register as a sex offender for the remainder of his life.

Defendant Maraj is a multi-platinum selling and Grammy-nominated music artist.  In or about 2018, Defendant Maraj began dating Defendant Petty.  He is her teenage sweetheart, and fellow gang member[1].  When Defendant Maraj's relationship with Defendant Petty became public, her relationship with a rapist and killer[2] led to much criticism by fans and others on the internet.  Accordingly, Defendant Maraj took to the airwaves – or, more precisely, twitter – to lie about what happened on September 16, 1994.  She could not help but let her "Twitter fingers" spread lies

---

[1] Defendant Maraj, and Defendant Petty are members of the Makk Ballers set of the Bloods Gang.
[2] In 2006, Petty pleaded guilty to a charge of manslaughter for the 2002 senseless murder of Lamont Robinson.

about Ms. Hough.  She falsely proclaimed that, on that day in 1994, Ms. Hough and Defendant Petty were dating and that he never raped her.  Ms. Hough, who simply wanted to be left alone, who wanted nothing from Defendant Petty or anyone, was sought after for a comment.  Indeed, this allowed her to tell the truth. Ms. Hough genuinely believed that if she told her story, the controversy started by Defendant Maraj would end.

Unfortunately, Ms. Hough was sadly mistaken.  One year later, Defendant Maraj took to the airwaves again.  This time, she appeared on the radio.  If her previous lies were not enough, Defendant Maraj falsely stated that Defendant Petty was only prosecuted because he was fifteen and did not have money for bail.  Defendant Maraj lied and stated that Ms. Hough wrote a letter recanting her story.  She offensively also insinuated that Ms. Hough, who is biracial, is a white woman, which is why Defendant Petty was prosecuted.

At that time, Ms. Hough could not have known that Defendant Maraj's discussion of a letter by Ms. Hough recanting her story foreshadowed the events that would soon transpire.  In or about March 2020, Defendant Petty was arrested in California for failing to register as a sex offender.  A few days later, Ms. Hough was contacted by a childhood friend Barry Dukes, who goes by "Black." Without Ms. Hough noticing, Black had led their conversation into talking about the day that Defendant Petty raped her.  Ms. Hough spoke candidly and said that "she wished it could all go away."  Black responded, "I can make that happen."

A few days passed, and Black contacted Ms. Hough and sent her a text message from Defendant Petty with a screenshot of phone contact entitled "Wifey."  Black advised Ms. Hough that Defendant Maraj would call her from the number therein.  Unbeknownst to Ms. Hough, Defendant Maraj called to in order for Ms. Hough to purportedly " help us out[3]" by having Ms.

---

[3] Referring to Defendant Petty and Defendant Maraj.

Hough recant her rape story.  Defendant Maraj even offered to fly her to Los Angeles, California, or send her publicist to take her statement.  Ms. Hough declined Defendant Maraj's offers.  After that, Ms. Hough was encouraged to tell Defendant Maraj that Defendant Petty did rape her. Defendant Maraj responded by hanging up the phone.

Over the next few days, Ms. Hough and her family were harassed by phone and unsolicited visitors to her home in Georgia.  Soon after that, Ms. Hough was contacted by her brother.  He advised her that two persons contacted another family member offering Ms. Hough $500,000.00 to write a letter recanting her story about Defendant Petty raping her.  Immediately, Ms. Hough became scared because Black, one of Defendant Maraj and Defendant Petty's associates, knew where she lived, where she worked, and her kids' identities.

After the $500,000.00 offer, the harassment did not cease.  It only became more intelligent, more calculated.  Ms. Hough had lawyers and private investigators contacting her.  Defendants Maraj and Petty went so far as to hire an attorney to purportedly represent "Ms. Hough."

The threats only became worse.  The banter on the internet only became more disparaging. Ms. Hough was forced to move multiple times.  Alas, she could not take it anymore and was forced to file the instant action.  If the physical and emotional damages Defendant Petty caused in September 1994 were not enough, she was subjected to even more emotional distress.  Ms. Hough lives in constant fear that one of Defendant Maraj's crazed fans – who incessantly message and threaten her – or one of Defendant Maraj and Petty's blood gang member associates will find her, children, and/or her husband, and severely injure or kill them.

On August 13, 2021, Ms. Hough initiated the instant action.  After filing an Amended Complaint on September 15, 2021, Ms. Hough's process server, Robert Diaz, personally served Defendant Petty with the Summons and Amended Complaint.  Although Defendant Maraj and

Defendant Petty (who is currently suing the State of New York in the Eastern District of New York) are well familiar with the judicial process, they failed to respond to the Amended Complaint. Their response was due on October 6, 2021.  Now, despite missing the deadline, both Defendants want the Court to permit them to respond or otherwise defend the instant action.

On October 19, 2021, the Clerk issued a Certificate of Default Judgment against Defendant Petty.  While the Clerk denied issuing one against Defendant Maraj, Plaintiff contends that the basis for such denial was erroneous and is separately seeking that the Court Order the Clerk to issue a Certificate of Default Judgment against Defendant Petty as well.

As explained herein, the Court should enter a default judgment against Defendant Petty and set a date for an inquest hearing.

## FACTUAL BACKGROUND

The relevant facts to the instant application are contained in the Declaration of Jennifer Hough, the Declaration of Robert Diaz, the Declaration of Tyrone Blackburn, the Declaration of the Steven N. Gordon, and all supporting exhibits to such declarations, and are incorporated by reference as if fully stated herein.

## ARGUMENT

### I.   AS AN PRELIMINARY MATTER, THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

In diversity cases such as this, a district court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over foreign defendants. *See Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.

1999). This Court will therefore look to New York law to determine whether it may exercise personal jurisdiction over the Defendants.

Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990); *Pichardo v. Zayas*, 122 A.D.3d 699, 702, 996 N.Y.S.2d 176, 180 (2d Dept. 2014); *see also Wells Fargo Bank Minnesota, N.A. v. ComputerTraining.Com, Inc.*, No. 04-CV-0982, 2004 U.S. Dist. LEXIS 12911, 2004 WL 1555110, at *2-3 (S.D.N.Y. July 9, 2004). In addition, a defendant may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if he engages in the following acts either in person or through an agent *and* such acts relate to an asserted claim: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; [*11] (2) commits a tortious act within the state; (3) commits a tortious act outside the state but injures a person or property in the state; or (4) owns, uses, or possesses any real property in the state. N.Y. C.P.L.R. § 302(a).  Giuliano v. Barch, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396, at *10-11 (S.D.N.Y. Mar. 31, 2017).

Here, on September 16, 1994, Petty committed a felony in the state of New York, in this judicial district when he kidnaped, and savagely raped Ms. Hough.  Additionally, on August 19, 2021, six days after Ms. Hough filed the instant lawsuit, Petty voluntarily subjected himself to jurisdiction in this District when he pled in the complaint for, 1:21-cv-04677-EK-RLM, Petty v. New York State et al. that he is a resident of the State of New York residing at 123-40 Inwood Street, Jamaica, New York 11436.

9

## II.     THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST DEFENDANT PETTY PURSUANT TO FRCP 55 FOR FAILURE TO TIMELY RESPOND TO PLAINTIFF'S AMENDED COMPLAINT

Federal Rule of Civil Procedure ("FRCP") Rule 55(a) ("Rule 55") provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *See also*, Local Civil Rules of the Eastern District of New York ("Local Rules") Rule 55.1 ("Local Rule 55.1").

After the Clerk issues a Certificate of Default Judgment, where there is no sum certain, the non-defaulting party is required to apply or move the Court for entry of default judgment.  Rule 55(b)(2); Local Rules Rule 55.2(b) ("Local Rule 55.2"); Individual Motion Practice Rules of Judge Eric N. Vitaliano ("Judge's Rules") Section III. F.  Thus, FRCP 55 provides a two-step process for obtaining a default judgment.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("[h]aving obtained a [certificate of] default, a plaintiff must next seek a judgment by default under Rule 55(b)).

Where a party fails to plead or otherwise defend an action, it is within the district court's discretion to enter a default judgment.  *United States v. Brow*, 267 F. App'x 96, 97 (2d Cir. 2008)

In the instant matter, on September 15, 2021, at 6:25 P.M. PST, Plaintiff's process server personally served Plaintiff's Summons and Amended Complaint on Mr. Petty at his residence located at 23483 Park Colombo Calabasas, CA 91302, where Defendant Maraj also resides ("Defendants' Residence").  (*See* Declaration of Plaintiff's Process Server, Robert Diaz ("Diaz Decl."), ¶¶ 4 & 7; Exhibit A to Diaz Decl.).  Service was proper pursuant to FRCP Rule 4(e) ("Rule 4").  Specifically, Defendant Petty is not an infant, incompetent, or an active member of the military or someone who previously waived service. Rule 4(e); (*see*, Declaration of Steven N.

Gordon ("Gordon Decl."), ¶ 3; Exhibit A to the Gordon Declaration).  The process server properly delivered a copy of the Summons and Amended Complaint to Defendant personally.   Rule 4(e)(2)(A); (*see* Diaz Decl., at ¶ 4).

When the Process Server approached Defendants' Residence, Defendant Petty refused to answer the door despite seeing him in the window.  (Diaz Decl., at ¶ 11).  Thus, the Process Server announced who he was, that Defendants Petty and Maraj were being served with process, and then left the documents at the front door of Defendants' Residence.  (*Id.*, ¶ 11).  This is proper service under federal, California, and New York Law.  *See Khourie v. Sabek,* 220 Cal.App.3d 1009, 1015, 269 Cal.Rptr. 687 (1990) ("It is sufficient to leave service papers outside of a locked door if the resident refuses to accept the papers or to open the door for the process server") (*citing Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1103 (N.D. Cal. 2009); *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 169 F. App'x 45, 46 (2d Cir. 2006) (holding that under New York law, it is well settled that where a party refuses to accept service, it can be left in his general vicinity).  The process server also accurately identified Defendant Petty as 5'10, 200 lbs.,[4] Male, approximately 40 years old, with black hair and brown eyes.[5]  At the bottom, the Summons and Amended Complaint was properly served upon Defendant Petty.

Upon receiving service of the Summons and Amended Complaint on September 15, 2021, Defendant Petty's twenty-one (21) day period to respond began.  FRCP Rule 12(a)(1)(A)(i).  Thus,

---

[4] In Defendant Maraj's Declaration in Support of her Motion for Leave to file a late letter requesting a pre-motion conference in anticipation of a motion to dismiss the Amended Complaint ("Maraj Decl.") [Dkt. No. 17, 17-5], Defendant Maraj states that her husband is actually 5'9, and weighs 175 lbs. (Maraj Decl., at ¶ 3).   Clearly, the differences between 5'10 and 5'9 and 200 lbs. vs. 175 lbs. are de minimis and negligible.

[5] Even if Defendant Petty was not the person served, which Plaintiff vehemently denies, Plaintiff's Counsel Tyrone Blackburn performed an investigation to determine Defendants' Residence is Defendants' dwelling or usual place of abode. (See Declaration of Tyrone Blackburn.  The Process Server determined that Defendant Petty was present in the window to Defendants' residence when he effectuated service.  The fact that Defendant Petty attempted to reject service also indicates that he was indeed the person on which the Summons and Amended Complaint was served.  Or, in the unlikely event it was not Defendant Petty, the person appeared to be a person of suitable age (40) and discretion who resided at Defendants' Residence.

Defendant Petty had until October 6, 2021, to answer the Amended Complaint. Defendant Petty indisputably missed his deadline. Nonetheless, Plaintiff afforded him an extra five days to respond before submitting a request to the Clerk to issue a Certificate of Default Judgment. (*See* Dkt. No. 15; Exhibit A to the Declaration of Tyrone Blackburn ("Blackburn Decl."). On October 19, 2021, pursuant to Plaintiff's October 11, 2021 request for a Certificate of Default Judgment against the Defendants, the Clerk issued a Certificate of Default Judgment against Defendant Petty for failing to appear or otherwise defend the action. (*See* Exhibit B to Blackburn Decl.).

It is evident that Defendant Petty failed to timely respond to Plaintiff's Amended Complaint or otherwise defend the action. Not only was Defendant Petty personally served, but this action has also garnered significant media attention when it was commenced on August 13, 2021. (Exhibit C to Blackburn Decl.; Dkt. No. 1). Yet, Defendant Petty failed to timely respond or otherwise defend the action. Indeed, even though Defendant, very likely if not invariably had notice of this action since August 13, 2021, the filing and service of the Amended Complaint afforded him almost two months to retain counsel to defend him in this matter. Defendant Petty is certainly no novice to the judicial process and even has an action just a few doors down from Judge Vitaliano's Courtroom. (See Blackburn Decl.). As such, and for the reasons stated below, the Court should enter a default judgment against Defendant Petty.

### III.   THE FACTORS FOR ENTERING DEFAULT JUDGMENT AGAINST DEFENDANT PETTY WEIGH HEAVILY IN FAVOR OF GRANTING PLAINTIFF'S INSTANT APPLICATION

While entering default judgment is within the district court's discretion, there is a strong preference for deciding cases on the merits. *Green*, 420 F.3d 99, 104 (2d Cir. 2005). Nonetheless, this is **<u>not</u>** one of those cases.

On a motion to vacate a default judgment, the defaulting party bears the burden of proof. *Time Warner Cable of New York v. Cabada*, No. 97 CV 4172 (SJ), 1997 WL 797533, at *1 (E.D.N.Y. Dec. 31, 1997) *(citing Artmatic USA Cosmetics v. Maybelline Co.,* 906 F.Supp. 850, 853–54 (E.D.N.Y.1995).  Under Rule 55(c), "[t]he court may set aside default for good cause…." When the defaulted defendant opposes default judgment, courts treat the opposition as a motion to vacate the default entry and examine whether good cause exists to vacate the entry. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

Because Rule 55(c) does not define "good cause," the Second Circuit has established three criteria to decide whether a default judgment should be entered or vacated. *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted).  "These criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Bricklayers*, 779 F.3d 182, 186 (2d Cir. 2015) (*citing Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir.2013)).

> A.  *Defendant Petty Is Unlikely To Satisfy His Burden To Show That His Failure to Timely Respond Or Otherwise Defend the Instant Action Was Not Willful Nor That He Has A Meritorious Defense To All, If Any, Of the Causes of Action Against Him*

**First**, in the context of default, the Second Circuit has held that "willfulness" refers to conduct that is "more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); Bricklayers, 779 F.3d at 186.  "Willfulness" does not require a showing "bad faith;" instead, "'it is sufficient to conclude "that defendant defaulted deliberately." *Bricklayers*, 779 F.3d at 187 (*quoting Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 621 (2d Cir. 1998)).

A defendant's default is willful if the defendant was properly served yet failed to appear, answer, or otherwise respond to the complaint. *See, e.g., Action S.A. v. Marc Rich & Co., Inc.*, 951

F.2d 504, 507–08 (2d Cir. 1991) (finding willfulness where the defendant failed to appear for fear of being indicted);  *see also*, *S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. Aug. 13, 2004) (finding willfulness where the defendant was properly served but answered **two weeks after** the due date) (emphasis added);  *Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011) (finding willfulness where the defendant neglected to respond to the third-party complaint, among other things).

Here, it is true that Defendant Petty's burden to prove that his delay was not willful and deliberate.  However, as described above and in the Process Server's Declaration, Defendant Petty was properly served.  It has been over three weeks since he was required to respond to the Amended Complaint.  Additionally, his counsel did not file a notice of appearance until October 25, 2021.  Thus, like *Breed*, given that his response is three weeks past due, Defendant Petty's failure to respond or otherwise defend the action should be deemed **willful**.

Further, like Action S.A., in January 2022, Defendant Petty is required to appear for his sentencing hearing for failing to register as a sex offender.  It is plausible that he believed appearing in this action would hurt his chances of receiving a reduced sentence.  However, defaulting in a case such as this, where the facts will be deemed true, including those concerning his brutal rape of Plaintiff, is unlikely to have a good impact on the Judge at his sentencing hearing.  Hence, one reason why he may now be possibly attempting to defend this action.  Nonetheless, this indisputably supports an inference of willfulness in failing to respond or otherwise defend this action.

Moreover, even if proper service and his failure to respond or otherwise defend was not sufficient, Plaintiff still cannot fathom any legitimate, good faith, or "good cause" reason(s) for his failure to timely respond or otherwise defend the instant action. Because media sources began

reporting on the instant action since its commencement on August 13, 2021, it seems very likely that he knew about the action well before he was required to respond.  Defendant Petty is no novice to the judicial process and should have retained an attorney within the month between commencement and service.  The fact that he did not retain one until almost three weeks after his response was due is **outrageous**.  As such, the Court should find that Defendant Petty willfully failed to respond or otherwise defend the instant action.

To add, Defendant Petty's wife, Defendant Maraj, retained counsel, who filed a notice of appearance over ten days before him.  Thus, it is **specious**, at best, to conclude Defendant Petty's failure to timely respond or otherwise defend the action was not willful and deliberate.

**Second**, with respect to the existence of a meritorious defense, a defaulting defendant "must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see*, *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (holding that a defense is meritorious if it is good at law so that the factfinder has a determination to make).  However, upon entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations of liability, except those relating to damages.  *Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y. Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008).  "Where a defendant **fails to answer** the complaint, courts are **unable** to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, **this factor weighs in favor of granting a default judgment**." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) (emphasis added) (*quoting Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood,* No. 11–CV–46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012); *see*, *Mack Financial*

*Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at \*4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011); *see also*, *F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002).

Here, because Defendant Petty failed to respond to the Complaint, all well-pleaded facts in the Amended Complaint are deemed admitted. The second factor for refusing to vacate default judgment or enter default judgment unquestionably weighs in favor of granting default judgment against Defendant Petty. Even if such was not the case, however, given that Defendant Petty accepted a plea deal for raping Defendant Hough, it seems unlikely that he has meritorious defenses. Moreover, the evidence concerning his harassment of Plaintiff through his fellow blood gang members is so clear that it is highly doubtful he has a meritorious or complete defense.

It is likely that Defendant Petty acted willfully and deliberately in failing to respond or otherwise defend the instant action. However, given that counsel has now appeared on his behalf, Defendant Petty will likely make an argument supporting such was not the case, as is his burden. The second factor weighs in favor of granting default judgment, as all well-pleaded facts are deemed admitted. And as described below, they constitute legitimate causes of action. As such, the first two factors weigh in granting default judgment. Even if Plaintiff would not be prejudiced by not entering default judgment, the first two factors weighing in her favor are grounds to enter a default judgment. *Bricklayers*, 779 F.3d 182, 187 (2d Cir. 2015) (holding that where the first two factors weigh in favor of default judgment, the Court does not need to address whether prejudice exists)

      *B.  Plaintiff Will Be Greatly Prejudiced By The Court's Failure To Enter Default Judgment Against Defendant Petty*

As stated above, the third factor that Courts look to in deciding whether to vacate or decline to enter a default judgment weighs heavily in Plaintiff's favor.

Delay alone is insufficient to establish prejudice. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). To establish prejudice in the context of a default, there must be a showing that "the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (*citing Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983)).

Here, there are several ways in which Plaintiff will be prejudiced by the failure of the Court to enter a default judgment.

**First**, the fact that Defendant Petty's counsel appeared in the action ten days after his wife is suspicious. Recently, on Friday, October 22, 2021, Plaintiff's counsel engaged in email correspondence with Defendant Maraj's counsel. (*See* Gordon Decl., ¶ 5). Upon Defendant Maraj's counsel's ludicrous accusation that Plaintiff's counsels are lying about personally serving Defendant Petty, Plaintiff's counsel advised that he would petition the Court for a Traverse Hearing. (*See Id*., at ¶ 5; Exhibit C to Gordon Decl.). Three days later, Defendant Petty's counsel – upon information and belief, a long-time colleague and friend of Defendant Maraj's counsel – filed a notice of appearance. (See Dkt. No. 23). Thus, it appears that Defendant Petty's appearance was strategically planned with Defendant Maraj. The reasons could range from, *inter alia*, running up Plaintiff's litigation costs to ensuring that their stories are consistent – even if untrue. Clearly, Defendant Petty's continuance in this action will "provide greater opportunity for fraud or collusion."

**Second**, as conceded by Defendant Maraj [Dkt. No. 17, 17-5, ¶ 3], the parties are married. This likely means that they have **at least** some joint assets. Defendant Petty's failure to retain

counsel to defend until eleven days after Defendant Maraj's counsel appeared is evidence that they initially did not plan on both attempting to oppose default judgment and defend the action. Perhaps they received erroneous advice regarding Plaintiff's ability to reach their joint assets and are now colluding to defend the instant action. Defendant Petty's late appearance could very well be in order to delay judgment against him for a long enough time so that they can hide their assets. Given the expansive criminal history of Defendant Petty, it is very likely that they could be engaging in such sort of fraud. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F.Supp.3d 68 (E.D.N.Y 2020) (holding that Plaintiff would sustain substantial prejudice if the default is vacated because she may no longer have a claim for relief).

**Third**, given Defendant Petty's criminal record, it is plausible that other Plaintiffs may sue him. If so, Plaintiff may not be able to collect upon any judgment rendered. *See 77 Charters, Inc. v. SYC Realty LLC*, No. CV 2010 01681 SLT, 2012 WL 1077706, at *12 (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, No. 10-CV-1681 SLT MDG, 2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012) (finding prejudice where any further delay could result in the plaintiff being unable to collect any judgment rendered due to the possibility of other claimants).

**Fourth**, in January 2022, Defendant Petty is scheduled to appear for his sentencing hearing for failing to register as a sex offender. If Defendant Petty is thereafter incarcerated, Plaintiff could be prevented from conducting necessary discovery, or it could be more difficult to do so. In either event, this weighs in favor of finding that Plaintiff would be prejudiced.

**Fifth**, Defendant Petty's continued involvement in this action will likely enflame Defendant Maraj's fans who believe that Plaintiff is a liar. Indeed, Plaintiff has been subjected to numerous threats and has been forced to move homes several times. She lives in fear and will continue to for the remainder of her life. If the default judgment is not entered against Defendant

Petty, Plaintiff's well-being will be at greater risk until the action is resolved.  Moreover, if default judgment is not entered, she will eventually run out of funds to move every time her address is posted on the internet or she is contacted at her residence.

For these reasons, among others, the Court should find that Plaintiff would be significantly prejudiced if default judgment is not entered against Defendant Petty.

## IV. PLAINTIFF'S AMENDED COMPLAINT SUFFICIENT PLEADS PLAUSIBLE CAUSES OF ACTION AGAINST DEFENDANT PETTY

Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims.  *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 144 (E.D.N.Y. 2013)

To state a valid claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For Plaintiff, her complaint must contain factual allegations that, if taken as true, would at the least establish that it has plausible claims for intentional infliction of emotional distress under New York law, assault and battery under New York law, sexual assault under New York law, negligent infliction of emotional distress under New York and California law, harassment and witness intimidation under California and Georgia law, intentional infliction of emotional distress under California and Georgia law.

### A. *Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress Against Defendant Petty under New York Law*

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must plead: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the

conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.S.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993); *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (outlining test for intentional infliction of emotional distress). *Frederick v. City of N.Y.*, No. 13-CV-897 (MKB), 2016 U.S. Dist. LEXIS 39828, at 81 (E.D.N.Y. Mar. 25, 2016).

"Those … claims of intentional infliction of emotional distress that have been upheld … were supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff." *Seltzer v. Bayer*, 272 A.D.2d 263, 264-265, 709 N.Y.S.2d 21 (2000).

"[S]tate courts have sustained some emotional distress claims, against a motion to dismiss, that appear to allege conduct that is somewhat less than 'utterly intolerable in a civilized society.'" *See Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996) (internal citations omitted).

"Cases in which courts have sustained claims for intentional infliction of emotional distress…all involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *see, e.g., Flamm v. Van Nierop*, 56 Misc.2d 1059, 291 N.Y.S.2d 189, 190–91 (N.Y.Sup.1968) (recurring physical threats and harassing phone calls); *Macey v. NYSEG*, 80 A.D.2d 669, 436 N.Y.S.2d 389, 391–92 (3d Dep't 1981) (defendant electric company refused to restore plaintiff's electricity unless she legally separated from her husband); *Sullivan v. Board of Educ.*, 131 A.D.2d 836, 517 N.Y.S.2d 197, 199, 200 (2d Dep't 1987) (defamation and threat of bringing falsified charges used to coerce resignation of tenured professor); *Kaminski v. UPS*, 120 A.D.2d 409, 501 N.Y.S.2d 871, 872, 873 (1st Dep't 1986) (false accusation of theft, false imprisonment, verbal abuse, and threat

of prosecution resulted in coerced confession and resignation); *Halperin v. Salvan*, 117 A.D.2d 544, 499 N.Y.S.2d 55, 57–58 (1st Dep't 1986) (malicious prosecution; false accusations of criminal conduct); *Bialik v. E.I. DuPont De Nemours & Co.*, 142 Misc.2d 926, 539 N.Y.S.2d 605, 606 (N.Y.Sup.1988) (plaintiff's complaint about unsafe working conditions resulted in improper disciplinary action against him, false accusation that he was responsible for accident that resulted in death of one woman, termination, discrimination after reinstatement, and second termination).

*Here*, Defendant Petty's conduct towards Plaintiff was extreme and outrageous, including but not limited to sexual assault, rape, harassment, and intimidation.  (*See* Blackburn Decl. ¶¶ 124-29). The recent harassment and intimidation include Plaintiff being contacted by Defendant Petty's attorney and threats through Defendant Petty's friend, associate, and fellow gang member, Black. (*Id*. at ¶¶ 110-11, 117-120).  The aforementioned actions go beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized community, satisfying the first prong of the test presented in *Howell*.  Similar to *Seltzer*, which all highlight the longstanding systematic pattern of deliberate and malicious harassment of plaintiff to demonstrate intent and meet the second prong of the test, here, Defendant intentionally committed the actions with the intent to deliberately inflict humiliation, mental anguish, and emotional and physical distress upon Plaintiff, and done that in reckless disregard of such consequences to Plaintiff. *Seltzer*, 272 A.D.2d at 264-265 (finding that defendant was liable intentional infliction of emotional distress where there was "a pattern of harassment, intimidation, humiliation and abuse, causing him unjustified demotions, suspensions, lost pay and psychological and emotional harm over a period of years")

Regarding the third prong of the test, as a direct and proximate result of said extreme and outrageous conduct by Defendant, Plaintiff suffer humiliation, mental anguish, disassociation, suicidal ideation, and emotional and physical distress, and have been hurt and injured in her health,

both mentally and physically, strength, activity, and her ability to lead an everyday life without mental anguish. (*See* Blackburn Decl., ¶¶ 116 & 124-29).   Finally, the fourth prong of the test is met as Defendant Petty's actions have caused uproar amongst Defendant Maraj's fans and his fellow gang members actions, resulting in threats via the internet and in person. (*See Id*., at ¶¶ 104-07, 112-14, 117-21, 124-29). Such has caused will continue to cause Plaintiff great mental and physical pain and suffering for the rest of her life. (*Id*.)

Therefore, Plaintiff properly plead its first cause of action against Defendant Petty.

### B.  Plaintiff Has Sufficiently Plead A Claim for Assault and Battery Against Defendant Petty Under New York Law

An "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact. *United National Insurance Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d. Cir.1993).  A "battery" is an intentional wrongful physical contact with another person without consent. *See United National Insurance Co.* at 108 (2d Cir. 1993); see *Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir.1979), citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employer – Officer John, # 1765 Badge Number v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Merzon v. County of Suffolk*, 767 F.Supp. 432, 448 (E.D.N.Y.1991); *Coopersmith v. Gold*, 172 A.D.2d 982, 984, 568 N.Y.S.2d 250, 252 (3d Dep't 1991); 6 N.Y.Jur.2d – Assault § 1, at 194 (1990).   The Second Circuit has held that the terms "assault" and "battery" do not change meaning due to the degree of violation.  *United National Insurance Co.*, 994 F.2d at 108 (2d Cir. 1993).  Indeed, the slightest unlawful touching of another constitutes battery.  *Id*.

To recover damages for battery, Plaintiff must prove that there was bodily contact, that the contact was offensive, and that Defendant intended to make contact without Plaintiff's consent. *See Holtz v. Wildenstein & Co.*, 261 A.D.2d 336, 693 N.Y.S.2d 516;  *Bastein v. Sotto*, 299 A.D.2d 432, 433, 749 N.Y.S.2d 538, 539 (App. Div. 2002).

Here, Defendant committed battery against Plaintiff as he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person. (*See* Blackburn Decl., ¶¶ 31-49 & 130-137).  Here, Defendant committed several acts of battery:

    i.      Defendant grabbed Plaintiff from behind and placed a knife behind her back;

    ii.     Defendant cut Plaintiff with the knife on her stomach as he wrestled with her to remove her pants;

    iii.    Defendant grabbed Plaintiff by her sides to inflict pain to cause Plaintiff to release her pants;

    iv.    Defendant forcibly inserted his erected penis into Plaintiff's vagina.

(*Id.*, at ¶ 134). Plaintiff has never consented to the aforementioned bodily contacts with Defendant. The defendant acted with the knowledge of or with reckless disregard for the fact that his conduct was sure to cause injury and humiliation to Plaintiff and intended to cause fear, physical injury and pain, and suffering to Plaintiff.  (*Id.*, at ¶¶ 130-37).

> ### C.  *Plaintiff Pleads A Viable Claim for Sexual Assault Against Defendant Petty Under New York Law*

Allegations of sexual intercourse by forcible compulsion, if proven, potentially constitute criminal rape under New York law. See New York Penal Law § 130.35(1) ("A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion."). "In the civil context, the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching." *See Girden*, 262 F.3d at 203, quoting *United National Insurance Co.*, at 108 (2d Cir. 1993) and (*citing* 6A N.Y. Jur. 2d Assault – Civil Aspects § 2.  Rape indisputably encompasses civil assault and battery under New York

law). *See United National Insurance Co.*, 994 F.2d  at 108; *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 106 (E.D.N.Y. 2020).

As described in sub-section B, Plaintiff clearly pleads a viable claim for assault and battery. Defendant's assault and battery included physically forcing Plaintiff to engage in sexual intercourse without her consent.   Therefore, Plaintiff clearly pleads a viable claim for sexual assault pursuant to New York law. (*See* Blackburn Decl., ¶¶ 31-49 & 138-46).

> ### D.  Plaintiff Pleads A Viable Claim Against Defendant Petty For Negligent Infliction of Emotional Distress Under New York & California Law6

In New York, negligent infliction of emotional distress requires a showing of "(1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; and (3) severe emotional distress." *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010); see *Higgins*, 318 F.3d 422, 425 n.1 (2d Cir. 2003) (stating that to be actionable, intentional and negligent infliction of emotional distress claims must "be based on conduct that is extreme and outrageous"); *Naughright v. Weiss*, No. 10 Civ. 8451, 826 F. Supp. 2d 676, 2011 U.S. Dist. LEXIS 133742, at 45-46 (S.D.N.Y. November 18, 2011) ("A cause of action for either intentional or negligent infliction of emotional distress must allege that the defendants' conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012).

In the time proceeding his criminal act, Defendant Petty, his enabling parents, associates, legal team, gang affiliates, agents, and servants worked in concert and engaged in conduct that rise

---

[6] We note that it is currently indeterminable whether Defendant Petty's actions solely occurred in New York or both New York and California.  As such, until the Court decides which law applies, we have to plead under both states' laws.

beyond the threshold of extreme and outrageous. (*See* Blackburn Decl., ¶¶ 31-49, 57-74, 79-83, 104-07, 110-11, 117-120 & 147-54).  The extreme and outrageous conduct are as follows:

     i.     Stalking Plaintiff,

     ii.     Stalking Plaintiff's twenty-two-year-old daughter,

     iii.     Stalking Plaintiff's family members,

     iv.     Causing Plaintiff to move residents on multiple occasions throughout the years,

     v.     Bribing Plaintiff into recanting her rape claim,

     vi.     Threatening Plaintiff with physical bodily harm if she did not recant her rape claim, and

     vii.     Threatening Plaintiff with death via social media posts.

(*Id*. at ¶ 150). Under California law, negligent infliction of emotional distress has the following elements: "(1) a legal duty to use reasonable care; (2) breach of that duty; and (3) proximate [or legal] cause between the breach and (4) the Plaintiff's injury." *Keen v. American Home Mortg. Servicing Inc.*, 664 F. Supp. 2d 1086, 1096 (E.D. Cal. 2009), (*quoting Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339, 78 Cal. Rptr. 2d 525 (1998)); *Mountjoy v. Bank of Am. N.A.*, No. 2:15-cv-02204-TLN-DB, 2018 U.S. Dist. LEXIS 3216, at 28 (E.D. Cal. January 8, 2018).

     Here, in 1994, Defendant Petty accepted a plea deal after savagely raping Plaintiff.  (*See* Blackburn Decl., ¶¶ 152). As part of that plea deal, Defendant Petty was prohibited from directly or indirectly contacting Plaintiff.  (*Id*.).  The purpose of that plea agreement provision is to protect Plaintiff from experiencing a further injury that direct or indirect contact from Defendant may cause.  (*Id*.).  As a result of this agreement, Defendant assumed a duty to prevent Plaintiff from

experiencing any such harm.  (*Id.*).  On multiple occasions, Defendant negligently violated the duty he owed Plaintiff. (*Id.*)

As a result of the above-described conduct, Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.  (*Id.*, at ¶ 154).  Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life.  (*Id.*)

> E.  *Plaintiff Pleads A Viable Claim For Harassment Under California And Georgia Law*

Cal. Code Civ. Proc., § 527.6, defines "harassment" as follows: "harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. Under § 527.6, subd. (b), the course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and cause substantial emotional distress to the Plaintiff. *Krell v. Gray*, 126 Cal. App. 4th 1208.

Georgia's Harassment Statute, Ga. Code Ann. § 16–11–90 defines harassment as engaging in conduct directed at a depicted person which is intended to cause emotional harm. While Defendants Petty and Maraj were directing Black to harass Plaintiff at her home Georgia, upon information and belief, they were located in California.  (*See* Blackburn Decl. ¶¶ 117-120 & 163-70).  Upon information and belief, Defendants Petty and Maraj were also located in California when they were posting lies about Plaintiff on the internet intending to cause her emotional harm. (*Id.*, at ¶¶ 79-83).  As such, the actions of Black in Georgia constitute harassment under Ga. Code Ann. § 16–11–90 and California law.

At bottom, Defendants Petty and Maraj, through their intermediaries, engaged in constant phone calls, resident pop-ups, family member reach outs, unsolicited contacts, bribing, and attempted coercion.  (*See* Blackburn Decl.¶ 161).  Defendant knew or reasonably should have known that such communication would cause Plaintiff to fear harm to Plaintiff's physical safety and property and a member of Plaintiff's family. (*Id*.)

As a result of the above-described conduct, Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.  (*Id*., at ¶ 162).  Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life. (Id.).  Thus, Plaintiff pleads viable claims for Harassment under both Georgia and California law.

### F.   Plaintiff Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law

In California, to state a cause of action for intentional infliction of emotional distress, a plaintiff must show "(1) outrageous conduct by the Defendant; (2) the Defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the Plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the Defendant's outrageous conduct." "Conduct, to be "outrageous" must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014).

In Georgia, a claim of intentional infliction of emotional distress requires proof of the following elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and

the emotional distress; and (4) The emotional distress must be severe." *Moore*, 238 Ga. App. at 377.

Defendant Petty's actions have satisfied the elements of intentional infliction of emotional distress under both California and Georgia law. (*See* Blackburn Decl. ¶¶ 171-177) Defendant Petty was a resident of California when he engaged in these tortious and criminal acts aimed and directed towards Plaintiff, also a resident of the State of Georgia at the time. (*Id*.)

In summary, Defendant's intentional conduct included, but was not limited to:

i.   Bribery of Plaintiff by sending their associate Black, to Plaintiff's residents with $20,000.00 and offering to have Defendant Minaj record a birthday video for Plaintiff's daughter,

ii.  Bribery of Plaintiff by approaching the Plaintiff's family members in New York, offering $500,000.00 in exchange for Plaintiff recanting her 1994 rape claim against Defendant,

iii. Stalking and Harassing Plaintiff's twenty-two-year-old daughter while her daughter was out with friends in Georgia,

iv.  Stalking and Harassing Plaintiff by calling and showing up at Plaintiff's home after Plaintiff changed her phone number and residents on multiple occasions,

v.   Intimidating Plaintiff's family in New York with threats of physical bodily harm if Plaintiff did not recant her 1994 rape claim. These threats resulted in Plaintiff's moving out of Georgia to a remote location in the State of Florida, and

vi.  Through their associate, Black threatened to kill Plaintiff on social media.

(*Id*.).  Defendant's actions were intentional, the conduct was extreme and outrageous, and there is a clear causal connection between the conduct and Plaintiff's emotional distress, which is persistent and severe.  (*Id*.).  Plaintiff has not worked since having to move over three times within twelve months as she has been in fear for her life and safety. (*Id*.)  These injuries are continuing in nature.  (*Id*.).  Thus, Plaintiff has properly pleaded a viable claim for intentional infliction of emotional distress against Defendant Petty.

## V.   IF THE COURT ENTERS DEFAULT AGAINST DEFENDANT PETTY, PLAINTIFF SEEKS AN INQUEST HEARING TO DETERMINE DAMAGES

Plaintiff's damages are both emotional, physical, and monetary.  In addition to the emotional damages from the aforementioned actions of Defendant Petty, Plaintiff has been required to incur significant costs in moving several times.  As such, due to the complex nature of the damages, we request an evidentiary or inquest hearing on the same.

## CONCLUSION

For the reason above, Plaintiff Hough respectfully requests the Court to find Defendant Petty in default for his intentional failure to timely answer or move in this action and schedule an inquest hearing to determine damages.

Date: October 27, 2021,

Respectfully Submitted,

*Tyrone A. Blackburn, Esq.*

Tyrone A. Blackburn, Esq.