UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JENNIFER HOUGH,                              :
                                             :
                         Plaintiff,          :
                                             :        Civil Action No. 21-cv-04568
            - against -                      :        (ENV) (JRC)
                                             :
ONIKA TANYA MARAJ, AKA ("NICKI  MINAJ")      :
and KENNETH PETTY, AKA ("ZOO"),              :
                                             :
                         Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM OF LAW OF DEFENDANT KENNETH PETTY
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT


Dated: November 8, 2021
       New York, New York




                          Law Offices of Steven D. Isser
                          424 Madison Avenue, Third Floor
                          New York, New York 10017
                          (212) 812-5096
                          *Attorneys for Plaintiff Kenneth Petty*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

SUMMARY OF THE FACTS ............................................................4

ARGUMENT ............................................................4

    POINT I

    A DEFAULT JUDGMENT SHOULD
    NOT BE ENTERED DUE TO DEFICIENT SERVICE ........................................4

    A. Defendant Was Not Properly Served Pursuant to Rule 4(e)(2)(a)....................6

    B. Defendant Was Not Properly Served Under California Law............................8

    C. Defendant Was Not Properly Served Under New York Law .........................11

    POINT II

    A DEFAULT JUDGMENT SHOULD
    NOT BE ENTERED DUE TO PLAINTIFF'S
    FAILURE TO COMPLY WITH LOCAL RULE 55.1 ........................................13

    POINT III

    A DEFAULT JUDGMENT SHOULD NOT BE ENTERED
    BECAUSE DEFENDANT HAS DEMONSTRATED GOOD CAUSE ...............15

    A. Defendant's Failure to Respond to the
    Amended Complaint Was Not Willful ........................................16

        1. The Default Was Due to Difficulty in
        Obtaining Counsel and Miscommunication........................................17

        2. Plaintiff's Arguments that the Default Was Willful Lack Merit .........20

    B. Defendant Has Demonstrated Meritorious Defenses......................................21

    C. Plaintiff Will Not Suffer Prejudice if the Default it Vacated..........................26

CONCLUSION......................................................................30

# TABLE OF AUTHORITIES

## Federal Cases

*77 Charters, Inc. v. SYC Realty LLC,*
2012 WL 1077706, at *12 (E.D.N.Y. February 27, 2012) ..........................................................29

*Action S.A. v. March Rich & Co. Inc.,*
951 F.2d 505, 507 (2d Cir. 1991)....................................................................................................20

*AFK, Inc. v. Kessman Group Painting & Design, Inc.,*
2021 WL 178867, at *3 (E.D.N.Y. January 19, 2021) ...................................................................28

*American Guarantee & Liability Ins. Co. v. Irvine Auto Towing Inc.,*
2021 WL 4459668, at *2 (N.D. Cal. March 26, 2021) ..............................................................6, 7

*Berdux v. Project Time & Cost, Inc.,*
669 F. Supp.2d 1094 (N.D.N.Y. 2009)..............................................................................................7

*Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr.,*
*LLC,* 779 F.3d 182, 186 (2d Cir. 2015) ....................................................................................8, 16

*Crawford v. US Sec'y Assocs.,*
2019 WL 8128253, at *3 (S.D.N.Y. Sep. 11, 2019)........................................................................13

*Davis v, Musler,*
713 F.2d 907, 916 (2d Cir. 1983)....................................................................................................14

*Dixon v. Ragland,*
2005 WL 2649484, at *2 (S.D.N.Y. October 14, 2005)..................................................................18

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont,*
169 Fed.Appx 45 (2006) ................................................................................................................12

*Elohim EPF USA, Inc. v. 162 D&Y Corp.,*
2021 WL 2292682, at *4 (S.D.N.Y. June 4, 2021)........................................................16, 18, 19

*Enron Oil Corp. v. Diakuhara,*
10 F.3d 90, 96 (2d Cir. 1993)...........................................................................................4, 15, 21, 23

*Gil v. Frantzis,*
2019 WL 5694074, at *12 (E.D.N.Y. August 22, 2019)................................................................29

*Goldstein v. Urgo Eleuthera Hotels Ltd.,*
2016 WL 1019394, at *2 (E.D.N.Y. February 10, 2018) ...................................................4, 16, 21

*Lawtone-Bowles v. Seneca County Corrections Division,*
2021 WL 4034525, at *3 (W.D.N.Y. September 9, 2021) ............................................30

*Lin v. Grand Siuchuan,*
*74 St Inc.,* 2021 WL 4295208, at *5 -*6 (S.D.N.Y. September 21, 2021) ....................13

*Llolla v Karen Gardens Apartment Corp.,*
2015 WL 13731354, at *4 (E.D.N.Y. July 2, 2015) ....................................................28

*Malletier v. Brami Enterprises, Inc.,*
2006 WL 328343, at *6 (E.D.N.Y. February 14, 2006) ...............................................30

*Meehan v. Snow,*
652 F.2d 274, 277 (2d Cir. 1981) .................................................................................4

*New Falls Corp. v. Soni Holdings,*
*LLC,* 2020 WL 2770922, at 3 (E.D.N.Y. May 8, 2020), adopted by,
*New Falls Corp. v. Soni Holdings,*
*LLC,* 2020 WL 2770015 (E.D.N.Y. May 28, 2020) ..........................15, 16, 17, 18, 19, 20, 21, 26

*O'Callaghan v. Sifre,*
242 F.R.D. 69, 72 (S.D.N.Y. 2007) ........................................................................13, 14

*Onewest Bank, N.A. v. Ruiz,*
2018 WL 1318983, at *2 (E.D.N.Y March 13, 2018) ......................................16, 17, 21

*Plumbers, Union No. 112 Pension Fund v. Fendick Plumbing, Heating*
*& Air Conditioning, Inc.,*
2008 WL 4532500, at * 2 (N.D.N.Y. Sep. 29, 2008) ...................................................18

*Puddo v. 6D Global Technologies, Inc.,*
2020 WL 2833852, at *4 (E.D.N.Y. May 31, 2020) .................................................21, 30

*Resource Trade Finance, Inc. v. PMI Alloys, LLC,*
2002 WL 1836618 (S.D.N.Y. August 12, 2002) ..........................................................4

*Securities and Exchange Commission v. Breed,*
2004 WL 1824358 (S.D.N.Y. August 13, 2004) .........................................................20

*Scotlynn USA Division, Inc. v. Valdez,*
2015 WL 13734078, at *1-2 (M.D. Fla. September 2, 2015)....................................7, 8

*Trend Micro Inc. v. RPost Holdings,*
2014 WL 1365491, at *5 (N.D. Cal. April 7, 2014)......................................................7

*U.S. Commodity Futures Trading Commission v. Safety Capital Management,*
2017 WL 3236441, at *2 (E.D.N.Y. July 31, 2017)............................................................17, 21, 26

*USA Herbals, LLC v. Sybervision, Inc.,*
2008 WL 11517565 (S.D.N.Y. November 14, 2008)....................................................................18

*Westchester Fire Ins. Co. v. Tyree Service Corp.,*
304 F.R.D. 111, 112 (E.D.N.Y. 2014)..........................................................................................16

*Westmark Development Corp. v. Century Surety Co.,*
199 F.R.D. 491, 496 (W.D.N.Y. 2001)..........................................................................................20

**State Cases**

*American Express Centurion Bank v. Zara,*
199 Cal.App.4th 383, 389 (6th Dist. 2011).................................................................................8, 11

*Banks v. Am. Airlines Grp., Inc.,*
2020 U.S. Dist. LEXIS 251489, at *11-12 (C.D. Cal. Dec. 29, 2020) .......................................25

*Karnazes v. Hartford,* 2013 WL 4080950, *2
(Cal. Ct. of App. 1st District August 9, 2013) .....................................................................8, 9, 10

*Khourie v. Sabek,*
220 Cal.App.3d 1009 (1990) .................................................................................................10, 11

*Roberson v. Roberson,*
2017 Cal. Super. LEXIS 18793 (Superior Ct. Alameda Co. October 2, 2017) ..........................10

*Somerville v. White,*
337 Ga. App. 414,416 (2016) .....................................................................................................25

**Statutes and Rules**

Cal. Civ. Proc. § 415.20..........................................................................................................9, 11

Cal. Civ. Proc. § 415.20(a) ..........................................................................................................10

Cal. Civ. Proc. § 415.20(b) .....................................................................................................9, 11

Cal. Civ. Proc. § 527.6.................................................................................................................25

Fed. R. Civ. P. 4(e).........................................................................................................................5

Fed. R. Civ. P. 4(e)(1).....................................................................................................................8

Fed. R. Civ. P. 4(e)(2) .................................................................................................8

Fed. R. Civ. P. 4(e)(2)(a) .....................................................................................6, 7, 8

Fed. R. Civ. P. 55 .........................................................................................................14

Fed. R. Civ. P. 55(a) ......................................................................................................2

Fed. R. Civ. P. 55(c) .....................................................................................................15

Rule 55.1 of the Local Rules of the United States District Courts
for the Southern and Eastern Districts of New York  ...................................2, 13, 14, 15

Rule 55.1(b)(3) of the Local Rules of the United States District Courts
for the Southern and Eastern Districts of New York  ............................................13, 14

NY CPLR § 214 .............................................................................................................23

NY CPLR § 214-g .........................................................................................................23

NY CPLR § 308(1) ........................................................................................................11

NY CPLR § 308(4) ........................................................................................................12

NY CPLR § 313 .............................................................................................................11

## PRELIMINARY STATEMENT

Plaintiff Jennifer Hough ("Plaintiff") alleges in her Amended Complaint ("Amended Complaint" or "Am. Compl.") that in 1994 she was raped by Defendant Kenneth Petty ("Defendant" or "Mr. Petty").  After remaining silent for over 27 years, Plaintiff now claims to have suffered damages and emotional distress from this alleged incident.  The explanation for Plaintiff waiting 27 years to commence litigation is obvious.  In October 2019, Defendant Petty married co-defendant Onika Tanya Maraj a/k/a Nicki Minaj ("Ms. Maraj"), who is a famous and wealthy musician.  Believing that a celebrity with deep pockets, who is now married to Mr. Petty, would fear adverse publicity, Plaintiff is attempting to extract money based on the 27 year old alleged incident.

Plaintiff's improper rush to obtain a default judgment demonstrates that Plaintiff is well aware that her claims lack merit, and that her that lawsuit is motivated by Mr. Petty's recent marriage to a celebrity deep pocket.  Indeed, on October 11, 2021, just five days after the date by which Mr. Petty and co-defendant Ms. Maraj would have been required to respond to the Amended Complaint, **if** they had been properly served (which they were not), Plaintiff's counsel filed a Request for a Certificate of Default from the Clerk of the Court.  *See* Declaration of Steven D. Isser, sworn to on November 8, 2021 ("Isser Declaration" or "Isser Decl.") at Exhibit ("Ex.") 5.

Although Ms. Maraj's counsel requested that Plaintiff's counsel withdraw the Request for a Certificate of Default and agree to a reasonable extension of time to respond to the Amended Complaint, as such extensions of time are normally granted in litigation, Plaintiff's counsel refused.  Isser Decl. at Ex. 2.  As a result of Plaintiff's refusal to abide by the common courtesies normally extended in litigation, the instant motion and Defendant's simultaneous motion for an

Order vacating the Certificate of Default against Defendant and permitting Defendant to respond to the Amended Complaint are necessary.

Plaintiff's motion for a default judgment itself also demonstrates that Plaintiff's lawsuit is motivated by Mr. Petty's recent marriage to a wealthy celebrity. Although the instant motion seeks a default judgment solely against Mr. Petty, the majority of the allegations discussed in Plaintiff's motion papers are solely related to Ms. Maraj, as Ms. Maraj is the true target of this lawsuit.

As is further discussed below, Defendant has demonstrated that there is good cause to vacate the Certificate of Default and deny Plaintiff's motion for a default judgment for numerous reasons. **First,** service was not properly effectuated on Defendant. Plaintiff's motion papers conclusively demonstrate that the Affidavit of Service concerning the purported service on Defendant was false. Although the Affidavit of Service states that Mr. Petty was "personally served," Plaintiff's process server, Robert Diaz, states in the Declaration of Robert Diaz, sworn to on October 27, 2021 (the "Diaz Declaration" or "Diaz Decl."), that he left the documents he "served" "outside the front of the door." Diaz Decl. at ¶11. As discussed below, this does not constitute personal service, as was falsely claimed in the Affidavit of Service. Nor is it effective service. The failure to properly serve Defendant in and of itself requires not only denial of Plaintiff's motion, but also dismissal of the action, as the Court lacks personal jurisdiction over Defendant.

**Second**, Plaintiff failed to comply with Rule 55.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), which requires that a party applying for entry of default under Fed. R. Civ. P. 55(a) shall file an affidavit demonstrating that "the pleading to which no response has been made was properly served." Plaintiff's application for entry of a default, however, did not include an affidavit of service and

the Affidavit of Service previously filed did not state that the Amended Complaint, the "pleading to which no response has been made," was the document allegedly served on Defendant.

**Third,** even had Defendant been properly served and Plaintiff had complied with Local Rule 55.1, Defendant's failure to timely respond to the Amended Complaint was not willful, which is one of the criteria weighed in determining whether to enter a default judgment and/or to vacate a default. As discussed below, Defendant was having difficulty obtaining counsel and was waiting for his wife's counsel to help him find representation. Through a miscommunication between Defendant's wife and her counsel, this was delayed. In addition, that Defendant sought to vacate the Certificate of Default six days after it was entered (on October 19, 2021) further demonstrates that his failure to respond to the Amended Complaint was not willful. *See* Isser Decl. at Ex. 7.

**Fourth**, Defendant has meritorious defenses, another criteria weighed in determining whether to enter a default judgment or vacate a default. As discussed below, in 1994, Defendant was convicted of the **attempted** rape of Plaintiff. Yet, Plaintiff claims to have been raped by Defendant. In the Declaration of Kenneth Petty, sworn to on November 5, 2021 ("Petty Declaration" or "Petty Decl."), Mr. Petty denies the allegations that he raped the Plaintiff, as well as all of the other material allegations. In addition, many of Plaintiff's claims are time barred and/or are not legally cognizable. Further, there has not yet been any discovery in this action and discovery may demonstrate the existence of additional defenses.

**Fifth**, Plaintiff will not suffer any prejudice if the default is vacated, the most important criteria weighed in determining whether to enter a default judgment and/or to vacate a default. As the default is relatively recent, there cannot be any reasonable claim that evidence is now unavailable or that Plaintiff's ability to prove her claims has been hampered, which is required to demonstrate prejudice. Mere delay is insufficient to establish prejudice. Plaintiff's claims of

prejudice impermissibly rely on speculation as to potential future events which may or may not occur. Such speculation does not and cannot demonstrate prejudice as a matter of law.

For any and all of the reasons discussed above and below, Plaintiff's motion for a default judgment should be denied, the default should be vacated and Defendant should be permitted to respond to the Amended Complaint.

## SUMMARY OF THE FACTS

Certain of the relevant facts are discussed below, but to avoid undue repetition, all of the relevant facts are not set forth herein. For a fuller discussion of the facts, the Court is respectfully referred to the accompanying Petty Declaration and Isser Declaration.

## ARGUMENT

"The Second Circuit has made clear its 'preference for resolving disputes on the merits.'" *Resource Trade Finance, Inc. v. PMI Alloys, LLC,* 2002 WL 1836618, at *5 (S.D.N.Y. August 12, 2002) (citation omitted). "The extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir. 1981); *Goldstein v. Urgo Eleuthera Hotels Ltd.,* 2016 WL 1019394, at *2 (E.D.N.Y. February 10, 2018) (same). Moreover, if Defendant did in fact default, he did so at a time when he was not represented by counsel. As the Court held in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993), "as a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se.*" *Id.*

## POINT I

## A DEFAULT JUDGMENT SHOULD NOT BE ENTERED DUE TO DEFICIENT SERVICE

Plaintiff's motion should be denied because Defendant was not properly served with process. In the Affidavit of Service previously filed with the Court concerning "service" on

4

Defendant, the process server claims to have "personally served" the summons on Defendant. Isser Decl. at Ex. 3. Plaintiff, however, now admits that the Affidavit of Service is inaccurate. In the Diaz Declaration, the process server now states that on his *second* attempt to serve Defendant, made the same day as the first attempt, he "left them [the documents] outside the front of the door" at Defendant's California residence. Diaz Decl. at ¶¶ 3, 7 and 11. This is not "personal service" or effective service.

Rule 4(e) of the Federal Rules of Civil Procedure provides that:

**Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:

**(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

**(2)** doing any of the following:

> **(A)** delivering a copy of the summons and of the complaint to the individual personally

> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

As discussed below, the circumstances under which the "summons and complaint" were left outside of Defendant's door do not constitute proper service under federal law, California law or New York law.

A.      <u>**Defendant Was Not Properly Served Pursuant to Rule 4(e)(2)(a)**</u>

Plaintiff claims to have served Defendant "personally," pursuant to Rule 4(e)(2)(a) of the Federal Rules of Civil Procedure.  *See* Memorandum of Law in Support of Plaintiff's Motion For Entry of a Default Judgment Against Defendant Kenneth Petty ("Plaintiff's Memorandum" or "Pl. Mem.'") at 11.  To effectuate such personal service by leaving the summons and complaint on a defendant's doorstep, there first must have been several attempts to serve the defendant, demonstrating the defendant's intent to evade service, and verbal proximity between the process server and the defendant, neither of which occurred here.

Indeed, as held in *American Guarantee & Liability Ins. Co. v. Irvine Auto Towing Inc.,* 2021 WL 4459668, at *2 (N.D. Cal. March 26, 2021), "[s]ervice may be proper where a plaintiff makes a **good faith effort at substantial compliance** with Rule 4(e)(2) 'result[ing] in placement of the summons and complaint **within the defendant's immediate proximity** and further compliance ... is only prevented by the defendant's knowing and intentional actions to evade service." (emphasis added).  Cases in which service was proper when the process server left the papers outside of a defendant's door required many more attempts at service than the one previous attempt made here, as well as verbal proximity, which is completely absent here.

For example, in *American Guarantee & Liability Ins. Co.,* the court found a good faith effort at substantial compliance because almost 20 prior attempts at service, at three different addresses, had been made before the process server left the documents.  *American Guarantee & Liability Ins. Co.,* 2021 WL 4459668, at *3.  As for the "immediate vicinity" requirement, the process sever saw the defendant driving a car, and yelled to the defendant, "I have court paperwork for you," but "the defendant continued driving into the tow lot without stopping and a man closed the gate behind him."  *Id.*  After Defendant got out of his car, the process server yelled to him, "Andi you are served and I'm dropping the court paperwork inside the gate."  *Id.*

The facts in the instant case are far different than the facts in *American Guarantee & Liability Ins. Co.*  Here, the process server left the papers outside of Defendant's house on his second attempt to serve Defendant, never spoke to Defendant or was in close proximity to Defendant and claims only to have seen Defendant inside the house.  Diaz Decl. at ¶¶ 4 and 11.

So too, in *Trend Micro Inc. v. RPost Holdings,* 2014 WL 1365491, at *5 (N.D. Cal. April 7, 2014), the process server made five prior attempts to serve the defendant at his home, and on the sixth attempt "had a brief conversation" with the defendant, during which the defendant "lied about his identity and closed the door."  *Id.*  The process server "concluded that [the defendant] was attempting to avoid service and left the papers on his front doorstep."  *Id.*  The court held that "these activities are sufficient."  *Id.*  Here, however, there were less attempts at service and the process server never spoke to Defendant and was never in Defendant's immediate vicinity.

The case relied on by Plaintiff, *Berdux v. Project Time & Cost, Inc.,* 669 F. Supp.2d 1094 (N.D.N.Y. 2009), also concerned facts demonstrating a good faith effort of substantial compliance which are not present in the instant case.  Pl. Mem. at 11.  In *Berdux,* the process server attempted to serve the defendant at his home on three separate occasions before leaving the papers with the defendant's wife, who he spoke with.  *Id.*

Plaintiff has not cited to any case in which leaving the summons and complaint outside of a defendant's house on only the second attempt at service, without any proximity to defendant, constituted proper service pursuant to Rule 4(e)(2)(a).  Indeed, in *Scotlynn USA Division, Inc. v. Valdez,* 2015 WL 13734078, at *1-2 (M.D. Fla. September 2, 2015), a case with similar facts as here, service was held to be defective.

In *Scotlynn USA Division, Inc.,* the process server "attempted personal service on two occasions without success," and on the third attempt, after verifying that the defendant was home

(in a trailer), the process server saw someone matching the description of the defendant in the trailer, called the defendant's name "countless times, and informed him that I was there to serve a lawsuit upon him. Despite knocking for 15 minutes, he refused to open the door." *Id.* The process server then left copies of the documents on the "front doorstep." *Id.* The court held that personal service was **not** effected under Rule 4(e)(2). *Id.* The same can be said here.

In fact, in *Scotlynn USA Division, Inc.,* the process server made more attempts to serve the defendant than was made here, as here the process server made only one failed attempt before leaving the documents in front of Defendant's door. Server. Decl. at ¶4. Nor did the process here call Defendant's name countless times or wait fifteen minutes before leaving the papers, as in *Scotlynn USA Division, Inc.* As service was not proper in *Scotlynn USA Division, Inc.,* it is not proper as to Defendant. Accordingly, Defendant was not properly served pursuant to Rule 4(a)(2)(a),

### B.   Defendant Was Not Properly Served Under California Law

Pursuant to Rule 4(e)(1) of the Feral Rules, service can be effectuated pursuant to the laws of the state where service is made. Fed. R. Civ. P 4(e)(1). Plaintiff, however, failed to serve Defendant pursuant to California law, where the purported service was attempted.

As a threshold matter, leaving the papers on Defendant's doorstep is not the equivalent of "personal service" under California law, as claimed by the process server in the Affidavit of Service. Isser Decl. at Ex. 3; Diaz Decl. at ¶11. Pursuant to California law, "the method described as 'personal service' means service that is accomplished 'by personal delivery of a copy of the summons and of the complaint to the person to be served.' (§ 415.10.) If the complaint and summons were personally delivered to, **i.e., handed to, defendant** then he could be said to have been 'personally served.'" *American Express Centurion Bank v. Zara,* 199 Cal.App.4th 383, 389 (6th Dist. 2011) (emphasis added). *See also Karnazes v. Hartford,* 2013 WL 4080950, *2 (Cal. Ct.

of App. 1ˢᵗ District August 9, 2013) ("[o]nce the summons and complaint are **handed to defendant**, 'then he could be said to have been personally served.'") (citation omitted) (emphasis added).

Having failed to effectuate personal service, Plaintiff must demonstrate service was properly made pursuant to Section 415.20 of the California Code of Civil Procedure ("California Code"), known as "substitute service."  Indeed, Section 415.20 of the California Code expressly addresses the requirements of serving a defendant by leaving the summons and complaint on the defendant's doorstep, as was done here.  Section 415.20(b) provides, in part, that:

> If a copy of the summons and complaint cannot **with reasonable diligence** be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, **a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house** . . . in the presence of a competent member of the household . . . at least 18 years of age, who shall be informed of the contents thereof, **and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left**. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

C.C.P. § 415.20(b) (emphasis added).

Accordingly, to effectuate substitute service under Section 415.20 of the California Code, the summons and complaint must also be mailed to a defendant at the place where they were left for the defendant.  C.C.P. § 415.20(b).  Here, service is defective because the Summons and Amended Complaint were not mailed to Defendant.

In *Karnazes v. Hartford,* 2013 WL 4080950, a case with substantially similar facts as are alleged by Plaintiff here, the court held that proper service had not been effectuated.  In *Karnazes,* "Trevor Johnson, the process server, stated that he knocked on the door of Hartford's [the defendant's] residence and saw him in the residence.  Johnson told Hartford that he had legal service of process for him, but Hartford did not answer the door.  Johnson announced that he was

9

leaving legal service of process documents on the doorstep and left the summons and first amended complaint at Hartford's front door." *Karnazes,* 2013WL 4080950, at *1. The court in *Karnazes,* however, concluded that leaving the summons and complaint on the doorstep after the defendant would not open the door does not qualify as "personal service" and further concluded that it also does not qualify as substitute service pursuant to Section 415.20(b) because, among other things, there was no subsequent mailing. *Karnazes,* 2013WL 4080950, at *2.

As in *Karnazes,* here, the process server claims to have seen Defendant in the house, that Defendant refused to open the door, that the process server "announced" himself and "informed him that he had been served," and then left the documents outside of Defendant's house and did not mail them. Diaz Decl. at ¶11. As in in *Karnazes,* this is not effective service. *See also Roberson v. Roberson,* 2017 Cal. Super. LEXIS 18793 (Superior Ct. Alameda Co. October 2, 2017) (holding service invalid because process server "was not permitted to affix the Summons and Amended Complaint to the front door because Defendant refused to answer the door").

Plaintiff's reliance on *Khourie v. Sabek,* 220 Cal.App.3d 1009 (1990) is unavailing, as this case too demonstrates that Plaintiff failed to effect service. Pl. Mem. at 11. In *Khourie,* the court determined whether a process server had complied with Section 415.20(a) of the California Code, which concerns substitute service at a place of employment. Although the court concluded that the process server could leave the papers outside the door because the woman who answered the door refused to open the door, unlike here, in *Khourie* the process server also "mailed a copy of the summons and complaint to Sabek at its place of business." *Khourie,* 220 Cal.App.3d at 1012. Due to the subsequent mailing (which did not occur here), the court concluded that service was proper, holding that after leaving the papers, the process server "thereafter, **in compliance with Code of Civil Procedure section 415.20**, sent a copy of the complaint and summons to Sabek's

principal officer, Saberi. Under the circumstances, **service was completed on December 17, 10 days after the December 7th mailing**." *Khourie,* 220 Cal.App.3d at 1013 (emphasis added).

Accordingly, because Plaintiff failed to mail the papers to Defendant after leaving the papers in front of Defendant's door, substitute service was not effectuated pursuant to the requirements of Section 415.20 of the California Civil Code.  Further, Plaintiff's claimed method of service is defective under California law for the additional reason that before substitute service may be used, a plaintiff must have used reasonable diligence to try to personally serve the defendant.  C.C.P. § 415.20(b).  As held in *American Express Centurion Bank,* "an individual may be served by substitute service only after a good faith effort at personal service has first been made: **the burden is on the plaintiff to show that the summons and complaint 'cannot with reasonable diligence be personally delivered' to the individual defendant**." *American Express Centurion Bank,* 199 Cal.App.4th at 389 (emphasis added).

"Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as 'reasonable diligence.'" *American Express Centurion Bank,* 199 Cal.App.4th at 389. *See also Karnazes,* 2013 WL 4080950, at *2 (same).  As Plaintiff's process server left the papers on Defendant's doorstep the second time he tried to serve Defendant personally, he failed to exercise reasonable diligence as he did not make two or three attempts to personally serve before resorting to substitute service.  Diaz Decl. at ¶9.  He made only one attempt and then attempted substitute service on the second attempt.

### C.   Defendant Was Not Properly Served Under New York Law

Plaintiff also failed to effectuate service under New York law.  For the same reasons as discussed above, Defendant was not personally served under New York, pursuant to Sections 308(1) and 313 of the New York Civil Practice Law and Rules ("CPLR").  Plaintiff's reliance on

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont,* 169 Fed.Appx 45 (2006),
which applied New York law, is misplaced.  Pl. Mem. at 11.  Throwing papers at a defendant's
feet when a defendant refuses to take them (as was done in *Durant, Nichols, Houston, Hodgson &
Cortese-Costa P.C.*) is not similar to leaving them on a defendant's doorstep because there is no
proximity between the process server and the defendant.  Here, the process server claims merely
to have seen Defendant in his home, with no proof that Defendant heard him "announce" himself
or heard what he said. This is insufficient to effect personal service under New York law.

Nor was substitute service properly made pursuant to New York law.  Section 308(4) of
the CPLR provides, in part, that:

> where service under paragraphs one and two cannot be made **with due diligence**,
> [service may be made] by **affixing the summons to the door** of either the actual
> place of business, **dwelling place or usual place of abode** within the state of the
> person to be served and **by either mailing the summons to such person at his or
> her last known residence or by mailing the summons by first class mail to the
> person to be served at his or her actual place of business** in an envelope bearing
> the legend "personal and confidential" and not indicating on the outside thereof, by
> return address or otherwise, that the communication is from an attorney or concerns
> an action against the person to be served . . .

CPLR § 308(4).

As Plaintiff's process server did not "affix" the summons to the door (he left it in front of
the door) and/or did not mail the summons and Amended Complaint to Defendant, service was not
effectuated.  Further, Defendant did not use due diligence before resorting to substitute service,
for the same reasons as discussed above.

As Defendant was not properly served, this in and of itself requires denial of Plaintiff's
motion for a default judgment (and requires dismissal of the Amended Complaint).  Indeed,
"[t]here is good cause to vacate entry of default when a plaintiff fails to properly serve a defendant
with a summons and complaint . . . In the absence of proper service, the putative defendant has no

obligation to 'plead or otherwise defend' as required by Rule 55(a) . . ." *Crawford v. US Sec'y Assocs.*, 2019 WL 8128253, at *3 (S.D.N.Y. Sep. 11, 2019).  *See also Lin v. Grand Siuchuan 74 St Inc.,* 2021 WL 4295208, at *5 -*6 (S.D.N.Y. September 21, 2021) (default is void when the party is not properly served with process because the court lacks personal jurisdiction); *O'Callaghan v. Sifre*, 242 F.R.D. 69, 72 (S.D.N.Y. 2007) ("[a] default judgment may not be granted, however, if the defendant has not been effectively served with process.")

 For any and all of the above discussed reasons, Plaintiff's motion should be denied and the default should be vacated because service of process was not properly effectuated.

## POINT II

### A DEFAULT JUDGMENT SHOULD
### NOT BE ENTERED DUE TO PLAINTIFF'S
### FAILURE TO COMPLY WITH LOCAL RULE 55.1

Local Rule 55.1(b)(3) provides, in part, that "[a] party applying for entry of default under Fed. R. Civ. P. 55(a) shall file: . . . **an affidavit demonstrating** that . . . the pleading to which no response has been made **was properly served**."  Local Rule 55.1(b)(3) (emphasis added).  The Affirmation in Support of Request for Certificate of Default by Tyrone Blackburn, Esq., affirmed on October 11, 2021 (the "Affirmation" or "Aff."), filed by Plaintiff's counsel, however, failed to satisfy these requirements.

For example, the Affirmation does not even mention service on Defendant, let alone demonstrate that Defendant was properly served.  Isser Decl. at Ex. 4.  It merely states that the time for the Defendant to answer or otherwise move concerning the "complaint" has expired and that Defendant has not answered or otherwise moved concerning the "complaint."  Isser Decl. at Ex. 4 at ¶¶ 3-4.  The Affirmation does not even mention when Defendant was served or when his time to respond to the "complaint" expired.

To the extent Plaintiff seeks to rely on the Affidavit of Service previously filed with the Court, such reliance is misplaced. Rule 55.1 requires that the affidavit filed in support of the request for a Certificate of Default demonstrate service, not that a previously filed affidavit do so. Further, the Affidavit of Service, which falsely claims that Defendant was personally served, also fails to satisfy the requirements of Rule 55.1. As stated, Rule 55.1 requires that the affidavit demonstrate that "**the pleading to which no response has been made** was properly served," *i.e.,* the Amended Complaint. Local Rule 55.1(b)(3) (emphasis added). The Affidavit of Service, however, fails to mention service of the Amended Complaint. Isser Decl. at Ex. 3. The Affidavit of Service merely states that the "summons" was served, and under the heading "[a]dditional information regarding attempted service, etc.," it state "Summons, Jury Demanded, Exhibit(s)." Isser Decl. at Ex. 3.

Even assuming that "Jury Demanded" refers to a complaint, it is not clear whether it refers to the original complaint or the Amended Complaint, for which a default is sought. Similarly, the Diaz Declaration merely states that the "summons and complaint" were served, with no mention of the Amended Complaint. Diaz Decl. at ¶4. *See O'Callaghan v. Sifre*, 242 F.R.D. 69, 72 (S.D.N.Y. 2007) ("for a plaintiff to be entitled to a default judgment on an amended pleading, there must be an adequate showing that the relevant amended pleading was duly served, under the relevant rules.").

Plaintiff concedes that Rule 55 of the Federal Rules of Civil Procedure provides "a two-step process for obtaining a default judgment," the first "step" of which is to obtain a certificate of default. Pl. Mem. at 10. As the Certificate of Default was incorrectly entered due to Plaintiff's failure to comply with Rule 55.1 of the Local Rules, the first step in the mandated process was not satisfied and the Certificate of Default should not have been entered. Because the first step was

not sufficiently accomplished, Plaintiff's motion for a default judgment, the second step, should be denied and the default should be vacated.

**POINT III**

**A DEFAULT JUDGMENT SHOULD NOT BE ENTERED
BECAUSE DEFENDANT HAS DEMONSTRATED GOOD CAUSE**

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under rule 60(b)." Fed. R. Civ. P 55(c).  Accordingly, the default should be vacated not only due to Plaintiff's failure to effect proper service and/or comply with Local Rule 55.1, but also because Defendant has demonstrated "good cause" to vacate the default.

"Because Rule 55(c) does not define the term 'good cause,' we have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment.  These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96.

"Because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.  "In other words, 'good cause' and the criteria of the Rule 60(b) set aside should be construed generously." *Id. See also New Falls Corp. v. Soni Holdings, LLC,* 2020 WL 2770922, at 3 (E.D.N.Y. May 8, 2020), adopted by *New Falls*

15

*Corp. v. Soni Holdings, LLC,* 2020 WL 2770015 (E.D.N.Y. May 28, 2020) (good cause should be construed generously.).

Of the three factors to be examined to determine whether there is "good cause" to vacate a default, "[n]o single factor is dispositive." *Onewest Bank, N.A. v. Ruiz,* 2018 WL 1318983, at *2 (E.D.N.Y March 13, 2018); *Goldstein,* 2016 WL 1019394, at *2 (same). *See also Westchester Fire Ins. Co. v. Tyree Service Corp.,* 304 F.R.D. 111, 112 (E.D.N.Y. 2014) (vacating default even though the defendant failed to demonstrate a meritorious defenses); *Elohim EPF USA, Inc. v. 162 D&Y Corp.,* 2021 WL 2292682, at *4 (S.D.N.Y. June 4, 2021) ("[a]ll three factors in this case favor vacating the defaults. Though the Court ultimately concludes that the Defaulted Defendants' defaults were *not* willful, a contrary conclusion would not alter the balance of the factors, which would still weigh in favor of vacating the defaults.") (emphasis original); *New Falls Corp.,* 2020 WL 2770922, at 3 ("[a]lthough the Moving Defendants have failed to sufficiently raise a meritorious defense at this juncture, the Court finds that their default was not willful and Plaintiff will not be prejudiced by setting aside the defaults. Weighing these three factors, the Court concludes that vacating the entry of default is more appropriate under these circumstances in light of the fact that 'strong public policy favors resolving disputes on the merits.'") (citation omitted).

Accordingly, even if a defendant is unable to establish a factor, the default may still be vacated. Here, however, Defendant has demonstrated that all three factors weigh in favor of denying Plaintiff's motion and vacating the default,

### A.      Defendant's Failure to Respond to the Amended Complaint Was Not Willful

"'[W]illfulness, in the context of a default . . . refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained.'" *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir.

2015) (citation omitted).  *See also New Falls Corp. v. Soni Holdings, LLC,* 2020 WL 2770922, at

3 (E.D.N.Y. May 8, 2020) ("[a] finding of willfulness is appropriate where 'there is evidence of

bad faith' or that a defendant's default is the result of 'egregious or deliberate conduct.'") (citation

omitted); *U.S. Commodity Futures Trading Commission v. Safety Capital Management,* 2017 WL

3236441, at *2 (E.D.N.Y. July 31, 2017) ("[e]ven a defendant who was 'grossly negligent' in

failing to answer was not necessarily willful; '[r]ather, the defaulting party must have engaged in

deliberate or egregious conduct.'") (citation omitted).

"In the context of a motion to vacate entry of default, a court should resolve a 'factual

dispute regarding willfulness . . . in favor of the party moving to set aside the default.'" *Onewest*

*Bank, N.A.,* 2018 WL 1318983, at *2.

### 1. The Default Was Due to Difficulty in Obtaining Counsel and Miscommunication

Here, Defendant's default clearly was not willful.  As explained in the Petty Declaration,

Defendant diligently sought to obtain counsel, but because he is married to a wealthy celebrity,

lawyers he spoke with attempted to charge Defendant outrageous fees and sought exorbitant

retainers (such as $100,000).  Petty Decl. at ¶6.  At the time, Defendant's wife, co-defendant Ms.

Maraj, also was seeking to obtain counsel and was in the process of retaining Judd Burstein, Esq.

to represent her in this action.  Petty Decl. at ¶6.  Mr. Burstein agreed to help Defendant obtain

counsel.  Petty Decl. at ¶ 6.  Due, however, to a miscommunication between Mr. Burstein and Ms.

Maraj, Mr. Petty and his wife both mistakenly believed Mr. Burstein had been retained by Ms.

Maraj and was looking for counsel for Defendant.  Petty Decl. at ¶ 6.  This miscommunication is

discussed in the Declaration of Judd Burstein and the Declaration of Onika Tanja Maraj, previously

filed with the Court.  Petty Decl. at Ex. 1.

After Mr. Burstein was retained by Ms. Maraj, he referred Defendant to counsel.  Petty

Decl. at ¶7; Isser Decl. at ¶7.  Defendant then diligently sought to vacate the default, within a month after his response to the Amended Complaint would have been due if he had been properly served.  Isser Decl. at Ex. 7.

It is well settled that when the failure to timely respond to a complaint is due to miscommunication with a law firm and/or difficulty in obtaining counsel, it does not constitute willful default.  *See e.g., New Falls Corp.,* 2020 WL 2770922, at *4 (efforts to obtain counsel are relevant in determining willfulness); *Plumbers, Union No. 112 Pension Fund v. Fendick Plumbing, Heating & Air Conditioning, Inc*., 2008 WL 4532500, at * 2 (N.D.N.Y. Sep. 29, 2008) ("the failure to file an answer was the result of a 'miscommunication' within the law firm representing defendant in this matter.  Thus, there is no evidence of willfulness."); *USA Herbals, LLC v. Sybervision, Inc.,* 2008 WL 11517565 (S.D.N.Y. November 14, 2008) (difficulty in obtaining counsel does not constitute willfulness); *Dixon v. Ragland,* 2005 WL 2649484, at *2 (S.D.N.Y. October 14, 2005) ("where there is no evidence that a client has diligently sought out counsel, the courts are more likely to conclude that a party's inaction is willful.")

In *Elohim EPF USA, Inc. v. 162 D&Y Corp.,* 2021 WL 2292682 (S.D.N.Y. June 4, 2021), the court held that a default due to a miscommunication with a law firm was not willful, even though counsel for the defendant did not file a notice of appearance for nearly one year and did not move to vacate the default until seven months after counsel had appeared.  As the court held, "[t]he Defaulted Defendants' behavior was at least negligent.  Even accepting the fact of the misunderstanding as true and drawing all inferences in the Defaulted Defendants' favor, the Defaulted Defendants do not explain why it took them nearly a year to find out that no one had entered an appearance or why they were not made aware when they received no bills during this time period that would indicate that attention was being given to the case . . . But the Court cannot

conclude—in light of their explanations and resolving all doubts in their favor—that their actions were willful." *Id.*

In contrast to the facts in *Elohim EPF USA, Inc.*, which did not even constitute willfulness, here, Defendant acted much more diligently. Had Defendant been properly served, his response to the Amended Complaint would have been due on or before October 6, 2021 and Plaintiff obtained a Certificate of Default on October 19, 2021. Isser Decl. at Ex. 5. Defendant appeared in this action to defend himself less than a month after his response to the Amended Complaint was due (if served) and less than a week after the Certificate of Default was obtained. This too demonstrates that Defendant's default was not willful.

Indeed, numerous courts have concluded that promptly seeking to vacate a default, even a default judgment, demonstrates that the default was not willful. For example, in *New Falls Corp*, the Court held that:

> Based on this timeline, the Moving Defendants were in default for approximately four weeks prior to appearing in this action. Indeed, the Moving Defendants appeared and cross-moved to vacate the entry of default just ten days after Plaintiff filed its motion to enter default judgment and two weeks after the Clerk of the Court entered the notation of default. **Here, the Moving Defendants' short delay in appearing and making application to set aside the entry of default supports a finding that the Defendants' default was not willful and reflects an intent to defend against the action**. *See, e.g.*, *Johnson v. N.Y. Univ.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018) ("[T]he Second Circuit has found that a defendant's prompt application for a motion to set aside an entry of default suggests that the default was not willful."); *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311, 2019 WL 2233828, at *1 (E.D.N.Y. May 22, 2019) ("[Nine days] after plaintiff filed its motion for default judgment, [defendant] filed an affidavit in opposition to plaintiff's motion. Such action supports a finding that default was not willful because it evidences an intention and attempt to defend against the action.") (citation omitted); *Oscilloscope Pictures, Inc. v. Monbo*, No. 17-CV-7458, 2019 WL 2435644, at *7 (E.D.N.Y. March 25, 2019) ("[T]wo days [after notation of default entered], [defendant] moved to vacate the Clerk's entry of default. Such actions support a finding that defendants' default was not willful because they evidence an intention and attempt to defend against the action.") (citation omitted); *see also Prestige Capital Corp. v. Fuber LLC*, No. 16-CV-9577, 2017 WL 2558803, at *3 (S.D.N.Y. June 5, 2017) (finding that the defendant did not act

19

willfully despite its lack of explanation for the default because defendant promptly appeared and moved to set aside the entry of default).

*New Falls Corp.,* 2020 WL 2770922, at *4 (emphasis added).

## 2.  <u>Plaintiff's Arguments that the Default Was Willful Lack Merit</u>

The cases relied on by Plaintiff in support of its argument that the default was willful are distinguished from the instant facts and do not support a finding of willfulness.  All of the cases relied on Plaintiff concern situations in which the defendant delayed seeking to vacate a default judgment which had already been entered (for which a more rigorous standard is applied) and/or improper conduct by the defendants, neither of which occurred here.

For example in *Action S.A. v. March Rich & Co. Inc.,* 951 F.2d 505, 507 (2d Cir. 1991), relied on by Plaintiff,  the defendant "admit[ed] he deliberately chose not to appear in the action" and waited over eight years before attempting to vacate the default.  Pl. Mem. at 13-14.  This is a far cry from the instant case, in which Defendant's default was due to difficulties in obtaining counsel and Defendant sought to vacate the Certificate of Default within a week after it was entered.  *See also Securities and Exchange Commission v. Breed,* 2004 WL 1824358 (S.D.N.Y. August 13, 2004) (relied on by Plaintiff, willfulness based on violation of a court Order and numerous examples of improper conduct concerning service); *Westmark Development Corp. v. Century Surety Co.,* 199 F.R.D. 491, 496 (W.D.N.Y. 2001) (relied on by Plaintiff, finding willfulness due to lack of diligence, "[w]hat is most troubling is that [defendant] did not move expeditiously to open the default once he learned that default had been entered.")

Plaintiff's factual arguments concerning willfulness are equally unavailing.  Plaintiff's argument that "it is plausible" that Defendant believed that appearing in this action would "hurt his chances of receiving a reduced sentence" at an upcoming sentencing hearing in an unrelated matter is unsupported and based on pure speculation.  Pl. Mem. at 14.  Plaintiff offers no

explanation concerning how appearing in this action may have "hurt" Defendant, nor does Plaintiff provide any evidence, other than impermissible speculation, to support this claim.

In *Puddo v. 6D Global Technologies, Inc.,* 2020 WL 2833852, at *4 (E.D.N.Y. May 31, 2020), in finding that the defendant's default was not willful, the court rejected a similar argument, holding that "the Court does not credit Plaintiffs' speculative argument that Wey had some litigation advantage to gain in *other litigations* to which he was a party by defaulting in this one." *Id.* (emphasis original). *See also Onewest Bank, N.A.,* 2018 WL 1318983, at *2 ("in the context of a motion to vacate entry of default, a court should resolve a 'factual dispute regarding willfulness . . . in favor of the party moving to set aside the default.'")

Plaintiff argument concerning Defendant's awareness of this action and/or that his wife retained counsel before him are irrelevant. Pl. Mem. at 15. Defendant does not claim his default was due to lack of knowledge. It was due to difficulties in obtaining counsel and miscommunication with his wife's counsel, after which he expeditiously sought to vacate the default.

For any and all of the reasons discussed above, Defendant has demonstrated that the default was not willful.

**B.     Defendant Has Demonstrated Meritorious Defenses**

"The second factor a court must consider in deciding whether to vacate a clerk's certificate of default is whether the defaulting party has a meritorious defense to the claims against it." *New Falls Corp.,* 2020 WL 2770922, at *6. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 98. "'The defaulting defendant 'need only meet a low threshold to satisfy this factor.'" *New Falls Corp.,* 2020 WL 2770922, at *6 (citation omitted); *U.S. Commodity Futures Trading,* 2017 WL 3236441,

at *3 (same).  A defaulting defendant's allegations "are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense.'" (citation omitted).  *See also Goldstein v. Urgo Eleuthera Hotels Ltd.,* 2016 WL 1019394, at *2 (E.D.N.Y. February 10, 2018) (same).

Plaintiff's argument that the allegations in the Amended Complaint are deemed admitted due to the entry of the Certificate of Default, and that for this reason Defendant is unable to demonstrate a meritorious defense, is without merit.  Pl. Mem. at 15-16.  If this were the case, no defaulting defendant would ever be able to demonstrate a meritorious defenses.  This is not the law and the cases relied on by Plaintiff concern situations in which the defendant did not oppose the motion for a default judgment, which is not the case here.

Indeed, Defendant has more than satisfied the "low threshold" required for demonstrating a meritorious defense.  As discussed in the Petty Declaration, Defendant was not convicted of raping Plaintiff in 1994, 27 years ago.  He pled guilty to, and was convicted of, *attempted* rape. Petty Decl. at Ex. ¶8.  Defendant denies that he ever raped Plaintiff and Defendant denies all of Plaintiff's allegations of improper conduct and/or sexual assault.  Petty Decl. at ¶9.  Rather, the sexual encounter between Plaintiff and Defendant was consensual and Plaintiff was a willing participant.  Petty Decl. at ¶9.  Defendant pled guilty to attempted rape, despite his innocence, because he was a scared 16 year old kid and was told that his sentence would be 20 years to life if he did not plead guilty to attempted rape.  Petty Decl. at ¶9.

Accordingly, Defendant has demonstrated a meritorious defense concerning Count I (Intentional Infliction of Emotional Distress (New York)), Count II (Assault and Battery) and Count III (Sexual Assault (New York)) of the Amended Complaint.  These Counts are all based on the alleged rape of Plaintiff, which Defendant denies occurred.  Am. Compl. at ¶¶ 122-146.

In addition, as Defendant denies he raped Plaintiff, and did not plead guilty to rape, Counts I-III are barred by the statute of limitation, which is three years.  CPLR § 214.  Although the alleged rape occurred in 1994, Plaintiff claims that these causes of action are timely, relying on Section 214-g of the New York CPLR.  Am Comp. at ¶29 and Fn 4.  Section 214-g tolls the statute of limitations for "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which **would constitute a sexual offense as defined in article one hundred thirty of the penal law** committed against a child less than eighteen years of age."  CPLR § 214-g (emphasis added).

The only allegations asserted by Plaintiff which "constitute a sexual offense as defined in article one hundred thirty of the penal law," to come within Section 2-14-g's tolling provision, is rape, which Defendant denies occurred and was not convicted of.  Although Plaintiff also relies on Section 130.52 (forcible touching) of the New York Penal Code, that offense too is based on the alleged rape.  Am. Comp. at ¶30.  Section 130.52 requires that a defendant "forcibly touches the sexual or other intimate parts of another person."  NY Penal Law § 130.52.  The only "touching" alleged by Plaintiff, however, is the claimed rape and Defendant denies not only the rape, but any other forcible touching.  Petty Decl. at ¶9.  If it is determined that Defendant did not rape Plaintiff, than Section 214-g would not apply and the Plaintiff's claims are untimely.  For purposes of this motion, however, it must be assumed that Defendant did not rape Plaintiff, as "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 98.

Defendant also has meritorious defenses to all of the other causes of action asserted against

him.  In the Amended Complaint, Plaintiff asserts several causes of action based on claims that Defendant intimidated and harassed Plaintiff.  Am. Compl. at ¶¶ 147-162 and 171-177.  In the Petty Declaration, Defendant denies all of these allegations as well.  Petty Decl. at ¶¶ 10-15.  This demonstrates a meritorious defense concerning Count IV (Negligent Infliction of Emotional Distress (New York and California)), Count V (Harassment and Witness Intimidation (California and Georgia)) and Count VII (Intentional Infliction of Emotional Distress (New York and California)).  Am. Compl. at ¶¶ 47-162 and 171-177.  These causes of action are based on Plaintiff's allegations of intimidation and harassment, which Defendant has denied.  Petty Decl. at ¶¶ 10-15; Am. Compl. at ¶¶ 47-162 and 171-177.

It should be noted that the majority of Plaintiff's allegations do not concern Defendant Petty, do not concern improper conduct and do not support claims of intimidation or harassment.  For example, the "abuse" Plaintiff was subjected to by her family, and rape by her Uncle, have nothing to do with Defendant.  Am. Compl. at ¶ 76.  Nor does Plaintiff explain how being contacted by attorneys and others, seeking for Plaintiff to recant her allegations of rape, is improper.  Am. Compl. at ¶¶ 95-98, 110-111.  There is no allegation (or evidence) that Defendant caused or requested that any of these people contact Plaintiff, and Defendant has testified that he never asked anyone to communicate with Plaintiff, that he never obtained counsel for Plaintiff and that he is unaware of anyone he knows obtaining counsel for Plaintiff.  Petty Decl. at ¶¶ 10-19.  Further, Defendant was unaware that Black had been communicating with Plaintiff until Black asked Defendant to provide him with his wife's phone number, and although he provided the phone number, he told Black not to communicate with Plaintiff.  Petty Aff. at ¶15.

Similarly, allegations concerning the conduct of "Maraj's fans and followers" or of alleged gang members cannot be imputed to Defendant.  *See* Declaration of Jennifer Hough, sworn to on

October 27, 2021 ("Hough Declaration" or "Hough Decl.") at ¶¶ 86 and 89.  Although Plaintiff claims that Defendant posed for pictures with "gang members" and was "throwing gang signs and threatening me," Plaintiff does not explain how what Defendant did in these pictures specifically threatened Plaintiff.  Hough Decl. at ¶88.

As for the allegations that Defendant's counsel met with Lexie Chung on October 24, 2021, this is incorrect.  Hough Decl. at ¶90.  There was never any such meeting.  Isser Decl. at ¶9. Further, Plaintiff fails to explain how any such meeting or communication is improper.  Indeed, Defendant's counsel is permitted to interview potential witnesses.  Plaintiff's claim that it "is important to note that this meeting occurred twenty-four hours before" Defendant's counsel appeared in this action is confusing, as this is irrelevant.  Hough Decl. at ¶90.

In addition to the above discussed meritorious defenses concerning the factual allegations, Defendant has additional defenses.  For example, Plaintiff's claims against Defendant under California and Georgia law are not cognizable.  A defendant cannot be held liable for acts committed outside of a state simply because a plaintiff felt the effect of the acts there.  Plaintiff appears to be contending that as a victim of a tort committed against her in State A, she can sue the wrongdoer under the law of State B ten years later because she has continued to suffer from the effects of the tort after moving there.  This is not the law.

Further, Count V, which alleges that Defendant engaged in "Harassment and Witness Intimidation" under California law is facially frivolous  because Plaintiff is seeking damages for a violation of Cal. Civ. Proc. § 527.6.  Am. Compl. at ¶156.  That statute,  however, provides only for injunctive relief.  *See Banks v. Am. Airlines Grp., Inc.,* 2020 U.S. Dist. LEXIS 251489, at *11-12 (C.D. Cal. Dec. 29, 2020) (dismissing a claim under§ 527.6 because the statute does not providefor an award of damages).

25

As for Plaintiff's reliance upon "Georgia's harassment statute" (Am. Compl. at ¶157), there does not appear to be one that gives rise to a civil remedy for damages. *See Somerville v. White,* 337 Ga. App. 414,416 (2016) ("civil liability may only be authorized under a penal statute when the General Assembly has *expressly provided* for aprivate right of action in the textual provisions of that statute, 'not extrapolated from the public policy the statute generally appears to advance.'") (emphasis original) (citation omitted).   Accordingly, the Amended Complaint fails to state a claim for "Harassment and Witness Intimidation" because it does not even identify a claim pursuant to which a plaintiff can seek damages.

For any and all of the above discussed reasons, Defendant has demonstrated he has meritorious defenses.

### C.    Plaintiff Will Not Suffer Prejudice if the Default it Vacated

"Whether the non-defaulting party would be prejudiced by vacating a default 'has been described as the single most persuasive reason' to deny a motion to vacate."  *U.S. Commodity Futures Trading Commission v. Safety Capital Management,* 2017 WL 3236441, at *3 (E.D.N.Y. July 31, 2017).   "To establish prejudice, a plaintiff must demonstrate 'the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion - circumstances that make it more difficult for plaintiff to prosecute its case.'"  *New Falls Corp.,* 2020 WL 2770922, at *6 (citation omitted).  *See also U.S. Commodity Futures Trading Commission,* 2017 WL 3236441, at *3 (same).  "'[D]elay alone is not a sufficient basis for establishing prejudice.'"  *U.S. Commodity Futures Trading Commission,* 2017 WL 3236441, at *3.

As the Certificate of Default was recently entered on October 19, 2021, it is difficult to imagine how vacating the default soon after it was entered would prejudice Plaintiff.  Isser Decl. at Ex. 6.  Indeed, Plaintiff's allegations of prejudice are without merit.

26

Plaintiff argues that she will suffer prejudice if her motion is not granted because Defendant's counsel is "colluding" with Ms. Maraj's counsel. *See* Declaration of Steven N. Gordon, Esq., sworn to on October 27, 2021 ("Gordon Declaration: or "Gordon "Decl.") at ¶6. *See also* Pl. Mem. at 17. Not only is this absurd, it also is insulting.

The basis of this allegation is that Defendant's counsel did not appear in this action until ten days after Ms. Maraj's counsel appeared. Plaintiff argues that this is "suspicious" because Defendant's counsel did not appear until Ms. Maraj's counsel accused Plaintiff's counsel of lying about service and Plaintiff's counsel informed Ms. Maraj's counsel that they would seek a Taverse Heating. Pl. Mem. at 17. According to Plaintiff, for this reason, Defendant's counsel's "appearance was strategically planned with Defendant Maraj" and that vacating the default would cause additional litigation costs and "provide greater opportunity for fraud and collusion." Pl. Mem. at 17. Plaintiff, however, does not explain how Defendant's counsel's appearance was "strategically planned" or how it constitutes "fraud or collusion."

Plaintiff's argument is frivolous. Defendant's counsel did not appear in this action until ten days after Ms. Maraj's counsel because he was not retained until after Ms. Maraj's counsel appeared. Isser Aff. at ¶8. After being retained the evening of October 20, 2021, Defendant's counsel waited to finish Defendant's motion papers to vacate the Certificate of Default until he appeared in the action, less than a week later. Isser Decl. at ¶8. Further, that Co-Defendants, who are a husband and wife, have retained counsel that know each other and have worked together in the past is neither surprising nor suspicious.

As for Plaintiff's allegation that Plaintiff's "threat" to seek a Traverse Hearing was somehow relevant, a Traverse Hearing only would have demonstrated that Plaintiff was in fact "lying" about service. As discussed, the Affidavit of Service claimed that Defendant Petty was

27

"personally served." Isser Decl. at Ex. 3. Yet, the Diaz Declaration conclusively demonstrates that Defendant was not personally served, as discussed above. Accordingly, the threat of a Traverse Hearing was never an issue. In any event, Plaintiff fails to explain why it would be improper for Co-Defendants' counsel to work together concerning common issues. Indeed, this is usual and proper. As for increased litigation coast, vacating a default always increases litigation costs and this is not prejudice.

Plaintiff also advances several arguments which fail to demonstrate prejudice because they all rely solely on speculation. For example, Plaintiff erroneously argues that "Defendant Petty's late appearance could very well be in order to delay judgment against him for a long enough time so that they can hide their assets." Pl. Mem. at 18. Plaintiff, however, does not provide any evidence that Defendant is hiding, or has hid, assets. Rather, seeking to prejudice the Court, Plaintiff improperly argues that because Defendant has a "criminal history," it is "very likely they could be engaging in such sort of fraud." Pl. Mem. at 18. This is pure speculation, with absolutely no supporting evidence, based solely on smearing Defendant, and is insufficient to establish prejudice. *See e.g., AFK, Inc. v. Kessman Group Painting & Design, Inc.,* 2021 WL 178867, at *3 (E.D.N.Y. January 19, 2021) ("AKF's assertion that it would be prejudiced because Kessman seeks arbitration to 'delay this case in order to move funds out of Plaintiff's reach' is **entirely speculative and therefore irrelevant to the Court's analysis**" concerning whether to vacate the default) (emphasis added); *Llolla v Karen Gardens Apartment Corp.,* 2015 WL 13731354, at *4 (E.D.N.Y. July 2, 2015) (*"*[t]he record clearly demonstrates that Llolla has suffered no prejudice. His only arguments to the contrary are speculation that KGA may attempt to hide its assets in order to evade paying a judgment . . . But the record includes no evidence to suggest that KGA has sought to hide its assets or that it will do so.").

So too, Plaintiff's argument that because Defendant has a "criminal record" it "is plausible" that others may sue him and Plaintiff would be unable to collect a judgment is entirely speculative. Pl. Mem. at 18.  Plaintiff does not provide any evidence to support this argument and does not identify any individual who may have a claim against Defendant, let alone someone who is likely to sue Defendant.  Rather, again, Plaintiff relies on Defendant's past crimes in an attempt prejudice the Court, which is insufficient to demonstrate prejudice.

In *Gil v. Frantzis,* 2019 WL 5694074, at *12 (E.D.N.Y. August 22, 2019), in concluding that the plaintiff did not demonstrate prejudice, the court held, "[a]s for potential competing creditors, this is unsupported conjecture.  No detail is provided for the assertion that Defendants could not or would not satisfy a judgment; indeed, they have hired counsel to represent them, and are not proceeding *pro se* or made any other suggestions of being unable to pay a future judgment. Gil's arguments are too generic to constitute prejudice, particularly in light of the preference to resolve cases on the merits." *Id.*  The same can be said here.

In *77 Charters, Inc. v. SYC Realty LLC,* 2012 WL 1077706, at *12 (E.D.N.Y. February 27, 2012), relied on by Plaintiff, unlike here, the plaintiff demonstrated that the defendant had financial problems and that there was "at least one other lawsuit brought by another creditor." *Id.*  Based on evidence, as opposed to speculation, the court held that the plaintiff would be prejudiced.

Plaintiff's argument that discovery may be more difficult because after his sentencing hearing Defendant Petty may be incarcerated, also relies on solely on speculation.  Pl. Mem. at 18. Plaintiff has not described the charges for which Defendant was convicted, the possible sentences or the terms of the plea deal.  Pl. Mem. at 18.  There is no basis to conclude that Defendant is likely to be incarcerated, and civil discovery can proceed when a party is incarcerated.

The law is clear, such unsupported speculation as relied on by Plaintiff, does not

demonstrate prejudice.  *See e.g., Puddo v. 6D Global Technologies, Inc.,* 2020 WL 2833852, at *2 (E.D.N.Y. May 31, 2020) (finding that vacating the default would not cause the plaintiff prejudice because "the prejudice Plaintiffs assert is based, almost entirely, on pure speculation."); *Malletier v. Brami Enterprises, Inc.,* 2006 WL 328343, at *6 (E.D.N.Y. February 14, 2006) ("[g]iven the relatively short delay involved in this case, mere speculation on these points is insufficient to show prejudice.").  *See also Lawtone-Bowles v. Seneca County Corrections Division,* 2021 WL 4034525, at *3 (W.D.N.Y. September 9, 2021) ("[p]laintiff's mere speculation that further delay 'could result' in the loss of some evidence is insufficient to establish prejudice so as to support denying Defendants' Motion [to vacate the default].")

Plaintiff's argument that she will be prejudiced if the default is vacated because Defendant's continued involvement in this action "will likely enflame Defendant Maraj's fans" is confusing.  Pl. Mem. at 18.  Plaintiff fails to explain how Defendant's default is relevant to his wife's fans.  Nor does this concern qualify as the type of prejudice required to support a default judgment.

## CONCLUSION

For any and all of the reasons discussed above, Plaintiff's motion should be denied in its entirety and the default should be vacated.

Dated:  New York, New York
         November 8, 2021

Law Offices of Steven D. Isser

By:_____
         Steven D. Isser. Esq.
         424 Madison Avenue, Third Floor
         New York, New York 10017
         (212) 812-5096
         *Attorneys for Defendant Kenneth Petty*