**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JENNIFER HOUGH,

                Plaintiff,

   -against

                                    Civil Action No. 21-cv-4568-ENV-JRC

ONIKA TANYA MARAJ AKA
("Nicki Minaj"), an individual,
KENNETH PETTY, AKA ("Zoo"),
an individual

                 Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF
## OPPOSITION TO DEFENDANT KENNETH PETTY'S MOTION TO VACATE
## <u>CERTIFICATE OF DEFAULT JUDGMENT</u>

Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn NY 11236

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. 3

PRELIMINARY STATEMENT ...................................................................................... 5

FACTUAL BACKGROUND ........................................................................................... 9

ARGUMENT .................................................................................................................. 9

    I.   THE COURT HAS JURISDICTION OVER DEFENDANT PETTY BECAUSE HE WAS PROPERLY SERVED .......................................................................................... 9

    II.   PLAINTIFF PROPERLY REQUESTED THE CERTIFICATE OF DEFAULT JUDGMENT ................................................................................................................. 17

    III.   THE CERTIFICATE OF DEFAULT SHOULD NOT BE VACATED BECAUSE THE FACTORS FOR DEFAULT JUDGMENT WEIGH SUBSTANTIALLY IN PLAINTIFF'S FAVOR ....................................................................................................................... 20

        A.   Defendant Petty Willfully Failed To Respond To The Amended Complaint ............ 20

        B.   Defendant Petty Has Not Demonstrated A Meritorious To All, If Any, Causes of Action Asserted Against Him ....................................................................................... 25

        C.   Plaintiff Will Be Substantially Prejudiced If Default Judgment Is Not Entered Against Defendant Petty ........................................................................................................... 28

    IV.   PLAINTIFF ALLEGES ALL PLAUSIBLE CAUSES OF ACTION IN THE AMENDED COMPLAINT. ........................................................................................... 30

        A.   Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress Against Defendant Petty under New York Law ............................................................................ 30

        B.   Ms. Hough Has Sufficiently Plead A Claim for Assault and Battery Against Defendant Petty Under New York Law ............................................................................ 31

        C.   Ms. Hough Pleads A Viable Claim Against Defendant Petty For Negligent Infliction of Emotional Distress Under New York & California Law ................................................. 31

        D.   Plaintiff Pleads A Viable Claim For Harassment Under California And Georgia Law 32

        E.   Plaintiff Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law ........................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991) ............................... 21

*Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y. Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008) ...................................................................................................... 26

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ........................................ 26

*Anderson v. Sullivan*, No. 03CV4064 (DRH)(MLO), 2005 WL 1123772 (E.D.N.Y. May 9, 2005) ........................................................................................................................................................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................ 30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................................. 30

*Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1103 (N.D. Cal. 2009) .................. 12

*Bossuk v. Steinberg*, 58 N.Y.2d 916, 918, 447 N.E.2d 56, 58 (1983) .......................................... 11

*Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) ........................................................................... 20

*Cablevision Sys. New York City Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) ........... 13, 16

*De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) ...................................................... 20

*Dominican Sisters of Ontario, Inc. v. Dunn*, 272 A.D.2d 367, 368, 707 N.Y.S.2d 215, 216 (2d Dep't 2000) .................................................................................................................................... 14

*Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 169 Fed. Appx. 45, 46 (2d Cir. 2006) ........................................................................................................................... 10, 12

*Empire State Carpenters Welfare, et al. v. Darken Architectural Wood* ...................................... 26

*F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002) ............................... 26

*Feel Better Kids, Inc. v. Kids in Need, Inc.*, No. CV-06-0023 DRH AKT, 2012 WL 4483000, at *3 (E.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, No. 06 CV 23 DRH AKT, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012) .......................................................................... 19

*Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18CIV5624ARRVMS, 2020 WL 6370148, at *7 (E.D.N.Y. August 11, 2020), *report and recommendation adopted*, No. 18CV5624ARRVMS, 2020 WL 5105063 (E.D.N.Y. August 31, 2020). ......................................................................... 19

*Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 621 (2d Cir. 1998) ............................................ 20

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir.2013) .................................. 20

*High Farms, LLC v. King*, No. 16-CV-736 (NGG) (PK), 2019 WL 1208785, at *2 (E.D.N.Y. March 14, 2019) ....................................................................................................................... 12, 13

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) ......... 30

*Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) .................................... 26

*Khourie v. Sabek*, 220 Cal.App.3d 1009, 1015, 269 Cal.Rptr. 687 (1990) ................................. 12

*Mack Finanical Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011) ................................................................... 26

*Nationstar Mortg., LLC v. Esdelle*, 186 A.D.3d 1384, 1387, 130 N.Y.S.3d 80, 83 (2d Dep't 2020) ................................................................................................................................................ 14

*Naughright v. Weiss*, No. 10 Civ. 8451, 826 F. Supp. 2d 676, 2011 U.S. Dist. LEXIS 133742, at 45-46 (S.D.N.Y. November 18, 2011) ......................................................................................... 31

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) ........................................ 26

*PNC Bank, Nat'l Ass'n v. Bannister*, 161 A.D.3d 1114, 1115, 77 N.Y.S.3d 452, 454 (2d Dep't 2018) ......................................................................................................................... 13, 16

*Poppington, LLC v. Brooks*, No. 20-CV-8616 (JSR), 2021 WL 3193023, at *3 (S.D.N.Y. July 27, 2021) .................................................................................................................. 12

*Roberts v. Anka,* 45 A.D.3d 752, 753–54, 846 N.Y.S.2d 280 (2d Dep't 2007) ..................... 13, 16

*Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012). ...................................... 31

*S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. Aug. 13, 2004)21

*SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998) ....................................................... 20

*S.E.C. v. Morton*, No. 10 CIV. 1720 LAK MHD, 2011 WL 1344259 (S.D.N.Y. March 31, 2011), *report and recommendation adopted*, No. 10 CIV. 1720 LAK, 2011 WL 11768504 (S.D.N.Y. November 3, 2011) ......................................................................................................... 11

*Simonds v. Grobman*, 277 A.D.2d 369, 716 N.Y.S.2d 692, 693 (2d Dep't 2000) ..................... 12

*Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) ......... 31

*Single Source Roofing Corp. v. 228 Granite Ave. Realty, LLC*, No. 05 CV 1241 NG SMG, 2005 WL 3113421, at *3 (E.D.N.Y. Nov. 22, 2005) ...................................................... 12, 14, 15, 17

*State v. Konikov*, 182 A.D.3d 750. 122 N.Y.S.3d 719 (3d Dep't 2020) ............................... 13, 16

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) ....................................... 30

*U.S. Bank, N.A. v. Tauber*, 140 A.D.3d 1154, 1155, 36 N.Y.S.3d 144 (2d Dep't 2016) ............ 14

*Unite Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 336 (S.D.N.Y. 2008) ...................... 10

*United National Insurance Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d. Cir.1993)..... 31

*United States v. Brooks*, No. 00CV4131(SLT)(RLM), 2007 WL 4441221, at *2 (E.D.N.Y. Dec. 17, 2007) ....................................................................................................................... 12, 13

*United States v. Riser*, No. 10-CV-4550 DLI, 2011 WL 1004566, at *3 (E.D.N.Y. March 16, 2011) ....................................................................................................................... 13

*Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011) ................... 21

*Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014) ........................... 33

**Statutes**

Cal. Civ. Proc. Code§ 415.10 ....................................................................................... 12

Cal. Code Civ. Proc., § 527.6 ....................................................................................... 33

CPLR 301 ....................................................................................................................... 11

CPLR 302 ....................................................................................................................... 10

CPLR 308 ................................................................................................................. 10, 11

CPLR 313 ................................................................................................................. 10, 11

FRCP Rule 4 ........................................................................................................... 9, 10, 11

FCRP Rule 12(b) ........................................................................................................... 11

FRCP 55(a) ................................................................................................................... 19

**Other Authorities**

4A Wright & Miller, Federal Practice and Procedure, § 1095 (3d ed. 2002) ............................... 13

## PRELIMINARY STATEMENT

Victim (or accuser) shaming is a disease that permeates every socio-economic class in our society.  While the "Me Too" movement has made tremendous strides in this regard, victim or accuser shaming (or blaming) is an enormous deterrent to women coming forward about sexual assault or rape.[1]

Thus, victim shaming is especially detrimental to women of color, who are already less likely to report being raped than white women.[2]  That being said, this case stands to help women of color who have been abused and those who have been disgracefully shamed and blamed into not coming forward.  And importantly, this case could demonstrate the **profound** consequences of social media bullying by celebrities with millions of followers, especially with respect to matters of great psychological significance.

Defendant Kenneth Petty, AKA "Zoo" ("Defendant Petty"), is correct about one thing – the reason for Plaintiff Jennifer Hough ("Plaintiff") filing the instant action twenty-seven years after Defendant Petty raped her is obvious.  But not for the reasons that he stated; **rather**, Defendant Petty and his wife, Defendant Onika Tanya Maraj AKA Nicki Minaj ("Defendant Maraj") (collectively, the "Defendants"), engaged in a scheme to defame, shame, harass, threaten, bribe, and coerce Plaintiff into recanting the true events that occurred on September 16, 1994.

After Defendant Petty was arrested for failing to register as a sex offender, the Defendants used one of Defendant Petty's gang members to contact Plaintiff.  As a result, Defendant Maraj, wife of Defendant Petty, was able to speak with Plaintiff by phone to encourage her to recant her claim that Defendant Petty raped her.  Because Defendants were unhappy with the result of

---

[1] See Avoiding Victim Blaming, The Center for Relationship Abuse Awareness, Accessed November 8, 2021, http://stoprelationshipabuse.org/educated/avoiding-victim-blaming/
[2] *See* Adams, Alante, *Why are black women less likely to report rape?*, Baltimore Sun, June 9, 2015.

Defendant Maraj's call with Plaintiff, they used the same person to post a videotaped death threat to his social media account.

Additionally, Defendant Maraj and Defendant Petty have used the former's fame and wealth – from her career as a multi-platinum selling and Grammy-nominated music artist – to permeate Plaintiff's life with memories of this day by publicly lying about the events that occurred.

Now, to further flex Defendant Maraj's power, the Defendants deliberately and willfully failed to timely respond to Plaintiff's Amended Complaint in this action (the "Amended Complaint").  Repeatedly, since appearing in this action, Defendant Maraj's counsel – who is acting in concert with Defendant Petty's counsel – has pompously stated the Court will not enter a default judgment against her.

Contrary to the assertion by Defendant Petty's counsel, Plaintiff is not improperly rushing to obtain a default judgment against Defendant Petty. Instead, on September 15, 2021, Defendant Petty was properly, personally served with the Summons and Amended Complaint at his and Defendant Maraj's home in Calabasas, California.  On October 6, 2021, they were both required to interpose a response to the Amended Complaint.  Incredibly, despite both parties' ample experience in Court, and the **enormous** coverage this action has received by the media, they both failed to timely respond.  Thus, on October 11, 2021, even after giving the Defendants five extra days, Plaintiff filed an application requesting that the Clerk of Court (the "Clerk") issue Certificates of Default Judgment against both parties.

Then, on October 13, 2021, Defendant Maraj's counsel, Judd Burstein, sought an extension to file an answer or motion to dismiss.  Mr. Burstein offered no excuse or explanation for his client's default but rather expressed what has become his mantra, that Defendant Maraj will prevail on a motion to set aside her default.  Mr. Burstein, like Defendants, arrogantly believes the rules

6

do not apply to him or any of his clients.  As such, there existed no reason to afford Defendant Maraj an extension.

Yet, like Mr. Burstein, Defendant Petty's counsel baselessly argues that Common courtesies amongst attorneys bound Plaintiff's counsel.  It is comical, however, that this is even mentioned in Defendant Petty's motion papers.  Defendant Petty did not seek an extension to respond to the Amended Complaint.  Hence, this is, by any interpretation of the analogy, **grasping at straws**, and further evidences the collusion between Defendants counsels.

On October 19, 2021, because the Certificates of Default Judgment had unusually not yet been issued, Plaintiff's counsel, Tyrone Blackburn, appeared at the Clerk's office.[3]  A few hours later, a Certificate of Default Judgment was issued against Defendant Petty.[4]  Still, at this time, Defendant Petty had not even filed a notice of appearance.

On October 25, 2021, Defendant Petty's counsel finally filed a notice of appearance.  Now, with nothing but self-serving, baseless, and conclusory Declarations from Defendant Maraj, Mr. Burstein, and himself, Defendant Petty wants the Court to believe that he did not willfully fail to timely respond to the Amended Complaint.  At bottom, Defendant Petty offers the following three reasons for why the Court should vacate the Certificate of Default Judgment: (1) service was improper; (2) there are technical deficiencies in Plaintiff's application for Certificates of Default Judgment; and (3) the three main factors of "good cause" – willfulness, a meritorious defense, and prejudice to the non-defaulting party – weigh in his favor.  The facts and evidence, however, suggest otherwise.

---

[3] The Clerk explained to Mr. Blackburn that the delay was due to understaffing and limited hours in the Clerk's office.
[4] It is Plaintiff's position that the Clerk should have issued a Certificate of Default Judgment against Defendant Maraj as well.  The Clerk failed to issue one on the basis that Defendant Maraj's counsel had filed a notice of appearance. While a notice of appearance does not satisfy a party's obligation to timely respond, it was also untimely as it was filed eight (8) days after the deadline to respond to the Amended Complaint and three days after Plaintiff submitted her application for Certificates of Default Judgment against both parties.

**First**, Defendant Petty was properly and personally served with the Summons and Amended Complaint.  This was sworn to by Plaintiff's process server, Robert Diaz, in the Proof of Service or Affidavit of Service (*See* Declaration of Robert Diaz ("Diaz Decl."), Exhibit A thereto) and his Declaration in Support of Plaintiff's Opposition to the instant motion.  Defendant Petty's Declaration is so carefully crafted in an attempt to avoid perjuring himself.  However, despite his valiant effort, Defendant Petty threaded the needle too thin.  Specifically, Defendant Petty perjured himself by swearing that "[n]o one… **tried** to hand me, the Summons, Complaint, Amended Complaint or any other document in this litigation."  (*See* Declaration of Defendant Kenneth Petty ("Petty Decl."), ¶ 2).

Further, if Defendant Petty was not served, his Declaration in support of the instant motion is **devoid** of facts concerning how he learned about the Amended Complaint.  Clearly, for these reasons, the Affidavit of Service constitutes prima facie evidence of proper service. The others described below make it clear that Defendant Petty was properly served and has perjured himself in his Declaration.

**Second**, in contrast to Defendant Petty's argument, Plaintiff's application for Certificates of Default Judgment against the Defendants is complete and in accordance with Rule 55.1 of the Local Rules of the United States District Courts for the Southern and Eastern District of New York (the "Local Rules").  On September 17, 2021, Plaintiff filed the Affidavits of Service for both Defendants.  The Affidavits of Service demonstrate that service was properly effectuated on the Defendants by personal service on Defendant Petty.  Even if the Affidavit of Service does not reference that the Amended Complaint was served, such is demonstrated by the Diaz Decl. and the fact that the Defendants knew about the Amended Complaint.  By his admission, Defendant Petty was supposedly attempting to retain counsel to respond to it.

Further, even if there is one in the Plaintiff's application, a **mere technical** defect is not a basis for vacating the Certificate of Default Judgment.  Nonetheless, the Certificate of Default Judgment is **nugatory** without the entry of default judgment.  To that end, Plaintiff's Motion for Entry of Default Judgment cures any potential defect in her application.  As such, this is not a basis for vacating the Certificate of Default Judgment.

**Third**, the facts and evidence unquestionably support that the factors considered for entry of default judgment weigh substantially in Plaintiff's favor.  The three factors generally considered by courts are (1) willfulness in failing to timely respond; (2) whether the defaulting party has a meritorious defense; and (3) prejudice to the non-defaulting party.  As more fully described herein, all three of these factors weigh in Plaintiff's favor.

Therefore, as more fully described herein, the Court should deny Defendant Petty's instant motion in its entirety.

## FACTUAL BACKGROUND

The relevant facts in support of this opposition to Defendant Petty's instant motion to vacate the Certificate of Default Judgment against him are detailed at length in the Declarations of Plaintiff Hough, Robert Diaz, Tyrone Blackburn, Steven N. Gordon, all exhibits to such declarations, and the Amended Complaint. To avoid redundancy, such relevant facts are incorporated by reference as if fully stated herein.

## ARGUMENT

### I.   THE COURT HAS JURISDICTION OVER DEFENDANT PETTY BECAUSE HE WAS PROPERLY SERVED

Rule 4 of the Federal Rules of Civil Procedure ("FRCP") ("Rule 4") prescribes how parties can effectuate service.  One way is by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located **or** where

service is made." Rule 4(e)(1).  Another way, consistent with New York State Law, is "delivering a copy of the summons and of the complaint to the individual personally." Rule 4(e)(2)(A).  Courts are required to interpret Rule 4 liberally.  *Unite Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 336 (S.D.N.Y. 2008) ("Service of Process is not supposed to be a game of cat and mouse").

Given that the Eastern District of New York is located in New York, proper service can be effectuated as provided by New York law.  Rule 4(e)(1); *see Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 169 Fed. Appx. 45, 46 (2d Cir. 2006).  Under New York law, CPLR 313 governs the service of process on persons outside the state.  It provides that service can be effectuated upon a person domiciled in New York or subject to the jurisdiction of its courts pursuant to CPLR 301 or 302 may be served "in the same manner as service made within the state" by, *inter alia*, any person authorized to make service under the state in which the party is located.  CPLR 302 renders a party subject to the jurisdiction of the courts in New York State when, *inter alia*, a party is being sued for a tortious act that occurred in New York.  One such way that service may be effectuated is upon personal delivery of the summons on the party to be served.  CPLR 308(1).

Briefly, here, while Defendant Petty has challenged whether service is proper, he has not otherwise challenged whether he is subject to personal jurisdiction in New York.   Thus, he has waived the latter defense.  FRCP Rule 12(b) lists improper service and lack of personal jurisdiction as separate defenses.  As such, this District and several others hold that asserting the defense of improper service does not suffice to raise the defense of lack of personal jurisdiction.  *Anderson v. Sullivan*, No. 03CV4064 (DRH)(MLO), 2005 WL 1123772, at *3 (E.D.N.Y. May 9, 2005) (holding that because improper service and lack of personal jurisdiction are separate defenses and raising one does not suffice to raise the other, Defendant waived his defense for lack of personal

jurisdiction by solely raising improper service in his first motion to the Court).  Thus, Defendant

Petty has waived his right to argue that the Court lacks personal jurisdiction over him.[5]

Rule 4(e)(1) also permits service in accordance with the law of the state in which he was

served.  Under California law, where Defendant Petty was served, service is proper by "personal

delivery of a copy of the summons and of the complaint on the party to be served." Cal. Civ. Proc.

Code § 415.10.  "Service of a summons in this manner is deemed complete at the time of such

delivery."  *Id*.

Thus, personal delivery of a copy of the summons and the complaint upon an individual

personally satisfies New York, California, and federal rules for proper service.  *See S.E.C. v.*

*Morton*, No. 10 CIV. 1720 LAK MHD, 2011 WL 1344259, at *10 (S.D.N.Y. March 31, 2011),

*report and recommendation adopted*, No. 10 CIV. 1720 LAK, 2011 WL 11768504 (S.D.N.Y.

Nov. 3, 2011) ("[p]ersonal service on the [defendants] of course satisfies New York, California

and federal requirements for them"); Rule 4(e)(1) & (e)(2)(A); CPLR 313 & 308(1); Cal. Civ.

Proc. Code§ 415.10.

Where, **as here**, a party refuses to open the door to its home to accept service, New York,

California, and federal law permits a process server to leave the summons and complaint outside

of the party's door.  *Bossuk v. Steinberg*, 58 N.Y.2d 916, 918, 447 N.E.2d 56, 58 (1983) (holding

that CPLR 308(1), which governs service upon natural persons within the state, implies that service

is proper where the summons and complaint are left in the general vicinity of a person resisting

---

[5] Upon information and belief, Defendant Petty may also be domiciled in New York.  Before commencing the instant action, Plaintiff's counsel, Tyrone Blackburn, researched property owned by the Defendants.  Mr. Blackburn found that, in 2019, Defendant Maraj transferred real property in Long Island, New York, to Defendant Petty.  For this reason, it could be presumed that Defendant Petty is domiciled in New York, which is also confirmed by him listing his residence as 123-40 Inwood Street, Jamaica, New York 11436 in the complaint for his pending action against the State of New York.  Thus, it was reasonable to assume that – at the very least – the parties, as husband and wife, were both domiciled in New York.

service, such as outside his or her door); *Durant,* 169 F. App'x 45, 46 (2d Cir. 2006) (holding that

under New York law, it is well settled that where a party refuses to accept service, it can be left in

his general vicinity); *see, Khourie v. Sabek,* 220 Cal.App.3d 1009, 1015, 269 Cal.Rptr. 687 (1990)

("It is sufficient to leave service papers outside of a locked door if the resident refuses to accept

the papers or to open the door for the process server") (*citing Berdux v. Project Time & Cost, Inc.*,

669 F. Supp. 2d 1094, 1103 (N.D. Cal. 2009).[6]   FRCP 4(e)(1); *see also*, *Poppington, LLC v.

Brooks*, No. 20-CV-8616 (JSR), 2021 WL 3193023, at *3 (S.D.N.Y. July 27, 2021) ("[w]here, as

here, 'the defendant attempts to evade **service** or refuses to accept delivery after being informed

by the process server of the nature of the papers, it usually is sufficient for the process server to

touch the party to be served with the papers and leave them in defendant's presence **or**, if a

touching is impossible, simply to **leave** them in the defendant's physical **proximity**'") (*citing*  4A

Wright & Miller, Federal Practice and Procedure, § 1095 (3d ed. 2002)) (emphasis added).

Under New York law, a process server's sworn affidavit or proof of service constitutes

prima facie evidence that service was proper.  *High Farms, LLC v. King*, No. 16-CV-736 (NGG)

(PK), 2019 WL 1208785, at *2 (E.D.N.Y. March 14, 2019). "A defendant's sworn denial of receipt

of service, however, rebuts the presumption of proper service established by the process server's

affidavit and necessitates an evidentiary hearing." *Old Republic Ins. Co. V. Pac. Fin. Servs. of Am.,

Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).  No hearing is required, however, when the defendant fails

"to swear to 'specific facts to rebut the statements in the process server's affidavits.'"  *Id*. (*quoting

Simonds v. Grobman,* 277 A.D.2d 369, 716 N.Y.S.2d 692, 693 (2d Dep't 2000)); *Single Source

Roofing Corp. v. 228 Granite Ave. Realty, LLC*, No. 05 CV 1241 NG SMG, 2005 WL 3113421,

at *3 (E.D.N.Y. Nov. 22, 2005).

A defendant's mere denial, without factual detail that the summons and complaint were not received is insufficient to rebut a presumption of proper service. *State v. Konikov*, 182 A.D.3d 750. 122 N.Y.S.3d 719 (3d Dep't 2020); *see*, *e.g.*, *High Farms*, No. 16-CV-736 (NGG) (PK), 2019 WL 1208785, at *3 (holding that where it provided that she was never served since nothing was posted to her door and the summons and complaint was not received in the mail, defendant's sworn Declaration was too bare and facile to rebut the presumption of proper service to warrant an evidentiary hearing).

A conclusory denial of service is insufficient. *United States v. Riser*, No. 10-CV-4550 DLI, 2011 WL 1004566, at *3 (E.D.N.Y. March 16, 2011) (holding that defendant's vague and conclusory statement in his affidavit, and statement that no occupant fits the description in the process server's affidavit of service, **are insufficient to vacate default judgment**) (emphasis added); *United States v. Brooks*, No. 00CV4131(SLT)(RLM), 2007 WL 4441221, at *2 (E.D.N.Y. December 17, 2007) (holding that "[o]ther than [d]efendant's conclusory allegation that he was not served with the summons and complaint, there is no evidence to establish that this Court lacked personal jurisdiction over [d]efendant"); *PNC Bank, Nat'l Ass'n v. Bannister*, 161 A.D.3d 1114, 1115, 77 N.Y.S.3d 452, 454 (2d Dep't 2018).

Minor differences between the appearance of the person served are insufficient to rebut the presumption of proper service. *Konikov*, 182 A.D.3d at 753, 122 N.Y.S.3d. at 724; *Cablevision Sys. New York City Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) (holding that minor discrepancies in the description of the person served set forth in the process server's affidavit do not support that service was defective as to warrant an evidentiary hearing); *Roberts v. Anka,* 45 A.D.3d 752, 753–54, 846 N.Y.S.2d 280 (2d Dep't 2007) (defendant's jurisdictional argument was "wholly conclusory" where defendant denied merely that a "female relative resided with the

13

defendant on the date of service" but failed to argue that "the female relative described in the affidavit of service was not present at the defendant's home to accept service as a person of suitable age and discretion"); *Dominican Sisters of Ontario, Inc. v. Dunn*, 272 A.D.2d 367, 368, 707 N.Y.S.2d 215, 216 (2d Dep't 2000) (holding that where minor discrepancies in the process server's description of the defendant's age and height were minimal, the defendant's denial of service was not sufficient to rebut the veracity or content the process server's affidavit). Indeed, it is legally sufficient for a process server to estimate the height, age, and weight of the person served. *Dallas v. Vosburgh*, No. 18-CV-336-FPG, 2019 WL 4573743, at *2 (W.D.N.Y. September 20, 2019).

If the sworn denial is combined with documentary and other evidence supporting such a claim, it may be "sufficient to rebut the plaintiff's prima facie showing of proper service and to necessitate an evidentiary hearing." *Nationstar Mortg., LLC v. Esdelle*, 186 A.D.3d 1384, 1387, 130 N.Y.S.3d 80, 83 (2d Dep't 2020) (*citing U.S. Bank, N.A. v. Tauber,* 140 A.D.3d 1154, 1155, 36 N.Y.S.3d 144 (2d Dep't 2016)).

In *Single Source*, Plaintiff personally served the corporate defendant's manager at his home by leaving the summons and complaint at his front door after he slammed the door in the process server's face.  No. 05 CV 1241 NG SMG, 2005 WL 3113421, at *3.  Plaintiff submitted the affidavit of service and a declaration from the process server as evidence of proper service. *Id*. The defendant argued that the process server's affidavit misestimated the manager's height by five inches and misidentified the floor for manager's apartment. *Id*. at *3-4.  The Court held that the defendant's contentions were belied by the fact it was in the process of obtaining counsel before Plaintiff's motion for default. *Id*. at *3.  Thus, an evidentiary hearing was not required. *Id*.  The Court also held that service was proper by leaving the summons and complaint outside of the door

because the manager resisted service and the process server made him aware that he was being served. *Id*. at *3-4.

**Here**, the process server's proof of service affidavit constitutes prima facie evidence that service on Defendant Petty was proper. (the Declaration of Robert Diaz).  In his Declaration, Defendant Petty does not even deny that he was served correctly.  (*See* Petty Decl., at ¶¶ 2-4). Instead, he states that he was "advised" that Plaintiff's process server claims, in his Affidavit of Service, that he served Defendant Petty by handing him the summons.[7]  *Id*. at ¶ 2.  Like Defendant Maraj's Declaration, Defendant Petty does not state by whom he was "advised" of this information.  However, the Affidavits of Service for both Defendants do not include the word "handed" whatsoever.  This is simply a feeble attempt by Defendant Petty to avoid lying that he was never served.

If not egregious enough, Defendant Petty blatantly and perjuriously lies by stating that no one ever "tried" to hand him, *inter alia*, the Summons and Amended Complaint.[8]  *Id*.  As explained in the Declaration of Robert Diaz ("Diaz Decl."), the process server attempted to hand Defendant Petty the Summons and Amended Complaint, who he saw in the window, but Defendant Petty refused to come to the door.  Diaz Decl., ¶ 10-11.  Thus, like *Bossuk* and *Single Source*, Plaintiff's process server announced who he was, that he was serving Defendant Petty with the Summons and Amended Complaint, and left it outside of his door.  Thus, the Proof of Service affidavit and Diaz Decl. are prima facie evidence and sufficient evidence of proper service.  *See Single Source*,

---

[7] We note that in her Declaration, which is appended as Exhibit 2 to Defendant Petty's Declaration, also attempts to avoid lying by repeating the buzz words that she was "advised" and that the process server never "handed" the Summons and Amended Complaint to Defendant Petty.

[8] While the Court should consider holding Defendant Petty in contempt of Court for perjuring himself, Plaintiff is forced to report this crime to the U.S. Attorney for the Eastern District of New York.

No. 05 CV 1241 NG SMG, 2005 WL 3113421, at *3; *Bossuk*, 58 N.Y.2d at 918, 447 N.E.2d at 58; *see also*, *Roberts,* 45 A.D.3d 752, 753–54, 846 N.Y.S.2d 280 (2d Dep't 2007)

After lying that Plaintiff's process server never tried to hand him the Summons and Amended Complaint, Defendant Petty again seeks to avoid perjuring himself by beginning his statement with he was "further advised," before stating that the Affidavit of Service describes him as "200 lbs., 5'10." Defendant Petty swears that he is ***approximately*** 170-75 lbs. and only 5'9." Hence, according to Defendant Petty, only he can approximate his weight. It is farcical that Defendant Petty would argue that such minor differences – including only a one-inch difference in his height – are evidence that he was never served. *Dallas*, No. 18-CV-336-FPG, 2019 WL 4573743, at *2 (W.D.N.Y. September 20, 2019) (holding that it is legally sufficient for a process server to estimate to estimate the height, age, and weight of the person served). It is perhaps even more absurd that he would provide a photograph of himself next to his wife as evidence of his height. Plaintiff's process server never swears that when he saw him in the window, Defendant Petty was standing next to Defendant Maraj. This means the photograph has no relevance whatsoever, let alone any evidentiary weight to disturb the presumption of proper service. Nonetheless, at bottom, the one-inch height and weight differences are minor, and any differences are not sufficient to rebut the presumption of proper service. *PNC Bank, Nat'l Ass'n v. Bannister*, 161 A.D.3d 1114, 1115, 77 N.Y.S.3d 452, 454 (2d Dep't 2018) (holding discrepancies in a process server's affidavit must be more than a claim by the defendant that the descriptions of their appearances were incorrect). *Konikov*, 182 A.D.3d at 753, 122 N.Y.S.3d. at 724; *Cablevision Sys. New York City Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006).

Overall, it is ridiculous that Defendant Petty would waste the Court's and Plaintiff's time with so baselessly challenging service of process by swearing that, on September 15, 2021, no one

fitting the process server's description was at his home.  Indeed, Defendant Petty does not deny being home on that day.  Further evidence is that the Defendants were at their house that day because Defendant Maraj was "live" on her Instagram from their home at approximately the same time Defendant Petty was served.

Moreover, Defendant Maraj swears that, on September 22, 2021, she spoke with her counsel, Mr. Burstein, to retain him to defend her in the instant action.  This clearly shows that Defendant Maraj finally retained counsel to defend her after Defendant Petty was personally served. *See Single Source*, No. 05 CV 1241 NG SMG, 2005 WL 3113421, at *3 (holding that defendant's improper service argument is belied by the fact that defendant was in the process of retaining counsel before Plaintiff's motion for default judgment).  This also shows that Defendants' improper service arguments are so lacking in veracity that they are frivolous.[9]

In sum, it is abundantly clear that service on Defendant Petty, and the Defendants, collectively, was proper.  It is also clear that Defendant Petty has not presented any evidence to rebut the presumption of proper service to warrant an evidentiary hearing.  As such, the Court should reject this argument in considering whether to vacate the Certificate of Default Judgment.

## II.   PLAINTIFF PROPERLY REQUESTED THE CERTIFICATE OF DEFAULT JUDGMENT

On multiple occasions, prior to serving Defendants with the Summons and Amended Complaint, Plaintiff's counsel, Mr. Blackburn, contacted Defendant Petty's current defense counsel for his criminal case for failing to register as a sex offender.  On September 17, 2021, two days after serving the Defendants, Plaintiff filed the "Proof of Service" affidavits from her process

---

[9] As such, Plaintiff is considering separately moving for sanctions against Defendant Petty and Defendant Maraj for her Declaration previously submitted in support of her pending motion.   It is clear that the Defendants are acting in concert to frivolously present to the Court that they were not properly served.  Defendant Maraj also appears to be complicit in Defendant Petty's aforementioned perjury, perhaps warranting that this Court holds them both in contempt or charges arising out of such by the United States Attorney for the Eastern District of New York.

server.  (*See* Dkt. Nos. 13 & 14).  Then, on October 11, 2021, after giving Defendants an extra five days to file a response to the Amended Complaint, Plaintiff submitted a request to the Clerk for Certificates of Default Judgment against Defendants.  (See Dkt. No. 15).

Federal Rule of Civil Procedure ("FRCP") Rule 55(a) ("Rule 55") provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Local Rule 55.1 provides that "[a] party applying for entry of default judgment under Fed. R. Civ. P. 55(a) shall file (a) a request for a Clerk's Certificate of Default; and (b) an affidavit demonstrating that: (1) the party against whom a notation of default is sought is not an infant, in the military, or an incompetent person; (2) the party has failed to plead or otherwise defend the action; and (3) the pleading to which no response has been made was properly served.  A proposed Certificate of Default form must be attached to the affidavit."

Plaintiff's request for a Certificate of Default satisfies all of these requirements. The affidavit indicating that service was proper was previously filed on September 11, 2021.  (Dkt. No. 13).  As shown in the previous argument, Defendant Petty has not presented any evidence to rebut the presumption of proper service.  Hence, now, Defendant Petty has nothing else to argue but mere technicalities.  In her request for a Certificate of Default, Defendant Petty argues that Plaintiff failed to file an affidavit demonstrating that Amended Complaint was properly served.

Even if the Proof of Service Affidavit for Defendant Petty does not sufficiently meet the requirement of Local Rule 55.1(b)(3), this is not a basis by which the Court should vacate the Certificate of Default.   In the Second Circuit, it is well settled that the district court has the discretion to overlook a party's failure to comply with local court rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).  Further, this Court has held that where a party has notice of

a motion for entry of default judgment, it is appropriate to excuse the certificate of default requirement and proceed to rule on the motion for default judgment. *Feel Better Kids, Inc. v. Kids in Need, Inc.*, No. CV-06-0023 DRH AKT, 2012 WL 4483000, at *3 (E.D.N.Y. August 28, 2012), *report and recommendation adopted*, No. 06 CV 23 DRH AKT, 2012 WL 4483874 (E.D.N.Y. September 27, 2012); *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18CIV5624ARRVMS, 2020 WL 6370148, at *7 (E.D.N.Y. August 11, 2020), *report and recommendation adopted*, No. 18CV5624ARRVMS, 2020 WL 5105063 (E.D.N.Y. August 31, 2020).

In *Guanglei Jiao*, the Court held that Plaintiff's failure to comply with the Local Rules by failing to submit a certificate of default and proposed form of default judgment was not grounds to deny Plaintiffs' motion for default judgment. No. 18CIV5624ARRVMS, 2020 WL 6370148, at *9. The Court held that the Court's order for the plaintiffs to submit a motion for default judgment was sufficient to find an entry of default – the effect of the Clerk issuing a certificate of default – by the Court. *Id.* at *9. The Court further held, however, that plaintiffs' failure with the Servicemembers Civil Relief Act was a basis to deny their motion for default judgment.[10] *Id.*

Here, suppose Plaintiff's request for Certificates of Default against the Defendants did not **technically** include everything prescribed by Local Rule 55.1. In that case, the Court should ignore such because Plaintiff's motion for entry of default judgment includes everything listed in both Local Rule 55.1 and 55.2. Further, the Court's Order referring Plaintiff's motion for entry of default judgment to the Magistrate Judge should constitute entry of default. Notwithstanding any purported technical issues with Plaintiff's request for a Certificate of Default, the Court should not use such a basis to vacate the Certificate of Default against Defendant Petty.

---

[10] We note that Plaintiff's motion for default judgment complies with the Servicemembers Civil Relief Act.

### III.   THE CERTIFICATE OF DEFAULT SHOULD NOT BE VACATED BECAUSE THE FACTORS FOR DEFAULT JUDGMENT WEIGH SUBSTANTIALLY IN PLAINTIFF'S FAVOR

FRCP Rule 55(c) provides that "[t]he court may set aside default for good cause…." Because Rule 55(c) does not define "good cause," the Second Circuit has established three criteria to decide whether a default judgment should be entered or vacated. *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted). "These criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Bricklayers*, 779 F.3d 182, 186 (2d Cir. 2015) (*citing Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir.2013)).

#### A.   Defendant Petty Willfully Failed To Respond To The Amended Complaint

Of the three factors, willfulness carries the most weight. *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013). "A default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991). The impact of a defendant's willful conduct is not outweighed by the remaining criteria. *S.E.C. v. Breed*, No. 01CIV.7798(CSH), 2004 WL 1824358, at *12 (S.D.N.Y. Aug. 13, 2004).

In the context of defaults, the Second Circuit holds that "willfulness" refers to conduct that is "more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); *Bricklayers*, 779 F.3d at 186. "Willfulness" does not require a showing "bad faith;" instead, "'it is sufficient to conclude "that defendant defaulted deliberately." *Bricklayers*, 779 F.3d at 187 (*quoting Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 621 (2d Cir. 1998)). An unexplained failure to answer the complaint is typically sufficient to demonstrate willfulness. *See McNulty,* 137 F.3d at 739

A defendant's default is willful if the defendant was properly served yet failed to appear, answer, or otherwise respond to the complaint. *See*, *e.g.*, *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991) (finding willfulness where the defendant failed to appear in fear of being indicted); *see also*, *S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. August 13, 2004) (finding willfulness where the defendant was properly served but answered **two weeks after** the due date) (emphasis added); *Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011) (finding willfulness where the defendant neglected to respond to the third-party complaint, among other things).

As described above and in the Process Server's Declaration, Defendant Petty was personally and properly served.   Defendant Petty did not have his counsel file a notice of appearance until almost three weeks after his response to the Amended Complaint was due eleven days after Defendant Maraj's counsel filed a notice of appearance.  (See Dkt. No. 23).  Thus, like *Breed*, given that his response is three weeks past due, Defendant Petty's failure to respond or otherwise defend the action should be deemed **willful**.

Further, in January 2022, Defendant Petty is required to appear for his sentencing hearing for failing to register as a sex offender.  Like *Action S.A.*, it is plausible that Defendant failed to timely respond to the Amended Complaint because it may hurt his chances of receiving a reduced sentence.  However, defaulting in a case such as this, where the facts will be deemed true, including those concerning his brutal rape of Plaintiff, is unlikely to have a good impact on the Judge at his sentencing hearing.  Hence, one reason why he may now be possibly attempting to defend this action.  This indisputably supports an inference of willfulness in failing to respond or otherwise defend this action.

Moreover, even if good service and his failure to respond or otherwise defend were not sufficient, there is no legitimate good faith or "good cause" reason(s) for his failure to timely respond or otherwise, defend the instant action.  Because media sources began reporting on the instant action since its commencement on August 13, 2021, it seems very likely that he knew about the action well before he was required to respond.  Defendant Petty is no novice to the judicial process and should have retained an attorney within the month between commencement and service.  Moreover, Plaintiff's counsel, Mr. Blackburn, took the liberty of sending the Amended Complaint to Defendant Petty's current criminal defense attorneys.  (*See* Blackburn Decl.).  As such, it is outrageous that Defendant Petty did not retain counsel until almost three weeks after his response was due.  There is no basis for concluding that Defendant Petty's actions in failing to timely responses were anything less than willful.  Thus, the Court should find that Defendant Petty willfully failed to respond or otherwise defend the instant action.

Defendant Petty offers what can be boiled down to the following four **unavailing** excuses: (1) he had to find counsel to represent him in a "civil litigation;" (2) the cost of counsel was too high; (3) miscommunication(s) between Defendant Maraj and her counsel, Mr. Burstein, and that Defendant Petty thereafter diligently sought to vacate the default. Defendant Petty diligently sought to vacate the default within a month of his response to the Amended Complaint being due. In support of these arguments, Defendant Petty offers no evidence except for self-serving Declarations from himself, Defendant Maraj, and her attorney, Mr. Burstein. Each of them is susceptible to lying to avoid the consequences of their actions.

Plaintiff will address Defendant Petty's excuses in turn.  Defendant Petty, first, swears that he "diligently sought to obtain counsel and spoke with a number of lawyers about representing me in this action (my New York lawyer does not do this type of civil litigation)."  This contention,

however, is **demonstrably** false.  On August 19, 2021, six days after Plaintiff commenced the instant action, Defendant Petty commenced a civil litigation action against New York State.  In that action, Defendant Petty is being represented by Alan Gerson, Esq.  Defendant Petty offers no reason why Mr. Gerson could not defend him in the instant action.  Indeed, it appears that Defendant Petty is lying about whether he is being represented by counsel that could represent him in this action.  Moreover, Defendant Petty offers no excuse for not inquiring with Mr. Gerson about the Amended Complaint.  At the very least, it seems that if he had been "diligently" seeking counsel to defend him in the instant action, Mr. Gleason or any other attorneys with whom he spoke would have advised him that he needed to respond to the Amended Complaint by October 6, 2021.

Defendant Petty's second assertion that he had trouble finding an attorney within his price range is also insufficient to overcome a finding of willfulness.  "A party's lack of funds… does not justify a party's complete disregard of the rules of the court or its failure to notify the court of its predicament."  *ILGWU Nat. Ret. Fund v. Empire State Mills Corp.*, 696 F. Supp. 885, 888 (S.D.N.Y. 1988); *King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 98 (E.D.N.Y. 2004).  In *King*, this Court held that the defendants' inability to hire new counsel did not serve as an excuse for default.  *Id*.  There, the defendants had adequate notice of the action, and that default was being entered against them.  *Id*.  Because they did not appear, nor seek to advise the Court of their predicament, the Court held that the defendants failed to demonstrate that their default was a result of excusable neglect, as opposed to willfulness.  *Id*.

Here, Defendant Petty provides no reason why he could not advise the Court or Plaintiff's counsel that he needed extra time to find counsel.  He also provides no reason why he could not represent himself pro se or seek an extension on his regard.  Like *ILGWU* and *King*, such failure

is inexcusable and does not demonstrate that Defendant Petty's failure to respond was not a willful act.

Defendant Petty's third reason is likewise unavailing. The Declarations from Defendant Maraj and Mr. Burstein filed as exhibit 2 to the Petty Decl. do not include any statements that even remotely suggest that Mr. Burstein was asked to help Defendant Petty find counsel. Mr. Burstein filed his notice of appearance eleven days before counsel for Defendant Petty did so. The integrity of this contention is also belied by the fact that Defendant Petty does not provide precisely when he or Defendant Maraj inquired with Mr. Burstein to find him, counsel. Nor does Defendant Petty explain why Mr. Burstein – who was supposedly getting him, counsel – did not advise that he should seek an extension to respond in the meantime. Rather, Defendant Petty contends that after Defendant Maraj retained Mr. Burstein, he directed him to his current counsel.

Even if Mr. Burstein had found counsel for Defendant Petty the day on which Defendant Maraj supposedly retained him, Defendant Petty offers no excuse for the eleven days between Mr. Burstein filing his notice of appearance and his counsel filing his notice of appearance. As such, Defendant Petty was not diligent in seeking to vacate the default.

Defendant Petty's reliance on *Elohim EPG USA, Inc. v. 162 D&Y Corp.*, 2021 WL 2292682 (S.D.N.Y. June 4, 2021) and *New Falls Corporation v. Soni Holdings*, 2020 WL 2770922 (E.D.N.Y May 8, 2020) is misplaced.

In *Elohim*, the defaulted defendants conceded that they were properly served with the lawsuit but failed to timely respond due to miscommunications between their corporate counsel and defense counsel. The defaulted defendants, unlike here, provided a more elaborate explanation, which included confusion over corporate counsel's assertion of the phrase pro hac vice, which defense counsel reasonably understood as the defaulted defendants intended to retain

24

corporate counsel to defend them.  Ultimately, though, the Court found that the default judgment should not be vacated simply because delays due to the Covid-19 pandemic were sufficient.  *Id*. at *3.  In *New Falls*, the defaulted defends also conceded that service was proper and gave no indication why the Court should not believe them.

Unlike *Elohim* and *New Falls*, Defendant Petty and Defendant Maraj are challenging whether service was proper.  Yet, as described above, the service was proper.  Thus, the truthfulness of their Declarations is at issue.  Mr. Burstein also has a reason to be untruthful because his failure to properly advise Defendant Maraj and Defendant Petty about the deadline to answer, or to move on the amended complaint could (and should) subject him to liability for **malpractice**.

Like Defendant Maraj, Defendant Petty offers no documentary evidence to back up his sworn statement.  Defendant Petty has not offered any emails – redacted or otherwise – that would substantiate his contentions.  Moreover, unlike *Elohim*, Defendant Petty does not offer any reasons – such as the Covid-19 pandemic – for the delay in submitting a notice of appearance from the date Defendant Maraj retained Mr. Burstein until he responded.  Further, unlike *Elohim* and *New Falls*, Defendant Petty's wife had her attorney file a notice of appearance in this action eleven days prior to his attorney filing one.

At bottom, there is no basis to find that Defendant Petty's failure to respond was anything but willful.

> ### B.  *Defendant Petty Has Not Demonstrated A Meritorious To All, If Any, Causes of Action Asserted Against Him*

Upon entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations of liability, except those relating to damages.  *Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y. Mar. 13, 2008), *report and*

25

*recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008). "Where a defendant **fails to answer** the complaint, courts are **unable** to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, **this factor weighs in favor of granting a default judgment**." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) (emphasis added) (*quoting Empire State Carpenters Welfare, et al. v. Darken Architectural Wood,* No. 11–CV–46, 2012 WL 194075, at *3 (E.D.N.Y. January 17, 2012); *see, Mack Finanical Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011); *see also*, *F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002).

If all facts were not deemed admitted, a defaulting defendant would be required to "present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see*, *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (holding that a defense is meritorious if it is good at law so that the factfinder has a determination to make).

Because Defendant Petty failed to respond to the complaint, all well-pleaded facts in the Amended Complaint are deemed admitted.  As such, the second factor for refusing to vacate default judgment or enter default judgment ***unquestionably*** weighs in favor of granting default judgment against Defendant Petty.  Even if such was not the case, however, since Defendant Petty accepted a plea deal for raping Plaintiff, he does not have any meritorious defenses.

Moreover, even if the facts were not already deemed admitted, the evidence concerning his harassment of Plaintiff through his fellow blood gang members is so clear that it is impossible for him to have any meritorious or complete defense.

26

Defendant Petty baselessly argues that he cannot be liable for rape because he was convicted of "attempted rape."  This ignores the very well-known truth that plea deals often involve a defendant receiving a lower charge and reduced sentence in return for a guilty plea.   Despite his innocence, defendant Petty contends that he pled guilty to attempted rape because he was a scared 16-year-old kid and was told that his sentence would be 20-years-to-life if he did not plead guilty to attempted rape.  Indeed, Defendant Petty would have likely received a more significant sentence if he had been convicted of rape at trial.   This has no bearing on whether he actually committed the crime.

Nonetheless, when a defendant enters a guilty plea, he has had a "full and just opportunity to litigate the facts underlying his conviction because he has chosen not to avail himself of the opportunity to contest those facts and must accept the consequences of his action." *U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 899 F.Supp. 974, 981 (E.D.N.Y. 1994); *see*, *U.S. v. Broce,* 488 U.S. 563 (1988) (holding that a defendant who pleads guilty and concedes that he committed a crime generally relinquishes potential defenses, even those of which he may have had no knowledge at the time).

 By pleading guilty, Defendant Petty admitted all of the facts underlying his conviction. Those facts include him raping Plaintiff.  It is ***perjurious*** to now say otherwise.

Moreover, it is disgraceful that Defendant Petty would lie and say that Plaintiff was a willing participant in her rape.  Plaintiff has never changed her story regarding whether Defendant Petty raped or sexually assaulted her, and never will because it is the truth.  Even if the facts were not already deemed admitted ***twice***, by way of his guilty plea and failure to timely respond to the Amended Complaint, there is no reason to believe the truth of any statements in Defendant Petty's Declaration.

27

Additionally, Defendant Petty asserts conclusory denials of all other causes of action and intimidating and harassing Plaintiff.  On these bases, Defendant Petty claims that he has asserted a meritorious defense. As stated above, these conclusory denials are insufficient to present a meritorious defense.  *Pecarsky*, 249 F.3d 167, 173 (2d Cir. 2001).  Thus, Defendant Petty's denials are insufficient.

Defendant Petty's remaining contentions that Count V fails to plead a cause of action are addressed below.

### C.  Plaintiff Will Be Substantially Prejudiced If Default Judgment Is Not Entered Against Defendant Petty

A strong showing of prejudice is **unnecessary** when the defendant's default is willful and the defendant has failed to identify a meritorious defense. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir. 1994); *Allstate Ins. Co. v. Bogoraz*, No. 10-CV-5286 (SJF)(ETB), 2012 U.S. Dist. LEXIS 68110, at *15 (E.D.N.Y. May 9, 2012).

Additionally, defendants' willful deceit should undermine the Court's confidence that defendants **will** cooperate in discovery.  *See Badian v. Brandaid Commc'ns Corp.*, No. 03 Civ. 2424 (DC), 2004 U.S. Dist. LEXIS 17404, 2004 WL 1933573, *4 (S.D.N.Y. Aug. 30, 2004), *aff'd*, 165 Fed. App'x 886 (2d Cir. 2006); *see also*, *Am. Hotel Register Co. v. Am. Sales Brokerage Co.*, No. 1:07CV709, 2007 U.S. Dist. LEXIS 86157, 2007 WL 4192205, at *6 (N.D. Ohio November 21, 2007) (relying on defendants' submission of false affidavits in finding **prejudice**); *World Magic Int'l AVV v. Eddy Int'l, Ltd.*, 2010 U.S. Dist. LEXIS 116962, at *6 (S.D.N.Y. Nov. 1, 2010).

**First**, Defendant Petty's false assertions in his Declaration directly show that Defendant Petty is unlikely, to be honest during discovery.  As shown above, Defendant Petty lied about whether Plaintiff's process server tried to hand him the Summons and Amended Complaint.

Further, Defendant Petty's heinous criminal record, including a ten-year sentence for killing someone, makes the veracity of his statements unlikely.

As stated above, Defendant Petty's guilty plea bars him from disputing the facts underlying the conviction.  Nonetheless, it is worth recognizing that while Defendant Petty claims that Plaintiff and he were in a consensual sexual relationship, he offers no excuse for why this defense did not exonerate him of assaulting Plaintiff. In fact, from at least 2013 to 2018, Defendant Petty registered as a sex offender and never once sought to challenge the results of his conviction on civil rights grounds.  Now, after Defendant Petty has married his wealthy wife, Defendant Maraj, and she was able to hire him a bevy of unsavory lawyers, Defendant Petty baselessly contends that they were in a consensual relationship and that his guilty plea was the result of being an innocent young 16-year-old that was scared into accepting a plea deal.  Simply put, Defendant Petty's actions and recent statements are parallel to those previously stated by Defendant Maraj.

**Second**, as stated in Plaintiff's motion for entry of default judgment against Defendant Petty (Dkt. No. 25), the fact that Defendant Petty's counsel appeared in the action eleven days after his wife is suspicious.  Indeed, one day before Defendant Petty's counsel filed his notice of appearance, he was colluding with Plaintiff's counsel to speak with a person – under an alias – who claims to be a family member of Plaintiff.  Upon information and belief, this person is either Plaintiff's adopted Aunt, Donna Bills, or adopted cousin, Shiran "Sunday" Grayson, both of whom have ill intentions.  (*See* Declaration of Jennifer Hough ("Hough Decl.").  Upon information and belief, the latter has had a relationship with "Black," who Defendants used as an instrument to get to and then threaten Plaintiff.  (*See* Id.).

In the interest of brevity, for the remainder of this reason, Plaintiff incorporates as fully repeated herein its first reason for why Plaintiff would be prejudiced as detailed in its

Memorandum of Law in support of its Motion for Entry of Default Judgment against Defendant Petty.  (Dkt. No. 25, Plaintiff's Memorandum of Law in Support of its Motion for Entry of Default Judgment against Defendant, p. 17).

Plaintiff further incorporates the remainder reasons for which she would be prejudiced from such previously submitted Memorandum of Law.  (*Id*., at pp. 17 – 19).

## IV. PLAINTIFF ALLEGES ALL PLAUSIBLE CAUSES OF ACTION IN THE AMENDED COMPLAINT.

To state a valid claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress Against Defendant Petty under New York Law

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must plead: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993); *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014).

*Here*, Defendant Petty's conduct towards Ms. Hough was extreme and outrageous, including but not limited to sexual assault, rape, harassment, and intimidation.  (*See* Blackburn Decl. ¶¶ 124-29). This includes recent harassment and intimidation through Defendant Petty's friend, associate, and fellow gang member, Black.  (*Id*. at ¶¶ 110-11, 117-120).  The actions go beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized community, satisfying the first, the second, and the third prong of the test presented in *Howell*.

### B. *Ms. Hough Has Sufficiently Plead A Claim for Assault and Battery Against Defendant Petty Under New York Law*

An "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact. *United National Insurance Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d. Cir.1993). A "battery" is an intentional wrongful physical contact with another person without consent. *See United National Insurance Co.* at 108 (2d Cir. 1993); The Second Circuit has held that the terms "assault" and "battery" do not change meaning due to the degree of violation. *United National Insurance Co.*, 994 F.2d at 108 (2d Cir. 1993). Indeed, the slightest unlawful touching of another constitutes battery. *Id*.

Here, Defendant committed battery against Ms. Hough as he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Ms. Hough's person. (*See* Blackburn Decl., ¶¶ 31-49 & 130-137.

### C. *Ms. Hough Pleads A Viable Claim Against Defendant Petty For Negligent Infliction of Emotional Distress Under New York & California Law*

In New York, negligent infliction of emotional distress requires a showing of "(1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; and (3) severe emotional distress." *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010); see *Higgins*, 318 F.3d 422, 425 n.1 (2d Cir. 2003). California's statute is analogous to New York's standard.

In the time proceeding his criminal act, Defendant Petty, his enabling parents, associates, legal team, gang affiliates, agents, and servants worked in concert and engaged in conduct that rose beyond the threshold of extreme and outrageous. (*See* Blackburn Decl., ¶¶ 31-49, 57-74, 79-83, 104-07, 110-11, 117-120 & 147-54). The extreme and outrageous conduct are as follows: stalking Ms. Hough, stalking Ms. Hough's twenty-two-year-old daughter, stalking Ms. Hough's

31

family members, causing Ms. Hough to move residents on multiple occasions throughout the years, bribing Ms. Hough into recanting her rape claim, threatening Ms. Hough with physical bodily harm if she did not recant her rape claim, and threatening Ms. Hough with death via social media posts.

As a result of the conduct detailed above, Ms. Hough has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.  (*Id*., at ¶ 154).

### D.  Plaintiff Pleads A Viable Claim For Harassment Under California And Georgia Law

Cal. Code Civ. Proc., § 527.6, defines "harassment" as follows: "harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. Under § 527.6, subd. (b), the course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and cause substantial emotional distress to the Plaintiff. *Krell v. Gray*, 126 Cal. App. 4th 1208.  Georgia's harassment statute is analogues to California.

While Defendants Petty and Maraj were directing Black to harass Plaintiff at her home Georgia, upon information and belief, they were in California.  (*See* Blackburn Decl. ¶¶ 117-120 & 163-70).  Upon information and belief, Defendants Petty and Maraj were also located in California when posting lies about Plaintiff on the internet intending to cause her emotional harm. (*Id*., at ¶¶ 79-83).  As such, the actions of Black in Georgia constitute harassment under Ga. Code Ann. § 16–11–90 and California law.

At bottom, Defendants Petty and Maraj, through their intermediaries, engaged in constant phone calls, resident pop-ups, family member reach outs, unsolicited contacts, bribing, and attempted coercion.  (*See* Blackburn Decl.¶ 161).  Defendant knew or reasonably should have known that such communication would cause Plaintiff to fear harm to Plaintiff's physical safety and property and a member of Plaintiff's family. (*Id*.)

As a result of the above-described conduct, Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.  (*Id*., at ¶ 162).  Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life.  (*Id*.).  Thus, Plaintiff pleads viable claims for Harassment under both Georgia and California law.

### E.   *Plaintiff Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law*

In California, to state a cause of action for intentional infliction of emotional distress, a plaintiff must show "(1) outrageous conduct by the Defendant; (2) the Defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the Plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the Defendant's outrageous conduct." "Conduct, to be "outrageous" must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014). Georgia's intentional infliction of emotional distress statute is analogous to California.

Defendant Petty's actions have satisfied the elements of intentional infliction of emotional distress under both California and Georgia law.  (*See* Blackburn Decl. ¶¶ 171-177).   Defendant

Petty was a resident of California when he engaged in these tortious and criminal acts aimed and directed towards Plaintiff, a resident of the State of Georgia at the time.  (*Id.*)

Defendants acted intentionally in their attempts to coerce Plaintiff into recanting her story so that Defendant Petty could avoid going to prison for failing to register as a sex offender.  All actions taken by Defendants were intended to cause her emotional distress to achieve such a result. (*Id.*).

## CONCLUSION

For the preceding reasons, Defendant Petty's motion to vacate the certificate of Default Judgment should be denied.  In the event the Court is inclined to grant Defendant Petty's motion, Plaintiff request the Court holds a Traverse hearing so Defendant Petty and Defendant Maraj can testify under penalty of perjury to the validity of their declarations denying service or process, and their assertion they were seeing out legal counsel.

Dated: November 8, 2021

Respectfully submitted,

*Tyrone A. Blackburn*

Tyrone A. Blackburn, Esq.