UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JENNIFER HOUGH,                                    :
                                                   :
                              Plaintiff,           :
                                                   :    Civil Action No. 21-cv-04568
                  - against -                      :    (ENV) (JRC)
                                                   :
ONIKA TANYA MARAJ, AKA ("NICKI  MINAJ")            :
and KENNETH PETTY, AKA ("ZOO"),                    :
                                                   :
                              Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# REPLY MEMORANDUM OF LAW OF DEFENDANT KENNETH PETTY
## IN FURTHER SUPPORT OF MOTION TO VACATE CERTIFICATE OF DEFAULT




Dated: November 22, 2021
        New York, New York




                                        Law Offices of Steven D. Isser
                                        424 Madison Avenue, Third Floor
                                        New York, New York 10017
                                        (212) 812-5096
                                        *Attorneys for Plaintiff Kenneth Petty*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ...............................................................................................3

    POINT I

    THE DEFAULT SHOULD BE
    VACATED DUE TO DEFICIENT SERVICE........................................................4

    A.  Defendant Was Not Properly Served Pursuant to Rule 4(e)(2)(a)....................4

    B.  Defendant Was Not Properly Served Under California Law............................8

    C.  Defendant Was Not Properly Served Under New York Law ..........................10

    POINT II

    THE DEFAULT SHOULD BE VACATED DUE
    TO PLAINTIFF'S FAILURE TO COMPLY WITH LOCAL RULE 55.1 ..........12

    POINT III

    THE DEFAULT SHOULD BE
    VACATED BECAUSE DEFENDANT
    HAS DEMONSTRATED GOOD CAUSE ..........................................................14

    A.  Defendant's Failure to Respond to the
    Amended Complaint Was Not Willful ......................................................14

    B.  Defendant Has Demonstrated Meritorious Defenses................................18

    C.  Plaintiff Will Not Suffer Prejudice if the Default it Vacated....................20

CONCLUSION....................................................................................22

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*Action S.A. v. March Rich & Co. Inc.,*
951 F.2d 505, 507 (2d Cir. 1991)................................................................15

*American Guarantee & Liability Ins. Co. v. Irvine Auto Towing Inc.,*
2021 WL 4459668, at *2 (N.D. Cal. March 26, 2021) ...................................5

*American Hotel Register Company v. American Sales Brokerage Company,*
2007 WL 4192205, at *6 (N.D. Ohio November 21, 2007) .........................20

*Berdux v. Project Time & Cost, Inc.,*
669 F. Supp.2d 1094 (N.D.N.Y. 2009) .........................................................6

*Commercial Bank of Kuwait v. Rafidan Bank,*
15 F.3d 238, 243 (2d Cir. 1994)..................................................................14

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont,*
169 Fed.Appx 45 (2006) .............................................................................10

*Elohim EPF USA, Inc. v. 162 D&Y Corp.,*
2021 WL 2292682, at *4 (S.D.N.Y. June 4, 2021)..............................14, 17

*Goldstein v. Urgo Eleuthera Hotels Ltd.,*
2016 WL 1019394, at *2 (E.D.N.Y. February 10, 2018) .............................14

*High Farms, LLC v. King,*
2019 WL 1208785 (E.D.N.Y. March 14, 2019) ..........................................11

*J&J Sports Productions, Inc. v. La Reina Del Sur Restaurant on Bar Inc.,*
2017 WL 10751457, at *1 (S.D.N.Y. May 12, 2017)...................................13

*Jiao v. Shang Shang Qian Inc.,*
2020 WL 6370148, at *6 and Fn 6 (E.D.N.Y. August 11, 2020) .................13

*Meehan v. Snow,*
652 F.2d 274, 277 (2d Cir. 1981).......................................................... 13-14

*Nesterov v. Kvadro S. Corp.,*
2021 WL 1236029, at *2 (E.D.N.Y. March 11, 2021) .................................11

*New Falls Corp. v. Soni Holdings,*
*LLC,* 2020 WL 2770922, at 3 (E.D.N.Y. May 8, 2020), adopted by,

*New Falls Corp. v. Soni Holdings,*
*LLC,* 2020 WL 2770015 (E.D.N.Y. May 28, 2020) ....................................................17, 22

*Onewest Bank, N.A. v. Ruiz,*
2018 WL 1318983, at *2 (E.D.N.Y March 13, 2018) ..........................................14, 16

*Poppington, LLC v. Brooks,*
2021 WL 3193023, at *3 (S.D.N.Y. July 27, 2021) ........................................................7

*Puddo v. 6D Global Technologies, Inc.,*
2020 WL 2833852, at *4 (E.D.N.Y. May 31, 2020) ....................................................16

*Radian v. Brandbaid Communications Corp.,*
2004 WL 1933573, at *4 (S.D.N.Y. August 30, 2004) ................................................20

*Scotlynn USA Division, Inc. v. Valdez,*
2015 WL 13734078, at *1-2 (M.D. Fla. September 2, 2015)....................................5, 6

*SEC v. Morton,*
2011 WL 1344259 (S.D.N.Y. Match 31, 2011)..............................................................7

*Securities and Exchange Commission v. Breed,*
2004 WL 1824358 (S.D.N.Y. August 13, 2004) ..........................................................15

*Single Source Roofing Corp. v. 228 Granite Ave. Realty, LLC,*
2005 WL 3113421, at *2 (E.D.N.Y. November 22, 2005)..............................................7

*Trend Micro Inc. v. RPost Holdings,*
2014 WL 1365491, at *5 (N.D. Cal. April 7, 2014) ......................................................5

*Westmark Development Corp. v. Century Surety Co.,*
199 F.T.D. 491, 496 (W.D.N.Y. 2001)........................................................................15

*World Magic International AVV v. Eddy International Ltd.,*
2010 WL 4457184, at *2 (S.D.N.Y. November 1, 2010)..............................................20

## State Cases

*American Express Centurion Bank v. Zara,*
199 Cal.App.4th 383, 389 (6th Dist. 2011)................................................................8, 9

*Bossuk v. Steinberg,*
58 N.Y.S.2d 916, 460 N.Y.S.2d 509 (1983)............................................................11, 12

*Karnazes v. Hartford,* 2013 WL 4080950, *2
(Cal. Ct. of App. 1st District August 9, 2013)..........................................................8, 9

*Khourie v. Sabek,*
220 Cal.App.3d 1009 (1990) ...............................................................................10

**Statutes and Rules**

Cal. Civ. Proc. § 415.10 ..................................................................................8, 10

Cal. Civ. Proc. § 415.20 ......................................................................................8

Cal. Civ. Proc. § 415.20(a) ................................................................................10

Cal. Civ. Proc. § 415.20(b) ...............................................................................8, 9

Fed. R. Civ. P. 4(e)(2) .......................................................................................5, 6

Fed. R. Civ. P. 4(e)(2)(a) ...................................................................................4, 7

Fed. R. Civ. P. 609(a)(2) .....................................................................................20

Rule 55.1 of the Local Rules of the United States District Courts
for the Southern and Eastern Districts of New York ........................................12, 13

Rule 55.1(b) of the Local Rules of the United States District Courts
for the Southern and Eastern Districts of New York ...........................................13

Rule 55.2 of the Local Rules of the United States District Courts
for the Southern and Eastern Districts of New York ...........................................13

NY CPLR § 308(1) .............................................................................................10

NY CPLR § 308(4) .............................................................................................11

NY CPLR § 313 ..................................................................................................10

## PRELIMINARY STATEMENT

The opposition filed by Plaintiff Jennifer Hough ("Plaintiff") to the motion by Defendant Kenneth Petty ("Defendant" or "Mr. Petty") to vacate the Certificate of Default entered against him by the Court Clerk fails to demonstrate that the Certificate of Default should not be vacated. Plaintiff's opposition relies on inaccurate statements, insulting and false allegations, attempts to improperly smear Defendant, misapplications of case law and a misunderstanding of the standards applied to determine Defendant's motion.

Before discussing the flawed arguments set forth by Plaintiff, it is necessary to first address Plaintiff's baseless allegation of perjury, which permeates Plaintiff's opposition and on which Plaintiff erroneously relies to support many of her arguments.  In the Memorandum of Law in Support of Opposition to Defendant Kenneth Petty's Motion to Vacate the Certificate of Default filed by Plaintiff ("Plaintiff's Memorandum" or "Pl. Mem."), Plaintiff inaccurately and repeatedly claims that Defendant committed perjury in the Declaration of Kenneth Petty, sworn to on October 27, 2021 ("Petty Declaration" or "Petty Decl."), because he testified that that no one ever attempted to hand him the summons and Amended Complaint.  Pl. Mem. at 8, 15, 16 and 34.  This, however, is not perjury and is indisputably accurate.

In the Affidavit of Service previously filed by Plaintiff, it states that the process server had "personally" served Defendant.  *See* Declaration of Steven D. Isser, sworn to on October 27, 2021, submitted in support of Defendant's motion ("Isser Declaration" or "Isser Decl.") at Exhibit ("Ex.") 3.  Defendant Petty, however, was not "personally" served (or effectively served).  As discussed below, "personal service" requires handing a defendant the summons and complaint, or if the defendant refuses to accept the papers, under certain circumstances, when the process server is in immediate proximity to the defendant, they may be dropped at the defendant's feet.  As neither

occurred here, Defendant truthfully and accurately testified in the Petty Declaration that he was not "personally served" because "[n]o one ever handed me, or tried to hand me, the Summons, Complaint, Amended Complaint or any other document in this litigation."  Petty Decl. at ¶2.

Indeed, Plaintiff's own motion papers demonstrate the accuracy of Defendant's testimony. Simultaneously with Defendant's instant motion to vacate the Certificate of Default, Plaintiff moved for entry of a default judgment ("Plaintiff's Judgment Motion").  As part of Plaintiff's Judgment Motion, Plaintiff submitted the Declaration of Robert Diaz, sworn to on October 27, 2021 (the "Diaz Declaration" or "Diaz Decl."), Plaintiff's process server.  *See* Reply Declaration of Steven D. Isser, sworn to on November 22, 2021 ("Isser Reply Declaration" or "Isser Reply Decl.") at Ex. 1.  The Diaz Declaration makes clear that Mr. Diaz did not personally hand any papers to Defendant and was never in Defendant's immediate proximity, so he could not have attempted to hand any papers to Defendant.  According to the Diaz Declaration, he knocked on the door, "saw a figure staring at me through the window.  I knew it was Mr. Petty because the security guard informed me that he was indeed in the home.  He refused to open the door. I then announced myself and informed him that he had been served. I showed him the two documents and left them outside the front of the door."  Isser Decl. at Ex. 1 at ¶11.

Accordingly, as the process server was never in Defendant's immediate vicinity, he could not possibly have attempted to hand Defendant anything.  Plaintiff seems argue that Mr. Petty committed perjury because **if** he opened the door, the process server **would have** attempted to hand Defendant the documents.  As this never happened, it cannot be said that the process server attempted to hand Mr. Petty anything.

There is no dispute that the process server was never in close proximity to Defendant, that he never spoke to Defendant, that he never came face to face with Defendant and that he never

2

reached out his hand to Defendant to hand Defendant any documents.  Simply put, no one ever handed, or tried to hand, Defendant the Summons, Complaint, Amended Complaint or any other document in this litigation, rendering Mr. Petty's testimony truthful and accurate.

Further, demonstrating that Defendant did not commit perjury is Defendant's opposition to Plaintiff's Judgment Motion.  In opposition to Plaintiff's Judgment Motion, Defendant argued that service was defective based on the new facts contained in the Diaz Declaration and did not dispute the accuracy of the Diaz Declaration.  Isser Reply Decl. at Ex. 2.

Not satisfied with wrongly, repeatedly, irresponsibly and falsely accusing Defendant of committing the crime of perjury in an improper attempt to prejudice the Court, Plaintiff also smears Defendant throughout her opposition papers.  Plaintiff refers to Defendant's "criminal history" throughout her opposition papers and asserts the false allegation that Defendant is currently in a gang (which is not true).  As these statements and allegations are irrelevant to the determination of the instant motion, their sole purpose is to seek to embarrass Defendant and prejudice the Court.

For any and all of the reasons discussed above, below and in Defendant's moving papers, Defendant's motion to vacate the Certificate of Default and be permitted to respond to the Amended Complaint should be granted.

## **ARGUMENT**

Many of the arguments raised by Plaintiff in Plaintiff's Memorandum were raise by Plaintiff in Plaintiff's Judgment Motion and Defendant responded to these argument in Defendant's opposition to Plaintiff's Judgment Motion.  Accordingly, to avoid undue repetition, Defendant will only summarize herein the many reasons Plaintiff's arguments fail to demonstrate that the Certificate of Default should not be vacated.  For a fuller discussion of these arguments, the Court is respectfully referred to Defendant's Memorandum of Law in Opposition to Plaintiff's

Judgment Motion ("Defendant's Opposition Memorandum" or "Def. Opp."), which is attached as Ex. 2 to the Isser Reply Declaration and is incorporated herein, the Declaration of Kenneth Petty, sworn to on November 5, 2021, submitted in opposition to Plaintiff's Judgment Motion, which is attached as Ex.3 to the Isser Reply Decl. and incorporated herein.

## POINT I

### THE DEFAULT SHOULD BE
### VACATED DUE TO DEFICIENT SERVICE

In Defendant's moving Memorandum of Law, Defendant argued that there had not been service of process based on the false statement in the Affidavit of Service that Defendant had been "personally" served.  The Diaz Declaration demonstrates the falsity of the Affidavit of Service, as the process server now states that on his *second* attempt to serve Defendant, made the same day as the first attempt, he "knocked on the door" and saw "a figure" staring at him through the window, who he "knew" was Defendant.  Diaz Decl. at ¶¶ 3, 7 and 11.  When Defendant "refused to answer the door," the process server "announced" himself, "informed him [Defendant] that he had been served," "showed him" the documents and then "left them [the documents] outside the front of the door" at Defendant's California residence.  Diaz Decl. at ¶¶ 3, 7 and 11.

As discussed below, and in Defendant's Opposition Memorandum to Plaintiff's Judgment Motion, based on these facts, this is not "personal service" or effective service.  Plaintiff randomly cites cases without distinguishing whether each applies federal law, New York law, or California law.  None of these cases, however, demonstrate proper service under any of these laws.

A.   **Defendant Was Not Properly Served Pursuant to Rule 4(e)(2)(a)**

Plaintiff's argument that Defendant was served under federal law, pursuant to Rule (4)(e)(2)(a) of the Federal Rules of Civil Procedure, fails.  To effectuate such personal service by leaving the summons and complaint on a defendant's doorstep, there first must have been s**everal**

**attempts** to serve the defendant, demonstrating a "good faith effort at substantial compliance with Rule 4(e)(2)," and "**immediate proximity"** between the process server and the defendant, neither of which occurred here. *See e.g., American Guarantee & Liability Ins. Co. v. Irvine Auto Towing Inc.,* 2021 WL 4459668, at \*2 (N.D. Cal. March 26, 2021) (emphasis added); *Scotlynn USA Division, Inc. v. Valdez,* 2015 WL 13734078, at \*1-2 (M.D. Fla. September 2, 2015); *Trend Micro Inc. v. RPost Holdings,* 2014 WL 1365491, at \*5 (N.D. Cal. April 7, 2014).

As discussed more fully in Defendant's Opposition Memorandum to Plaintiff's Judgment Motion, the facts in the instant case are far different than the facts in cases which have held that leaving the summons and complaint on a defendant's doorstep constituted proper service pursuant to Rule 4(e)(2). For example, in *American Guarantee & Liability Ins. Co.* there were "almost twenty prior attempts" to personally serve the defendant, at three different addresses. *American Guarantee & Liability Ins. Co.,* 2021 WL 4459668, at \*3. In *Trend Micro Inc.*, there were five previous attempts at service before the documents were left on the Defendant's doorstep on the sixth attempt, after speaking with the defendant. *Trend Micro Inc.,* 2014 WL 1365491, at \*5. Further, in both of these cases, the process server was face to face with the defendant and spoke with the defendant, demonstrating immediate proximity. *American Guarantee & Liability Ins. Co.,* 2021 WL 4459668, at \*2; *Trend Micro Inc.,* 2014 WL 1365491, at \*5.

Here, the process server left the papers outside of Defendant's house on his second attempt to serve Defendant (which is not a "good faith effort at substantial compliance"), never spoke to Defendant or was in close proximity to Defendant and claims only to have seen Defendant inside the house. Diaz Decl. at ¶¶ 4 and 11. Further, the process server's second attempt to serve Defendant was made the same day as the first attempt, within minutes of the first attempt. This does not satisfy the requirement of Rule 4(e)(2).

Indeed, in *Scotlynn USA Division, Inc. v. Valdez,* 2015 WL 13734078, which comes more closely to proper service than this case, the court held that service was not effectuated.  In *Scotlynn USA Division, Inc.,* the process server "attempted personal service on two occasions without success," and on the third attempt, after verifying that the defendant was home (in a trailer), the process server saw someone matching the description of the defendant in the trailer, called the defendant's name "countless times, and informed him that I was there to serve a lawsuit upon him. Despite knocking for 15 minutes, he refused to open the door."  *Id.*  The process server then left copies of the documents on the "front doorstep."  *Id.*  The court held that personal service was **not** effected under Rule 4(e)(2).  *Id*.  The same can be said here.

In fact, in *Scotlynn USA Division, Inc.,* the process server made more attempts to serve the defendant than was made here, as here the process server made only one failed attempt, and then minutes later left the documents in front of Defendant's door.  Server. Decl. at ¶4.  Nor did the process here call Defendant's name countless times or wait fifteen minutes before leaving the papers, as in *Scotlynn USA Division, Inc.*  As service was not proper in *Scotlynn USA Division, Inc.,* it is not proper as to Defendant.

The cases relied on by Plaintiff concerning service under federal law also demonstrate that service was not effectuated on Defendant.  For example, in *Berdux v. Project Time & Cost, Inc.,* 669 F. Supp.2d 1094 (N.D.N.Y. 2009), relied on by Plaintiff, the plaintiff demonstrated a good faith effort at substantial compliance because the process server attempted to serve the defendant at his home on three separate occasions before leaving the papers with the defendant's wife.  *Id.* The requirement of "immediate proximity" was satisfied because the process server spoke with the defendant's wife when he left the papers.  *Id.*  Here Plaintiff only made one failed attempt and never spoke with Defendant (or anyone else in the house).

6

In *SEC v. Morton,* 2011 WL 1344259 (S.D.N.Y. Match 31, 2011), relied on by Plaintiff, numerous attempts to serve each of the defendants was made and all of the defendants were served by directly handing them the papers. *Id.* at *3. In addition, the papers were sent by mail and Federal Express to all of the defendants. *Id.* Accordingly, this case is not relevant.

Neither does *Poppington, LLC v. Brooks,* 2021 WL 3193023, at *3 (S.D.N.Y. July 27, 2021), relied on by Plaintiff, support service here. The court in *Poppington* held that "[w]here, as here, 'the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it usually is sufficient for the process server **to touch the party to be served with the papers** and leave them in defendant's presence or, **if a touching is impossible, simply to leave them in the defendant's physical proximity**." *Id.* (emphasis added). Here there is no dispute that the process server did not "touch" Defendant, and the papers were not left in Defendant's "physical proximity," as the process server was never face to face with Defendant.

Plaintiff's reliance upon *Single Source Roofing Corp. v. 228 Granite Ave. Realty, LLC*, 2005 WL 3113421, at *2 (E.D.N.Y. November 22, 2005) also is misplaced. Pl. Mem. at 14. The facts of *Single Source* are so different from this case as to be unrecognizable. The processor server's affidavit in that case stated that the defendant "slammed the door shut in my face" after the process server had told him face to fact that he was there to serve process. *Id.*

Plaintiff has not cited to any case in which leaving the summons and complaint outside of a defendant's house on only the second attempt at service, minutes after the first attempt, without any proximity to the defendant, constituted proper service pursuant to Rule 4(e)(2)(a). Accordingly, Defendant was not properly served pursuant to Rule 4(a)(2)(a).

**B.** __Defendant Was Not Properly Served Under California Law__

Plaintiff's argument that Defendant was served by "personal delivery" of the summons and complaint under California law, pursuant to Section 415.10 of the California Code of Civil Procedure ("California Code"), fails. California law is crystal clear that leaving the papers on Defendant's doorstep is not the equivalent of "personal service." Pursuant to California law, "the method described as 'personal service' means service that is accomplished 'by personal delivery of a copy of the summons and of the complaint to the person to be served.' (§ 415.10.) If the complaint and summons were personally delivered to, **i.e., handed to, defendant** then he could be said to have been 'personally served.'" *American Express Centurion Bank v. Zara,* 199 Cal.App.4th 383, 389 (6th Dist. 2011) (emphasis added). *See also Karnazes v. Hartford,* 2013 WL 4080950, at *2 (Cal. Ct. of App. 1st District August 9, 2013) (same).

Having failed to effectuate personal service, Plaintiff must demonstrate service was properly made pursuant to Section 415.20 of the California Code of Civil Procedure ("California Code"), known as "substitute service." Indeed, Section 415.20 of the California Code expressly addresses the requirements of serving a defendant by leaving the summons and complaint on the defendant's doorstep, as was done here.

Section 415.20(b) of the California Code requires that before relying on substitute service it must be established that personal service cannot be made "with reasonable diligence" **and** that the papers must be mailed "to the person to be served at the place where a copy of the summons and complaint were left." C.C.P. § 415.20(b) (emphasis added). Here, service is defective because the Summons and Amended Complaint were not mailed to Defendant and/or there was no reasonable diligence.

In the Diaz Declaration submitted in support of Plaintiff's Judgment Motion, there was no reference to mailing. Isser Reply Decl. at Ex. 1. After receiving Defendant's Opposition

Memorandum to Plaintiff's Judgment Motion, Mr. Diaz added a paragraph to his Declaration, stating that "[a]ccording to California state law concerning service of process" he mailed a copy of "Amended Complaint and Complaint" to defendant Ms. Maraj, with no mention of the summons.  Diaz Decl. at ¶13.  Mr. Diaz, however, does not claim to have mailed any documents to Defendant.  Further, this statement demonstrates that Plaintiff is relying on California law for service.  Yet, Plaintiff failed to effectuate service on Defendant pursuant to California law.

In *Karnazes v. Hartford,* 2013 WL 4080950 at *2 (Cal. Ct. of App. 1st District August 9, 2013), a case with substantially similar facts as are alleged by Plaintiff here, the court held that proper service had not been effectuated.  The court concluded that leaving the summons and complaint on the doorstep after the defendant would not open the door does not qualify as "personal service" and further concluded that it also does not qualify as substitute service pursuant to Section 415.20(b) because, among other things, there was no subsequent mailing.  *Id.*

Service also is defective under California law because "an individual may be served by substitute service only after a good faith effort at personal service has first been made: the burden is on the plaintiff to show that the summons and complaint 'cannot with reasonable diligence be personally delivered' to the individual defendant."  *American Express Centurion Bank,* 199 Cal.App.4th at 389.  "Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as 'reasonable diligence.'"  *American Express Centurion Bank,* 199 Cal.App.4th at 389.  *See also Karnazes,* 2013WL 4080950, at *2 (same).  As Plaintiff's process server left the papers on Defendant's doorstep the second time he tried to serve Defendant personally (minutes after the first attempt), he failed to exercise reasonable diligence as he did not make two or three attempts (on different days) to personally serve before resorting to substitute

service.  Diaz Decl. at ¶9.  He made only one attempt and then attempted substitute service minutes later on the second attempt.

Plaintiff's reliance on *Khourie v. Sabek,* 220 Cal.App.3d 1009 (1990) is unavailing, as this case demonstrates that Plaintiff failed to effectuate service under California law.  Pl. Mem. at 12. Although Plaintiff claims to have personally served Defendant, *Khourie* did not concern personal service pursuant to Section 415.10 of the California Code.  It concerned "substitute service," pursuant to Section 415.20(a) of the California Code.  In *Khourie*, the court concluded that the process server could leave the papers outside the door because the process server spoke to the woman who answered the door and refused to open the door, unlike here.  In addition, in *Khourie* the process server also "mailed a copy of the summons and complaint to Sabek at its place of business." *Khourie,* 220 Cal.App.3d at 1012.  Due to the subsequent mailing (which did not occur here), the court concluded that service was proper, holding that the process server "in compliance with Code of Civil Procedure section 415.20, sent a copy of the complaint and summons to Sabek's principal officer, Saberi. Under the circumstances, **service was completed on December 17, 10 days after the December 7th mailing**." *Khourie,* 220 Cal.App.3d at 1013 (emphasis added).

### C.   Defendant Was Not Properly Served Under New York Law

Plaintiff also failed to effectuate service under New York law.  For the same reasons as discussed above, Defendant was not personally served under New York, pursuant to Sections 308(1) and 313 of the New York Civil Practice Law and Rules ("CPLR").  Plaintiff's reliance on *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont,* 169 Fed.Appx 45 (2006), which applied New York law, is misplaced.  Pl. Mem. at 12.  Throwing papers at a defendant's feet when a defendant refuses to take them (as was done in *Durant, Nichols, Houston, Hodgson &*

*Cortese-Costa P.C.*) is not similar to leaving them on a defendant's doorstep because when left on a doorstep there is no proximity between the process server and the defendant.

Nor was substitute service properly made pursuant to New York law.  Section 308(4) of the CPLR provides, in part, that where personal service "cannot be made **with due diligence**," service can be made by "**affixing the summons to the door**" of the defendant's home and "**by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business.**"  CPLR § 308(4) (emphasis added).  *See High Farms, LLC v. King*, 2019 WL 1208785 (E.D.N.Y. March 14, 2019) (relied on by Plaintiff (Pl. Mem. at 12), holding service was proper because the papers were affixed to the door after four unsuccessful attempts at personal service, on four separate dates, and subsequently mailed).

As Plaintiff's process server did not "affix" the summons to the door (he left it in front of the door) and/or did not mail the summons and Amended Complaint to Defendant, service was not effectuated.  Further, Defendant did not use due diligence before resorting to substitute service, for the same reasons as discussed above and in Defendant's Opposition Memorandum to Plaintiff's Judgment Motion.  *See Nesterov v. Kvadro S. Corp.,* 2021 WL 1236029, at *2 (E.D.N.Y. March 11, 2021) (applying New York law, "Courts have found that attempting service on three different days at different times of day—which was done here—is sufficient to resort to affix-and-mail service.").

Plaintiff relies on *Bossuk v. Steinberg,* 58 N.Y.S.2d 916, 460 N.Y.S.2d 509 (1983) for the proposition that *Bossuk* "implies that service is proper where the summons and complaint are left in the general vicinity of a person resisting service, such as outside his or her door."  Pl. Mem. at 11.  *Bossuk*, however, implied no such thing.  After discussing delivery of a summons by leaving

it in the "general vicinity" of a person served who "resists" service, the court held that "we find equally without merit defendant's contention that **proof of the mailing of a copy of the summons, as further required by the statute**, was lacking because the Sheriff's employee who actually did so was not produced.  The proof of the Sheriff's regular course of business in this regard sufficed." *Bossuk,* 58 N.Y.S.2d at 918, 460 N.Y.S.2d at 510 (emphasis added).  Accordingly, *Bossuk* held that when the papers are left in the general vicinity, they also must be mailed.

Plaintiff's remaining cases and arguments concern whether Defendant has rebutted the Affidavit of Service and/or the effect of the inaccurate description contained in the Affidavit of Service.  As Defendant is not seeking to rebut the Diaz Declaration, these cases and arguments are not applicable.  Even based on the facts as set forth in the Diaz Declarations, service was not properly effectuated on Defendant for the reasons discussed above.  Plaintiff has not cited a single case, under federal, California or New York law, in which service was effectuated by leaving the papers on the defendant's doorstep, with no immediate proximity between the process server and the defendant, on only the second attempt at service.  Accordingly, for any and all of the above discussed reasons, Defendant's motion should be granted and the default should be vacated because service of process was not properly effectuated.

**POINT II**

**THE DEFAULT SHOULD BE VACATED**
**DUE TO PLAINTIFF'S FAILURE TO COMPLY WITH LOCAL RULE 55.1**

Plaintiff argues that her "technical failure" to comply with Local Rule 55.1(b)(3) should be forgiven.  Pl. Mem. at 17-19.  It is ironic that Plaintiff has repeatedly accused Defendant and his wife (and his wife's counsel) of believing that they are "above the rules," but now seeks herself to be above the rules.  In any event, the cases relied on by Plaintiff all held that the Court has "broad discretion" to forgive a violation of Local Rile 55.1.  In this cases, however, the Court

should not exercise this discretion.  In *J&J Sports Productions, Inc. v. La Reina Del Sur Restaurant on Bar Inc.,* 2017 WL 10751457, at *1 (S.D.N.Y. May 12, 2017), the court denied the plaintiff's motion for a default judgment due to the failure to comply with Local Rule 55.1, even though the Court Clerk has issued a certificate of default.  The court held that "the fact that some of these items may be found electronically, scattered on the docket, does not absolve the movant of its obligation to collect and append copies to its moving papers." *Id.*  The same can be said here.

In *Jiao v. Shang Shang Qian Inc.,* 2020 WL 6370148, at *6 and Fn 6 (E.D.N.Y. August 11, 2020), relied by Plaintiff, the issue concerned the plaintiff's failure to comply with Local Rule 55.2, not Local Rule 55.1.  In *Jiao,* counsel for the defendant had timely appeared and then did not participate.  When the defendant did not appear at a conference, the Court issued an Order allowing Plaintiff to move for a default judgment, which is why the court excused the procedural requirements of Local Rule 55.1(b).  *Id.*  The Court's Order was the functional equivalent of an entry of default against the defendant.

Further, although *Jiao* excused the failure to comply with Local Rule 55.2 due to these facts, the court also held that "[p]laintiffs fail to comply with Local Civil Rule 55.2, which normally warrants denying the motion for default judgment." and that "Courts in the Eastern and Southern Districts regularly deny motions for default judgment when strict compliance with Local Civil Rule 55.2 is lacking," citing numerous cases in which default judgments were denied due to a failure to comply with the Local Rules.  *Id* at *6.

As Plaintiff filed its Request for a Certificate of Default only five days after the alleged default, and moved for a default judgment less than a month after the response to the Amended Complaint would have been due (had Defendant been properly served), Plaintiff is improperly using a default judgment as a first, rather than as a last, resort.  *See Meehan v. Snow,* 652 F.2d 274,

13

277 (2d Cir. 1981) ("[t]he extreme sanction of a default judgment must remain a weapon of last, rather than first, resort.").

### POINT III

### THE DEFAULT SHOULD BE VACATED
### BECAUSE DEFENDANT HAS DEMONSTRATED GOOD CAUSE

**A.**   **Defendant's Failure to Respond to the Amended Complaint Was Not Willful**

As discussed in Defendant's moving Memorandum of Law, Defendant's default was due to difficulty in obtaining counsel and a miscommunication.  Further, had Defendant been properly served, his response to the Amended Complaint would have been due on or before October 6, 2021 and Plaintiff obtained a Certificate of Default on October 19, 2021.  Isser Decl. at Ex. 5.  Defendant appeared in this action to defend himself less than a month after his response to the Amended Complaint was due (if served) and less than a week after the Certificate of Default was obtained.  This too demonstrates that Defendant's default was not willful.  Indeed, numerous courts have concluded that promptly seeking to vacate a default, even a default judgment, demonstrates that the default was not willful.  *See* Isser Reply Decl. at Ex. 2 at 16-20.

Plaintiff incorrectly argues that of the three factors, "willfulness carries the most weight" and that a default should be set aside if it is willful.  Pl. Mem. at 20.  This is not correct.  Of the three factors to be examined to determine whether there is "good cause" to vacate a default, "[n]o single factor is dispositive."  *Onewest Bank, N.A. v. Ruiz,* 2018 WL 1318983, at *2 (E.D.N.Y March 13, 2018); *Goldstein v. Urgo Eleuthera Hotels Ltd.,* 2016 WL 1019394, at *2 (E.D.N.Y. February 10, 2018) (same).  As held in *Commercial Bank of Kuwait v. Rafidan Bank,* 15 F.3d 238, 243 (2d Cir. 1994), relied on by Plaintiff, "[t]he distict court must consider all three factors."  *See also Elohim EPF USA, Inc. v. 162 D&Y Corp.,* 2021 WL 2292682, at *4 (S.D.N.Y. June 4, 2021) ("[a]ll three factors in this case favor vacating the defaults. Though the Court ultimately concludes

14

that the Defaulted Defendants' defaults were *not* willful, a contrary conclusion would not alter the balance of the factors, which would still weigh in favor of vacating the defaults.") (emphasis original).

Plaintiff's argument that "[a] defendant's default is willful if the defendant was properly served yet failed to appear, answer or otherwise respond to the complaint," is without merit. Pl. Mem. at 21. If this were the law, which it is not, every default would be willful. Further, the cases relied on by Plaintiff do not support this statement.

In *Action S.A. v. March Rich & Co. Inc.,* 951 F.2d 505, 507 (2d Cir. 1991), relied on by Plaintiff, the defendant "admit[ed] he deliberately chose not to appear in the action" and waited over eight years before attempting to vacate the default. Pl. Mem. at 13-14. This is a far cry from the instant case, in which Defendant's default was due to difficulties in obtaining counsel and Defendant sought to vacate the Certificate of Default within a week after it was entered. *See also Securities and Exchange Commission v. Breed,* 2004 WL 1824358 (S.D.N.Y. August 13, 2004) (relied on by Plaintiff, willfulness based on violation of a court Order and numerous examples of improper conduct concerning service); *Westmark Development Corp. v. Century Surety Co.,* 199 F.T.D. 491, 496 (W.D.N.Y. 2001) (relied on by Plaintiff, finding willfulness due to lack of diligence, "[w]hat is most troubling is that [defendant] did not move expeditiously to open the default once he learned that default had been entered.")

Plaintiff's argument that "it is plausible" that Defendant believed that appearing in this action would "hurt his chances of receiving a reduced sentence" at an upcoming sentencing hearing in an unrelated matter is unsupported and based on pure speculation. Pl. Mem. at 21. Plaintiff offers no explanation concerning how appearing in this action may have "hurt" Defendant, nor does Plaintiff provide any evidence, other than impermissible speculation, to support this claim.

In *Puddo v. 6D Global Technologies, Inc.,* 2020 WL 2833852, at *4 (E.D.N.Y. May 31, 2020), the court rejected a similar argument.  In finding that the defendant's default was not willful, *Puddo* held that "the Court does not credit Plaintiffs' speculative argument that Wey had some litigation advantage to gain in *other litigations* to which he was a party by defaulting in this one." *Id.* (emphasis original).

Plaintiff's argument concerning Defendant's awareness of this action and/or that his wife retained counsel before him are irrelevant.  Pl. Mem. at 22.  Defendant does not claim his default was due to lack of knowledge.  It was due to difficulties in obtaining counsel and miscommunication with his wife's counsel, after which he expeditiously sought to vacate the default.

Plaintiff's argument that Defendant does not offer any evidence concerning his attempts to obtain counsel is incorrect.  Pl. Mem. at 22.  Defendant's testimony in the Petty Declaration constitutes sufficient evidence.  *See Onewest Bank, N.A.,* 2018 WL 1318983, at *2 ("in the context of a motion to vacate entry of default, a court should resolve a 'factual dispute regarding willfulness . . . in favor of the party moving to set aside the default.'").  As for Plaintiff's unsupported claim that that Defendant, Ms. Maraj and Ms. Maraj's counsel are each "susceptible to lying," this is just another unsupported and outrageous smear by Plaintiff.

Plaintiff's claim that Defendant's assertion that he "diligently sought to obtain counsel and spoke with a number of lawyers about representing me in this action (*my New York lawyer does not do this type of civil litigation*)" is "**demonstrably** false."  Pl. Mem. at 22-23 (bold original, italics added).  The basis for this erroneous assertion by Plaintiff is that Defendant is being represented by an attorney in a civil litigation in New York State and that Defendant offers no excuse for not having this attorney represent him.  Pl. Mem. at 23.  Yet, Plaintiff ignores her own

16

quote from the Petty Declaration, as Mr. Petty testified that "my New York lawyer does not do this type of civil litigation." Petty Decl. at ¶6. The New York State civil action concerns removing Defendant from the sex offender registry. *See* Blackburn Decl. at Ex. F. As stated in the Petty Declaration, his attorney in that action does not do the type of civil litigation as the instant case. Accordingly, this statement is not "demonstrably false" and there is a reason he did not retain his New York attorney in this action.

Plaintiff's argument that lacking funds to pay an attorney is insufficient to overcome willfulness misses the point. Pl. Mem. at 23. Defendant testified that "[b]ecause, however, I am married to a wealthy celebrity, lawyers I spoke with asked for outrageous fees and sought exorbitant retainers (such as $100,000)." Petty Decl. at ¶6. Defendant was not claiming that he did not have sufficient funds to hire a lawyer; only that he was unwilling to retain lawyers whom he believed were seeking to overcharge him due to his wife's celebrity and wealth. Obviously, no one would want to retain an attorney to defend oneself if he or she believed the attorney was taking advantage of them and/or ripping them off.

Plaintiff's arguments concerning Mr. Burstein's help in obtaining counsel are without merit. Defendant testified that Mr. Burstein stated he would help Defendant obtain counsel, and this is sufficient. As for Plaintiff's claim that Defendant has offered no excuse for the eleven day lapse between Mr. Burstein's notice of appearance and Defendant's counsel's notice of appearance this is explained in the Isser Declaration filed with Defendant's opposition to Plaintiff's Judgment Motion, which is incorporated herein. Isser Reply Decl. at Ex. 4 at ¶8.

Plaintiff's attempt to distinguish *Elohim EPF USA, Inc. v. 162 D&Y Corp.,* 2021 WL 2292682 (S.D.N.Y. June 4, 2021) and *New Falls Corp. v. Soni Holdings, LLC,* 2020 WL 2770922 (E.D.N.Y. May 8, 2020), *adopted by, New Falls Corp. v. Soni Holdings, LLC,* 2020 WL 2770015

17

(E.D.N.Y. May 28, 2020) is unavailing.  Pl. Mem. at 25.  For the reasons discussed in Defendant's moving Memorandum of Law, these cases demonstrate that the default was not willful.  As for Plaintiff's argument that in these cases the defendant's did not challenge service, that is irrelevant.

### B.    Defendant Has Demonstrated Meritorious Defenses

Plaintiff's argument that the allegations in the Amended Complaint are deemed admitted due to the entry of the Certificate of Default, and that for this reason Defendant is unable to demonstrate a meritorious defense, is without merit.  Pl. Mem. at 25-26.  If this were the case, no defaulting defendant would ever be able to demonstrate a meritorious defenses.  This is not the law and the cases relied on by Plaintiff concern situations in which the defendant did not oppose the motion for a default judgment, which is not the case here.

Indeed, Defendant has more than satisfied the "low threshold" required for demonstrating a meritorious defense.  Plaintiff's argument concerning Defendant's conviction for attempted rape is unclear.  Plaintiff argues that "plea deals often involve a defendant receiving a lower charge and reduced sentence in return for a guilty plea" and that "Defendant Petty would have likely received a more significant sentence if he had been convicted of rape at trial."  Pl. Mem. at 27.  This, however, does not change the fact that Defendant was **not** convicted of rape.  Accordingly, Plaintiff's argument that "[b]y pleading guilty, Defendant Petty admitted all of the facts underlying his conviction.  Those facts include him raping Plaintiff.   It is ***perjurious*** to now say otherwise" is inaccurate.  Pl. Mem. at 27 (emphasis original).

Regardless of the charges Defendant originally faced, and sentence he would have received if convicted of rape, the undisputed fact is that Defendant was **not** convicted of rape and did not admit to raping the Plaintiff.  It is not perjury for Defendant to deny that he raped Plaintiff and his denial is sufficient to establish a meritorious defense.  Further, Plaintiff's own cousin provided an interview on YouTube in which she stated that Plaintiff was lying about being raped by Defendant.

18

Isser Reply Decl. at Ex. 5 at 1, 6, 7, 9 and 12-13.  According to Plaintiff's cousin, the sexual encounter between Plaintiff and Mr. Petty was consensual.  Isser Reply Decl. at Ex. _ at 12-13. Plaintiff, however, was upset because after they had sex, Mr. Petty made her leave because Mr. Petty's "main girlfriend" was soon to arrive.  Isser Reply Decl. at Ex. 5 at 12-13.  Then, after getting in trouble for being late to school, Plaintiff fabricated the rape claim as an excuse.  Isser Reply Decl. at Ex. 5 at 12-13.

In addition to the meritorious defenses discussed in Defendant's Moving Memorandum, Plaintiff's claims are time barred.  As Defendant denies he raped Plaintiff, and did not plead guilty to rape, Counts I-III are barred by the statute of limitation, which is three years.  CPLR § 214. Although the alleged rape occurred in 1994, Plaintiff claims that these causes of action are timely, relying on Section 214-g of the New York CPLR.  Am Comp. at ¶29 and Fn 4.  For the reasons discussed in Defendant's Opposition Memorandum to Plaintiff's Judgment Motion, Section 214-g does not apply and Plaintiff's claims are time barred, which is another meritorious defense.  Isser Reply Decl. at Ex. 2 at 23.

It should be noted that the majority of Plaintiff's allegations do not concern Defendant Petty, do not concern improper conduct and do not support claims of intimidation or harassment. For example, the "abuse" Plaintiff was subjected to by her family, and rape by her Uncle, have nothing to do with Defendant.  Am. Compl. at ¶ 76.  Nor does Plaintiff explain how being contacted by attorneys and others, seeking for Plaintiff to recant her allegations of rape, is improper.  Am. Compl. at ¶¶ 95-98, 110-111.  There is no allegation (or evidence) that Defendant caused or requested that any of these people contact Plaintiff, and Defendant has testified that he never asked anyone to communicate with Plaintiff, that he never obtained counsel for Plaintiff and that he is unaware of anyone he knows obtaining counsel for Plaintiff.  Petty Decl. at ¶¶ 10-15; Isser Reply

Decl. at Ex. 3 at ¶¶ 10-19.  Further, Defendant was unaware that Black had been communicating with Plaintiff until Black asked Defendant to provide him with his wife's phone number, and although he provided the phone number, he told Black not to communicate with Plaintiff.  Reply Decl. at Ex. 3 at ¶15.

For any and all of the above discussed reasons, Defendant has demonstrated he has meritorious defenses.

**C.**   **Plaintiff Will Not Suffer Prejudice if the Default it Vacated**

In support of Plaintiff's argument that she will suffer prejudice if the default is vacated, Plaintiff relies on her claim that the Petty Declaration contained false statements concerning service.  Pl. Mem. at 28.  Plaintiff erroneously argues that "defendants' willful deceit should undermine the Court's confidence that defendants **will** cooperate in discovery."  Pl. Mem. at 28 (emphasis original).  For the reasons discussed above, because the Petty Declaration was truthful, this argument fails.  Further, the cases relied on by Plaintiff do not support her argument that an allegedly untruthful statement demonstrates prejudice.

In *Radian v. Brandbaid Communications Corp.,* 2004 WL 1933573, at *4 (S.D.N.Y. August 30, 2004), relied on by Plaintiff, although the Court was concerned that the defendant had "played 'fast and loose' in these proceedings," by taking inconsistent positions, the court found that the plaintiff would suffer prejudice for numerous reasons.  *Id.*  This also was the case in all of the other cases relied on by Plaintiff, *American Hotel Register Company v. American Sales Brokerage Company,* 2007 WL 4192205, at *6 (N.D. Ohio November 21, 2007) and *World Magic International AVV v. Eddy International Ltd.¸* 2010 WL 4457184, at *2 (S.D.N.Y. November 1, 2010).  Plaintiff has not cited any case in which a Defendant lying was the sole basis of a finding of prejudice (and Defendant did not lie).

Plaintiff's argument that Defendant is unlikely to be honest during discovery is without merit. Pl. Mem. at 28-29. This is not the type of prejudice which justifies entering a default, as opposed to witnesses being unavailable.

Further, not only would this not constitute prejudice, but it is entirely speculative and erroneously based on Plaintiff's incorrect assertion that the Petty Declaration was not truthful and on Defendant's "criminal record." Defendant's criminal record, however, would not be admissible to impeach him under the Rule 609(a)(2) of the Federal Rules of Civil Procedure because the crimes do not involve "a dishonest act or false statement." Plaintiff's repeated references to Defendant's "criminal record" is nothing but an improper attempt to prejudice the Court against Defendant and to smear Defendant.

In addition, Plaintiff relies on Defendant's "guilty plea," which "bars him from disputing the facts of his conviction." Pl. Mem. at 29. As discussed, however, Defendant did not plead guilty to rape and can dispute the allegation that he raped Plaintiff. That he registered as sex offender is irrelevant, as his conviction for attempted rape required him to do so.

Plaintiff argues that she will suffer prejudice if her motion is not granted because Defendant's counsel is "colluding" with Ms. Maraj's counsel. Pl. Mem. at 29. Not only is this absurd, it also is insulting. The basis of this allegation is that Defendant's counsel did not appear in this action until ten days after Ms. Maraj's counsel appeared. Plaintiff argues that this is "suspicious." Pl. Mem. at 29. Defendant's counsel did not appear in this action until ten days after Ms. Maraj's counsel because he was not retained until after Ms. Maraj's counsel appeared. Isser Reply Decl. at ¶8. After being retained the evening of October 20, 2021, Defendant's counsel waited to finish Defendant's motion papers to vacate the Certificate of Default until he appeared in the action, less than a week later. Isser Reply Decl. at ¶8.

21

That Defendant's counsel spoke with a witness one day before filing a notice of appearance does not demonstrate prejudice.  Pl. Mem. at 29.  There is nothing wrong with defense attorneys interviewing potential witnesses or individuals who can provide relevant information.

In *New Falls Corp. v. Soni Holdings, LLC,* 2020 WL 2770922, at *6-7, the court noted that the defendants moved to vacate the certificate of default "two weeks after the Clerk of the Court entered its notation of default" and that the defendants "had only been in default for approximately four weeks – a period that hardly would be defined as 'prejudicial.'"  *Id.*  The Court then concluded that "[w]here, as here, the delay occasioned by the default is brief, the risk of any resulting loss of evidence, discovery difficulties, or opportunities for fraud is minimal."  *Id.*  The same can be said here.

## CONCLUSION

For any and all of the reasons discussed above, Plaintiff's motion should be denied in its entirety and the default should be vacated.

Dated:  New York, New York
          November 22, 2021

Law Offices of Steven D. Isser

By:_____
     Steven D. Isser. Esq.
424 Madison Avenue, Third Floor
New York, New York 10017
(212) 812-5096
*Attorneys for Defendant Kenneth Petty*