# **EXHIBIT 3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JENNIFER HOUGH,

                                Plaintiff,

- against -

ONIKA TANYA MARAJ, AKA ("NICKI MINAJ")
and KENNETH PETTY, AKA ("ZOO"),

                                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Civil Action No. 21-cv-04568
(ENV) (JRC)

**DECLARATION OF KENNETH PETTY**

KENNETH PETTY, declares under penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am a Defendant in this action and I have personal knowledge of the matters set forth in this Declaration. I submit this Declaration in opposition to Plaintiff Jennifer Hough's motion for a default judgment.

**The Claimed Personal Service of the Summons and Complaint**

2. I am advised that the Plaintiff in this action, Jennifer Hough ("Plaintiff"), has filed an Affidavit of Service from a process server who claims I was served because he personally handed me the Summons. This is incorrect and this never happened. No one ever handed me, or tried to hand me, the Summons, Complaint, Amended Complaint or any other document in this litigation. I did not receive the Summons, Complaint, Amended Complaint or any other document in this litigation in the mail.

3. I am further advised that that the Affidavit of Service describes the individual served as "200 lbs, 5'10." I do not, however, weigh 200 pounds and I am not 5 feet and 10 inches tall. I weigh approximately 170-175 pounds and I am only 5'9'' tall. Attached hereto as Exhibit ("Ex.") 1 is a true and accurate picture taken on October 27, 2021 of my wife (who is approximately

5'2") and me.

4. Further, there is no person who resides in my house or who was present there on September 15, 2021, who fits the description contained in the Affidavit of Service.

**My Attempts to Obtain Counsel**

5. My failure to respond to the Amended Complaint by the date which Plaintiff claims was my last day to do so was due to difficulties in obtaining counsel and a miscommunication.

6. After learning about the Amended Complaint, I diligently sought to obtain counsel and spoke with a number of lawyers about representing me in this action (my New York lawyer does not do this type of civil litigation). Because, however, I am married to a wealthy celebrity, lawyers I spoke with asked for outrageous fees and sought exorbitant retainers (such as $100,000). During this time, my wife, a co-defendant in this action, also was seeking to obtain counsel and was in the process of retaining Judd Burstein, Esq. to represent her in this action. Mr. Burstein had agreed to help me obtain counsel. Due, however, to a miscommunication between Mr. Burstein and my wife, my wife and I both mistakenly believed that Mr. Burstein had been retained and was looking for counsel for me. This miscommunication is discussed in the Declaration of Judd Burstein and the Declaration of Onika Tanja Maraj, previously filed with the Court, true and correct copies of which are collectively attached hereto as Ex. 2.

7. After Mr. Burstein was retained by my wife, he referred me to my current counsel. I immediately retained my current counsel and he soon thereafter filed the instant motion.

**The Allegations in the Amended Complaint**

8. Plaintiff falsely alleges that I raped her and that I was convicted of rape. Plaintiff knows that these allegations are not true. I was not convicted of raping Plaintiff in 1994, 27

years ago. I pled guilty to, and was convicted of, *attempted* rape. Attached hereto as Ex. 3 is a true and correct copy of the Sentence and Commitment form from my criminal case, which reflects that I was convicted of attempted rape, and not of rape.

9. I never raped the Plaintiff and I deny her accusations of rape contained in the Amended Complaint. I also deny all of Plaintiff's allegations in the Amended Complaint that I committed any improper conduct, sexual abuse and/or sexual assault. The sexual encounter between Plaintiff and I, which occurred 27 years ago, was consensual and Plaintiff was a willing participant. I did not force Plaintiff into a house, I did not force Plaintiff to have sex with me and I did not sexually or physically assault Plaintiff in any way. Nor did I ever threaten Plaintiff. I pled guilty to attempted rape, despite my innocence, because I was a scared 16 year old kid and was told that my sentence would be 20 years to life if I did not plead guilty to attempted rape.

10. Plaintiff also alleges that I caused various people to harass, threaten or intimidate her. I deny that I ever did this. The overwhelming majority of the allegations contained in the Amended Complaint are too vague and conclusory for me to specifically deny each one herein. Accordingly, I will only address certain of the more specific allegations. As stated, however, I deny all of the material allegations in the Amended Complaint of improper conduct.

11. I have never, directly or indirectly, intimidated, harassed or threatened Plaintiff in any way.

12. I have never, directly or indirectly, intimidated, harassed or threatened any of Plaintiff's relatives in any way.

13. I have never requested that anyone intimidate, harass or threaten Plaintiff or any of Plaintiff's relatives.

14. I never asked anyone to contact Plaintiff, including the individuals identified

in the Amended Complaint.

15. Plaintiff claims that she was contacted by an individual named Barry Dukes, also known as "Black." My wife and I grew up in the same neighborhood with Black, although we are not close to each other. To be absolutely clear, I would not and did not ask him to contact or communicate on my behalf with Plaintiff. I did not know that Black was communicating with Plaintiff until he asked me for my wife's phone number so that Plaintiff and my wife could speak. Although I gave Black my wife's phone number, I told him that he should not communicate with Plaintiff. Even if Plaintiff recanted her false allegations of rape, this would not have affected the charges against me regarding my failure to register as a sex offender, as the issue is whether I registered or not, and why.

16. To be clear, I never gave Black any money, much less $20,000, to offer to Plaintiff.

17. That being said, I do not know whether Black tried to pretend that he was acting on behalf of my wife and me. Given my wife's celebrity, however, it would not be surprising that someone who grew up with us would try to make a connection to my wife by coming to her after-the-fact to take credit for having solved a "problem" which he was never asked to solve. In our world, people would pay far more than $20,000 to cultivate a relationship with her.

18. I never obtained counsel for Plaintiff and I am unaware of anyone I know obtaining counsel for Plaintiff. Nor would I have ever done so.

19. I never stalked Plaintiff or any of her relatives. Indeed, I do not know where any of them live today, although, very recently, I have since received a second-hand account that her brother is now a fugitive from an arrest warrant. In fact, I have not seen or communicated with Plaintiff since approximately 1994.

## **CONCLUSION**

For any and all of the reasons discussed above, my motion should be granted in its entirety.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of November, 2021, in the State of California, County of Los Angeles.

Kenneth Petty