**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JENNIFER HOUGH,

                 Plaintiff,

    -against

                                 Civil Action No. 21-cv-4568-ENV-JRC

ONIKA TANYA MARAJ AKA
("Nicki Minaj"), an individual,
KENNETH PETTY, AKA ("Zoo"),
an individual

                  Defendants.

## REPLY TO MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT KENNETH PETTY'S MOTION FOR DEFAULT JUDGMENT

Steven N. Gordon, Esq.
*Tsyngauz & Associates, P.C.*
Attorneys for Plaintiff
114 Mulberry Street, Ground Floor
New York, New York 10013

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ 3

PRELIMINARY STATEMENT ........................................................................................ 5

ARGUMENT ....................................................................................................................... 7

   I.    HOUGH PROPERLY SERVED KP AND OTM ................................................... 7

   II.    KP FAILS TO DEMONSTRATE GOOD CAUSE ............................................. 10

      A.    KP Willfully Chose to Not Respond To The Amended Complaint ........................... 12

      B.    KP Has No Meritorious Defenses to Any Causes of Action ..................................... 14

      C.    Hough Will Be Substantially Prejudiced If Default Judgment Is Not Entered Against KP   17

   III.    HOUGH ALLEGES ALL PLAUSIBLE CAUSES OF ACTION IN THE AMENDED COMPLAINT. ............................................................................................................. 18

      A.    Hough Sufficiently Alleges Intentional Infliction of Emotional Distress Against KP under New York Law ................................................................................................ 18

      B.    Hough Sufficiently Plead A Claim for Assault and Battery Against KP Under New York Law ................................................................................................................. 19

      C.    Hough Pleads A Viable Claim Against KP For Negligent Infliction of Emotional Distress Under New York & California Law ............................................................. 19

      D.    Hough Pleads A Viable Claim For Harassment Under California And Georgia Law 20

      E.    Hough Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law ........................................................................ 21

CONCLUSION .................................................................................................................. 21

## **TABLE OF AUTHORITIES**

Cases

*Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991).....................................12

*Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y. Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008) ............................................................................................14

*Allstate Ins. Co. v. Bogoraz*, No. 10-CV-5286 (SJF)(ETB), 2012 U.S. Dist. LEXIS 68110, at *15 (E.D.N.Y. May 9, 2012)..........................................................................................................17

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)......................................15

*American Guarantee & Liability Ins. Co. v. Irvine Auto Towing Inc.* 2021 WL4459668, at *2 (N.D. Cal. March 26, 2021) ......................................................................................................9

*Artmatic USA Cosmetics v Maybelline Co.*, 906 F Supp 850, 855 n 2 (EDNY 1995) ...................13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .............................................................................18

*Badian v. Brandaid Commc'ns Corp.*, No. 03 Civ. 2424 (DC), 2004 U.S. Dist. LEXIS 17404, 2004 WL 1933573, *4 (S.D.N.Y. Aug. 30, 2004), *aff'd*, 165 Fed. App'x 886 (2d Cir. 2006) .17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................................18

*Bossuk v. Steinberg*, 58 N.Y.2d 916, 918 (1983) ........................................................................9

*Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) .......................................................................11

*Cablevision Sys. New York City Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) ...................8

*Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir. 1994) ..........................17

*Dominican Sisters of Ontario, Inc. v. Dunn*, 272 A.D.2d 367, 368, 707 N.Y.S.2d 215, 216 (2d Dep't 2000) ............................................................................................................................8

*Elohim EPG USA, Inc. v. 162 D&Y Corp.*, 2021 WL 2292682 (S.D.N.Y. June 4, 2021) ............13

*Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood* ......................................15

*F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002) ................................15

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir.2013) ..................................11

*Gumbs Thomas Publishers, Inc. v Lushena Books*, at *1, 99-cv-3608(ILG) (E.D.N.Y, Mar. 3, 2003)......................................................................................................................................13

*Herbalife Int'l of Am., Inc. v Healthy1 Inc.*, *4-5 [9th Cir, Oct. 8, 2020, No. 19-56435] ................9

*High Farms, LLC v. King*, No. 16-CV-736 (NGG) (PK), 2019 WL 1208785, at *2 (E.D.N.Y. Mar. 14, 2019)........................................................................................................................8, 10

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) ..........18

*ILGWU Nat. Ret. Fund v. Empire State Mills Corp.*, 696 F. Supp. 885, 888 (S.D.N.Y. 1988).....15

*In re Ball*, 2 CalApp2d 578, 579 [Cal Ct App 1934] ...................................................................10

*Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ...................................15

*King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 98 (E.D.N.Y. 2004).......................8, 13

*Mack Finanical Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011).......................................................................15

*Naughright v. Weiss*, No. 10 Civ. 8451, 826 F. Supp. 2d 676, 2011 U.S. Dist. LEXIS 133742, at 45-46 (S.D.N.Y. November 18, 2011) ......................................................................................19

*New Falls Corporation v. Soni Holdings*, 2020 WL 2770922 (E.D.N.Y May 8, 2020)................13

*New York v. Green*, 420 F.3d 99, 108-09 (2d Cir 2005) .............................................................7

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) ................................................. 15

*quoting Simonds v. Grobman*, 277 A.D.2d 369, 716 N.Y.S.2d 692, 693 (2d Dep't 2000).............. 8

*Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012). ..................................... 19

*S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. Aug. 13, 2004) ....................................................................................................................................... 12

*See S.E.C. v. Morton*, No. 10 CIV. 1720 LAK MHD, 2011 WL 1344259 (S.D.N.Y. Mar. 31, 2011), *report and recommendation adopted*, No. 10 CIV. 1720 LAK, 2011 WL 11768504 (S.D.N.Y. Nov. 3, 2011).................................................................................................. 10

*Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010)........... 19

*Single Source Roofing Corp. v. 228 Granite Ave. Realty, LLC*, No. 05 CV 1241 NG SMG, 2005 WL 3113421, at *3 (E.D.N.Y. Nov. 22, 2005) ....................................................... 8

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014)...................................... 18

*U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 899 F.Supp. 974, 981 (E.D.N.Y. 1994) ....................................................................................................... 16

*United National Insurance Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d. Cir.1993) ..... 19

*Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011)...................... 12

*World Magic Int'l AVV v. Eddy Int'l, Ltd.*, 2010 U.S. Dist. LEXIS 116962, at *6 (S.D.N.Y. Nov. 1, 2010) ................................................................................................................ 17

*Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014)................................. 21

**Statutes**

Cal. Civ. Proc. Code§ 415.10 ............................................................................... 10

Cal. Code Civ. Proc., § 527.6 ............................................................................... 21

## PRELIMINARY STATEMENT

This a Child Victim Act ("CVA") and harassment case against a celebrity Onika Tanya Maraj ("OTM") and husband Kenneth Petty ("KP") a convicted sexual offender and felon (collectively, "Defendants"), who intentionally committed and orchestrated actions to pressure, harass, intimidate, and cause severe emotional distress to the Plaintiff, Jennifer Hough ("Hough"). On April 5, 1995, KP pled guilty to Attempted Rape in the First Degree in the Supreme Court of the State of New York, Queens County, Case Number 4521-94. "December 11, 1997, the New York State Board of Examiners of Sex Offenders designed defendant as a Level 2 sex offender based upon his 1995 conviction…required, for the rest of his life, to verify his address every year with the New York State Sex offender Registry." (DE49, Case 2:20-cr-010108-MWF). Hough lived for more than a quarter of a century in obscurity following her violent rape. Meanwhile, KP married OTM and relocated to California in 2019. That year, KP encountered law enforcement on July 14, September 30, and November 15. "During the traffic stop in November 2019, defendant acknowledged that he had not registered as a sex offender in California." (*id).* The November 15th encounter was the basis for KP's Indictment, Case No. 2:20-cr-00108-MWF (the "00108 case") . (DE1, Case No. 2:20-cr-00108-MWF). Following these encounters, OTM began to publicly discuss Hough in a negative light more frequently. (DE8 ¶84-86).

On March 20, 2020, KP entered a "not guilty plea" in the 00108 case, but pled guilty by August 6, 2021. KP awaits sentencing on January 24, 2022, and faces up to ten (10) years prison, lifetime supervision, and a $250,000 fine. (DE12, DE49, DE54 00108 case). Sentencing will depend on a number of factors, including KP's criminal history and aggravating and mitigating factors. (*id* DE49) Answering the instant case lawsuit would reveal exceptionally damaging facts

prior to KP's sentencing. KP has strong incentive to force Hough to recant her report of violent rape and intentionally delay this case to limit criminal repercussions.

OTM is more than a mere rapper –Forbes repeatedly lists her as one of the most highly compensated commercial artists. OTM earns substantial wealth from seven figure endorsements and collaborations: Pepsi (2012),[1] MAC Cosmetics, including a "VIVA Glam lipstick" (2013),[2] OPI Nail Polish,[3] and a now-discontinued Kmart clothing line.[4] Being married to a sexual offender threatens OTM's image and brand. Notably, in September 2021, OTM announced she would not perform at the 2021 MTV Video Music Awards, following Petty's guilty plea in the 00108 case and this lawsuit.[5] OTM has a significant incentive to keep her husband out of prison for her and their small child, and protect her income. The genesis of this legal dispute is *not* Hough desiring money from OTM – Defendants have been romantically linked since 2018. Every claim originates from Defendants' conduct and avoiding the consequences of that conduct – at all costs.

Defendants will go to any lengths to protect their own interests. KP was convicted of first-degree manslaughter in the death of Lamont Robinson after his release from prison for the offense against Hough. In a now-deleted May 2021 post, OTM published her own 2003 mugshot for criminal possession of a weapon with the intent to use. OTM stated, "Criminal possession with the intent to use. I did use it tho.… The girl was leaking blood and spent days in the hospital. The word on the street was that I was gonna b deported. I was so scared. LOL. I was 'on the run.'…. Bwahahahaaaa. #Growth."[6] Defendants have a violent criminal history without remorse. Considering this, Hough had little choice but to file this case on August 13, 2021. [DE1] Plaintiff

[1] Nicki Minaj Scores Multi-Million Dollar Deal to Become Face of Pepsi – VIBE.com
[2] Nicki Minaj Breaks A MAC Cosmetics Sales Record (DETAILS) | Global Grind
[3] Fashion Polish: Nicki Minaj exclusive nail polish collection for OPI
[4] Nicki Minaj Collection Discontinued at Kmart, Rep for the Retailer Confirms – Billboard
[5] Nicki Minaj Pulls Out of MTV VMAs As Husband Faces up to a Decade in Prison (newsweek.com)
[6] Whoops: Nicki Minaj Accidentally Posts Her Social Security Number on Social Media | lovebscott.com

properly served Defendants on September 15, 2021. [DE13,14]. Defendants failed to respond on or before October 6, 2021. Defendants ignored this lawsuit, engaging in vexatious gamesmanship to feign innocence and/or lack of financial means. KP is and was represented by counsel at the time of his service with a multimillionaire spouse to assist him. Rarely is a default so clearly orchestrated to avoid other more serious consequences – such as, ten (10) years of incarceration or loss of tens of millions of dollars. KP intentionally, willfully defaulted on this case to limit criminal consequences; therefore, this Court should grant Plaintiff's Motion for Default.

## ARGUMENT

Defendant KP intentionally defaulted after proper service and strategically attempts to delay responding to the Amended Complaint to limit criminal consequences. KP's decision to avoid responding to the allegations in the Amended Complaint, allow KP to avoid making admissions pertaining to his post arrest actions and potential pre-trial release violations. "The District Court found that Defendants willfully defaulted in this case and that their failure to file an answer was a 'part of an overall plan to delay the proceedings and remediation of the site.' "[W]e have refused to vacate a judgment where the moving party had apparently made a strategic decision to default."" *New York v. Green*, 420 F.3d 99, 108-09 (2d Cir 2005) (citations omitted). KP's attempt to argue *now,* that courts prefer to decide cases on the merits is not a basis for determining that the default was unintentional. None of the cases cited by KP relate to a defendant with a distinct incentive and advantage in delaying an action, intentionally.

### I.    HOUGH PROPERLY SERVED KP AND OTM

Plaintiff Hough properly served KP at home while under pre-trial supervision for the 00108 case. (Exhibit A, Preconditions Release, DE15 00108 case) Process server Robert Diaz ("Diaz") confirmed that 23483 Park Colombo, Calabasas, California 91302 (the "residence") was the

residence of KP and OTM. (DE25-2 ¶¶7-12). KP was restricted to remain in his residence every day with a curfew, with limited travel to "CAC and San Diego County." (*See* Exhibit A) KP's declaration reveals he **does not deny** that: (1) KP was present at the residence September 15, 2021; (2) KP spoke to his security officer to resist service on September 15, 2021; (3) Diaz saw KP through a window and recognized from photographs; (4) KP refused to open the door; (5) Diaz knocked, announced himself and that KP and OTM were served, showing the documents to KP. (*See* DE25-2). Under New York law, Diaz's sworn affidavit or proof of service constitutes prima facie evidence that service was proper. *High Farms, LLC v. King*, No. 16-CV-736 (NGG) (PK), 2019 WL 1208785, at *2 (E.D.N.Y. Mar. 14, 2019). KP does not deny that he was served (DE 28, *Petty Declaration*). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). KP failed "to swear to 'specific facts to rebut the statements in the process server's affidavits.'" *Id*. (*quoting Simonds v. Grobman*, 277 A.D.2d 369, 716 N.Y.S.2d 692, 693 (2d Dep't 2000)); *Single Source Roofing Corp. v. 228 Granite Ave. Realty, LLC*, No. 05 CV 1241 NG SMG, 2005 WL 3113421, at *3 (E.D.N.Y. Nov. 22, 2005).

KP takes issue with being described as 1 inch taller and heavier in the Diaz declaration. Such is insufficient to rebut proper service (*See Konikov*, 182 A.D.3d at 753, 122 N.Y.S.3d. at 724; *Cablevision Sys. New York City Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006); *Dominican Sisters of Ontario, Inc. v. Dunn*, 272 A.D.2d 367, 368, 707 N.Y.S.2d 215, 216 (2d Dep't 2000). Rule 4(e)(2)(a) does not require process servers to measure and weigh the intended target of service; approximations are acceptable as evidence of a person served. *See Dallas v. Vosburgh*, No. 18-CV-336-FPG, 2019 WL 4573743, at *2 (W.D.N.Y. Sept. 20, 2019). KP quotes

8

to *American Guarantee & Liability Ins. Co. v. Irvine Auto Towing Inc.* 2021 WL4459668, at *2 (N.D. Cal. March 26, 2021). None of the cases cited by KP relate to a person under pretrial release supervision confined to the residence where service is attempted and completed properly. The Ninth Circuit declined to vacate a default judgment when a defendant interposed a door between herself and the process server and similarly claimed the person served was not her.

> Martinez argues that, even assuming these facts, service was legally deficient because she did not physically take the documents. Martinez is mistaken. State law controls service of process. Fed. R. Civ. P. 4(e)(1).….**Martinez's contention that the relevant documents were not delivered to her because she did not physically take them is incorrect under New York caselaw**. New York's highest court has held that "under CPLR 308 (subd 1), delivery of a summons may be accomplished by leaving it in the 'general vicinity ' of a person to be served who **'resists'** service ." So "if the person to be served interposes a door between himself and the process server, the latter may leave the summons outside the door, provided the person to be served is made aware that he is doing so." .… Martinez refused to open the door to accept receipt of the documents from the process server. The process server then wedged the documents into the wrought-iron screen door and affirmed that Martinez saw him do this and knew that the materials left were for her. (Martinez does not dispute this fact in her affidavit.) Accordingly, under New York law, Martinez was properly served.

*Herbalife Int'l of Am., Inc. v Healthy1 Inc.*, *4-5 [9th Cir, Oct. 8, 2020, No. 19-56435] (citing to *Bossuk v. Steinberg*, 58 N.Y.2d 916, 918 (1983)) (quoting *McDonald v. Ames Supply Co.*, 22 N.Y.2d 111, 115 (1968)))(emphasis added).

Diaz asserted KP was confirmed home, a security advised KP by telephone that Diaz was there to serve him, and Diaz was close enough to recognize KP through a window (from a photograph). (*See* DE25-2 ¶¶ 7, 10, 11). Similar to *Herabalife*, KP refused to open the door. Diaz them announced himself and informed KP that he had been served, showing the two documents prior to leaving in front of the door. (*id* ¶11). KP fails to rebut or deny critical elements of proper service or deny the elements in Diaz's Declaration.. "[W]hen men are within easy speaking distance of each other and facts occur that would convince a reasonable man that personal service of a legal document is being attempted, service cannot be avoided by denying service and moving away without consenting to take the document in hand." *In re Ball*, 2 CalApp2d 578, 579 [Cal Ct

App 1934]. Diaz effectuated *personal delivery* of a copy of the summons and of the complaint upon an individual personally, satisfying New York, California, and federal rules for proper service. *See S.E.C. v. Morton*, No. 10 CIV. 1720 LAK MHD, 2011 WL 1344259, at *10 (S.D.N.Y. Mar. 31, 2011), *report and recommendation adopted*, No. 10 CIV. 1720 LAK, 2011 WL 11768504 (S.D.N.Y. Nov. 3, 2011) ("[p]ersonal service on the [defendants] of course satisfies New York, California and federal requirements for them"); Rule 4(e)(1) & (e)(2)(A); CPLR 313 & 308(1); Cal. Civ. Proc. Code§ 415.10.

KP denies facts not alleged, "No one ever handed me, or tried to hand me, the Summons, Complaint, Amended Complaint or any other document in this litigation." (*See* DE 28 Petty Declaration ¶2). Diaz's declaration did not allege these events. *See*, *e.g.*, *High Farms*, No. 16-CV-736 (NGG) (PK), 2019 WL 1208785, at *3 (holding that where it provided that she was never served since nothing was posted to her door and the summons and complaint was not received in the mail, defendant's sworn declaration was too bare and facile to rebut the presumption of proper service to warrant an evidentiary hearing). KP does not deny the information regarding proper service by Diaz, merely pointing to facts not contained in the Declaration or irrelevant. Therefore, the presumption of proper service is undisturbed and no hearing is required.

## II.   KP FAILS TO DEMONSTRATE GOOD CAUSE

KP fails to establish good cause under FRCP Rule 55(c), which permits "[t]he court may set aside default for good cause…." KP also fails to candidly advise the Court that the actions described in the instant case may impact his upcoming sentencing hearing for failing to register as a sex offender, to take place on January 24, 2022. The Second Circuit has established three criteria in order to decide whether default judgment should be entered or vacated. *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d

182, 186 (2d Cir. 2015) (citation omitted). "These criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Bricklayers*, 779 F.3d 182, 186 (2d Cir. 2015) (*citing Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir.2013)). KP engaged in willful, intentional actions to delay this litigation, with a clear incentive to avoid making admissions in this matter to avoid criminal repercussions. "Of the three criteria to be evaluated in the context of a default , "willfulness is preeminent, and a willful default will not normally be set aside." *Gov't Emps. Ins. Co. v Anikeyev*, *8-9 [EDNY, Mar. 31, 2016, 14-cv-3775 (KAM) (SMG)](internal quotations and citations omitted). KP attempts to deny a decades old conviction for attempted rape, despite that the CVA does not require a conviction. KP further makes self-serving conclusory statements, which are mere denials rather than suggesting any evidence would support defenses. Finally, given the history of violent offenses, outrageous conduct, and repeated attempts to coerce, threaten and force Plaintiff to acquiesce to Defendants' demands, and KP's potential incarceration, the prejudice to Plaintiff is substantial.

A.  *KP Willfully Chose to Not Respond To The Amended Complaint*

KP's desire to limit criminal exposure at his sentencing in the 00108 case by refraining from making statements in this case demonstrates willfulness. "A default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991). Failure to explain why the Complaint was not answered is sufficient to demonstrate willfulness. *See McNulty,* 137 F.3d at 739. KP was properly served yet failed to appear, answer, or otherwise respond to the complaint. *See*, *e.g.*, *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991) (finding willfulness where the defendant failed to appear in fear of being indicted); *see also*, *S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8– 9 (S.D.N.Y. Aug. 13, 2004) (finding willfulness where the defendant was properly served but answered two weeks after the due date) (emphasis added); *Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011) (finding willfulness where the defendant neglected to respond to the third-party complaint, among other things). KP alleges "difficulty obtaining counsel." (*See* Petty Declaration, ¶5). In Case 00108, KP has three (3) active attorneys representing him at this time: Meghan A. Blanco, Hagop Kuyumjian, and Michael A. Goldstein. (*See* 00108 case). KP is also represented by Alan Gerson, in Case No. 1:21-cv-04677-EKRLM (the "04677 case"), filed five (5) days after the instant case on August 19, 2021 (*See* 04677 case). The same day Hough filed her Summons Returned Executed, KP *also* filed his summons (*See* DE9, DE10 in the 04677 case). KP was represented by no less than four (4) attorneys at the time he was served.

KP defines "difficulty" as being requested to pay $100,000 retainer as a "exorbitant." (*See* Petty Declaration ¶6). KP does not allege he is indigent or unable to pay $100,000. On March 10, 2020, DE13 of the 00108 case states: "FINANCIAL ENTRY as to Defendant Kenneth Petty: Received $100,000.00 into the registry of the Court from Kenneth Petty on 03/09/2020. Receipt

number LA203431. (pri) (Entered: 03/10/2020)" (*See* DE 13 in the 00108 Case). KP allegedly purchased of a 17 carat diamond ring, reportedly at a cost exceeding $1,000,000, with clarification from OTM and KP that **_KP_** paid for this ring, not OTM.[7] Even if KP could not afford $100,000, that is not a basis for vacating a default. "A party's lack of funds… does not justify a party's complete disregard of the rules of the court or its failure to notify the court of its predicament." *ILGWU Nat. Ret. Fund v. Empire State Mills Corp.*, 696 F. Supp. 885, 888 (S.D.N.Y. 1988); *King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 98 (E.D.N.Y. 2004).

Notably, KP does not state he was unaware of the lawsuit or deadline to respond. (*See* Petty Declaration.). "Courts have held a default to be willful when a defendant knew about the complaint and failed to respond. . . where the defendant fails to comply with the court's orders." *Gumbs Thomas Publishers, Inc. v Lushena Books*, at *1, 99-cv-3608(ILG) (E.D.N.Y, Mar. 3, 2003) (internal quotations omitted). Unwillingness to pay counsel is not a basis to vacate a default, nor are excuses of selected counsel. "Recent decisions have increasingly suggested that failures of a party's chosen counsel are not reasonable bases for relief under Rule 60(b)." *Artmatic USA Cosmetics v Maybelline Co.*, 906 F Supp 850, 855 n 2 (EDNY 1995) (internal quotations omitted). KP does not explain why he could not advise the Court or Plaintiff's counsel that he needed extra time to find counsel, temporarily represent himself *pro se*, or seek an extension. Like *ILGWU* and *King*, such failure is inexcusable and does not demonstrate that KP's failure to respond was not willful.

KP's reliance on *Elohim EPG USA, Inc. v. 162 D&Y Corp.*, 2021 WL 2292682 (S.D.N.Y. June 4, 2021) and *New Falls Corporation v. Soni Holdings*, 2020 WL 2770922 (E.D.N.Y May 8, 2020) is misplaced. In *Elohim*, the defaulted defendants conceded that they were properly served

---

[7] [Nicki Minaj's Husband Buys Her Wedding Ring Valued at $1.1 Million (tmz.com)](#)

with the lawsuit but failed to timely respond due to miscommunications between their corporate counsel and defense counsel. Defaulted defendants, unlike here, provided a more elaborate explanation, including confusion over corporate counsel's assertion of the phrase *pro hac vice*. Ultimately, though, the court did not vacate that default judgment simply because delays due to the Covid-19 pandemic. *Id*. at *3. KP provided no evidence, *e.g.* redacted emails, engagement agreements, or text messages to substantiate his sworn statement. Unlike *Elohim* and *New Falls*, OTM's attorney filed a notice of appearance 11 days prior to KP's attorney filing one. OTM's counsel would likely have advised OTM that her husband had not yet responded or filed a notice of appearance and counseled her on any exposure associated with KP's default. Here, KP is represented by four (4) different attorneys in two (2) different active cases. KP was aware of the deadline to respond and the lawsuit, or he would not have sought counsel. KP faces criminal repercussions which may be exacerbated by responding to this case. KP did not want to pay the amount many attorneys requested as a retainer, knowing he had been served and a deadline existed. This failure is intentional and willful and the Court should not set aside the default judgement.

### B. KP Has No Meritorious Defenses to Any Causes of Action

KP's wan attempts to deny decades old admissions of guilt are self-serving, likely inadmissible, unpersuasive and not meritorious defenses. Upon entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations of liability, except those relating to damages. *Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y. Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008). "Where a defendant **fails to answer** the complaint, courts are **unable** to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, **this factor weighs in favor of granting a default**

**judgment**." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) (emphasis added) (*quoting Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood,* No. 11–CV–46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012); *see*, *Mack Fininacl Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011); *see also*, *F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002). If all facts were not deemed admitted, a defaulting defendant would be required to "present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see*, *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (holding that a defense is meritorious if it is good at law so that the factfinder has a determination to make).

After KP failed to respond to the Complaint, all well-pleaded facts in the Amended Complaint are deemed admitted. The second factor for refusing to vacate default judgment or enter default judgment unquestionably weighs in favor of granting default judgment against KP. KP baselessly argues that he is not liable for rape because he was convicted of "attempted rape." The Court is well aware that plea deals incentivize a defendant to accept a conviction, in exchange for a lesser charge or lesser punishment. KP does not advise the Court that he was charged with first degree rape. Nearly every plea agreement and colloquy requires a defendant to state he is pleading guilty because ***he is in fact guilty***, and to stipulate to the facts typically contained in the original charging document sufficient to substantiate a guilty plea. If KP wishes to denounce the admissions in his plea agreement – this evidence is neither admissible nor meritorious. KP entered a guilty plea, with a "full and just opportunity to litigate the facts underlying his conviction because he has chosen not to avail himself of the opportunity to contest those facts and must accept the

15

consequences of his action." *U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 899 F.Supp. 974, 981 (E.D.N.Y. 1994); *see*, *U.S. v. Broce,* 488 U.S. 563 (1988) (holding that a defendant who pleads guilty and concedes that he committed a crime generally relinquishes potential defenses, even those of which he may have had no knowledge at the time). KP admitted all of the facts underlying his conviction, including violently raping Hough with a knife. Regardless, under the CVA, KP is liable for damages to Hough. The CVA does not require a conviction of guilt. KP's allegations that the Hough's claims are barred by the statute of limitations ignores that the statute of limitations under the CVA were extended until August 13, 2021. KP's obscene allegation that Hough "willing participated" when he brandished a knife and raped her requires no consideration and merely demonstrate no remorse. KP's guilty plea bars him from disputing the facts underlying the conviction. Indeed, until he committed his most recent criminal offense in the 00108 case, KP presumably registered as a sex offender and did not challenge the results of his conviction on civil rights grounds. Only to avoid another lengthy jail sentence, does KP attempt to allege he is innocent.

KP does not deny specific allegations, not because they are "too vague or conclusory" to respond to – but because physical evidence will bear them out as true. KP and OTM posted a photograph on social media on November 25, 2018. (*See* DE1 ¶81) KP does not deny that "Black" contacted Hough or that he knows "Black." (*See* DE1 ¶88-89) KP does not deny that Charles Mittlestalt or attorney Ian Wallach contacted Hough on his behalf, shortly after the filing of the 00108 case. (*See* DE1 ¶95). A condition of KP's supervised pretrial release dated March 4, 2020, incudes, "Avoid all contact, directly or indirectly (including by electronic means), with any person who is a known victim or witness in the subject investigation or prosecution." (*See* DE15 00108 case). Hough alleges that, following this Order, both OTM and KP engaged in repeated contact

with her to intimidate, coerce, and harass to help KP limit certain criminal repercussions that may impact his sentencing hearing on January 24, 2021. KP's Declaration carefully states that he did not "intimidate, harass, or threaten" Hough – not that he did not contact Hough. KP does not deny that Hough issuing a statement recanting her report of rape is beneficial to the 00108 case, or that he had a legal team engaged to represent him. Of course, KP could have stated that phone records, photographs, and other physical evidence would demonstrate his defenses – he does not. His attempts to deny allegations, some of which can be verified with a simple Google search, are unpersuasive. KP blithely alleges specific, dated facts of published comments, meetings, attorneys and investigators hired by him or on his behalf are "vague." They are not. KP issues a blanket conclusory general denial- insufficient as a meritorious defense. *Pecarsky*, 249 F.3d 167, 173 (2d Cir. 2001). Hough addresses KP's remaining contentions that Count V fails to plead a cause of action below.

### C.  *Hough Will Be Substantially Prejudiced If Default Judgment Is Not Entered Against KP*

A strong showing of prejudice is **not necessary** where the defendant's default is willful, and the defendant has failed to identify a meritorious defense. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir. 1994); *Allstate Ins. Co. v. Bogoraz*, No. 10-CV-5286 (SJF)(ETB), 2012 U.S. Dist. LEXIS 68110, at *15 (E.D.N.Y. May 9, 2012). Additionally, defendants' willful deceit should undermine the Court's confidence that defendants **will** cooperate in discovery. *See Badian v. Brandaid Commc'ns Corp.*, No. 03 Civ. 2424 (DC), 2004 U.S. Dist. LEXIS 17404, 2004 WL 1933573, *4 (S.D.N.Y. Aug. 30, 2004), *aff'd*, 165 Fed. App'x 886 (2d Cir. 2006); *see also*, *Am. Hotel Register Co. v. Am. Sales Brokerage Co.*, No. 1:07CV709, 2007 U.S. Dist. LEXIS 86157, 2007 WL 4192205, at *6 (N.D. Ohio Nov. 21, 2007) (relying on defendants' submission of false affidavits in finding **prejudice**); *World Magic Int'l AVV v. Eddy*

*Int'l, Ltd.*, 2010 U.S. Dist. LEXIS 116962, at *6 (S.D.N.Y. Nov. 1, 2010). Hough reasonably believes that KP may serve a period of incarceration, which would substantially prejudice her in her ability to prosecute the claims against KP. In the interest of brevity, for the remainder of this reason, Hough incorporates as fully repeated herein its first reason for why she would be prejudiced as detailed in its Memorandum of Law in support of its Motion for Entry of Default Judgment against KP. (Dkt. No. 25, Plaintiff's Memorandum of Law in Support of its Motion for Entry of Default Judgment against Defendant, p. 17). Hough incorporates the remainder reasons why she is prejudiced from such previously submitted Memorandum of Law. (*Id.*, at pp. 17 – 19).

### III.   HOUGH ALLEGES ALL PLAUSIBLE CAUSES OF ACTION IN THE AMENDED COMPLAINT.

To state a valid claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

#### A.   *Hough Sufficiently Alleges Intentional Infliction of Emotional Distress Against KP under New York Law*

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must plead: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993); *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014). KP's conduct towards Hough was extreme and outrageous, including but not limited to sexual assault, rape, harassment, and intimidation. (*See* Blackburn Decl. ¶¶ 124-29). This includes recent harassment and intimidation through KP's friend, associate, and fellow gang member, Black. (*Id.* at ¶¶ 110-11, 117-120). The actions go beyond all possible bounds of decency

and are atrocious and utterly intolerable in a civilized community, satisfying the first, the second, and the third prong of the test presented in *Howell*.

     B.   *Hough Sufficiently Plead A Claim for Assault and Battery Against KP Under New York Law*

An "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact. *United National Insurance Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d. Cir.1993). A "battery" is an intentional wrongful physical contact with another person without consent. *See United National Insurance Co.* at 108 (2d Cir. 1993); The Second Circuit has held that the terms "assault" and "battery" do not change meaning due to the degree of violation. *United National Insurance Co.*, 994 F.2d at 108 (2d Cir. 1993). The slightest unlawful touching of another constitutes battery. *Id*. KP committed battery against Hough when he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Hough's person and used a knife to do so as well. (*See* Blackburn Decl., ¶¶ 31-49 & 130-137.

     C.   *Hough Pleads A Viable Claim Against KP For Negligent Infliction of Emotional Distress Under New York & California Law*

In New York, negligent infliction of emotional distress requires "(1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; and (3) severe emotional distress." *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010); see *Higgins*, 318 F.3d 422, 425 n.1 (2d Cir. 2003). California's statute is analogous to New York's standard. In the time proceeding his criminal act, KP personally, or through his parents, associates, legal team, gang affiliates, agents, and servants worked in concert and engaged in conduct that rise beyond the threshold of extreme and outrageous. (*See* Blackburn Decl., ¶¶ 31-49, 57-74, 79-83, 104-07, 110-11, 117-120 & 147-54). The extreme and outrageous conduct are as follows: stalking Hough and her twenty-two-year-old daughter and family, causing

19

Hough to move residence on multiple times over several years, coercing Hough into recanting her rape claim, threatening Hough physically if she did not recant her report of rape via social media posts and other means.  Hough suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life from, these actions. (*Id.*, at ¶ 154).

### D.  Hough Pleads A Viable Claim For Harassment Under California And Georgia Law

Cal. Code Civ. Proc., § 527.6, defines "harassment" as follows: "harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. Under § 527.6, subd. (b), the course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and cause substantial emotional distress to the Plaintiff. *Krell v. Gray*, 126 Cal. App. 4th 1208. Georgia's harassment statute is analogues to California.  KP and OTM directed Black to harass Plaintiff at her home Georgia, upon information and belief, in California. (*See* Blackburn Decl. ¶¶ 117-120 & 163-70). Upon information and belief, KP and Maraj were also located in California when they were posting lies about Plaintiff on the internet intending to cause her emotional harm. (*Id.*, at ¶¶ 79-83). As such, the actions of Black in Georgia constitute harassment under Ga. Code Ann. § 16–11–90 and California law.

KP and OTM, through their intermediaries, engaged in constant phone calls, resident pop-ups, family member reach outs, unsolicited contacts, bribing, and attempted coercion. (*See* Blackburn Decl.¶ 161). OTM and KP knew or reasonably should have known that such communication would cause Plaintiff to fear harm to Plaintiff's physical safety and property and a member of Plaintiff's family – they intended such a result. (*Id.*) As intended and expected, Hough

suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. (*Id.*, at ¶ 162). Hough is prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life. (*Id.*). Thus, Hough pleads viable claims for Harassment under Georgia and California law.

### E. Hough Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law

In California, to state a cause of action for intentional infliction of emotional distress, a plaintiff must show "(1) outrageous conduct by the Defendant; (2) the Defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the Plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the Defendant's outrageous conduct." "Conduct, to be "outrageous" must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014). Georgia's intentional infliction of emotional distress statute is analogues to California. KP's actions satisfied the elements of intentional infliction of emotional distress under both California and Georgia law. (*See* Blackburn Decl. ¶¶ 171-177). KP was a resident of California when he engaged in these tortious and criminal acts aimed and directed towards Plaintiff, a resident of the State of Georgia at the time. (*Id.*) Defendants acted intentionally in their attempts to coerce Plaintiff into recanting her story so that KP could avoid going to prison for failing to register as a sex offender. All actions taken by Defendants were clearly intended to cause her emotional distress to achieve such result. (*Id.*).

## **CONCLUSION**

For any and all of the reasons above, Plaintiff Hough respectfully requests this Honorable Court to find Defendant Kenneth Petty in default for his intentional, strategic, knowing failure to

timely respond to the Amended Complaint, despite the availability of multiple attorneys, substantial financial resources, coupled with actual knowledge of both the lawsuit and the deadline to respond. Plaintiff Hough further asserts that this Honorable Court should schedule an inquest hearing to determine damages.

Dated: November 22, 2021                          /s/ Steven N. Gordon
                                                  Steven N. Gordon, Esq.