UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jennifer Hough,<br><br>      Plaintiff,<br><br> -against-<br><br><br><br>Onika Tanya Maraj, AKA ("Nicki Minaj")<br>an individual,<br>Kenneth Petty, AKA ("Zoo"),<br>an individual<br>      Defendants. | Motion for Entry of Default Judgment<br><br>Civil Action No. 21-cv-4568 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST
## DEFENDANT ONIKA TANYA MARAJ

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

    I.    THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST OTM ................. 4

        A.    OTM Failure Was Willful ....................................................................................... 8

        B.    Plaintiff Will Be Greatly Prejudiced By The Court's Failure To Enter Default Judgment Against OTM ...................................................................................... 10

    II.    PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY PLEADS PLAUSIBLE CAUSES OF ACTION AGAINST OTM ....................................................................... 11

        a.    Plaintiff Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law ................................................................................ 12

        b.    Plaintiff Pleads A Viable Claim For Harassment Under California And Georgia Law 14

        c.    Plaintiff Pleads A Viable Claim For Aiding and Abetting Under Both California and Georgia Law ........................................................................................................... 15

    III.    IF THE COURT ENTERS DEFAULT AGAINST OTM, PLAINTIFF SEEKS AN INQUEST HEARING TO DETERMINE DAMAGES ...................................................... 16

CONCLUSION ............................................................................................................................. 17

## PRELIMINARY STATEMENT

The Court should grant Plaintiff's Motion for Judicial Default. On August 13, 2021, Jennifer Hough ("Hough") initiated the instant action. The process server, Robert Diaz, personally served Defendant Kenneth Petty ("KP") with the Summons and Amended Complaint which was filed September 15, 2021. (*See* Declaration of Robert Diaz). Robert Diaz then mailed a copy of the summons and complaint to Defendant Onika Tanya Maraj ("OTM") at her Calabasas, California estate. (*See* Declaration of Robert Diaz). OTM appears to have intentionally and strategically chosen not to respond timely to the Amended Complaint, due October 6, 2021. OTM's strategic choice to delay the action and avoid making disclosures present a distinct advantage as she litigates a motion for judicial default – rather than make admissions or denials. This lawsuit addresses the actions alleged by Hough following the arrest of KP for a violation of the sex offender reporting act. Hough alleged that KP and OTM engaged in intentional, threatening, and malicious harassment in order to limit criminal repercussions in the pending criminal case. KP pled guilty to the failure to register. KP, having accepted a plea, faces a sentencing hearing on January 24, 2021. It is unclear what the federal Judge who will sentence KP will consider in determining his fate. However, Hough asserts that the allegations and required responses by KP and OTM would be aggravating factors for the purposes of sentencing.

On October 19, 2021, the Clerk issued a Certificate of Default Judgment against KP but not OTM. This Honorable Court heard arguments on December 8, 2021, in which the Court reserved ruling on the Motion to Vacate the Denial of Clerk's Default against OTM but set a briefing schedule for Hough to pursue a judicial default against OTM. [*See* Minute Entry dated 12/8/2021].

**ARGUMENT**

I.      **THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST OTM**

Federal Rule of Civil Procedure ("FRCP") Rule 55(a) ("Rule 55") provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *See also*, Local Civil Rules of the Eastern District of New York ("Local Rules") Rule 55.1 ("Local Rule 55.1"). When a party fails to plead or otherwise defend an action, it is within the district court's discretion to enter a default judgment. *United States v. Brow*, 267 F. App'x 96, 97 (2d Cir. 2008). In the instant matter, on September 15, 2021, at 6:25 P.M. PST, Plaintiff's process server personally served Plaintiff's Summons and Amended Complaint on Defendant Petty at 23483 Park Colombo Calabasas, CA 91302, where OTM also resides ("Defendants' Residence"). (*See* Declaration of Plaintiff's Process Server, Robert Diaz ("Diaz Decl."). Service was proper pursuant to FRCP Rule 4(e) ("Rule 4"). Specifically, Defendant Petty is not an infant, incompetent, or an active member of the military or someone who previously waived service. Rule 4(e); (*see*, Declaration of Tyrone A. Blackburn ("Blackburn Decl.").

The process server properly delivered a copy of the Summons and Amended Complaint to KP personally. Rule 4(e)(2)(A); (*see* Diaz Decl.). In accordance with Rule 4(e)(2)(A), Robert Diaz mailed a copy of Plaintiff's Summons and Amended Complaint to OTM's residence located at 23483 Park Colombo Calabasas, CA 91302. (*see* Diaz Decl.). KP does not deny being served by Robert Diaz. Further, Robert Diaz served KP with Plaintiff's Summons and Amended Complaint for his wife, OTM. Rule 4(e)(2)(A); (*see* Diaz Decl.). OTM does not deny being home at the time of service. OTM does not deny that KP was home at the time of service. OTM does not deny she received the summons and amended complaint. OTM does not deny that the summons

4

and amended complaint were mailed to her. OTM does not deny knowing about the lawsuit. OTM does not deny knowing the deadline to file suit. Instead, OTM objects to the description of KP as viewed through a window as being 1 inch shorter and thinner. OTM attempts to distract by alleging no one personally handed a document to KP. The only denials are inconsequential and frivolous, given the lack of any defense to proper service.

Under federal, California, and New York Law, the process of service was proper. *See Khourie v. Sabek,* 220 Cal.App.3d 1009, 1015, 269 Cal.Rptr. 687 (1990) ("It is sufficient to leave service papers outside of a locked door if the resident refuses to accept the papers or to open the door for the process server") (*citing Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1103 (N.D. Cal. 2009); *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 169 F. App'x 45, 46 (2d Cir. 2006) (holding that under New York law, it is well settled that where a party refuses to accept service, it can be left in his general vicinity). The process server also identified KP as 5'10, 200 lbs.,[1] male, approximately 40 years old, with black hair and brown eyes.[2]  At bottom, the Summons and Amended Complaint was properly served upon Defendant's.

After being served the Summons and Amended Complaint on September 15, 2021, OTM's twenty-one (21) day period to respond began to run. Notably, OTM does not deny knowledge of this deadline – or any attempt to fulfill this deadline. FRCP Rule 12(a)(1)(A)(i).  OTM's deadline was October 6, 2021, to answer the Amended Complaint.  OTM does not dispute knowing this

---

[1] In OTM's Declaration in Support of her Motion for Leave to file a late letter requesting a pre-motion conference in anticipation of a motion to dismiss the Amended Complaint ("Maraj Decl.") [Dkt. No. 17, 17-5], OTM states that her husband is 5'9, and weighs 175 lbs. (Maraj Decl., at ¶ 3).  The differences between 5'10 and 5'9 and 200 lbs. vs. 175 lbs. are de minimis and negligible.

[2] Even if Defendant Petty was not the person served, which Plaintiff vehemently denies, Plaintiff's Counsel Tyrone Blackburn performed an investigation to determine Defendants' Residence is Defendants' dwelling or usual place of abode. (See Declaration of Tyrone Blackburn).  The Process Server determined that Defendant Petty was the person present in the window to Defendants' residence when he effectuated service.  The fact that Defendant Petty attempted to reject service also indicates that he was indeed the person on which the Summons and Amended Complaint was served.  Or, in the unlikely event, it was not Defendant Petty, the person appeared to be a person of suitable age (40) and discretion who resided at Defendants' Residence.

5

deadline or that she missed the deadline.  Plaintiff did not rush before submitting a request to the Clerk for issuance of a Certificate of Default Judgment – five (5) days elapsed. (*See* Dkt. No. 15; Exhibit A to the Declaration of Tyrone Blackburn ("Blackburn Decl.").  Only after a Motion for Clerk's Default was filed against OTM did she choose to try to permit an attorney to represent her in this case.

Undeniably, OTM failed to timely respond to Plaintiff's Amended Complaint or otherwise defend the action.  Unlike typical litigation, this case garnered significant media attention when it was commenced on August 13, 2021, with multiple news agencies seeking comment from KP and OTM at the time of filing.  (See Blackburn Decl.; Exhibit C to Blackburn Decl.; Dkt. No. 1). This Court need not speculate – OTM does not deny. OTM made a strategic choice to delay this matter and avoid responding – not because she didn't know about the case or the deadline – but because she chose not to respond. OTM's excuses include that KP is not *exactly* as described by the process server. OTM asserts she meant to hire an attorney – but did not. There is no reason to hire an attorney if there is no awareness of the lawsuit or service of process. Implicit as an admission is knowledge of *both* the lawsuit and the deadline, but also a choice not to take either seriously. "In the context of deciding whether a litigant's default was willful, the Second Circuit "interpret[s] 'willfulness' . . . to refer to conduct that is more than merely negligent or careless," but rather that is "egregious and . . . not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Thus, defaults have been deemed "willful" where, for example, defendants appear to have intentionally evaded service or offer "flimsy" or "incredible" excuses, but not where they are attributable to administrative errors or reasonable confusion. *Id*. at 738-39. A court may therefore "refuse[] to vacate a judgment where the moving party ha[s] apparently made a strategic decision to default ." *Am. All. Ins. Co.*, *Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996)."  *Francis v.*

6

*Ideal Masonry, Inc.*, 16-CV-2839 (NGG) (PK), at *6 (E.D.N.Y. Nov. 16, 2020). OTM offered 1 inch and 25 lbs. and her "innocent" choice to make no effort to meet the deadline. Certainly, combined with a distinct advance to avoid responding to this suit, these excuses are within the realm of flimsy, irrelevant, and unpersuasive. OTM makes no attempt to explain why she failed to respond – she merely admits to same with flagrant disregard for the Federal Rules of Civil Procedure and this Court. "[W] e have refused to vacate a judgment where the moving party had apparently made a strategic decision to default.'" *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996)(internal citations and quotations omitted).

While entering default judgment is within the district court's discretion, there is a strong preference for deciding cases on the merits. *Green*, 420 F.3d 99, 104 (2d Cir. 2005). "Nevertheless, the Court has recognized that default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary. Under such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice." Id. at 96." *Lazic v. Dorian Owners, Inc.*, 10 Civ. 1824 (BMC), at *2 (E.D.N.Y. Jan. 29, 2011). "In determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)" *First Mercury Ins. v. Schnabel Roofing of Long Island*, 10-CV-4398 (JS) (AKT), at *3 (E.D.N.Y. Mar. 11, 2011) On a motion to vacate a default judgment, the defaulting party bears the burden of proof. *Time Warner Cable of New York v. Cabada*, No. 97 CV 4172 (SJ), 1997 WL 797533, at *1 (E.D.N.Y. December 31, 1997) *(citing Artmatic USA Cosmetics v. Maybelline Co.,* 906 F.Supp. 850, 853–54 (E.D.N.Y.1995). In this matter, OTM bears the burden of proof to establish good cause.

Respectfully, merely pointing to an imprecise physical description, combined with no excuse for paying no mind to meeting the deadline to respond – fails.

Under Rule 55(c), "[t]he court may set aside default for good cause…." When the defaulted defendant opposes default judgment, courts treat the opposition as a motion to vacate the entry of default and examine whether good cause exists to vacate the entry. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). Rule 55(c) does not define "good cause," but the Second Circuit established three criteria to decide whether a default judgment should be entered or vacated. *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted). "These criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Bricklayers*, 779 F.3d 182, 186 (2d Cir. 2015) (*citing Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir.2013)).

      A.  *OTM Failure Was Willful*

**First**, in the context of default, the Second Circuit has held that "willfulness" refers to conduct that is "more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); Bricklayers, 779 F.3d at 186. "Willfulness" does not require a showing "bad faith;" rather, "'it is sufficient to conclude "that defendant defaulted deliberately." *Bricklayers*, 779 F.3d at 187 (*quoting Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 621 (2d Cir. 1998)). A defendant's default is willful if the defendant was properly served yet failed to appear, answer, or otherwise respond to the complaint. *See*, *e.g.*, *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991) (finding willfulness where the defendant failed to appear for fear of being indicted); *see also*, *S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. August 13, 2004) (finding willfulness where the defendant was properly served but

8

answered **two weeks after** the due date) (emphasis added); *Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011) (finding willfulness where the defendant neglected to respond to the third-party complaint, among other things). OTM does not allege facts sufficient to overcome proper service. OTM only argues facts showing that default should be granted, a choice to delay retaining an attorney and/or respond.

OTM's burden is to prove that her delay was not willful and deliberate. Unfortunately, OTM cannot meet that burden. Her sworn Declaration merely establishes facts that walk alongside and do not obstruct or invalidate a finding a willful and deliberate strategy to avoid response until after a default. As such, the Court should find that OTM willfully failed to respond or otherwise defend the instant action.

**Second**, with respect to the existence of a meritorious defense, a defaulting defendant "must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see*, *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (holding that a defense is meritorious if it is good at law so that the factfinder has a determination to make). However, upon entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations of liability, except those relating to damages. *Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y. Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008). "Where a defendant **fails to answer** the complaint, courts are **unable** to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, **this factor weighs in favor of granting a default judgment**." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) (emphasis added) (*quoting Empire State Carpenters Welfare, et. al. v. Darken Architectural*

*Wood,* No. 11–CV–46, 2012 WL 194075, at *3 (E.D.N.Y. January 17, 2012); *see*, *Mack Finanical Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011); *see also*, *F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002).

OTM failed to respond to the Complaint; therefore, all well-pleaded facts in the Amended Complaint are deemed admitted. The second factor weighs in favor of granting default judgment against OTM because OTM has not made any attempt to deny the critical facts in this case. OTM's statements and encouragement of malice towards Hough are *public*. Her incentives clear. Her advantages inherently obvious. The second factor weighs in favor of granting default judgment, as all well-pleaded facts are deemed admitted. And as described below, they constitute legitimate causes of action. As such, the first two factors weigh in granting default judgment. Even if Plaintiff would not be prejudiced by not entering default judgment, the first two factors weighing in her favor are grounds to enter a default judgment. *Bricklayers*, 779 F.3d 182, 187 (2d Cir. 2015) (holding that where the first two factors weigh in favor of default judgment, the Court does not need to address whether prejudice exists).

### B. Plaintiff Will Be Greatly Prejudiced By The Court's Failure To Enter Default Judgment Against OTM

Courts look to prejudice in deciding whether to vacate or decline to enter a default judgment. Delay alone is insufficient to establish prejudice. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). To establish prejudice in the context of a default, there must be a showing that "the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (*citing Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983)).

Here, Plaintiff will be prejudiced by the failure of the Court to enter a default judgment. Hough is disadvantaged in that key witnesses, evidence, and information to support her case due to time elapsing. While Hough can gather some evidence herself, much of the information, evidence, electronic, financial, phone, and other records will become more difficult obtain. Certainly, the inability to recall memories of Hough *and* third-party witnesses is exceptionally damaging. Much of the evidence in this case rests upon credible recollections of the parties. Here, OTM's willful and strategic choice to delay for one proceeding – substantially harms Hough in this proceeding.

> [P]laintiff's ability to prove liability will likely turn on his recollection — and the credibility of that recollection…. Defendant's delay may have well led to a fading of his memories. Thus, this is not a case where "[defendants'] [d]elay stand[s] alone." Finally, defendants have not presented any "evidence beyond conclusory denials" or offered affidavits to rebut plaintiff's allegations. Id. Their affirmative defenses merely contradict the allegations without providing any facts that "if proven at trial, would constitute a complete defense." Id. Therefore, I find that the interest of an efficient administration of justice outweighs the harsh remedy entered against defendants.

*Lazic v. Dorian Owners, Inc.*, 10 Civ. 1824 (BMC), at *3-4 (E.D.N.Y. Jan. 29, 2011)

For these reasons, among others, the Court should find that Plaintiff would be significantly prejudiced if default judgment is not entered against OTM.

## II. PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY PLEADS PLAUSIBLE CAUSES OF ACTION AGAINST OTM

Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations outlined in the complaint state valid claims. *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 144 (E.D.N.Y. 2013)

To state a valid claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For Plaintiff, her complaint must

11

contain factual allegations that, if taken as true, would at the least establish that it has plausible claims for intentional infliction of emotional distress under California and Georgia law, aiding and abetting under Georgia and California law, and harassment and witness intimidation under California and Georgia law.

> a. *Plaintiff Pleads A Viable Claim For Intentional Infliction of Emotional Distress Under Both California and Georgia Law*

In California, to state a cause of action for intentional infliction of emotional distress, a plaintiff must show "(1) outrageous conduct by the Defendant; (2) the Defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the Plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the Defendant's outrageous conduct." "Conduct, to be "outrageous" must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014).

In Georgia, a claim of intentional infliction of emotional distress requires proof of the following elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe." *Moore*, 238 Ga. App. at 377.

OTM's actions have satisfied the elements of intentional infliction of emotional distress under both California and Georgia law. (*See* Blackburn Decl., Exhibit __, ¶¶ 171-177) Upon information and belief, OTM was in California when she engaged in these tortious and criminal acts aimed and directed towards Plaintiff, who was a resident of the State of Georgia at the time. (*Id.*)

12

In summary, Defendant's intentional conduct included, but was not limited to:

i. Bribery of Plaintiff by sending their associate Black, to Plaintiff's residents with $20,000.00 and offering to have Defendant Minaj record a birthday video for Plaintiff's daughter,

ii. Bribery of Plaintiff by approaching the Plaintiff's family members in New York, offering $500,000.00 in exchange for Plaintiff recanting her 1994 rape claim against Defendant,

iii. Stalking and Harassing Plaintiff's twenty-two-year-old daughter while her daughter was out with friends in Georgia,

iv. Stalking and Harassing Plaintiff by calling and showing up at Plaintiff's home after Plaintiff changed her phone number and residents on multiple occasions,

v. Intimidating Plaintiff's family in New York with threats of physical bodily harm if Plaintiff did not recant her 1994 rape claim. These threats resulted in Plaintiff's moving out of Georgia to a remote location in the State of Florida,

vi. Through their associate, Black threatened to kill Plaintiff on social media, and

vii. Their Makk Balla Brims Blood gang members threatened to kill Plaintiff on social media.

(*Id*.). Defendant's actions were intentional, the conduct was extreme and outrageous, and there is a clear causal connection between the conduct and Plaintiff's emotional distress, which is persistent and severe. (*Id*.). Plaintiff has not worked since having to move over three times within twelve months as she has been in fear for her life and safety. (*Id*.) These injuries are continuing in

13

nature. (*Id*.). Thus, Plaintiff has properly pleaded a viable claim for intentional infliction of emotional distress against OTM.

> b. *Plaintiff Pleads A Viable Claim For Harassment Under California And Georgia Law*

Cal. Code Civ. Proc., § 527.6, defines "harassment" as follows: "harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. Under § 527.6, subd. (b), the course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and cause substantial emotional distress to the Plaintiff. *Krell v. Gray*, 126 Cal. App. 4th 1208.

Georgia's Harassment Statute, Ga. Code Ann. § 16–11–90 defines harassment as engaging in conduct directed at a depicted person intended to cause emotional harm. While Defendants Petty and Maraj were directing Black to harass Plaintiff at her home Georgia, upon information and belief, they were located in California. (*See* Blackburn Decl., ¶¶ 117-120 & 163-70). Upon information and belief, Defendants Petty and Maraj were also located in California when posting lies about Plaintiff on the internet intending to cause her emotional harm. (*Id.*, at ¶¶ 79-83). As such, the actions of Black in Georgia constitute harassment under Ga. Code Ann. § 16–11–90 and California law.

At bottom, Defendants Petty and Maraj, through their intermediaries, engaged in constant phone calls, resident pop-ups, family member reach outs, unsolicited contacts, bribing, and attempted coercion. (*See* Blackburn Decl.). Defendant knew or reasonably should have known that such communication would cause Plaintiff to fear harm to Plaintiff's physical safety and property and a member of Plaintiff's family. (*Id*.)

14

As a result of the above-described conduct, Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. (*Id*., at ¶ 162). Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life. (Id.). Thus, Plaintiff pleads viable claims for Harassment under both Georgia and California law.

c. *Plaintiff Pleads A Viable Claim For Aiding and Abetting Under Both California and Georgia Law*

In California, liability for aiding and abetting the commission of an intentional tort may be imposed upon a person who "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's conduct, separately considered, constitutes a breach of duty to the third person." Neilson v. Union Bank of California, N.A., 290 F.Supp.2d 1101, 1118 (2003) quoting Saunders v. Superior Court, 27 Cal.App.4th 832, 846, 33 Cal. Rptr. 2d 438 (1994). "[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in a tortious activity to assist another in performing a wrongful act." Howard v. Superior Court, 2 Cal.App.4th 745, 749, 3 Cal. Rptr. 2d 575 (1992). "[L]iability [for aiding and abetting] attaches because the aider and abettor behave in a manner that enables the primary violator to commit the underlying tort." Neilson, 290 F.Supp.2d at 1134.

Similarly, the eleventh circuit held, "A defendant is liable for aiding and abetting a tortious act if the Defendant: (a) does a tortious act in concert with the other or under a common design with him; or (b) knows that the other's conduct constitutes a breach of duty and gives substantial

15

assistance or encouragement to the other so to conduct himself; or (c) gives substantial assistance to the other in accomplishing a tortious result and his conduct, separately considered, constitutes a breach of duty to the third person. Amegy Bank Nat'l Ass'n v. Deutsche Bank Alex.Brown, 619 F. App'x 923, 924 (11th Cir. 2015).

OTM knew that Plaintiff possessed information relating to a criminal occurrence. Here, her rape by OTM's spouse Petty. OTM knew that Petty was required to register as a sex offender in the state of California. OTM knew or should have known that Petty's 1994 plea deal prevented him from directly or indirectly communicating with Plaintiff.

Despite this, OTM engaged in acts of bribery, harassment, stalking, and intimidation by calling Plaintiff and instructing her attorneys, associates, and affiliates to stalk, intimidate, harass, and bribe Plaintiff into recanting her 1994 rape charge against Petty. As previously stated, OTM's actions served no legitimate purpose other than to aide her husband's acts of harassment, stalking, bribery, and witness intimidation.

Additionally, OTM created fear of physical injury by finding Plaintiff's whereabouts after Plaintiff moved and changed her phone number several times. OTM's associates approached Plaintiff's family members in New York, approached Plaintiff's twenty-two-year-old Daughter in Georgia, and approached Plaintiff herself.

### III. IF THE COURT ENTERS DEFAULT AGAINST OTM, PLAINTIFF SEEKS AN INQUEST HEARING TO DETERMINE DAMAGES

Plaintiff's damages are both emotional, physical, and monetary. In addition to the emotional damages from the aforementioned actions of OTM, Plaintiff has been required to incur significant costs in moving several times. As such, due to the complex nature of the damages, we request an evidentiary or inquest hearing on the same.

## **CONCLUSION**

      For the reason above, Plaintiff Hough respectfully requests the Court to find OTM in default for her intentional failure to timely answer or move in this action and schedule an inquest hearing to determine damages.


Date: December 17, 2021

                                                    Respectfully Submitted,

                                                    *Tyrone A. Blackburn, Esq.*
                                                    Tyrone A. Blackburn, Esq.