UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JENNIFER HOUGH,

                  *Plaintiff*,

          -- against --

ONIKA TANYA MARAJ, AKA ("NICKI
MINAJ") and KENNETH PETTY, AKA
("ZOO").

                *Defendants*.
-------------------------------------------------------X

Case No. 21-cv-04568-ENV-JRC

**DEFENDANT ONIKA TANYA MARAJ'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

JUDD BURSTEIN, P.C.
260 Madison Avenue, 15th Floor
New York, New York 10016
(212) 974-2400
*Attorneys for Defendant
Onika Tanya Maraj*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ........................................................................................................... 6

POINT I

THE GOVERNING LAW .......................................................................................... 6

POINT II

PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE SHE FAILED TO COMPLY
WITH LOCAL RULE 55.1 ....................................................................................... 8

POINT III

THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT ........................... 11

    A.    DEFENDANT IS NOT SUBJECT TO THE COURT'S GENERAL
        JURISDICTION ........................................................................... 11

    B.    DEFENDANT IS NOT SUBJECT TO THE COURT'S LONG-ARM
        JURISDICTION ........................................................................... 12

        1.    Transacting Business and Making Contracts ............................................ 12

        2.    Committing a Tortious Act Within the State ............................................ 12

        3.    Owning, Using, or Possessing Real Property Within the State ................. 14

    C.    DEFENDANT DID NOT WAIVE HER PERSONAL JURISDICTION
        DEFENSE .................................................................................. 15

POINT IV

PLAINTIFF CANNOT DEMONSTRATE THAT HER ALLEGATIONS, TAKEN AS TRUE,
ESTABLISH DEFENDANT'S LIABILITY ON ANY OF THE AMENDED COMPLAINT'S
CLAIMS FOR RELIEF ............................................................................................. 16

    A.    THE COURT MUST APPLY GEORGIA LAW ................................... 16

    B.    HARASSMENT AND WITNESS INTIMIDATION (COUNT V) .................... 17

C.     AIDING AND ABETTING (COUNT VI) ..........................................................18

D.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(COUNT VII).........................................................................................................19

POINT V

NONE OF THE FACTORS WHICH THE COURT MUST CONSIDER ON A MOTION FOR
DEFAULT JUDGMENT SUPPORT PLAINTIFF .......................................................................22

A.     PLAINTIFF WILL NOT BE PREJUDICED IF HER MOTION
IS DENIED .............................................................................................................23

B.     DEFENDANT'S DEFAULT WAS NOT WILLFUL ..........................................25

C.     DEFENDANT HAS MERITORIOUS DEFENSES ............................................26

     1.     Plaintiff Has Proffered Meritorious Factual Defenses...............................27

     2.     Defendant has a Meritorious Improper Venue Defense ...........................31

     3.     Defendant has a Meritorious Service of Process Defense ........................32

          a.     The Inconsistencies Between the Return of Service and Diaz's
Declarations, as Well as Documentary Evidence, Undermine Diaz's
Credibility and Weigh in Favor of a Finding that Defendant Was
Not Properly Served....................................................................................33

          b.     Plaintiff's Cursory Alternative Argument That Diaz May Have
Served Someone Who Appeared to Reside at Mr. Petty's Residence
Fails...........................................................................................................37

CONCLUSION....................................................................................................................39

TABLE OF AUTHORITIES

<u>CASES</u>

*Aaron Consulting Co., LLC v. Snap Sols. LLC*,
    2018 U.S. Dist. LEXIS 163284 (E.D.N.Y. Sep. 20, 2018).................................12

*Aguilar v. E-Z Supply Corp*,
    Case No. 06-cv-06790 (E.D.N.Y. 2008)..........................................................28

*AHW Inv. P'ship v. CitiGroup Inc.*,
    980 F. Supp. 2d 510 (S.D.N.Y. 2013)...............................................................17

*Allen v. Westpoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991)................................................................................20

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*,
    92 F.3d 57 (2d Cir. 1996).................................................................................27

*Am. Transit Ins. Co v. Bilyk*,
    514 F. Supp. 3d 463 (E.D.N.Y. 2021) ...............................................................7

*Am. Empire Surplus Lines Ins. Co. v. Concord Restoration*,
    2021 U.S. Dist. LEXIS 141338 (E.D.N.Y. July 28, 2021)................................16

*Aybar v. Aybar*,
    2021 N.Y. LEXIS 2134 (N.Y. Oct. 7, 2021) ....................................................11

*Beck Chevrolet Co. v. GM LLC*,
    787 F.3d 663 (2015)...........................................................................................9

*Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*,
    779 F.3d 182 (2d Cir. 2015)..............................................................................25

*Brown v. Gabbidon*,
    2007 U.S. Dist. LEXIS 35134 (S.D.N.Y. May 14, 2007)................................26

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018)................................................................................13

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2010)...............................................................................6

*Contino v. United States*,
    535 F.3d 124 (2d Cir. 2008)...............................................................................9

*Cottrell v. Smith*,
    299 Ga. App. 517 (2016) ................................................................................ 20-21

*Criollo v. Ny Fine Interiors*,
    2021 U.S. Dist. LEXIS 64632 (E.D.N.Y. Mar. 3, 2021) ..................................28

*Cypros Trading & Shipping, Inc. v. Cima Grp.*,
    2017 U.S. Dist. LEXIS 108122 (E.D.N.Y. July 11, 2017) ................................9

*De Curtis v. Ferrandina*,
    529 F. App'x 85 (2d Cir. 2013) ......................................................................22

*Div. 1181 Amalgamated Transit Union – N.Y. Emps. Pension Fund v. R & C Transit, Inc.*,
    321 F.R.D. 60 (E.D.N.Y. 2017) ......................................................................29

*Double Green Produce, Inc. v. Forum Supermarket Inc.*,
    387 F. Supp. 3d 260 (E.D.N.Y. 2019) ...............................................................6

*D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
    29 N.Y.3d 292 (2017) ......................................................................................12

*Empire State Carpenters Welfare v. Darken Architectural Wood*,
    Case No. 11-cv-00046 (E.D.N.Y. 2012) ..........................................................28

*Enron Oil Corp. v. Diakuhara*,
    10 F.3d 90 (2d Cir. 1993) ..........................................................................6-8, 29

*F.T.C. v. 1263523 Ontario, Inc.*,
    Case No. 99-cv-08679 (S.D.N.Y. 2002) ..........................................................28

*Feldman v. Comp. Trading, LLC*,
    2021 U.S. Dist. LEXIS 45654 (E.D.N.Y. Mar. 11, 2021) ...............................15

*Feng Lin v. Quality Woods, Inc.*,
    2019 U.S. Dist. LEXIS 14239 (E.D.N.Y. Jan. 28, 2019) ...........................33, 36

*Finkel v. Romanowicz*,
    577 F.3d 79 (2d Cir. 2009) .........................................................................16, 28

*Gench v. HostGator.com LLC*,
    2015 U.S. Dist. LEXIS 78309 (S.D.N.Y. June 17, 2015) ............................22-23

*Goodrich v. WFS Fin., Inc.*,
    2008 U.S. Dist. LEXIS 32163 (N.D.N.Y. Apr. 18, 2008) ...........................29-30

*Guanglei Jiao v. Shang Qian Inc.*,
   2020 U.S. Dist. LEXIS 144888 (E.D.N.Y Aug. 11, 2020) ................................................10

*Hoffman v. Kim*,
   1996 U.S. Dist. LEXIS 17595 (S.D.N.Y. Nov. 25, 1996) ...............................................30

*Howerton v. Harbin Clinic, LLC*,
   333 Ga. App. 191 (2015) ................................................................................................21

*Insight Tech., Inc. v. FreightCheck, LLC*,
   280 Ga. App. 19 (2006) ..................................................................................................18

*Jefferson v. Houston Hospitals, Inc.*,
   336 Ga. App. 478 (2016) ................................................................................................21

*Joseph v. HDMJ Rest., Inc.*,
   Case No. 09-cv-00240 (E.D.N.Y. 2013) ........................................................................28

*JP Morgan Chase Bank, N.A. v. Law Office of Robert Jay Gumenick, P.C.*,
   2011 U.S. Dist. LEXIS 46319 (S.D.N.Y. Apr. 4, 2011) ........................................... 15-16

*King v. Regen Med. Mgmt., LLC*,
   2021 U.S. Dist. LEXIS 169150 (S.D.N.Y. Sep. 7, 2021) .......................................... 23-24

*Kipperman v. Onex Corp.*,
   2006 U.S. Dist. LEXIS 96944 (N.D. Ga. Sep. 15, 2006) ................................................19

*Kirkland v. Earth Fare, Inc.*,
   289 Ga. App. 819 (2008) ................................................................................................21

*Lambert v. Funding*,
   2015 U.S. Dist. LEXIS 199639 (N.D. Ga. May 4, 2015) ................................................21

*Langer v. Beverly Hills Suites, LLC*,
   2020 U.S. Dist. LEXIS 208696 (Central Dist. Cal. Oct. 21, 2020) .................................33

*Lazic v. Dorian Owners, Inc.*,
   2011 U.S. Dist. LEXIS 8708 (E.D.N.Y. Jan. 29, 2011) ............................................. 24-25

*Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012) ..............................................................................................11

*Lion-Aire Corp. v. Lion Air Installation, Inc.*,
   2020 U.S. Dist. LEXIS 120938 (E.D.N.Y. July 8, 2020) ................................................24

*Lopez v. Yossi's Heimishe Bakery Inc.*,
    2015 U.S. Dist. LEXIS 43271 (E.D.N.Y. Mar. 9, 2015) .................................................36

*Mack Financial Servs. v. Poczatek*,
    Case No. 10-cv 03799 (E.D.N.Y. 2011) ..........................................................................28

*Marie v. Altschuler*,
    30 A.D.3d 271 (1st Dep't 2006) .....................................................................................15

*MARTA v. Moseley*,
    280 Ga. App. 486 (2006) ...............................................................................................20

*McFarlane v. Harry's Nurses Registry*,
    2020 U.S. Dist. LEXIS 58387 (E.D.N.Y. Apr. 2, 2020) ...................................................23

*MDG Real Estate Glob. Ltd. v. Berkshire Place Assocs., LP*,
    513 F. Supp. 3d 301 (E.D.N.Y. 2021) .............................................................................11

*Meehan v. Snow*,
    652 F.2d 274 (2d Cir. 1981).................................................................................... 6-7, 28

*Mister Softee, Inc. v. Otta*,
    2016 U.S. Dist. LEXIS 165531 (E.D.N.Y. Nov. 29, 2016) ...............................................33

*MJC Supply, LLC v. Powis*,
    2019 U.S. Dist. LEXIS 54320 (E.D.N.Y. Mar. 29, 2019) ................................................11

*New Falls Corp. v. Soni Holdings, LLC*,
    2020 U.S. Dist. LEXIS 83499 (E.D.N.Y. May 8, 2020) ...................................................26

*Norton v. Holcomb*,
    299 Ga. App. 207 (2009) ...............................................................................................20

*One W. Bank, N.A. v. Ruiz*,
    2018 U.S. Dist. LEXIS 41989 (E.D.N.Y. Mar. 13, 2018) ................................................27

*Plumbers, Union No. 112 Pension Fund v. Fendick Plumbing, Heating & Air Conditioning, Inc.*,
    2008 U.S. Dist. LEXIS 75118 (N.D.N.Y. Sep. 29, 2008) ................................................26

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)..............................................................................................11

*Saivage v. Gandy*,
    350 Ga. App. 562 (2019) ...............................................................................................18

vi

*Sardanis v. Sumitomo Corp.*,
    718 N.Y.S.2d 66 (1st Dept. 2001) ...................................................................14

*Schweitzer v. Crofton*,
    2010 U.S. Dist. LEXIS 90656 (E.D.N.Y. Sep. 1, 2010)............................... 15-16

*Sea Tow Servs. Int'l, Inc. v. Pontin*,
    472 F. Supp. 2d 349 (E.D.N.Y. 2007) ...................................................... 31-32

*Sebastiani v. Lee*,
    2019 U.S. Dist. LEXIS 180014 (E.D.N.Y. Oct. 17, 2019)................................10

*SEC v. Breed*,
    2004 U.S. Dist. LEXIS 16106 (S.D.N.Y. Aug. 12, 2004)................................27

*SEC v. Hasho*,
    134 F.R.D. 74 (S.D.N.Y. 1991) .....................................................................30

*SEC v. McNulty*,
    137 F.3d 732 (2d Cir. 1998)............................................................................7

*Smith v. Campbell*,
    2011 U.S. Dist. LEXIS 109685 (W.D.N.Y. Sep. 27, 2011) ............................29

*Smith v. Smith*,
    2021 U.S. Dist. LEXIS 137323 (E.D.N.Y. July 22, 2021)................................38

*Somerville v. White*,
    337 Ga. App. 414 (2016) ...............................................................................18

*Sony Corp. v. ELM State Elecs., Inc.*,
    800 F.2d 317 (2d Cir. 1986)......................................................................... 6-7

*Steed v. Fed. Nat. Mortg. Corp.*,
    301 Ga. App. 801 (2009) ........................................................................ 19-20

*The Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*,
    349 Ga. App. 203 (2019) ...............................................................................21

*Thomas v. Bank of Am., N.A.*,
    2011 U.S. Dist. LEXIS 159686 (N.D. Ga. Nov. 30, 2011) ............................20

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    162 F.3d 724 (2d Cir. 1998)..................................................................... 15-16

vii

*Triest Irrigation LLC v. Hiers, Civil Action*,
    2021 U.S. Dist. LEXIS 103112 (M.D. Ga. June 2, 2021) .................................................19

*United States v. John*,
    2020 U.S. Dist. LEXIS 151829 (E.D.N.Y. July 23, 2020) ...........................................38

*United States CFTC v. Musorofiti*,
    2007 U.S. Dist. LEXIS 101379 (E.D.N.Y. June 25, 2007) .............................................7

*Wexler v. Vos Iz Neias LLC*,
    2021 U.S. Dist. LEXIS 147210 (E.D.N.Y. Aug. 4, 2021)................................................9

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 636............................................................................................................................9

28 U.S.C. § 1391........................................................................................................................31

Cal. Civ. Code § 1013................................................................................................................37

Cal. Code Civ. Proc. § 527.6.....................................................................................................17

CPLR 302 ........................................................................................................................ *passim*

Fed. R. Civ. P. 4.........................................................................................................................37

Fed. R. Civ. P. 12...........................................................................................................28, 31-32

Fed. R. Civ. P. 55.............................................................................................................. *passim*

Fed. R. Civ. P. 60.............................................................................................................. *passim*

Local Rule 55.1 ................................................................................................................. *passim*

O.C.G.A. § 9-2-8........................................................................................................................18

O.C.G.A. § 16-11-90..................................................................................................................18

Penal Law § 215.00....................................................................................................................14

## **INTRODUCTION**

Plaintiff Jennifer Hough's ("Plaintiff") motion for a default judgment demonstrates that she is desperate to avoid litigating this case on the merits.  Her efforts to deny Defendant Onika Tanya Maraj ("Defendant") an opportunity to defend herself is understandable because Plaintiff's Amended Complaint is more than just frivolous on the law; its false and at best reckless allegations that Defendant engaged in criminal activity – accusations which would be libelous (even against a public figure) but for the protections of the litigation privilege – are beyond the pale.  This case is nothing more than a bad faith attempt to extort Defendant through the judicial process.

Plaintiff's current motion is, if possible, even more frivolous than her Amended Complaint. Her claim that Defendant "made a strategic choice to delay this matter and avoid responding to the Amended Complaint" cannot be reconciled with the indisputable facts of record, which show that **Plaintiff is the only party in this case who has sought to delay its resolution on the merits**:

a. Plaintiff contends (and Defendant denies) that the Amended Complaint was properly served on September 15, 2021 and that a response to the Amended Complaint was due on October 6, 2021;

b. On October 11, 2021, Plaintiff took the highly unusual step of requesting a Certificate of Default from the Clerk's Office just five days after the purported deadline for responding to the Amended Complaint (Dkt. No. 15);

c. On October 13, 2021, just two days later (and only seven days after the purported deadline for responding to the Amended Complaint), Defendant's counsel (i) informed Plaintiff's counsel that he expected to file a Notice of Appearance the next day, and (ii) requested only 18 days, until November 1, 2021, to answer or

move against the Complaint (Exhibit A to the accompanying December 31, 2021 Declaration of Judd Burstein ("Burstein Dec."));

d.    After Plaintiff's counsel refused this request (*id.*), Defendant's counsel (i) filed a Notice of Appearance the next day, October 14, 2021 (Dkt. No. 16), and (ii) on the following day, October 15, 2021, filed a motion seeking leave to file a late pre-motion conference letter (Dkt. No. 17);

e.    On October 19, 2021, (i) the Clerk refused to enter a default against Defendant, (ii) Plaintiff filed a letter motion seeking an Order directing the Clerk to enter the default (Dkt. No. 20), and (iii) Defendant's counsel responded to the motion (Dkt. No. 21);

f.    Two days later, on October 22, 2021, Defendant's counsel offered to litigate the parties' motions simultaneously on an expedited schedule, and further offered that "[i]f the Court directs the Clerk to enter a default, the briefing on Defendant's motion will be deemed to be a fully briefed motion to vacate the default pursuant to Rule 55(c)."  (Exhibit B to the Burstein Dec., at pp. 4-5).  Plaintiff's counsel rejected this offer.  (*See* Dkt. No. 22);

g.    Instead, Plaintiff's counsel waited another three days, until October 25, 2021, to send a letter to the Court seeking to further delay the case by asking that Plaintiff's motion be decided before the parties litigated the substantive issue of whether a default judgment should be entered against Defendant.  (*Id.*);

h.    The next day, October 26, 2021, the Court granted Plaintiff's counsel's request that Plaintiff's motion be decided first ("Plaintiff's motion at [Dkt. No.] [20] shall be

ruled on, in due course, before the Court rules on any presently pending or forthcoming motions"); and

i.    Plaintiff's counsel then waited more than a month, until November 30, 2021, to switch course and consent to Defendant's counsel's October 22, 2021 proposal of simultaneous briefing (Dkt. No. 37, at p. 3), which Defendant's counsel now opposed for the reasons set forth in his response to Plaintiff's counsel's request (Dkt. No. 38).

Plaintiff's counsel's legal arguments are no more credible. Her counsel have not cited a single case in which a default has been granted on facts similar to the facts here. Hence, they have resorted to selectively quoting judicial decisions and mischaracterizing their holdings.

## STATEMENT OF FACTS

The facts and documents relevant to a determination of this motion are set forth in or annexed to the Burstein Dec., the accompanying December 30, 2021 Declaration of Defendant ("Defendant Dec."), as well as documents which are publicly available. As demonstrated therein, Plaintiff's account of the facts has been a work in progress, as she has changed material parts of her story since she started telling it in media interviews and elsewhere. The Amended Complaint's factual allegations are either demonstrably false, internally inconsistent, illogical, or amount to nothing more than entirely speculative and irrational inferences.

For example, annexed as Exhibit D to the Burstein Dec. is a chart comparing prior statements which Plaintiff made in a March 2021 interview with *The Daily Beast* (Exhibit F to the

Burstein Dec.) against material allegations in the Amended Complaint.  As shown by just a few of the examples in the chart, these differences are material:[1]

a.    Paragraph 93 of the Amended Complaint alleged that Plaintiff's brother informed her that "two people reached out to a family member stating there is an offer of $500,000.00 from Defendant Minaj if Plaintiff wrote a letter recanting her rape claim against Petty."  Yet, in March 2021, Plaintiff told *The Daily Beast* that only one person, someone named Jaime, had reached out to their cousin, and was offering her $500,000 if she merely spoke "with a lawyer representing Petty." (Exhibit F to the Burstein Dec., at p. 7);

b.    Paragraph 93 of the Amended Complaint also alleged that, after this alleged call, "Plaintiff hung up, distraught that Defendant Minaj's [sic] instructed her associates to contact her brother, and her brother would even relay such a message."  Yet, in March 2021, Plaintiff told *The Daily Beast* that "Black" (the person whom Plaintiff alleges to have been acting on behalf of Defendant) denied that Defendant or Mr. Petty were offering her any money, and that she "was confused as to how all of this was happening around [her]" (Exhibit F to the Burstein Dec., at p. 7);

c.    Paragraph 103 of the Amended Complaint alleged that when Black allegedly offered Plaintiff a $20,000 bribe, he "even said that Defendant Minaj would also send happy birthday videos to Plaintiff's daughter for her birthday as a bonus."  Yet, in March 2021, Plaintiff told *The Daily Beast* that Black wanted Defendant "to appear at his daughter's 16th birthday party," and, further, that she believed that

---

[1]    *The Daily Beast* interview is just one example of the many times which Plaintiff has publicly contradicted the allegations in the Amended Complaint.

her brother had been in the middle of these supposed bribes/threats because he and their cousin wanted Defendant to do a walkthrough promotion at a club so they could split the profit (Exhibit F to the Burstein Dec., at p. 8).

Finally, we wish to draw the Court's attention to Paragraphs 6-8 of the Defendant Dec., in which she appropriately expresses her outrage at Plaintiff's counsel for his appalling, baseless accusations that Defendant is a member of a violent street gang and that she has been directing gang members to threaten Plaintiff on a video which she was streaming live on Instagram. Moreover, we ask that the Court watch the seven-minute video which counsel has submitted to the Court in support of these accusations (Exhibit I to the October 27, 2021 Declaration of Tyrone Blackburn (Dkt. No. 25-4), "which [was] mailed to chambers" (*id.*, at ¶ 16)) because it demonstrates how utterly unprofessional and outrageous these accusations are.

To be clear, these accusations post-date the Amended Complaint, but counsel has nonetheless asserted them – for no legitimate reason – in documents which he has filed with the Court. Nonetheless, they are emblematic of Plaintiff's and her counsel's bad faith efforts to tar Defendant without any factual basis and, we believe, should inform the Court's assessment of their current motion.[2]

---

[2]    We also ask the Court to review Exhibit C to Exhibit H (Dkt. No. 25-10) to Mr. Blackburn's October 27, 2021 Declaration (Dkt. No. 25-4). Exhibit H is a letter which Mr. Blackburn sent to United States District Judge Michael W. Fitzgerald, the California federal judge overseeing Mr. Petty's criminal case. According to Mr. Blackburn's letter, at Page 3 n.3 thereof, Exhibit C thereto is supposedly a "[p]hoto of Black holding the same stack of $20,000.00 cash that he presented to [Plaintiff]." Putting aside the fact that it is unclear whether that person is Black or, more importantly, how Mr. Blackburn would know that the money was supposedly the "same $20,000.00," **only $10,000 can be identified in that picture** because the number on the top stack is completely unreadable, while the other two stacks have a blurred $5,000 label. Regardless, the money in the picture could consist of $1 bills or even counterfeit bills. **Thus, it is impossible to confirm the total amount of money in the picture.** Mr. Blackburn's letter is not just an astounding misrepresentation to a federal judge in another Court, it was submitted in this case and

**ARGUMENT**

**POINT I**

**THE GOVERNING LAW**

Fed. R. Civ. Proc. 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." There is a two-step process for obtaining the entry of default judgment: "first, the entry of a default, and second, the entry of a default judgment." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019).

"While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). There is "a strong preference for resolving disputes on the merits, and because a default judgment is the most severe sanction which the court may apply, [the Court has] characterized a district court's discretion in proceeding under Rule 55 as circumscribed." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2010) (internal quotation marks and citations omitted). "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). The Court may also consider "[o]ther relevant equitable factors [such as] . . . whether the entry of default would bring about a harsh or unfair result." *Id.*, at 97. These principles are particularly important where,

---

therefore subject to Mr. Blackburn's (and his co-counsel Steven Gordon's) Rule 11 obligations in this case.

as here,[3] the plaintiff is seeking "a large money judgment." *Sony Corp. v. ELM State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986); *see also United States CFTC v. Musorofiti*, 2007 U.S. Dist. LEXIS 101379, at *5 (E.D.N.Y. June 25, 2007), *R&R adopted* 2007 U.S. Dist. LEXIS 101380 (E.D.N.Y. July 17, 2007) ("Additionally, where substantial sums of money are at stake, this may tip the balance of equities in favor of vacating a default.").

Moreover, a plaintiff "'is not entitled to a default judgment as a matter of right'" simply because a party is in default. *Am. Transit Ins. Co v. Bilyk*, 514 F. Supp. 3d 463, 471 (E.D.N.Y. 2021) (citation omitted). Where a default has not been entered and a plaintiff seeks entry of a default judgment under Rule 55(b), a defendant is not obligated to file a cross-motion to vacate the default under Rule 55(c). "[T]he absence of such a motion [is] no occasion for criticism," and a defendant "proceed[s] quite properly by simply opposing the [plaintiff's] motion for judgment." *Meehan*, 652 F.2d at 276.

In deciding a motion for a default judgment or to vacate a default under Rule 55, "the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). These same factors are considered on a motion to vacate a default judgment pursuant to Fed. R. Civ. P.60(b).

However, "[a]lthough the factors examined in deciding whether to set aside a default or vacate a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment … because the concepts of finality and litigation repose are more deeply

---

[3]     Notwithstanding the fact that her claim is frivolous as a matter of law, Plaintiff is seeking damages in the amount of $20 million (Dkt. No. 15-1, at ¶ 7).

implicated in the latter action." *Enron*, 10 F.3d at 96. This difference is reflected in the fact that Rule 55(c) is governed by a "good cause" standard, whereas the standard under Rule 60(b) is "excusable neglect."[4]

**POINT II**

**PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE SHE FAILED TO COMPLY WITH LOCAL RULE 55.1**

Local Rule 55.1(b)(3), which supplements Rule 55(a), requires a party seeking an entry of default under Rule 55(a) to file "an affidavit demonstrating that … the pleading to which no response has been made was properly served."

In this case, Plaintiff filed a request for a Certificate of Default pursuant to Local Rule 55.1 on October 11, 2021 (Dkt. No. 15). However, counsel's supporting affidavit (Dkt. No. 15-1) ("Blackburn LR 55.1 Aff.") did not state that the Amended Complaint had been "properly served." In fact, the Blackburn LR 55.1 Aff. did not mention service of the pleadings.

On October 19, 2021, the Clerk denied Plaintiff's application because "[it] appears from the docket that Defendant . . . has filed a Notice of Appearance."

In light of the case law in this District, Defendant has never contended that the Clerk could have properly refused to enter a default because Defendant's counsel filed a Notice of Appearance in the interim period between October 11, 2021 and October 19, 2021. Instead, Defendant contends that the Clerk made the right decision for the wrong reason because the Blackburn LR 55.1 Aff. failed to comply with Local Rule 55.1(b)(3) in that it did not assert proper service of the

---

[4] Fed. R. Civ. Proc. 60 clearly does not apply here because the Court has not entered a judgment. However, Defendant highlights the differences between a motion to vacate under Fed. R. Civ. Proc. 60(b) and one under Fed. R. Civ. Proc. 55 because Plaintiff has cited to and relied on cases addressing a motion to vacate under Rule 60(b). (*See* Dkt. No. 41, Plaintiff's December 17, 2021 Memorandum of Law in support of its default motion ("Pl. MOL"), at pp. 6-9). Those cases are, therefore, inapposite.

Summons and Amended Complaint.  The fact that the Clerk failed to notice this defect did not

make it disappear.  The Second Circuit often rejects a District Court's rationale for a ruling but

nonetheless affirms the relief granted on other grounds.  *See, e.g*., *Beck Chevrolet Co. v. GM LLC*,

787 F.3d 663, 680 (2015) ("We nonetheless affirm the district court's dismissal, albeit on a

different basis.").  Similarly, District Judges have the freedom to "accept, reject, or modify, in

whole or in part, the findings or recommendations made by" a Magistrate Judge.  28 U.S.C. §

636(b)(1).  It would therefore be anomalous if a Magistrate Judge may not, in deciding whether a

plaintiff has complied with Local Rule 55.1, consider anything other than the Clerk's stated reason

for refusing to enter a default.

Compliance with Local Rule 55.1 is substantively important because "[l]ocal rules have

the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court,

Congress, or the Constitution." *Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008). As

explained by Magistrate Judge Kuo:

> Local Rule 55.2(b)(1) requires a plaintiff to obtain a certificate of default prior
> to moving for default judgment.  In order to obtain a certificate of default, one must
> show "that the pleading to which no response has been made was properly served."
> Local Rule 55.1(3).  A motion for default judgment may be considered without a
> certificate "where the party opposing the motion has notice of the motion and the
> failure to enter a certificate of default is a mere technicality.  Although a district
> court has "broad discretion to determine whether to overlook a party's failure to
> comply with local court rules…," the rules address more than "picayune
> matters…."

*Cypros Trading & Shipping, Inc. v. Cima Grp.*, 2017 U.S. Dist. LEXIS 108122, at *3-4 (E.D.N.Y.

July 11, 2017), *R&R adopted*, 2017 U.S. Dist. LEXIS 153650 (E.D.N.Y. Sep. 19, 2017); *see also*

*Wexler v. Vos Iz Neias LLC*, 2021 U.S. Dist. LEXIS 147210, at *5 (E.D.N.Y. Aug. 4, 2021) (To

secure a default judgment, a plaintiff must comply with Local Rule 55.2).

Significantly, Plaintiff's motion does not even address whether the Blackburn LR 55.1 Aff. met the requirements of Local Rule 55.1.  Nor did counsel address the issue in its submissions on Plaintiff's letter motion seeking an Order directing the Clerk's Office to enter the default.  (Dkt. Nos. 20 and 22).  However, at oral argument on the motion, counsel did argue that Plaintiff had satisfied Local Rule 55.1(c) because the return of service upon Defendant had been previously filed.  However, Plaintiff cannot rely upon that document because the Blackburn LR 55.1 Aff. did not mention it, much less incorporate it by reference.  *See Sebastiani v. Lee*, 2019 U.S. Dist. LEXIS 180014, at *4 n.1 (E.D.N.Y. Oct. 17, 2019) (refusing to consider documents filed on the Court's ECF docket because they had not been incorporated by reference).

Plaintiff may seek to rely upon cases in which a plaintiff has been excused from securing a Certificate of Default.  *See*, *e.g.*, *Guanglei Jiao v. Shang Qian Inc.*, 2020 U.S. Dist. LEXIS 144888, at *16-17 (E.D.N.Y Aug. 11, 2020) *R&R adopted*, 2020 U.S. Dist. LEXIS 157973 (E.D.N.Y. Aug. 31, 2020).  However, in those cases, the plaintiff's failure to secure a Certificate of Default was excused because the Court had permitted the plaintiff to seek a default judgment without the prior entry of a default pursuant to Rule 55(a).  Here, in contrast, the Court directed Plaintiff to file a motion for a default judgment while explicitly reserving on Plaintiff's motion seeking an Order directing the Clerk to enter a default against Plaintiff.  (December 8, 2021 Minute Order).

If the Court concludes that Plaintiff failed to comply with Local Rule 55.1 and also does not excuse her from that failure, Plaintiff's motion seeking a default judgment will be rendered moot.  Accordingly, what follows is a discussion of the reasons why a default judgment should not be entered which assumes *arguendo* that the Court has rejected Defendant's Local Rule 55.1 argument.

10

## POINT III

**THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT**

A "'court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought….'" *MJC Supply, LLC v. Powis*, 2019 U.S. Dist. LEXIS 54320, at *14 (E.D.N.Y. Mar. 29, 2019).

In a diversity case, "personal jurisdiction is determined in accordance with the laws of the forum state…." *MDG Real Estate Glob. Ltd. v. Berkshire Place Assocs., LP*, 513 F. Supp. 3d 301, 305-06 (E.D.N.Y. 2021). New York recognizes two categories of personal jurisdiction: general jurisdiction, which "permits a court to exercise jurisdiction over a defendant in connection with a suit arising from events occurring anywhere in the world," and specific jurisdiction, which "permits a court to exercise jurisdiction only where the suit arises out of or relates to the defendant's contacts within the forum state." *Aybar v. Aybar*, 2021 N.Y. LEXIS 2134, at *15 (N.Y. Oct. 7, 2021). Moreover, regardless of the provisions of any statute, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012).

### A.    **DEFENDANT IS NOT SUBJECT TO THE COURT'S GENERAL JURISDICTION**

As explained by the Court in *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017):

General jurisdiction over an individual comports with due process in the forum where he is "at home," meaning the place of "domicile…." Owning property in a forum does not alone establish domicile. "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile…." In an "exceptional case," an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere…, but the Second Circuit has yet to find such a case.

Here, the Amended Complaint acknowledged that Defendant is domiciled in California, thereby presumptively precluding a finding of general jurisdiction. Moreover, this case is not a

possible exception to the rule because Defendant has submitted a Declaration stating that she (a) has resided in California since 2009, (b) does not maintain a residence in New York, (c) does not own any real property in New York, (d) does not own or operate a business in New York, (e) maintains a California Driver's license, (f) files her tax returns as a California resident, and (e) has visited New York only three times in the past two years.  (Defendant Dec., at ¶¶ 33-42).

## B.    DEFENDANT IS NOT SUBJECT TO THE COURT'S LONG-ARM JURISDICTION

The Amended Complaint erroneously asserted that the Court has long-arm jurisdiction over Defendant pursuant to CPLR 302(a)(1), (2), and (3).

### 1.    Transacting Business and Making Contracts

As the Court made clear in *D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298-99 (2017), jurisdiction under CPLR 302(a)(1) is only permissible where "the plaintiff's cause of action [has] an 'articulable nexus' or 'substantial relationship' with the defendant's transaction of business here…."  Here, the Amended Complaint did not allege (nor could it) any such "articulable nexus" or "substantial nexus."  Hence, Plaintiff may not rely upon CPLR 302(a)(1) here.

### 2.    Committing a Tortious Act Within the State

Plaintiff also failed to allege facts sufficient to support jurisdiction under CPLR 302(a)(2) because the Rule "'has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act.'"  *Aaron Consulting Co., LLC v. Snap Sols. LLC*, 2018 U.S. Dist. LEXIS 163284, at *16-17 (E.D.N.Y. Sep. 20, 2018).

The Amended Complaint's sole allegation concerning Defendant's activities in New York is that "[i]n 2018, Defendant Minaj posted that she was doing a turkey giveaway in Queens, New York, on Rockaway Blvd. and 147th street."  (Dkt. No. 8, at ¶ 80).  Putting aside the fact that

giving away turkeys is not a tort, tweeting about it from an undisclosed location is not even an allegation that **any** conduct took place in New York.

Alternatively, Plaintiff might be asserting jurisdiction under CPLR 302(a)(2) based upon the Amended Complaint's allegations, at Paragraphs 160, 168, and 175 thereof, that Defendant's "associates approached Plaintiff's family members in New York" and "[i]ntimidat[ed] Plaintiff's family in New York with threats of physical bodily harm if Plaintiff did not recant her 1994 rape claim."

In other words, the sole agency-related allegations in the Amended Complaint are that (a) unnamed people, (b) purportedly acting as Defendant's agents (c) "approached" and "intimidate[ed]" unnamed members of Plaintiff's family, (d) at some unspecified point in time. These allegations do not establish personal jurisdiction over Defendant under CPLR 302(a)(2) because jurisdiction based upon the conduct of an agent requires far more than an allegation of conduct by unnamed "associates" of a defendant.  Rather, a plaintiff must allege that "'the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal….'"  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018).  The Amended Complaint cannot be rationally read as even implicitly making such an allegation.

Further, even if Plaintiff's agency allegations were adequate (which they are not), the facts alleged in the Amended Complaint do not give rise to jurisdiction under CPLR 302(a)(2).  Nor do they meet the requirements of the Due Process Clause.

The allegation that Defendant's purported agents "approached Plaintiff's family members in New York" is tied to the allegation in Paragraph 93 of the Amended Complaint that "two people reached out to a family member stating there is an offer of $500,000.00 from Defendant Minaj if

13

Plaintiff wrote a letter recanting her rape claim against Petty."  Count VII of the Complaint describes this alleged encounter as "Bribery of Plaintiff by approaching the Plaintiff's family members in New York, offering $500,000.00 in exchange for Plaintiff recanting her 1994 rape claim against Defendant [Petty]."  (*Id.*, at ¶ 175(ii)).

Even assuming these allegations are true (which they are not), they do not provide a basis for jurisdiction because "bribery" is not a tort under New York law.  *See Sardanis v. Sumitomo Corp.*, 718 N.Y.S.2d 66, 68 (1st Dep't 2001) (Holding that there is no "private right of action under the commercial bribery provisions of the Penal Law").  Further, the conduct alleged by Plaintiff would not even amount to bribery under Article 215 of the Penal Law because, *inter alia*, the Amended Complaint does not allege that (a) as required by Penal Law § 215.00, Defendant was "a witness or a person about to be called as a witness in any action or proceeding," or (b) there was *"an agreement or understanding that ... the testimony of such witness will thereby be influenced...."  Matter of Simels*, 94 A.D.3d 108, 112 (1st Dep't 2012) (Emphasis in original).

The allegation in Paragraph 175(v) of the Amended Complaint that Defendant's agents "[i]ntimidat[ed] Plaintiff's family in New York with threats of physical bodily harm if Plaintiff did not recant her 1994 rape claim" also fails to provide a basis for jurisdiction under CPLR 302(a)(2) because it relates to the allegation in Paragraph 168 that the supposed threats to her were communicated only to her family.

### 3.　Owning, Using, or Possessing Real Property Within the State

Given the Defendant Dec., which states that Defendant neither owns, uses, nor possesses real property in New York State, CPLR 302(a)(4) is inapplicable.  In any event, jurisdiction under CPLR 302(a)(4) is available only where a claim for relief "directly implicate[s]" a defendant's "ownership, possession or use" of real property which is alleged as the predicate for jurisdiction.

*See Marie v. Altschuler*, 30 A.D.3d 271, 272 (1st Dep't 2006).  Here, the Amended Complaint did not even identify any real property which bears any relationship to the claims for relief asserted in the Amended Complaint.

## C.   DEFENDANT DID NOT WAIVE HER PERSONAL JURISDICTION DEFENSE

Plaintiff's counsel informally contended that Defendant has somehow waived the defense of lack of personal jurisdiction by reason of having filed Defendant's pending motion seeking leave to file a late pre-motion letter.  (Dkt. No. 17).  The law is to the contrary.

*Schweitzer v. Crofton*, 2010 U.S. Dist. LEXIS 90656 (E.D.N.Y. Sep. 1, 2010) demonstrates why a waiver argument by Plaintiff would be meritless.  In *Schweitzer*, the defendants moved to dismiss the complaint due to improper service, and the plaintiffs countered by arguing that the defendants had waived the defense because their counsel had filed a notice of appearance but "failed to raise the defense of lack of service in her pre-motion conference letter, which preceded the filing of her motion papers…."  *Id.*, at *16-17.  The Court rejected this argument, holding that waiver of a personal jurisdiction defense is governed by "Rule 12(h), which … provides that a defense of insufficient process is waived if not 'made by motion under this rule'" and the plaintiffs

> proffer[ed] no authority, and the Court has been unable to find any, for the proposition that a pre-motion conference letter, a mechanism provided for in a judge's Individual Practice Rules, constitutes a "motion" under Rule 12 such that a failure to raise a defense in such a letter results in a waiver of that defense.

*Id.*, at *18; *accord Feldman v. Comp. Trading, LLC*, 2021 U.S. Dist. LEXIS 45654, *7 (E.D.N.Y. Mar. 11, 2021);  *JP Morgan Chase Bank, N.A. v. Law Office of Robert Jay Gumenick, P.C.*, 2011 U.S. Dist. LEXIS 46319, at *9-10 (S.D.N.Y. Apr. 4, 2011) (Defendant did not waive personal jurisdiction defense by failing to mention it in its pre-motion conference letter because "the text of Rule 12(h)(1) provides … that the enumerated Rule 12(b) defenses are not waived until a

defendant files either a responsive pleading or a defensive motion."); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998) (Waiver of the defenses of insufficiency of service of process and lack of personal jurisdiction "is generally governed by" Rule 12(h)).

The facts here are more compelling than in *Schweitzer* and *J.P. Morgan* because Defendant in fact raised the issue of personal jurisdiction at the first possible opportunity to do so – in the proposed pre-motion conference letter attached as Exhibit A to the October 15, 2021 Declaration of Judd Burstein in support of Defendant's motion for leave to file that letter.  (Dkt. No. 17-2, at n.1).

## POINT IV

### PLAINTIFF CANNOT DEMONSTRATE THAT HER ALLEGATIONS, TAKEN AS TRUE, ESTABLISH DEFENDANT'S LIABILITY ON ANY OF THE AMENDED COMPLAINT'S CLAIMS FOR RELIEF

Even if Defendant's motion were unopposed, and the facts alleged in the Amended Complaint were thereby deemed conclusively admitted, Plaintiff would still be required to demonstrate that those facts "establish [Defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)*.*  Plaintiff cannot possibly meet that burden.

### A.   THE COURT MUST APPLY GEORGIA LAW

Plaintiff has ignored basic choice of law principles, and instead assumed that she can assert claims under both Georgia and California law even though the Amended Complaint did not allege any facts which would permit the application of California law.

A "federal district court sitting in diversity applies the substantive law of the forum state, including that state's choice of law rules."  *Am. Empire Surplus Lines Ins. Co. v. Concord Restoration*, 2021 U.S. Dist. LEXIS 141338, at *15 n.14 (E.D.N.Y. July 28, 2021).

16

> The default rule for conduct-regulating tort rules is *lex loci delicti* – to apply the law of the place of the tort.  The logic of the rule is straightforward: generally, "that jurisdiction has the greatest interest in regulating behavior within its borders."  New York courts have determined that when the "conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred."  Thus, as plaintiffs contend, the law of the jurisdiction in which a plaintiff suffers loss from fraud would usually apply.

*AHW Inv. P'ship v. CitiGroup Inc*., 980 F. Supp. 2d 510, 522-23 (S.D.N.Y. 2013) (internal citations omitted).

Here, the application of New York choice of law principles mandates that Georgia law applies to the claims against Defendant because the Amended Complaint alleged that Plaintiff was living in Georgia and, briefly, in Florida when Defendant allegedly committed her tortious acts, and that she "felt the bulk of Defendant's action in" Georgia.[5]  (Dkt. No. 8, at ¶¶ 6, 79, 113). Further, Plaintiff did not allege that she was ever present in California during the period of time, commencing in 2018, during which Defendant supposedly wronged her.  Hence, Plaintiff's allegations concerning California law are irrelevant, and Georgia law unquestionably applies here. Under Georgia law, each of Plaintiff's claims against Defendant fail for the following reasons.

**B.**  **HARASSMENT AND WITNESS INTIMIDATION (COUNT V)**

Count V of the Amended Complaint, at Paragraph 157, alleged that Defendant engaged in "Harassment and Witness Intimidation" in violation of "Georgia's harassment statute."[6]  (Dkt. No.

---

[5]  Plaintiff also alleged that she suffered injury in New York (Dkt. No. 8, at ¶ 6), but that allegation applies only to the claims against Defendant Kenneth Petty ("Petty") set forth in Counts I through IV of the Amended Complaint.

[6]  Count V also seeks relief under Cal. Code Civ. Proc. § 527.6 even though Georgia law applies.  However, if that statute applied, it would provide no assistance to Plaintiff because it only authorizes injunctive relief.

8, at ¶ 157).   However, the Amended Complaint failed to identify any such statute.  This omission reflects the fact that there is none.

Nonetheless, Plaintiff now seeks to cure that omission by alleging that O.C.G.A. § 16-11-90 is the Georgia statute referenced in the Amended Complaint.  (Pl. MOL, at 14).  However, O.C.G.A. § 9-2-8 precludes a tort claim under § 16-11-90: "No private right of action shall arise from any Act enacted after July 1, 2010, unless such right is expressly provided therein."  Because § 16-11-90 was enacted in 2014 and does not explicitly authorize a private right of action, Plaintiff may not rely upon it in this case.  Indeed, in *Somerville v. White*, 337 Ga. App. 414, 416 (2016), the court, citing § 9-2-8, explicitly held that there is no private right of action under § 16-11-90.

Plaintiff's reliance upon § 16-11-90 is also frivolous because it does not apply to the conduct alleged in the Amended Complaint.  *See Somerville*, 337 Ga. App. At 414 (§ 16-11-90 "criminalizes the transmission of photography or video depicting nudity or sexually explicit conduct of an adult").

## C.   AIDING AND ABETTING (COUNT VI)

Plaintiff has failed to state a claim for aiding and abetting because she has failed to identify the underlying conduct which Defendant supposedly "aided and abetted." This is not an insignificant omission because, in contrast to other states, the Georgia Courts limit the types of torts for which liability can be predicated upon aiding and abetting.  *See Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 24 (2006) (identifying aiding and abetting claims which Georgia courts have found cognizable); *Saivage v. Gandy*, 350 Ga. App. 562, 566 (2019) (concluding aiding and abetting fraud is not cognizable).  Given that Plaintiff has failed to identify the conduct Defendant purportedly aided and abetted, she has not provided the Court with a basis for concluding that Count VI is viable under Georgia law.

Further, in the best possible case for Plaintiff, she has only alleged that Defendant aided and abetted the "Harassment and Witness Intimidation" claim set forth in Count V because Count VI is based solely upon "the allegations in the **preceding** paragraphs." (Dkt. No. 8, at ¶ 171) (Emphasis supplied).  Count VI therefore did not allege that Defendant aided and abetted the Intentional Infliction of Emotional Distress alleged in Count VII.

Thus, Count VI is doomed because, as we have shown above, the supposed tort for which Plaintiff seeks relief in Count V is not recognized under Georgia law.  Because one cannot aid and abet nothing, a complaint must be dismissed if it fails to "identify an underlying tort from which to establish liability…." *Triest Irrigation LLC v. Hiers, Civil Action*, 2021 U.S. Dist. LEXIS 103112, at *38 (M.D. Ga. June 2, 2021); *see also Kipperman v. Onex Corp.*, 2006 U.S. Dist. LEXIS 96944, at *93 n.19 (N.D. Ga. Sep. 15, 2006) ("The aiding and abetting claim lives on only so far as the underlying breach of fiduciary duty claims are still extant.").[7]

**D.**     **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VII)**

Finally, the Amended Complaint failed to adequately plead a claim for intentional infliction of emotional distress.

> [T]he burden which the plaintiff must meet in order to prevail [on a claim for intentional infliction of emotional distress] is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.  The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

---

[7]     We further note that even if Count VI could be read as applying to Count VII (which it cannot be) the result would be the same because, for the reasons stated *infra*, at POINT IV(D), Plaintiff also failed to state a claim for Intentional Infliction of Emotional Distress under Georgia law.

*Steed v. Fed. Nat. Mortg. Corp.*, 301 Ga. App. 801, 810 (2009). This pleading standard is applicable under Fed. R. Civ. P. 8. *See Thomas v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 159686, at *39 (N.D. Ga. Nov. 30, 2011) (Relying upon *Steed* in finding that a pleading failed to satisfy Fed. R. Civ. P. 8). In assessing whether conduct rises to the level of extreme and outrageous,

> it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. **Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.**

*Cottrell v. Smith*, 299 Ga. App. 517, 521-22 (2016) (Emphasis added).

The supposedly extreme and outrageous conduct Defendant allegedly engaged in – through third parties purportedly acting on her behalf – consisted of attempted bribery, threats directed at or through others, and harassment through calls and "showing up" at Plaintiff's home.[8]

At the outset, the Court must disregard Plaintiff's allegations regarding conduct directed at individuals other than her because "[i]n the absence of any physical impact to her person, a plaintiff seeking to recover for emotional distress must show that the conduct in question was directed at her." *Norton v. Holcomb*, 299 Ga. App. 207, 210 (2009); *see also MARTA v. Moseley*, 280 Ga. App. 486, 492 n.8 (2006) ("The trial court erred to the extent that it relied on conduct directed at employees other than [the plaintiff] . . . in support of its denial of summary judgment for the intentional infliction of emotional distress.").

---

[8]     Plaintiff alleged that Defendant's purported extreme and outrageous conduct "included, but was not limited to," the specific conduct alleged in the Amended Complaint. That allegation must be disregarded. *See Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) ("In determining the adequacy of a claim . . . , [the Court's] consideration is limited to facts stated on the face of the complaint . . . .").

With respect to the remaining allegations, Plaintiff failed to allege conduct which, even if true, would rise to the level of extreme and outrageous.  Defendant's purported unsuccessful efforts at bribing Plaintiff and offering to record a birthday video for Plaintiff's daughter fall far short of conduct that "go[es] beyond all possible bounds of decency," is "atrocious," and is "utterly intolerable in a civilized community."  *Cottrell*, 299 Ga. at 522.  Similarly, Plaintiff's vague allegations of stalking and harassment by individuals other than Defendant do not rise to the level of extreme and outrageous.  *See Lambert v. Funding*, 2015 U.S. Dist. LEXIS 199639, at *5 (N.D. Ga. May 4, 2015) ("General allegations of harassment . . . are not enough to set forth a claim for [intentional infliction of emotional distress].")*; see also The Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*, 349 Ga. App. 203, 212 (2019) (Allegations that the defendants harassed the plaintiffs by trespassing on their property, and sitting outside their home for hours were not sufficiently outrageous).  Plaintiff's allegations of threats also do not rise to the level of extreme and outrageous conduct.  *See Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819, 823 (2008) ("[O]utrageous conduct sufficient to justify a claim of intentional infliction of emotional distress does not include mere insults, indignities, **threats**, annoyances, petty oppressions, or other vicissitudes of daily living.") (Internal quotation marks omitted) (Emphasis added).

In addition, Plaintiff failed to adequately allege that she suffered severe emotional distress. "[T]he law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it."  *Jefferson v. Houston Hospitals, Inc.*, 336 Ga. App. 478, 484 (2016) (Internal quotation marks omitted).  For emotional distress to rise to the level of severe, "a plaintiff must show, at the very least, that physical and/or mental manifestations of that distress required her to seek medical or psychological treatment."  *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 208 (2015).

The Amended Complaint fails to meet this burden because it alleged only that, by reason of Defendant's purported conduct,

> Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoying life. Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life.

(Dkt. No. 8, at ¶ 170).

Although Count VII also incorporates earlier allegations of injury, including that Plaintiff has suffered "severe depression" and "paranoia," and that "[s]he is currently living in isolation out of fear of retaliation" (Dkt. No. 8, at ¶ 116), these allegations are insufficient for two reasons. First, Plaintiff failed to allege that she sought medical or psychological treatment as a result of her purported emotional distress. Second, she failed to plead a causal connection between the alleged injuries described in Paragraph 116 and Defendant's conduct.

## POINT V

### NONE OF THE FACTORS WHICH THE COURT MUST CONSIDER ON A MOTION FOR DEFAULT JUDGMENT SUPPORT PLAINTIFF

Even if Plaintiff sufficiently pled some of her claims against Defendant, which she has not, all of the relevant factors to be considered under Rule 55 – willfulness, the presence or absence of prejudice to the plaintiff, and whether the defendant has meritorious defenses – favor Defendant.

Given Plaintiff's reliance on cases addressing a motion to vacate under Rule 60, it bears mentioning again that the standards for a motion to vacate under Rule 60 and one under Rule 55 are different. A motion under Rule 60(b) may be denied solely upon a finding that a default was willful. *See De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (Summary Order). However, under Rule 55(c), even where a court finds that a defendant's default was willful, it is still free to find "good cause" based upon the other two factors. *See Gench v. HostGator.com LLC*,

2015 U.S. Dist. LEXIS 78309, at *16-17 (S.D.N.Y. June 17, 2015) (The court "assumed that the willfulness factor favor[ed] maintaining the entry of default," but still ruled for the defendant because "the remaining factors strongly weigh in favor of setting aside the default…. This result is particularly warranted given that we are considering the vacatur of an entry of default, rather than of a default judgment.").

## A.   PLAINTIFF WILL NOT BE PREJUDICED IF HER MOTION IS DENIED

On a Rule 55 motion, prejudice is the most important factor:

> The Court considers the last "good cause" factor first, because "[p]rejudice to the nondefaulting party is 'the single most persuasive reason for denying a Rule 55(c) motion . . . .'" *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12-cv-52 (JPO), 2013 U.S. Dist. LEXIS 61877, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (quoting Wright & Miller, *Federal Practice and Procedure* § 2699 (3d ed. 2010)). Delay, standing alone, does not establish prejudice for purposes of a request to set aside an entry of default. *Enron Oil*, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks omitted).

*King v. Regen Med. Mgmt., LLC*, 2021 U.S. Dist. LEXIS 169150, at *3 (S.D.N.Y. Sep. 7, 2021).

"To establish the 'requisite level of prejudice, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated.'" *McFarlane v. Harry's Nurses Registry*, 2020 U.S. Dist. LEXIS 58387, at *49 (E.D.N.Y. Apr. 2, 2020) (Citation omitted).

*King* demonstrates the frivolity of Plaintiff's conclusory parroting of the legal standard by claiming that she will be "disadvantaged in that key witnesses, evidence, and information to support her case due to time elapsing [sic]" and "much of the information . . . will become more difficult obtain [sic]" (Pl. MOL, at 11), as the Court found "little, if any, evidence of prejudice" where "Regen promptly made appearances after the Clerk's office issued certificates of default" and "[j]ust over a month after default was entered, and only 93 days after King filed her complaint,

Regen filed an answer." 2021 U.S. Dist. LEXIS 169150 at *5. The Court concluded "Regen's default affected only minimally the pace of litigation, King's access to discovery, and resolution of the dispute on the merits." *Id.*

If the plaintiff failed to show prejudice in *King*, Plaintiff cannot possibly do so here based upon the facts detailed *supra*, at INTRODUCTION. *See also Lion-Aire Corp. v. Lion Air Installation, Inc.*, 2020 U.S. Dist. LEXIS 120938, at *17 (E.D.N.Y. July 8, 2020) (No "substantial prejudice to Plaintiff where, as here, the case is in its infancy and the parties have not yet engaged in discovery").

Further, any prejudice to Plaintiff caused by Defendant's supposed short delay in appearing by counsel would be a self-inflicted wound because, as explained *supra*, at INTRODUCTION, Plaintiff's frivolous pursuit of a default judgment is the sole cause of delay here. Had Plaintiff afforded Defendant's counsel the professional courtesy of granting him the 18-day extension of time to answer or move which he sought on October 13, 2021, Defendant's motion to dismiss the Amended Complaint would have been fully briefed and either decided or awaiting decision. Moreover, if Plaintiff believed she needed immediate discovery in the interim, she could have sought it (although Defendant would have opposed it).

Finally, a comparison of this case to the sole case cited by Plaintiff on the issue of prejudice – *Lazic v. Dorian Owners, Inc.*, 2011 U.S. Dist. LEXIS 8708 (E.D.N.Y. Jan. 29, 2011) – only highlights Plaintiff's failure to show prejudice because, in *Lazic* (a) the defendant delayed responding to the complaint for more than seven months after he was served (*id.*, Case No. 10-cv-01824, Dkt. Nos. 4-5 and 7-8), and (b) the complaint sought relief under the FLSA for underpayment of wages during the period between 2006 through July 2009 (*id.*, Dkt. No. 1, at ¶ 13). Plainly, the delay caused by the defendant's default in *Lazic* prejudiced the plaintiff because

his "ability to prove liability [would] likely turn on his recollection — and the credibility of that recollection — of the hours he worked during certain weeks" as much as five years prior.  2011 U.S. Dist. LEXIS 8708 at *5.

In contrast, here, Plaintiff's claims against Defendant stem from alleged isolated incidents spanning just eight months in 2020.  (*See* Dkt. No. 8, at ¶¶ 88-112).

## B.   <u>DEFENDANT'S DEFAULT WAS NOT WILLFUL</u>

Plaintiff's claim that Defendant's alleged default was willful is as frivolous as her claim of prejudice.

For a defendant's default to be considered willful, her conduct must be "'more than merely negligent or careless,'" and it must rise to the level of "'egregious and … not satisfactorily explained.'"  *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (internal citation omitted); *see, e.g., New York v. Green*, 420 F.3d 99, 107-08 (2d Cir. 2005) (Willful default found where defendants' 14-month delay in answering the complaint "was a 'part of an overall plan to delay the proceedings….'") (Quoting District Court Order).

While Plaintiff points to media attention and Defendant's efforts to retain counsel, speculating that Defendant chose not to take this litigation seriously (Pl. MOL, at p. 6), that notion is absurd given that Defendant's counsel filed a Notice of Appearance just eight days after the purported default.  *Compare with Bricklayers*, 9 F.3d at 186 (Willfulness found where there was indisputable evidence that after the defendants became aware of the litigation, they "failed to file a responsive pleading for over nine months after the receipt of the summons and complaint, nearly eight months after the defendants were informed that the plaintiffs had requested an entry for default, and six months after they were served with discovery demands").

Further, as in *Plumbers, Union No. 112 Pension Fund v. Fendick Plumbing, Heating & Air Conditioning, Inc*., 2008 U.S. Dist. LEXIS 75118, at *4 (N.D.N.Y. Sep. 29, 2008), Defendant has explained that her failure to respond to the Amended Complaint stemmed from an innocent miscommunication with counsel. (Exhibit A to Defendant Dec., at ¶¶ 4-5).[9] Moreover, her counsel has corroborated her explanation. (October 15, 2021 Declaration of Judd Burstein, Dkt. No. 17-1, ¶ 6). Hence, Plaintiff's counsel is unprofessionally accusing Defendant's counsel of perjury by implication without any basis whatsoever for doing so.

In all events, Defendant is entitled to the benefit of the doubt on whether her explanation demonstrates a lack of willfulness. *See, e.g., Brown v. Gabbidon*, 2007 U.S. Dist. LEXIS 35134, *10 (S.D.N.Y. May 14, 2007) ("I give Mr. Gabbidon the benefit of the doubt here and hold that his *five-month* delay in appearing in this case was not willful.") (Emphasis in original).

Moreover, even if Defendant had failed to explain her purported delay, Defendant's counsel's prompt filing of the Notice of Appearance and the motion for permission to file a late letter requesting a pre-motion conference precludes a finding of willfulness. *See, e.g.*, *New Falls Corp. v. Soni Holdings, LLC*, 2020 U.S. Dist. LEXIS 83499, *9-12 (E.D.N.Y. May 8, 2020), *R&R adopted*, 2020 U.S. Dist. LEXIS 93477 (E.D.N.Y. May 28, 2020) (Despite the defendants' failure to explain their default, no finding of willfulness when "the Moving Defendants were in default for approximately four weeks prior to appearing in this action…, just ten days after Plaintiff filed its motion to enter default judgment and two weeks after the Clerk of the Court entered the notation of default'").

---

[9]     Plaintiff's assertion that Defendant "makes no attempt to explain why she failed to respond" (Pl. MOL, at p. 7) is demonstrably false given Defendant's October 14, 2021 Declaration (Exhibit A to the Defendant Dec.), which she initially filed over two months before Plaintiff filed her motion. (Dkt. No. 17-5).

The cases cited by Plaintiff at pages 6-9 of the Pl. MOL are inapposite both because they were decided under Rule 60(b) (a fact which Plaintiff omits) and because Plaintiff has misrepresented the Courts' holdings.  Due to concerns about the length of this brief, we refer the Court to the decisions in those cases to confirm that we have accurately described them.

However, we do note, as an example, one particularly egregious and inexcusable misrepresentation of the cited cases.  According to Plaintiff, a default judgment was entered against the defendants in *SEC v. Breed*, 2004 U.S. Dist. LEXIS 16106 (S.D.N.Y. Aug. 12, 2004), because the defendants had been two-weeks late in answering the complaint.  This characterization of the case is beyond misleading because, as confirmed by the case docket (Case No. 01-cv-07798, at Dkt. Nos. 26-45), the Court did not grant a default judgment because of that delay.  Indeed, the defendants were permitted to continue litigating after their late answer.  The plaintiff's motion for a default judgment, **which the defendants did not oppose**, was based upon the defendants' failure to comply with discovery demands, appear for depositions, or answer Rule 37 motions. *See Breed*, 2004 U.S. Dist. LEXIS 16106 at *13-15.[10]

## C.   DEFENDANT HAS MERITORIOUS DEFENSES

The third factor for the Court to consider – whether Defendant has a meritorious defense to the claims asserted in the Amended Complaint – also overwhelmingly favors Defendant.  "This requirement is not meant to impose a stringent burden…." *One W. Bank, N.A. v. Ruiz*, 2018 U.S. Dist. LEXIS 41989, at *8 (E.D.N.Y. Mar. 13, 2018).  Given this low burden, Defendant can demonstrate multiple defenses – both legal and factual.

---

[10]   It also bears mention that in one of the cases cited by Plaintiff, *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996), the Court held that the defendant's failure to answer the Complaint after receiving two notices about the case in the mail did not demonstrate willfulness. *Id.*, at 61.

### 1.    <u>Plaintiff Has Proffered Meritorious Factual Defenses</u>

Initially, we note that Plaintiff misunderstands the rule that "upon entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations of liability, except those relating to damages."  (Pl. MOL, at pp. 9-10).  On a Rule 55 motion, this language means only that, in the first instance, the plaintiff is entitled to the same presumptions afforded on a Rule 12(b)(6) motion: the Court must "accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor."  *Finkel*, 577 F.3d at 84.

However, in contrast to a Rule 12(b)(6) motion, "the Court may consider whether material issues of fact remain…."  *Criollo v. Ny Fine Interiors*, 2021 U.S. Dist. LEXIS 64632, at *12 (E.D.N.Y. Mar. 3, 2021).  For example, in *Meehan*, the Court found that the District Court's application of Rule 60(b)'s "meritorious defense" requirement instead of Rule 55(c)'s less rigorous standard was erroneous because the District Court thereby failed to "assess[ ] [defendants'] denials that money was due for legal services and that the alleged defamatory statements had been made." 652 F.2d at 276-77 n.6.

Our analysis of the law on this point is confirmed by the dockets of the cases upon which Plaintiff has relied in support of her "deemed to admit" argument.  Those dockets reveal that the defendants in each of those cases did not appear in opposition to the plaintiffs' motions for a default judgment.  *See Aguilar v. E-Z Supply Corp*, Case No. 06-cv-06790 (E.D.N.Y. 2008) (Dkt. Nos. 28-48) (Relating to the default entered against E-Z Supply Corp,); *Joseph v. HDMJ Rest., Inc.*, Case No. 09-cv-00240 (E.D.N.Y. 2013) (Dkt. Nos. 45-53); *Empire State Carpenters Welfare v. Darken Architectural Wood*, Case No. 11-cv-00046 (E.D.N.Y. 2012) (Dkt. Nos. 4-12); *Mack Financial Servs. v. Poczatek*, Case No. 10-cv 03799 (E.D.N.Y. 2011) (Dkt. Nos. 11-29); and *F.T.C. v. 1263523 Ontario, Inc.*, Case No. 99-cv-08679 (S.D.N.Y. 2002) (Dkt. Nos. 10-17).

Moreover, Plaintiff's analysis of the governing law is nonsensical in light of the well-established principle that a defendant seeking relief under Rule 55 need only "present some evidence beyond conclusory denials to support his defense" and "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98.  Further, the proffered defense does not need to be "ultimately persuasive" and is deemed meritorious "if it is good at law so as to give the factfinder some determination to make…." *Div. 1181 Amalgamated Transit Union – N.Y. Emps. Pension Fund v. R & C Transit, Inc.*, 321 F.R.D. 60, 63 (E.D.N.Y. 2017) (internal quotation marks omitted).  This case law would be meaningless if, as Plaintiff contends, the mere entry of a default under Rule 55(a) precludes any challenges to a complaint's factual allegations.

Here, Defendant has a number of meritorious factual defenses:

**First**, she has, to the greatest extent possible, explicitly denied under oath each and every material allegation against her in the Amended Complaint on a paragraph-by-paragraph basis. (Defendant Dec., at ¶¶ 9-32).  In a case where the Plaintiff alleges that third parties acted at the direction of Defendant, and Defendant does not yet have the ability to conduct discovery, she can do no more than she has done, and her denials are sufficient to establish a meritorious defense because she will prevail at trial if the jury believes her.  *See Smith v. Campbell*, 2011 U.S. Dist. LEXIS 109685, at *16 (W.D.N.Y. Sep. 27, 2011) (Meritorious defense found where "Campbell has explained briefly that he intends to defend himself against plaintiffs' accusations by establishing that plaintiffs have mischaracterized his conduct and that all of his interactions with plaintiffs had legitimate law enforcement purposes free of animus or ulterior motives…"); *Goodrich v. WFS Fin., Inc.*, 2008 U.S. Dist. LEXIS 32163, at *8 (N.D.N.Y. Apr. 18, 2008)

(Defense based upon credibility held meritorious because the case was "likely to turn on factual disputes"); *Hoffman v. Kim*, 1996 U.S. Dist. LEXIS 17595, at *5 (S.D.N.Y. Nov. 25, 1996) ("Although their ultimate success on the merits may turn on credibility findings, at this point they have asserted what would be a meritorious defense: that it was the cabdriver rather than Ms. Kim who was negligent. Indeed, Ms. Kim gives a sharply different version of the accident: the cab hit the Honda rather than, as plaintiff alleges, vice versa."); *SEC v. Hasho,* 134 F.R.D. 74, 77 (S.D.N.Y. 1991) (Where the defendant denied the complaint's allegations, "the case against defendant will turn on the credibility of plaintiff's witnesses and the credibility of defendant" and "for purposes of this motion, defendant has established that he has meritorious defenses; the validity of these defenses will be tested at trial").

**Second,** Exhibit B to the Defendant Dec. is an August 31, 2020 text message sent to Defendant by Plaintiff[11] which, standing alone, could cause a jury to reject Plaintiff's testimony on credibility grounds. If that were to happen, Plaintiff would necessarily lose her case because she is its linchpin witness.

The text message reads as follows: "US Marshal [sic] is asking questions!!! They showed up at my door." It completely contradicts Plaintiff's claim that Defendant threatened her or that she was in fear of her because the Amended Complaint alleged that, by August of 2020, Plaintiff and her family had been threatened by people supposedly working on Defendant's behalf and that she had changed her address because she was afraid for her safety. (Dkt. No. 8, at ¶¶ 104-07). But if this were true, Plaintiff would **never** have sent Defendant a text message asking for help because

---

[11]     Exhibit C to the Burstein Aff., is a redacted Lexis print-out which, as shown in the unredacted version of it, confirms that the text message was sent to Defendant from a phone registered to Plaintiff. We have provided an unredacted copy of the document to Plaintiff's counsel and can provide the unredacted copy to the Court if the Court requests it.

law enforcement had come to her door.  That is the **last** thing someone who was supposedly being threatened by supposed "gang members" would do.  But it is the **first** thing – suggesting that there was a danger to Defendant of criminal charges – that someone who was looking for a payoff would do.[12]

**Third**, annexed as Exhibit D to the Burstein Aff., is a chart showing numerous prior statements made by Plaintiff in various media interviews and elsewhere which contradict the Amended Complaint's material allegations.  Impeachment of Plaintiff with these prior inconsistent statements would almost surely lead a jury to reject her testimony.

## 2.   Defendant has a Meritorious Improper Venue Defense

Defendant has a compelling basis for dismissing the Amended Complaint under Rule 12(b)(3) for lack of proper venue.

Since the Amended Complaint correctly alleged, at Paragraph 12 thereof, that Defendant and Mr. Petty are both residents of California, venue would lie in this District only if Plaintiff has adequately alleged that a substantial part of the events of omissions giving rise to her claims occurred here.  28 U.S.C. § 1391(b)(2).

Plaintiff is undoubtedly resting her venue claim upon her allegation that, in 1994, Defendant's husband raped her in Queens County.  However, the location of that alleged event is irrelevant to the issue of whether venue **as to Defendant** is proper because "'[w]hen venue is challenged by a defendant, plaintiff bears the burden of proving that venue is proper in the forum

---

[12]     This text message also cannot be reconciled with Plaintiff's allegations in Paragraphs 108-109 of the Amended Complaint that the U.S. Marshals "showed up" at her husband's job and then offered her witness protection (itself, as shown by the Justice Department's witness protection guidelines, a demonstrably false allegation).

state' for *each* claim against each defendant...." *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 363 (E.D.N.Y. 2007) (Emphasis in original).

As to Defendant, Plaintiff failed to plead any connection to New York, much less to this District.  While Plaintiff alleged a few acts in New York purportedly committed by supposed agents of Defendant (Dkt. No. 8, at ¶¶ 160, 168, and 175), these allegations certainly do not amount to a substantial part of the events alleged in the Amended Complaint.  More importantly, Plaintiff did not allege that any of these minimal New York events took place, as required by § 1391(b), in the Eastern District of New York.

### 3.    Defendant has a Meritorious Service of Process Defense

Even if Defendant were subject to the Court's personal jurisdiction under CPLR 302 (which she is not), Defendant would still be entitled to dismissal under Rule 12(b)(5) because Plaintiff failed to properly serve her with process.  According to Plaintiff, Defendant was properly served with the Amended Summons and Complaint because service on Mr. Petty was also service upon her in that Mr. Petty is a person of suitable age and discretion who resides in her home.  The flaw in this argument is that Mr. Petty was not properly served.[13]  Rather than repeat Mr. Petty's arguments on the issue of whether he was properly served, Defendant adopts and incorporates all of those arguments herein.  (*See* Dkt. No. 28, at pp. 4-13; Dkt. No. 33, at pp. 10-12).[14]  However, Defendant supplements those arguments as follows:

---

[13]    While Plaintiff claims that Petty "does not deny being served by Robert Diaz." (Pl. MOL, at p. 4), that claim is demonstrably false.  (*See* Dkt. No. 31-2, at ¶ 2).

[14]    We further note that Defendant incorporates all arguments made by Mr. Petty in his opposition to Plaintiff's motion for a default judgment against him and his motion to vacate the default entered against him unless they are inconsistent with the arguments made by Defendant in her opposition to the instant motion.

a.   **The Inconsistencies Between the Return of Service and Diaz's Declarations, as Well as Documentary Evidence, Undermine Diaz's Credibility and Weigh in Favor of a Finding that Defendant Was Not Properly Served**

Although a Return of Service is generally "*prima facie* [evidence] that service was effected or attempted in the manner described therein," "[t]he Court need not assume service was proper . . . if the affidavits are inconsistent or unreliable." *Feng Lin v. Quality Woods, Inc.*, 2019 U.S. Dist. LEXIS 14239, at *6-7 (E.D.N.Y. Jan. 28, 2019) (internal citation omitted); *see also Mister Softee, Inc. v. Otta*, 2016 U.S. Dist. LEXIS 165531, at *6 (E.D.N.Y. Nov. 29, 2016) ("When the process server's affidavit includes mistakes, however, the affidavit cannot make a *prima facie* showing of proper service.").

Here, Robert Diaz, Plaintiff's process server, ("Diaz") has offered materially inconsistent accounts of serving Mr. Petty in that (a) his Return of Service (Dkt. No. 14) and his subsequent October 27, 2021 Declaration (Dkt. No. 25-2) ("Diaz Oct. Dec.") conflict with each other, and (b) he then alleged new inconsistent facts in his November 8, 2021 Declaration, filed on November 22, 2021 (Dkt. No. 32-3) ("Diaz Nov. Dec.")[15] in an attempt to shore up his claim of proper service.[16]

Initially, Diaz claimed to have personally served Mr. Petty. It was only after Mr. Petty and Defendant denied that Mr. Petty was ever personally handed the Summons and Amended

---

[15]   The Diaz Declaration submitted in support of this Motion (Dkt. No. 41-4) is the same as the Diaz Nov. Dec.

[16]   A defendant in another civil case accused Diaz of submitting a false affidavit of service. The Court deferred ruling on the dispute until trial. *Langer v. Beverly Hills Suites, LLC*, 2020 U.S. Dist. LEXIS 208696 (Central Dist. Cal. Oct. 21, 2020). Thereafter, according to the docket, the case settled.

33

Complaint, that Diaz conceded that he did not, in fact, personally deliver the documents[17] to Mr.

Petty, but rather left them outside his front door.  (Dkt. No. 25-2, at ¶ 11).  Further, he added the

claim that he had made two attempts to serve Defendant.  This discrepancy alone renders Diaz's

Return of Service unreliable.

Diaz also failed to explain the disparity between his description of Mr. Petty and

Defendant's and Mr. Petty's sworn statements regarding Mr. Petty's weight.  In the Return of

Service, Diaz described Mr. Petty as "200lbs."  In the face of Defendant's and Mr. Petty's sworn

statements that Mr. Petty weighs no more than 175 pounds, Diaz modified his description of Mr.

Petty from "200lbs" to "approximately 200lbs."  (*Compare* Dkt. No. 14 *with* Dkt. No. 25-2, at ¶

12).  A generous approximation of weight might factor in a difference of 5 to 10 pounds, not 25 to

30 pounds.  Diaz also failed to provide any reason why his estimate was so starkly inaccurate,

instead ignoring Mr. Petty's and Defendant's sworn statements as to Mr. Petty's weight and

standing by his inaccurate description of Mr. Petty.  These facts also support Defendant's claim

that she was not properly served because Mr. Petty was not properly served.

The credibility of Diaz's account of service is further undermined by his statements about

Plaintiff's counsel having provided him with a photograph of Mr. Petty.  In the Diaz Oct. Dec., he

stated only that Plaintiff's counsel had provided him with a photograph of Mr. Petty.  (Dkt. No.

25-2, at ¶ 5).  He did not state **when** he was provided with the photograph or that he had used it to

identify Mr. Petty, instead claiming only that "I saw a figure staring at me through the window. I

---

[17]     Notably, Diaz failed to indicate whether he even served Petty with the operative complaint, the Amended Complaint.  The Return of Service identified the documents served as "Summons, Jury Demanded, Exhibit(s)" (Dkt. Nos. 13 and 14), and in his competing Declarations, Diaz contended he served Petty with "a summons and complaint for himself and one for Ms. Maraj." (Dkt. No. 25-2, at ¶ 4; Dkt. No. 32-3, at ¶ 4).

knew it was Mr. Petty because the security guard informed me that he was indeed in the home." (*Id*., at ¶ 11).

Then, in the Diaz Nov. Dec., **executed after Mr. Petty had filed papers challenging Diaz's first Declaration**, he altered his story, by now claiming that the "photo is what I used to identify Kenneth Petty on September 15, 2021." (Dkt. Nos. 32-2 and 41-4, at ¶ 5).  But in addition to failing to state when he was provided with the photograph, or attaching it to this version of his Declaration, he then contradicted himself in that Declaration by claiming yet again that "I saw a figure staring at me through the window. I knew it was Mr. Petty because the security guard informed me that he was indeed home."  (*Id*., at ¶ 11).  Apart from the fact that the statement about what the security guard had told Diaz is rank hearsay, obviously, both statements cannot be true at the same time.  Moreover, there would have been no need for Diaz to state that he recognized the figure as Mr. Petty because the security officer purportedly told him that Mr. Petty was home if he had compared the photograph to the person whom he allegedly saw through the window.[18]

Diaz also provided varying accounts of what transpired with the security officer: In the Diaz Oct. Dec., at ¶¶ 10-11, he stated that when he returned to where the security officer was located, he heard Mr. Petty "yelling at her because he was upset that she let [him] into the compound" then returned to the house "after hearing this."  In other words, Diaz's Declaration did not state that the security officer told him that Mr. Petty was yelling at her; it stated that he went back to the house **solely** on the basis of having heard Mr. Petty yelling over the telephone.  But Diaz's Declaration also makes clear that he had never spoken to Mr. Petty prior to that day.  So,

---

[18]     To be clear, Defendant does not concede that Petty was the "figure" behind the window. Rather, Defendant is merely pointing out the inconsistencies in Diaz's Declarations, which appear to be intentionally misleading efforts to close the obvious gaps in his accounts of purportedly serving Mr. Petty.

he would have had no way of knowing that it was in fact Mr. Petty on the phone with the security officer.

This contradiction further supports Defendant's contention that service of the Summons and Amended Complaint was improper.[19]  *See Feng Lin*, 2019 U.S. Dist. LEXIS 14239 at *8-9 ("The Set 3 Affidavits also contain information different from the Set 1 Affidavits, which are still on the record.  [The plaintiff's counsel] could have withdrawn one of the sets of affidavits or otherwise explained the discrepancy, but he did neither...."); *Lopez v. Yossi's Heimishe Bakery Inc.*, 2015 U.S. Dist. LEXIS 43271, at *16 (E.D.N.Y. Mar. 9, 2015), *R&R adopted*, 2015 U.S. Dist. LEXIS 47099 (E.D.N.Y. Mar. 30, 2015) ("In short, the record is internally inconsistent with respect to when and how (and how effectively) the plaintiffs mailed the summonses to the [defendants].").

Diaz's claim that he **personally** mailed the Summons and Amended Complaint to Defendant on September 16, 2021 (Diaz Nov. Dec. at ¶ 13) also raises serious questions about his credibility because the copy of the envelope in which he claimed to have sent those documents (Exhibit A to the Diaz Nov. Dec.) (Dkt. No. 32-4) was mailed from Newark, New Jersey.  As explained in the Burstein Dec., at Paragraphs 8-9 thereof, the postage stamp on the envelope was created on Endicia.com, a website which permits a person to print out postage stamps.  Stamps created with Endicia show the zip code for the sender's location.  The compelling inference to be drawn from these facts is that Diaz, who is located in California, falsely claimed that he personally

---

[19]     In Plaintiff's November 22, 2021 Reply to Memorandum of Law in Opposition to Defendant Kenneth Petty's Motion for Default Judgment, Plaintiff's counsel regrettably took liberties with the facts by claiming that "Diaz saw [Petty] through a window and recognized [sic] from photographs" and that "Diaz was close enough to recognize [Petty] through a window (from a photograph)."  (Dkt. No. 34, at pp. 8-9).  However, Diaz never stated that he recognized Petty as the figure behind the window using the photograph.

mailed the Summons and Amended Complaint to Defendant.  While the location from which the envelope was purportedly sent may not be significant in itself,[20] if Diaz falsely claimed under oath that he personally sent the envelope, his credibility would be destroyed, and Plaintiff would be unable to carry her burden on the issue of service.

Finally, Plaintiff may seek a fourth bite at the apple by submitting another Declaration from Mr. Diaz.  It would be improper for her to do so in a reply to which Defendant will have no opportunity to respond.  Plaintiff should not be permitted to make the service of process issue in this case a moving target for Defendant by submitting new Declarations from Diaz each time a problem with his story is revealed.

> **b.    Plaintiff's Cursory Alternative Argument That Diaz May Have Served Someone Who Appeared to Reside at Mr. Petty's Residence Fails**

Plaintiff appears to be advancing an argument that service was proper under Fed. R. Civ. P. 4(e)(2)(B) by contending, alternatively, that even if Mr. Petty was not served, the person whom Diaz served "appeared to be a person of suitable age (40) and discretion who resided at [Mr. Petty's] Residence."  (Pl. MOL, at p. 5 n.2).  Plaintiff mistakes the law.  Rule 4(e)(2)(B) provides that an individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion **who resides there**" (emphasis supplied); not someone who *appears* to reside there.  Regardless, Diaz did not explain how he could have known whether some other person he may have seen had authority to accept service of process when by his own admission, he never spoke to anyone in the

---

[20]    We note that Cal. Civ. Code § 1013(b) requires that "[t]he copy of the notice or other paper served by mail pursuant to this chapter shall bear a notation of the date and place of mailing."  Hence, under California law, the purported service upon Defendant would have been invalid unless Diaz has proof that he jumped on the redeye flight from Los Angeles on September 15, 2021 (as he claimed to have completed personal service at 6:28 p.m. PDT that evening (Dkt. No. 25-2, at ¶ 4)) so that he could arrive the next morning in Newark to mail the envelope from there.

residence.  *See Smith v. Smith*, 2021 U.S. Dist. LEXIS 137323, at *3 (E.D.N.Y. July 22, 2021) (a

Return of Service "'may be insufficient proof [of service] when it fails to explicitly indicate how

the process server knows that . . . the individual being served has authority to accept service'")

(Citation omitted).

     *United States v. John*, 2020 U.S. Dist. LEXIS 151829, at *6 (E.D.N.Y. July 23, 2020), is

on point.  There, the process server attested that the summons and complaint were served on "'John

Doe – Co-Habitant'" and stated John Doe "'refused to give his name….'"  *John*, 2020 U.S. Dist.

LEXIS 151829, at *6.  The Court concluded the plaintiff failed to prove proper service because

the affidavits of service did not establish that John Doe resided at the home.  *Id*., at *6-7.

     Here, there is even less support for the contention that, if the "figure" whom Diaz

purportedly saw was not Mr. Petty, that person resides in Mr. Petty's and Defendant's residence.[21]

Hence, if the individual Diaz purportedly saw in the window was not Mr. Petty, he has conceded

that he did not properly serve either Mr. Petty or Defendant.

---

[21]    Notably, Mr. Petty and Defendant have denied that any individual fitting that description reside in their residence.  (Exhibit A to Defendant Dec., at ¶ 3; Dkt. No. 31-2, at ¶ 4).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion should be denied.

Dated: New York, New York
      December 31, 2021

                                          Respectfully submitted,

                                          JUDD BURSTEIN, P.C.,

                                        By:  <u>/s/ Judd Burstein</u>
                                              Judd Burstein
                                            Emily C. Finestone
                                      260 Madison Avenue, 15th Floor
                                      New York, New York 10016
                                      (212) 974-2400
                                      (212) 974-2944 (Fax)
                                      jburstein@burlaw.com
                                      efinestone@burlaw.com
                                      *Attorneys for Defendant*
                                      *Onika Tanya Maraj*