```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
```

```
------------------------------X Docket#
JENNIFER HOUGH,                 : 21-cv-04568(ENV)(JRC)
                                :
                Plaintiff,      :
                                :
     - versus -                 : U.S. Courthouse
                                : Brooklyn, New York
MARAJ, ET AL.,                  :
                                : January 20, 2022
                Defendants      :
------------------------------X
```

```
          TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
            BEFORE THE HONORABLE JAMES R. CHO
             UNITED STATES MAGISTRATE JUDGE
```

**A    P    P    E    A    R    A    N    C    E    S:**
**(VIA VIDEO/AUDIO)**

**For the Plaintiff**:          **Tyrone A. Blackburn, Esq.**
                                T.A. Blackburn Law, PLLC
                                1242 East 80th Street, 3rd Fl.
                                Brooklyn, NY 11236

                                **Steven N. Gordon, Esq.**
                                Tsyngauz & Associates, P.C.
                                114 Mulberry Street
                                New York, NY 10013


**For the Defendant**:          **Steven David Isser, Esq.**
                                Law Offices of Steven D. Isser
                                424 Madison Avenue, Third
                                Floor
                                New York, NY 10017


**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1       THE COURT:  All right.  Good morning, everyone.

2   We're here for a conference in *Hough v. Maraj*, case

3   number 21-CV-4568.

4       Can the parties give their appearances for the

5   record starting with plaintiff?

6       MR. BLACKBURN:  Tyrone Anthony Blackburn, T.A.

7   Blackburn Law, PLLC, for plaintiff.

8       MR. GORDON:  Steven Gordon, Tsyngauz &

9   Associates, for plaintiff.  And I also have my law

10  student extern here, (indiscernible).

11      LAW STUDENT:  Good morning, your Honor.

12      THE COURT:  Good morning.

13      MR. ISSER:  Good morning, your Honor.  Steven

14  Isser, Law Offices of Steven D. Isser for the defendant

15  Kenneth Petty.

16      THE COURT:  All right.  Good morning everyone.

17  So there are two motions we want to address today and

18  I'll hear argument on both.  First, plaintiff's motion

19  for default against Defendant Petty and Defendant Petty's

20  motion to vacate the entry of default.

21      All right.  But before I get to that, anything

22  you want to address before we hear arguments on the

23  motion, Mr. Blackburn?

24      MR. BLACKBURN:  No, sir.

25      THE COURT:  All right.  How about for you, Mr.

3

Proceedings

1  Isser?

2          MR. ISSER:   I would just like to state for the

3  record, your Honor, that you know, Defendant Maraj had a

4  similar motion and they've been let out of the case but

5  I'd like to adopt all the arguments made in Ms. Maraj's

6  motion which are not inconsistent with my client's

7  position.

8          THE COURT:  Okay.  Understood.  So why don't I

9  hear argument on the motion for default first.  Mr.

10 Blackburn, do you want to be heard?

11         MR. BLACKBURN:  I believe Mr. Gordon is going

12 to take the lead on this.

13         THE COURT:  Okay.  Go ahead.

14         MR. GORDON:  I'm here, your Honor.  So as you

15 know, this case arises out of an unfortunate and heinous

16 event on September 16, 1994 where plaintiff was violently

17 raped by the defendant who was subsequently charged with

18 first degree rape.  And as a deal for a reduced sentence,

19 he pled to attempted rape in the first degree and served

20 approximately four years.

21         Our client for years has dealt with the

22 emotional damage and as well as the physical damage that

23 occurred on that very day and it has permeated every

24 facet of her life.  Ms. Hough never had any intention of

25 seeking any sort of civil damages from Defendant Petty.

4

Proceedings

1   However, after Defendant Petty and former defendant in

2   this, Defendant Maraj orchestrated a scheme in order to

3   convince or threaten and coerce Ms. Hough into recanting

4   her story after Mr. Petty was arrested for failing to

5   register as a sex offender on March 5th.

6           The time in which Defendant Petty was arrested

7   and contacted Ms. Hough through one of his associates in

8   his gang, the Makk Ballers, was only three days.

9   Defendant Petty was arrested on March 5, 2020.  On March

10  8, 2020 Barry Dukes, a.k.a. Black, contacted Ms. Hough

11  and did not immediately state that it was for the purpose

12  of what occurred in 1994 for her to recant her story, but

13  in time and throughout that da he brought up that

14  incident and Ms. Hough expressed that she wanted it to

15  just go away.  And Black said that he could help her do

16  that.

17          The very next day Black, and this is

18  undisputed, texted Ms. Hough Ms. Maraj's phone number

19  which was provided by Mr. Petty.  And Mr. Petty concedes

20  that this occurred.  On that phone call, Ms. Maraj

21  attempted to convince our client to recant her story,

22  which she declined.  And after that, a series of

23  threatening acts and bribes.

24          Now, on August 13, 2020 our client --

25          THE COURT:  Mr. Gordon, let me stop you for a

5

Proceedings

1   minute there.

2              MR. GORDON:  Yes.

3              THE COURT:  I'm quite familiar with the

4    underlying facts of the case.  I want to hear argument on

5    your motion for default judgment.  Why do you think

6    you're entitled to a default judgment in this case?

7              MR. GORDON:  Your Honor, we believe we are

8    entitled to a default judgment because the defendant

9    clearly or apparently willfully failed to timely respond

10   to the complaint because it would gain him an advantage

11   in his criminal case.  By not responding to the complaint

12   and not having to give any admissions or denials or any

13   subsequent admissions or denials in discovery, he was

14   essentially shielding himself from any adverse effects in

15   this criminal case.  The case law is clear that where a

16   defendant has strategically failed to respond to gain an

17   advantage in a civil case that willfulness is fact.

18              The defendant does not deny having knowledge of

19   the lawsuit nor his time to respond.  The summons very

20   clearly stated when it was served on him that he has 21

21   days after service of the summons and he must serve the

22   plaintiff in answer to the attached complaint or a motion

23   under Rule 12.  It even says at the very bottom if you

24   fail to respond, judgment by default will be entered

25   against you for the relief demanded in the complaint.

6

Proceedings

1          Defendant Petty offers no excuses except that

2     there was some sort of miscommunication between his wife,

3     not even him, and her attorney as well as he did not want

4     to pay.  So he actually is conceding that he

5     intentionally did not pay for an attorney to respond to

6     the complaint timely because he could not find one that

7     was not supposedly demanding a $100,000 retainer.

8              This is not a sufficient excuse.  Defendant

9     Petty offers no documentary evidence that there was any

10    sort of miscommunication between Defendant Maraj and her

11    attorney.  There is no proof that Defendant Petty, and he

12    does not deny, could not have entered an appearance on

13    his own or asked one of his at least four attorneys at

14    the time to seek an extension.  There is absolutely no

15    excuse for Defendant Petty failure to timely respond.

16    And the only conclusion that could be drawn is that it

17    was willful.

18              Secondly, Defendant --

19              THE COURT:  Mr. Gordon, let me ask you a

20    question based on something you just said.  You mentioned

21    that they didn't ask for an extension of time.  If they

22    had reached out to you and asked for more time, would you

23    have given them the additional time to respond?

24              MR. GORDON:  Your Honor, during the period in

25    which they had to respond, I wasn't on the case, but if I

7

Proceedings

1   had been on the case, yes, I would have given them an
2   extension.
3           THE COURT:  Okay.  And how much time would you
4   have given them?
5           MR. GORDON:  I would have given them at least
6   30 days.
7           THE COURT:  Okay.  All right.  So his answer
8   was due by presumably October 6th, is that right?
9           MR. GORDON:  Yes, yes.
10          THE COURT:  So you would have given them an
11  extension until November 6 to respond?
12          MR. GORDON:  Yes.
13          THE COURT:  Okay.  Well, according to my papers
14  it looks like defense counsel filed an appearance on --
15  what day is that?  October 25th.  And wrote to the Court
16  also on October 25th as well.  So within 30 days if you
17  had given them additional time to respond.
18          So help me understand why are we here on a
19  default proceeding --
20          MR. GORDON:  Because --
21          THE COURT:  -- if you would have given them
22  more time?
23          MR. GORDON:  -- even if I would have given them
24  more time, it still does not excuse a willful default.
25  You know, Defendant Petty still had to respond timely and

8

Proceedings

1    he cannot deliberately choose not to respond in order to

2    gain an advantage in this case, to gain an advantage in

3    his criminal case.  I think the facts are clear that

4    that's what occurred.  There's no other reason why,

5    there's no reasonable excuse or good cause as to why he

6    did not timely respond.

7            THE COURT:  Understand, I understand that, but

8    you keep referring to a criminal case.  This is a civil

9    case that we're on.  Right?  And so whatever advantage

10   he's seeking to gain doesn't seem to apply to this case,

11   is that right?  You're referring to a criminal case but

12   this is a civil matter.  Right?

13           MR. GORDON:  Yes.  No, I'm saying he willfully

14   failed to timely respond in order to gain an advantage in

15   his criminal case.  The case law is clear that you cannot

16   fail to timely respond in order to gain an advantage in

17   other litigation.

18           THE COURT:  Understood, but based on a letter

19   that was filed back in October by defense counsel, they

20   had asked for leave to respond to the complaint within a

21   short period of time.  So I'm not seeing where the gain

22   is in terms of this delay you're referring to.  I don't

23   understand what you're referring to.

24           MR. GORDON:  Your Honor, Defendant Petty never

25   requested an extension.  That was Defendant Maraj.  He

9

Proceedings

1   never requested an extension.  It's also unknown why

2   Defendant Maraj's attorney couldn't ask or seek an

3   extension for Defendant Petty at the time, nor why they

4   couldn't have been jointly represented.  I mean that's

5   obviously their own --

6          THE COURT:  Let's make sure we're all on the

7   same page then.  Look at docket number 24 and let me know

8   when you have it in front of you.

9          MR. GORDON:  Okay.

10                 (Pause in proceedings)

11          MR. GORDON:  I apologize, your Honor.

12          THE COURT:  Take your time.

13          MR. GORDON:  Yes, I have those, your Honor.

14          THE COURT:  Okay.  And you'll see in the letter

15   defendant indicates that he's going to seek leave to

16   serve a response to the amended complaint.  Do you see

17   that in the middle?

18          MR. GORDON:  Yes.

19          THE COURT:  Okay.  So interpret that as

20   defendant asking for more time to respond to the

21   complaint, right?

22          MR. GORDON:  Well yeah, I guess he expressly

23   didn't ask for more time but I guess it could be inferred

24   from what was stated.  But at that point we had already

25   concluded that his failure to timely respond was willful.

10

Proceedings

1      THE COURT:  Okay.  But certainly this is still

2   within the 30 day time period by which you would have

3   given him additional time to respond to the complaint,

4   right?

5      MR. GORDON:  Yes, I mean that's what I would

6   have given him before knowing that he was going to

7   willfully delay.  And therefore, we cannot trust that he

8   will not do the same when we serve discovery responses or

9   cause delays in any other way.  He has not shown that we

10   can trust his word at all.

11      THE COURT:  Okay.  Go ahead.  Continue.

12      MR. GORDON:  Yes.  So your Honor, the second

13   prong for entering a default judgment against the

14   defendant is whether defendant has a meritorious defense.

15   As already stated, the defendant pled guilty to attempted

16   rape, your Honor, but we understand and we note there is

17   no physical documentary evidence showing that Defendant

18   Petty did not rape our client.  His mere defense is that

19   he pled to attempted rape which as you know often times

20   people plead to lesser charges as part of their plea

21   deal.  He still was required to register as a sex

22   offender.  He was still charged as an adult at only 16

23   years old.  The evidence was clearly substantial enough

24   to label him for the remainder of his life as a sex

25   offender.

11

Proceedings

1          What Mr. Petty did to our client is absolutely

2    horrendous and besides, as I said, his conclusory

3    denials, he's offered no evidence that what Ms. Hough

4    alleges occurred, did not occur.  Therefore, the second

5    prong also weighs in plaintiff's favor.

6          With respect to the last prong, which is

7    prejudice, the most prejudicial are about Mr. Petty

8    failing to timely respond and now us not knowing whether

9    he is going to cooperate in the discovery process.  In

10   fact, Mr. Petty may be serving significant jail time once

11   he is sentenced.  His plea agreement does not state the

12   exact amount of time that he is to serve.  However, it

13   will be left to the judge's discretion.  However, we

14   believe that he will be serving at least some jail time

15   based on his prior offenses and the very fact that, you

16   know, the judge over there knows that 27 years later he

17   started harassing his victim for which he is required to

18   register as a sex offender.  So your Honor --

19          THE COURT:  Mr. Gordon, I have another question

20   for you.  Now, an argument is being raised that in your

21   request for a default against the defendant that you

22   failed to comply with Local Rule 55.1 which required you

23   to have included an affidavit of service with your

24   request for the default.  Am I understanding your papers

25   that you concede that you failed to comply with that

12

Proceedings

1   local rule?

2          MR. GORDON:  Your Honor, any failures with

3   respect to the local rules were minor technicalities in

4   our opinion, your Honor, and we cured all of them in our

5   declaration submitted with our motion for entry of a

6   default judgment.  And the Second Circuit has made it

7   clear that in *Holtz v. Rockefeller & Co.*, 258 F.3d 62

8   (2d Cir. 2001) that the district court has discretion to

9   overlook the requirements of local rules.  In *Feel Better*

10  *Kids v. Kids in Need*, No. 06-cv-0023, 2012 WL 448300

11  (EDNY Aug. 28, 2012), this Court held, "Where a party has

12  notice of a motion for an entry of default judgment, it

13  is appropriate to excuse the certificate of default

14  requirement and proceed to the rule on the motion for

15  default judgment.

16          So as such, if it is appropriate to -- if it

17  can be appropriate to ignore the rule for us to get a

18  default judgment altogether, any minor technicalities are

19  we believe insufficient to vacate a certificate of

20  default and to deny motion for entry of default judgment.

21          THE COURT:  Understood.  Just so I'm clear

22  though, are you acknowledging that you failed to comply

23  with the local rule?

24          MR. GORDON:  We are acknowledging that -- I

25  don't see that certain aspects may have been followed to

13

Proceedings

1   the strict interpretation of the rule, but I still

2   believe that in essence we complied with it.

3          THE COURT:  Okay.  Understood.  Now help me

4   understand, do you know why that provision is in the

5   local rule, the affidavit of service requirement?

6          MR. GORDON:  I believe that why it's in there

7   because they want to ensure that default is not

8   improperly entered.

9          THE COURT:  Okay.  Is it also your

10  understanding that that rule is in there to ensure that

11  the defendant was actually properly served?

12         MR. GORDON:  Yes, yes.  And I believe we showed

13  that in our declaration.  I still think the service of

14  process affirmation that was -- affidavit that was

15  submitted with our request for a certificate of default

16  showed that service was properly effectuated.

17         THE COURT:  All right.  Now, do you know

18  whether he was served with the complaint or the amended

19  complaint?

20         MR. GORDON:  Yes, he was served with the

21  summons and the amended complaint on September 15, 2021

22  at his home in (indiscernible), California.

23         THE COURT:  Okay.  Understood.  All right.

24  Anything else you'd like to add?

25         MR. GORDON:  No.  I mean at this time, your

14

Proceedings

1   Honor, we believe that it is appropriate to move forward

2   with an inquest hearing and determine damages for the

3   harms caused to Ms. Hough.

4           THE COURT:  Okay.  Now you cited a number of

5   Second Circuit precedent a view minutes ago.  You're also

6   aware that the Second Circuit has made it very clear that

7   its preference is for cases to be adjudicated on the

8   merits as opposed to through default proceedings.  Do you

9   understand that?

10          MR. GORDON:  Yes, yes, I understand that.  And

11  you know, obviously we want to follow the law and in this

12  case do not believe that, you know, that the favor

13  towards adjudicating the case on the merits is warranted.

14  We believe that the willful failure to respond to the

15  complaint here is so egregious and not satisfactorily

16  explained that default judgment is proper and justified.

17          THE COURT:  All right.  Mr. Isser, I'll hear

18  from you.

19          MR. ISSER:  Thank you, your Honor.  Before I

20  kind of go through methodically all of the reasons

21  plaintiff's motion should be denied and our motion to

22  vacate should be granted, I'd like to briefly respond to

23  some of the things plaintiff's counsel said.

24          First, this whole issue that it was important

25  for my client's sentencing or criminal case that the

Proceedings

1   plaintiff recant the rape allegations, it's just not

2   accurate.  It's not relevant to the crime charged of

3   failing to register.  It's a question of whether my

4   client registered or did not.  And my client has said

5   that that's his understanding in his declaration.  So I

6   just want to make that clear.

7          And also, the main argument on willfulness I

8   still don't understand is that they believe by defaulting

9   in this case it would somehow give my client an advantage

10  in the criminal case.  I raised this when we were first

11  discussing the motions against Ms. Maraj and plaintiff's

12  then counsel stated how the interactions with the

13  plaintiff here would affect his sentencing.  I don't

14  think that that's necessarily true either.  I don't think

15  they're taking that into account.  Even if they were,

16  that doesn't explain how defaulting in this case would

17  hurt him in the criminal case or help him in the criminal

18  case rather.  I understand why they think their complaint

19  might hurt him.  I don't understand how a default would

20  help him.

21          And it's further -- and if it would help him,

22  then why have I appeared?  Why have we fought to vacate

23  the default?  My client put in a declaration denying all

24  of the material allegations.  So clearly putting in an

25  answer which denies the material allegations would not

16

Proceedings

1   have hurt him.  And I think there's an argument to be

2   made that defaulting in this case could have hurt him.  I

3   don't understand how defaulting here somehow would get

4   him an advantage in a criminal case.  It's a separate

5   charge and actually the linchpin of their entire

6   argument.

7          They also mention my client didn't want to pay

8   a lawyer $100,000.  This misses the point.  The concern

9   is that these lawyers were overcharging him because his

10  wife was wealthy and famous.  Someone needs a lawyer they

11  can trust.  They don't want a lawyer who they believe is

12  going to be ripping them off basically and someone that

13  can be trusted.  No one argued, he never argued the

14  question of how much money.  It was a question of trust.

15  The other attorneys that Mr. Gordon mentioned, they're

16  either in California or they don't do this type of work,

17  and that's in Mr. Petty's declaration.  Part of the proof

18  of that is I'm here and not one of them.  They don't

19  handle civil matters like this and he needed to find

20  other counsel.

21          On the attempted rape issue, they seem to want

22  to conflate rape with attempted rape again

23  misunderstanding the issue.  The issue is because my

24  client was not convicted of rape, there's no preclusion.

25  He can deny that he raped, which he has.  I don't know

17

Proceedings

1   what type of documentary evidence is available when

2   somebody denies raping somebody but that's not even

3   necessary at this point.  It's a very low threshold to

4   prove a meritorious defense and my client's denied the

5   allegations.  It's sufficient that the meritorious

6   defense he will testify it was a consensual encounter and

7   he did not rape the plaintiff.  And her own cousin gave

8   an interview which are attached to our papers stating

9   that.  And we have other evidence when the time is right

10  hopefully if this default is lifted to present to

11  demonstrate my client's veracity.

12          The prejudice argument, less than 30 days we

13  were moving to vacate this default.  I don't understand

14  how in 30 days plaintiff can claim prejudice.  There's no

15  basis to believe he won't be truthful.  They're

16  speculating.  They're sure he's going to be in jail.

17  This is all pure speculation.  And if my client were to

18  be sentenced, civil cases proceed with an incarcerated

19  defendant and there's no basis to conclude that he will

20  be subject to prison time.

21          And under 55.1, Local Rule 55.1, I just note

22  it's a little ironic throughout this case in emails and

23  in filings with the Court, plaintiff has accused

24  Defendant Maraj and my client to some extent of believing

25  they're above the law due to Ms. Maraj's fame and wealth.

18

Proceedings

1    Here plaintiffs are basically asking this Court to

2    place -- plaintiff rather is asking this Court to place

3    her above the law and ignore the requirements of Rule

4    55.1.

5            Now turning more to going through all of the

6    arguments, your Honor, it's well settled a default

7    judgment should be a last resort, not a first resort.

8    Plaintiff has made this a first resort.  Five days after

9    the complaint would have been due had it been properly

10   served, he sought a default.  Ms. Maraj asked for an

11   extension.  They denied Ms. Maraj an extension.  They

12   knew I would seek leave to amend -- I was seeking leave

13   to respond to the complaint.  They still went forward.

14   These are common courtesies granted to attorneys in

15   litigation, a 30-day extension as we're now told I would

16   have been granted even though Ms. Maraj was not.

17           They repeatedly, and the plaintiff knows this

18   because they're aware there complaint lacks merit.

19   That's why there's this rush to a default judgment.

20   That's why in the papers they talk about anything but my

21   client and whether a default should be entered.  They

22   consistently and repeatedly raise his criminal history in

23   an attempt to smear him and distract the Court.  They go

24   into irrelevant tangents on this.  They accuse him of

25   perjury which is not the case.  All of this is to hide

Proceedings

1  the fact that this case should be litigated on the merits

2  and when it is, I believe we will prevail.

3        And there are numerous legal reasons in case

4  law to vacate the default.  First, there was not proper

5  service on my client.  That's not only grounds to vacate

6  the default, that requires dismissal of the case.

7  There's also the failure to comply with Local Rule 55.1

8  as your Honor mentioned.  Not even the declarations put

9  in by the process server refer to the amended complaint.

10 We're unclear still which complaint they're claiming was

11 served.  In addition -- I'm sorry, your Honor, there's a

12 phone ringing in the background.

13       And finally, your Honor, we demonstrated good

14 cause.  We've shown, I'll explain, the default was not

15 willful.  We have meritorious defenses.  And there's no

16 prejudice to plaintiff.

17       Now the plaintiffs voluntarily dismissed the

18 case against Ms. Maraj and frankly I wonder why when our

19 case on the default, particularly and often on other

20 issues are very identical to Ms. Maraj's case.

21       Now, turning to service, your Honor, it's

22 beyond doubt now that the one piece of inaccurate

23 testimony provided the Court was the original affidavit

24 of service submitted by plaintiff stated that my client

25 was personally served.  As Mr. Diaz, the process server,

20

Proceedings

1   then put in a declaration in which he admitted to leaving

2   the papers outside my client's door.  Now, the plaintiff

3   repeatedly accuses my client of perjury and uses that as

4   a basis for a lot of his argument in his papers because

5   Mr. Petty testified truthfully and accurately that no one

6   ever tried to hand him a complaint, an amended complaint,

7   or any other document in this litigation.  That testimony

8   is truthful.  He was responding to an affidavit of

9   service that he was personally served which he was not.

10  And the declaration of Mr. Diaz comes in that is still

11  truthful.  Mr. Diaz admits he never came into immediate

12  proximity, physical proximity or close proximity with Mr.

13  Petty, never spoke to Mr. Petty.  He just claims to have

14  seen him through a window and he left the papers outside

15  the door.  He never held out his hand to my client and

16  tried to provide with the papers.  He never threw them at

17  my client's feel.  You never touch the papers.  These are

18  some of the -- punched my client with the papers.  Simply

19  put, he never tried to hand my client the papers.

20         Plaintiff seems to be arguing that if Mr. Petty

21  was in the house and if he opened the door and Mr. Diaz

22  would have tried to hand of the papers.  None of that

23  happened.  There's no dispute none of that happened.  And

24  this is just another attempt by plaintiffs to smear my

25  client, falsely accuse him of perjury, and then try and

Proceedings

1   use it as a linchpin for many of their other arguments

2   which are also invalid.

3          Now, turning to the issue of service, Mr. Diaz

4   claims that he went to serve my client.  No one answered

5   the door.  Went to the security booth of the complex, or

6   whatever it's called, and then found out my client was

7   home.  Went back to serve my client 15 minutes later.

8   Saw him through the window.  Told him he was serving the

9   two documents and left them on the doorstep.  So

10  according to Mr. Diaz, he made one failed attempt at

11  service and then on the second attempt 15 minutes later

12  on the same day not being in physical proximity of my

13  client, left the papers on the doorstep.  That is not

14  good service under any of the applicable laws.  Plaintiff

15  would have served my client to the federal law,

16  California law, or New York law.  They failed to

17  effectuate proper service under any law.

18          Federal law is clear, and I cite the cases in

19  my paper, you need first to have made several attempts to

20  serve the defendant before leaving the papers somewhere

21  or leaving the papers at his feet, and you need immediate

22  proximity.  Often the defendant will hold back his arms.

23  You can then throw them at his feet.  Defendant opens the

24  door, sees the process server, then slams the door, you

25  now have immediate proximity, you can leave them outside

22

Proceedings

1    the door.  None of that happened here.  Plaintiff has not

2    cited a single case where either on the second attempt

3    after the first fail the process server left papers at

4    the defendant's feet or doorstep, and plaintiff has not

5    cited a single federal case in which leaving them on the

6    doorstep without being in physical proximity to the

7    defendant would be held to be good service.  And in the

8    *Scotland* case which I cite which are facts very similar

9    to here except the process server actually made more

10   attempts and had more interaction with the defendant,

11   service was held to be ineffective as it is here.

12           California law is very clear personal service

13   under California law requires physically handing the

14   paper to a defendant which did not happen here.

15   California law has a statute right on point concerning

16   substitute service for leaving the papers at the

17   doorstep.  That statute requires that the papers be

18   mailed after they're left at the doorstep.  There's no

19   dispute the papers weren't mailed.  That right there

20   renders service ineffective.  In addition, California law

21   requires two or three attempts at service before using

22   substitute service and there was only one failed attempt

23   and only 15 minutes later is when they left it.  So it's

24   not two failed attempts or three failed attempts.

25           So for either of those reasons, there's no

23

Proceedings

1    service under California law.

2           And New York law, it's the same arguments.

3    Cases cited by plaintiff, the Court notes still required

4    a physical proximity to the defendant which is absent

5    here.  Nor can plaintiffs use mail, any mail service

6    under New York law, substitute service, because they

7    didn't affix the summons and complaint to the door, they

8    just dropped it there and they didn't mail it

9    subsequently which is required.

10          So for the same reason that service is bad

11   under federal law and California law, it also fails under

12   New York law.  And this in itself requires dismissal, not

13   just vacating the default.

14          Your Honor, the Rule 55.1 argument your Honor

15   is obviously well aware is that I'll note that in the *J&K*

16   *Sport Production* the Court specifically held that you

17   can't rely on documents scattered throughout the docket

18   to get a certificate of default which is exactly what

19   plaintiffs did.  Their argument that they had previously

20   filed the affidavit of service somehow makes this

21   excusable, there's a case right on point to note that's

22   not proper.

23          And I'll note that there are numerous cases in

24   which a court decided not to exercise discretion and to

25   not forgive a 55.1 rule violation.  And here where it's

24

Proceedings

1   only six days, five days rather after a default, I think

2   there's even more grounds to require technical

3   compliance.

4          Now concerning good cause, as the Court is

5   aware, there's three factors.  Willful, the default was

6   willful; whether there is a meritorious defense; and

7   whether there's prejudice.  All three factors weigh in

8   favor of vacating the default, but no single factor is

9   dispositive.  Plaintiffs argue that willfulness in and of

10  itself requires, you know, a default being granted and

11  I've cited cases that demonstrate this is not the case.

12  And willfulness actually demonstrates default should be

13  vacated.  The default must be egregious to be willful.

14  Negligence isn't enough, or gross negligence.

15          My client demonstrates that it was not willful

16  as we've been discussing.  He had trouble finding an

17  attorney.  His wife was looking for an attorney and the

18  attorney his wife was hiring, Mr. Bernstein, said he

19  would help my client get an attorney.  There was a

20  miscommunication between my client's wife and Mr.

21  Bernstein.  He was retained later after the answer would

22  have been due if they had been served.  I was then -- Mr.

23  Bernstein then referred Mr. Petty to me and I entered an

24  appearance.  There's numerous cases saying a

25  communication between -- a miscommunication demonstrates

25

Proceedings

1   a default is not willful.

2          Further demonstrating a default is not willful

3   is the timing.  This is not a case where the defendant

4   did not react or respond in any way for months and months

5   or years and years.  I appeared in this case and sought

6   to lift the default, the certificate of default, I

7   believe six days after it was entered.  If I'm getting

8   the dates wrong, it's within weeks.  And less than a

9   month after the complaint would have been due.  We're

10  talking days and weeks here, your Honor, and that kind

11  of -- there's numerous cases cited in my brief that

12  demonstrate fighting a default as soon as becoming aware

13  of it, your Honor, opposing a motion for a default even

14  demonstrates the default is not willful.  And here we

15  didn't even wait for the motion for a default.  We sought

16  to vacate the certificate of default soon after it was

17  filed.  So I think willfulness is in our favor.

18          Plaintiff's other argument concerning

19  willfulness that somehow it's a strategic advantage, I

20  discussed that defendant was aware of the case.  We're

21  not claiming he was not aware of the case.  We're

22  claiming he had difficulty obtaining counsel and then

23  there was a miscommunication of counsel.  So I think

24  willfulness is in our favor.

25          We've also demonstrated meritorious defenses,

26

Proceedings

1   your Honor, a very low threshold.  Even a hint of

2   suggestion that we will prevail at trial with our

3   defenses is sufficient to establish a meritorious

4   defense.  We don't need documentary evidence and whatever

5   else plaintiff believes we should have included.  My

6   client's testimony in his declaration is sufficient.

7   It's not conclusory when it comes to the defenses.  He

8   denies the allegations of rape, he denies ever asking

9   someone to contact plaintiff.  With Mr. Black he says

10  straight in the declaration, although he gave him the

11  phone number, he said don't communicate with plaintiff.

12  He denies all the material allegations and he does so

13  with as much detail as possible based on the vagueness of

14  some of the allegations.  He is unaware of the attorney's

15  contacting the plaintiff or allegations like that, but he

16  denies that he ever asked anyone to contact plaintiff.

17  And in fact, he told Black not to contact plaintiff.  So

18  there is a sufficient defense to both the rape, the

19  alleged rape and his denials of that, and concerning the

20  alleged intimidation and harassment claim.

21          In addition, there's a statute of limitation

22  issue because the only way this occurred in 1994, the

23  alleged rape, and it's a three-year statute of

24  limitations, and the tolling provision plaintiff relies

25  on would only apply if they prevailed on the rape.

27

Proceedings

1   There's no other forcible touching which is the only

2   other sexual offense within the statute.  My client

3   denies the rape so we also have a statute of limitations

4   defense.  And I think your Honor read the papers so I'm

5   going to try and move on, but we have other meritorious

6   defenses showing that the Georgia law claims and

7   California claims are not valid and many of the

8   allegations in the complaint don't even concern my client

9   or improper conduct.  So that's all covered in my papers.

10          In addition, there's no prejudice here if the

11   default was vacated.  The case is right on point and a

12   short period, here 30 days.  It's hard to see how there'd

13   be loss of evidence, increased difficulties in discovery

14   or greater opportunity of fraud in only 30 days.  Their

15   whole argument in their papers on prejudice just tries to

16   bring up my client's criminal history for false

17   allegations of perjury and say well, he's a bad guy, you

18   shouldn't trust him, so you know, he's not going to

19   cooperate.  All of these arguments are based on pure

20   speculation.  I have cases saying you can't base your

21   arguments on pure speculation.

22          And their argument fails as a factual matter as

23   well.  They have an insulting argument that somehow I'm

24   colluding or I was colluding with Ms. Maraj's counsel.

25   Frankly, your Honor, that's insulting.  They claim

28

Proceedings

1   somehow Mr. Bernstein was worried when they threatened a

2   traverse hearing.  A traverse hearing would have helped

3   us.  It would have shown that Mr. Diaz gave a false

4   affidavit of service.  But putting that aside, the two

5   defendants are a husband and wife.  I would assume their

6   attorneys would be in touch and work together on common

7   issues in defending a litigation.  In fact, I know Mr.

8   Bernstein and have worked with him over the years.  It's

9   a benefit to that type of cooperation.  I think it's

10  insulting to claim it's somehow suspicious for this and

11  we're colluding and I think beneath the dignity of

12  plaintiff's counsel to have made such a spurious

13  allegation against Mr. Bernstein and me.  But there's no

14  basis for it in fact and it's completely common for co-

15  defendant counsels to work together concerning common

16  issues.

17          I think, your Honor, I'm trying to -- I know

18  you're familiar with the papers, so I believe I spoke too

19  fast and tried to get through it, but I mean the rest of

20  my argument is is in my papers and I don't want to take

21  up too much of the Court's time.

22          THE COURT:  Understood.  Yes, I reviewed all

23  the papers.  Question, if this case were to move forward

24  on the merits, do you intend on answering or moving to

25  dismiss?  What's your intention?

29

Proceedings

1        MR. ISSER:  Well, we would move to dismiss on

2   the service issue, your Honor.  As you can see, we

3   believe service is not effectuated and we've already

4   briefed on that issue in these papers, so I would

5   anticipate a motion to dismiss for ineffective service.

6        THE COURT:  And if you were approached by

7   plaintiff's counsel to waive service, how would you

8   respond?

9        MR. ISSER:  I would have to discuss that with

10  my client, your Honor.  That's a decision obviously a

11  lawyer needs a client to consent to be able to make and I

12  have not discussed that issue with my client.

13       THE COURT:  Okay.  Understood.

14       MR. ISSER:  I would be -- I do think that if

15  plaintiff asked I would have an ethical obligation to

16  approach my client and ask him if he wants to waive

17  service, but I don't want to speculate as to what the

18  client's reaction would be.

19       THE COURT:  Understood.  All right.  Mr.

20  Gordon, quick question for you.  As you sit here today,

21  do you believe service has been effectuated on Defendant

22  Petty?

23       MR. GORDON:  Yes.  Yes, I believe service was

24  proper, your Honor.  And I don't think they've shown by

25  clear and convincing evidence, which is the standard as

30

Proceedings

1  repeatedly stated actually in the cases cited by

2  Defendant Petty to rebut a process server's affidavit of

3  service.  In most of the case law except for one

4  California case where it says two to three attempts may

5  be required in order to substitute service by leaving it

6  outside of someone's front door when it's opposed by the

7  defendant trying to avoid service.

8         However, the federal cases do not require any

9  certain amount of attempts.  In fact, actually they only

10 require that just a reasonable effort was made to serve

11 the defendant, and reasonable effort was made.

12        Our process server, Mr. Diaz, he tells

13 explicitly what occurred when he arrived at the

14 defendant's home and the fact that he -- the first time

15 no one answered the door he returned back to the security

16 guard's post and overheard Defendant Petty arguing with

17 the security officer because he had let Mr. Diaz in.  It

18 was clear from that point that Defendant Petty was trying

19 to avoid service.  And the security guard also advised

20 Mr. Diaz that he was indeed home.  Defendant Petty does

21 not decline that he saw -- he does not deny that he saw

22 Mr. Diaz through the window.  The only thing that he

23 denies is that Mr. Diaz tried to hand him the summons and

24 amended complaint.  Your Honor, he could not effectively

25 reach out his hand and try to hand it to him because

Proceedings

1  Defendant Petty had interposed a door between them.

2  Therefore, that argument is insufficient and it's clearly

3  not clear and convincing evidence to rebut the

4  presumption of proper service.

5            Moreover, Defendant Petty does not deny that he

6  was served.  He just denies that the summons and amended

7  complaint weren't handed to him.  Defendant Petty does

8  not deny having knowledge of the lawsuit.  Defendant

9  Petty does not deny that he knew when he needed to

10  respond by.  All of these things Defendant Petty would

11  have learned from being served with the summons and

12  amended complaint.  So I don't see how there is any

13  grounds to rebut the presumption of proper service year.

14            Furthermore, Mr. Diaz mailed a copy of the

15  summons and amended complaint to Defendant Petty's wife.

16  As you know, they live in the same residence.  I don't

17  know how many times Defendant Petty believes needs to

18  be -- you know, he needs to avoid service before we can

19  try to serve him by any means possible which is by

20  leaving it outside the door.  Mr. Diaz even showed him,

21  not just yelled to him that you are being served, he

22  showed him the documents through the window and then

23  placed them outside of the door.  This is not --

24  Defendant Petty did not deny that this occurred.

25            THE COURT:  Okay.  Mr. Gordon, I'll give you

32

Proceedings

1   the last word.  Anything else you'd like to add in terms

2   of your argument?

3         MR. GORDON:  Yeah.  So I just want to add that,

4   you know, opposing counsel did concede that Defendant

5   Petty deliberately did not respond that he could not

6   obtain a lawyer that he could trust.  That is not a

7   sufficient excuse to ignore the timing requirements to

8   respond to the complaint.  He did not say that he was

9   unaware of the lawsuit.  And sorry for repeating myself,

10  but he does not deny he was unaware of the lawsuit and

11  when he needed to respond nor that he could have found

12  counsel or sought an extension to respond on time.

13        Last, the fact that a meritorious defense is

14  such a low bar and still Defendant Petty cannot meet it

15  is very telling.  Conclusory denials are insufficient and

16  the courts have made that very clear.  I can cite some

17  cases if you'd like.  But those conclusory denials are

18  not sufficient.  We're not asking him to prove the case.

19  That is not required.  And we're not saying that that's

20  required.  However, he does need to show more than

21  conclusory denials to prevail on that prong.

22        And lastly, your Honor, we want to add that

23  Defendant Maraj was -- we voluntarily dismissed Defendant

24  Maraj because she had shown evidence that we believe

25  demonstrates that jurisdiction is not proper in this

33

                        Proceedings

1    court.  So as is our duty once we had evidence of that,

2    we had to voluntarily dismiss the case under Rule 11 and

3    we plan to re-bring it in a court of proper jurisdiction.

4            THE COURT:  Okay.  Understood.  Now if you

5    intend to re-file that action in another jurisdiction, do

6    you intend this case to follow as well?

7            MR. GORDON:  No.  We are considering whether to

8    voluntarily dismiss the causes of action that are related

9    to Defendant Maraj as well and bring those together

10   against Defendant Petty and Defendant Maraj in

11   California, but we still believe that we have grounds,

12   the grounds exist and default judgment should be entered

13   against Defendant Petty in this case at least for the

14   causes of action related to 1994.

15           THE COURT:  Okay.  Understood.  Let me re-ask

16   the question in a different way.  If you re-file against

17   Defendant Maraj in another jurisdiction and if this case

18   goes forward on the merits, do you intend to dismiss this

19   action and consolidate the allegations in this case with

20   your re-filed case elsewhere?

21           MR. GORDON:  We have not thought that far, your

22   Honor.  We are concerned with delaying discovery in this

23   case any longer.  Specifically with respect to the cause

24   of action related to 1994 we believe that the evidence,

25   you know, as that occurred in New York and the evidence

34

Proceedings

1  is here, we believe this court is proper for those causes

2  of action and we would certainly not consolidate them.

3          THE COURT:  Okay.  Understood.  All right.  I

4  want to go off the record for a minute, so I'm going to

5  stop the recording and then I'm going to put all of you

6  into a separate breakout room.  Okay?  So hang tight.

7  Hold on one second.

8                    (Matter concluded)

9                        -oOo-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

35

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **21st** day of **January**, 2022.

*Mary Greco*

Transcriptions Plus II, Inc.