**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Jennifer Hough,

                              Plaintiff,

        -against


Kenneth Petty, AKA ("Zoo"),
an individual

                              Defendant.

Motion for Entry of Default Judgment

Civil Action No. 21-cv-4568


### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST
### DEFENDANT KENNETH PETTY


Brief by:

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. 3

PRELIMINARY STATEMENT ........................................................................................... 5

FACTUAL BACKGROUND ............................................................................................... 8

ARGUMENT ...................................................................................................................... 8

    I.    AS AN PRELIMINARY MATTER, THE COURT HAS PERSONAL JURISDICTION OVER PETTY: ............................................................................................................................ 8

    II.    THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST PETTY PURSUANT TO FRCP 55 FOR FAILURE TO TIMELY RESPOND TO PLAINTIFF'S AMENDED COMPLAINT: 9

    III.    THE FACTORS FOR ENTERING DEFAULT JUDGMENT AGAINST PETTY WEIGH HEAVILY IN FAVOR OF GRANTING PLAINTIFF'S INSTANT APPLICATION: ......................... 12

        A.    Petty Is Unlikely To Satisfy His Burden To Show That His Failure to Timely Respond Or Otherwise Defend the Instant Action Was Not Willful Nor That He Has A Meritorious Defense To All, If Any, Of the Causes of Action Against Him. .......................... 13

        B.    Plaintiff Will Be Greatly Prejudiced By The Court's Failure To Enter Default Judgment Against Petty. ................................................................................................... 16

    IV.    PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY PLEADS PLAUSIBLE CAUSES OF ACTION AGAINST PETTY: .......................................................................................... 18

        A.    Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress Against Defendant Petty under New York Law. .......................................................................... 19

        B.    Plaintiff Has Sufficiently Plead A Claim for Assault and Battery Against Defendant Petty Under New York Law. ........................................................................................... 21

        C.    Plaintiff Pleads A Viable Claim for Sexual Assault Against Defendant Petty Under New York Law. ........................................................................................................... 25

    V.    IF THE COURT ENTERS DEFAULT AGAINST PETTY, PLAINTIFF SEEKS AN INQUEST HEARING TO DETERMINE DAMAGES: .......................................................................... 27

CONCLUSION .................................................................................................................. 27

## **TABLE OF AUTHORITIES**

**Cases**

*77 Charters, Inc. v. SYC Realty LLC*, No.  CV 2010 01681 SLT, 2012 WL 1077706, at *12
(E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, No. 10-CV-1681 SLT MDG,
2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012)..................................................................... 18

*Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991) ............................. 13

*Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y.
Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL
905224 (E.D.N.Y. Mar. 31, 2008)...................................................................................... 15

*Am.  Alliance Ins.  Co. v. Eagle Ins.  Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ............................. 15

*Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 106 (E.D.N.Y. 2020)............................. 23

*Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002)..................................... 16

*Artmatic USA Cosmetics v. Maybelline Co.*, 906 F.Supp. 850, 853–54 (E.D.N.Y.1995) ............. 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................ 19

*Bastein v. Sotto*, 299 A.D.2d 432, 433, 749 N.Y.S.2d 538, 539 (App. Div. 2002).............. 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).............................................................. 19

*Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996) ................................................. 20

*Berdux v. Project Time & Cost, Inc.*, 669 F. Supp.  2d 1094, 1103 (N.D. Cal.  2009)................... 10

*Bialik v. E.I. DuPont De Nemours & Co.*, 142 Misc.2d 926, 539 N.Y.S.2d 605, 606
(N.Y.Sup.1988)............................................................................................................... 20

*Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y.  Pension Fund v. Moulton Masonry &
Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) ...................................................... 12, 13, 16

*Coopersmith v. Gold*, 172 A.D.2d 982, 984, 568 N.Y.S.2d 250, 252 (3d Dep't 1991)................... 22

*Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983) ................................................................. 16

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 169 F. App'x 45, 46 (2d
Cir. 2006)...................................................................................................................... 11

*Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood* .......................................... 15

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) ................................................. 16

*F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002).............................. 15

*Flamm v. Van Nierop*, 56 Misc.2d 1059, 291 N.Y.S.2d 189, 190–91 (N.Y.Sup.1968) .................. 20

*Frederick v. City of N.Y.*, No. 13-CV-897 (MKB), 2016 U.S. Dist. LEXIS 39828, at 81
(E.D.N.Y. Mar. 25, 2016)................................................................................................ 19

*Girden*, 262 F.3d at 203, quoting *United National Insurance Co.*, at 108 (2d Cir. 1993)............. 23

*Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 621 (2d Cir. 1998) ......................................... 13

*Halperin v. Salvan*, 117 A.D.2d 544, 499 N.Y.S.2d 55, 57–58 (1st Dep't 1986) ......................... 20

*Holtz v. Wildenstein & Co.*, 261 A.D.2d 336, 693 N.Y.S.2d 516.............................................. 22

*Howell v. N.Y.  Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) ......... 19

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom.  Employer – Officer John,
# 1765 Badge Number v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)........ 22

*Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ............................. 15

*Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 144 (E.D.N.Y. 2013) ............................. 18

*Kaminski v. UPS*, 120 A.D.2d 409, 501 N.Y.S.2d 871, 872, 873 (1st Dep't 1986) ........................ 20

*Keen v. American Home Mortg. Servicing Inc.*, 664 F. Supp.  2d 1086, 1096 (E.D. Cal. 2009). 25

*Khourie v. Sabek,* 220 Cal.App.3d 1009, 1015, 269 Cal.Rptr. 687 (1990) ........................................ 10

*Macey v. NYSEG*, 80 A.D.2d 669, 436 N.Y.S.2d 389, 391–92 (3d Dep't 1981) ............................. 20

*Mack Financial Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011) ................................................................ 15

*Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339, 78 Cal. Rptr. 2d 525 (1998) .... 25

*Merzon v. County of Suffolk*, 767 F.Supp. 432, 448 (E.D.N.Y.1991) ............................................. 22

*Mountjoy v. Bank of Am. N.A.*, No. 2:15-cv-02204-TLN-DB, 2018 U.S. Dist. LEXIS 3216, at 28 (E.D. Cal. January 8, 2018) ........................................................................................................... 25

*Naughright v. Weiss*, No. 10 Civ. 8451, 826 F. Supp. 2d 676, 2011 U.S. Dist. LEXIS 133742, at 45-46 (S.D.N.Y. November 18, 2011) .......................................................................................... 24

*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ............................................................. 10, 12

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) ......................................... 15

*Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012). ........................................... 24

*S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. Aug. 13, 2004) ............................................................................................................................................... 13, 14

*SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998) .................................................................... 13

*Seltzer v. Bayer*, 272 A.D.2d 263, 264-265, 709 N.Y.S.2d 21 (2000) ....................................... 19

*Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010)........... 24

*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) ................................................................ 20

*Sullivan v. Board of Educ.*, 131 A.D.2d 836, 517 N.Y.S.2d 197, 199, 200 (2d Dep't 1987)........ 20

*Time Warner Cable of New York v. Cabada*, No. 97 CV 4172 (SJ), 1997 WL 797533, at *1 (E.D.N.Y. Dec. 31, 1997) ............................................................................................................ 12

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) ........................................... 19

*United National Insurance Co. v. Waterfront N.Y. Realty*, 994 F.2d 105, 108 (2d. Cir.1993).. 22, 23

*United States v. Brow*, 267 F. App'x 96, 97 (2d Cir. 2008) ........................................................ 10

*Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011)..................... 13

*Yau v. Allen*, 229 Cal. App. 4th 144, 160, 176 Cal. Rptr. 3d 824, 836 (2014)............................... 27

**Statutes**

Cal. Code Civ. Proc., § 527.6 ...................................................................................................... 25

FRCP 55(a) ..................................................................................................................................... 9

Ga. Code Ann. § 16–11–90 ......................................................................................................... 25

Local Rule 55.1 ............................................................................................................................... 9

Local Rule 55.2 ............................................................................................................................... 9

**Other Authorities**

6 N.Y.Jur.2d – Assault § 1, at 194 (1990) .................................................................................... 22

6A N.Y. Jur. 2d Assault – Civil Aspects § 2. Rape indisputably encompasses civil assault and battery under New York law ......................................................................................................... 23

## PRELIMINARY STATEMENT

On September 16, 1994, Plaintiff Jennifer Hough ("Plaintiff" or "Ms. Hough") was violently raped by Defendant Kenneth Petty ("Defendant Petty" or "Petty").  Shortly after the rape, Petty was arrested.  On April 4, 1995, Petty accepted a plea deal for attempted rape and was incarcerated for over four years.

Defendant Petty is married to music artist Nicki Minaj ("Maraj").  In or about 2018, Maraj began dating Petty.  Upon information and belief, Petty and Maraj are teenage sweethearts and fellow gang member[1].  When Maraj's relationship with Petty became public, her relationship with a two-time felon[2] led to much criticism by fans and others on the internet.  Accordingly, Maraj took to social media and lied about Petty's September 16, 1994, rape case.  Maraj was not present during the rape in 1994.  Maraj and Plaintiff never knew each other in 1994.  Despite not knowing Plaintiff and not possessing any firsthand knowledge of the events in 1994, Maraj falsely proclaimed that Ms. Hough and Petty were dating and that he never raped her.  Ms. Hough, who simply wanted to be left alone, was suddenly sought after for a comment.

As would anyone who had been raped and is now being called a liar, Ms. Hough felt obligated to tell her truth and defend herself.  She genuinely believed that if she told her story, the controversy started by Maraj would end.  Unfortunately, Ms. Hough was sadly mistaken.  One year later, Maraj took to the airwaves again.

Maraj falsely stated that Petty was only prosecuted because he was fifteen and did not have money for bail.  Maraj lied and stated that Ms. Hough wrote a letter recanting her story.  She insinuated that Ms. Hough, who is biracial, is a white woman, which is why Petty was prosecuted.

---

[1] Upon information and belief, Defendant Petty  and Maraj are members of the Makk Balla Brims set of the Bloods Gang.
[2] In 2006, Petty pleaded guilty to a charge of manslaughter for the 2002 senseless murder of Lamont Robinson.

On or about March 4, 2020, Petty was arrested in California for failing to register as a sex offender.   Four days later, on March 8, 2020, Ms. Hough was contacted by a childhood acquaintance Barry Dukes, who goes by "Black."  At the time, Ms. Hough had not spoken or seen Black in over twenty years.  Ms. Hough agreed to meet up with Black to catch up.  Without Ms. Hough noticing, Black had led their conversation into talking about the day that Petty raped her.  Ms. Hough spoke candidly and said that "she wished it could all go away."  Black responded, "I can make that happen."

On March 9, 2020, less than twenty-four hours after Black met Ms. Hough, Black contacted Ms. Hough and sent her a text message from Petty with a screenshot of phone contact entitled "Wifey."  Black advised Ms. Hough that Maraj would call her from the number therein.  Unbeknownst to Ms. Hough, Maraj called for Ms. Hough to purportedly " help us out[3]" by having Ms. Hough recant her 1994 rape story.   Maraj even offered to fly Plaintiff to Los Angeles, California, or send her publicist to craft her statement.  Ms. Hough declined Maraj's offers.  Before the call ended, Ms. Hough was encouraged to tell Maraj that Petty did rape her.  Maraj responded by hanging up the phone.

Over the next few days, Ms. Hough and her family were harassed by phone and unsolicited visitors to her home in Georgia.  Soon after, Ms. Hough was contacted by her brother.  He advised her that two persons contacted another family member offering Ms. Hough $500,000.00 to write a letter recanting her story about Petty raping her.  Immediately, Ms. Hough became scared because Black[4], one of Maraj and Petty's friends knew where she lived, where she worked, and her kids' identities.

---

[3] Referring to Petty and Maraj.

[4] In declarations filed in this action (*See* Dkt. No. 28, and 43), Maraj and Petty admit that Black was their childhood friend from Queens, New York.  Furthermore, Petty admitted to providing Black with Maraj's phone number.  He

After the $500,000.00 offer, the harassment did not cease.  It only became more intelligent and more calculated.  Maraj and Petty went so far as to hire attorneys and private investigators to contact and purportedly represent "Ms. Hough."  These private investigators and lawyers contacted Ms. Hough on multiple occasions.

The threats only became worse.  The banter on the internet only became more disparaging.  Ms. Hough was forced to move multiple times.  Alas, she could not take it anymore and was forced to file the instant action.  If the physical and emotional damages Petty caused in September 1994 were not enough, she was subjected to even more emotional distress.  Ms. Hough lives in constant fear that one of Maraj's crazed fans– who incessantly message and threaten her – or one of Maraj and Petty's purported Makk Balla Brims blood gang member associates will find her or her loved ones and severely injure or kill them.

On August 13, 2021, Ms. Hough initiated the instant action.  After filing an Amended Complaint on September 15, 2021, Ms. Hough's process server, Robert Diaz, personally served Petty with the Summons and Amended Complaint.  Although Petty (who is currently suing the State of New York in the Eastern District of New York) is well familiar with the judicial process, he failed to respond to the Amended Complaint.  His response was due on October 6, 2021.  Now, despite missing the deadline, Petty wants the Court to permit him to respond or otherwise defend the instant action.

On October 19, 2021, the Clerk issued a Certificate of Default Judgment against Petty.  As explained herein, the Court should enter a default judgment against Petty and set a date for an inquest hearing.

---

also admitted that he knew that black intended to put his wife in contact with Plaintiff.  Maraj admitted speaking with Plaintiff on or about March 9, 2020, after she contacted Plaintiff through Maraj's friend Black.

## FACTUAL BACKGROUND

The relevant facts to the instant application are contained in the Declaration of Jennifer Hough, the Declaration of Robert Diaz, the Declaration of Tyrone Blackburn, and all supporting exhibits to such declarations and are incorporated by reference as if fully stated herein.

## ARGUMENT

### I. AS AN PRELIMINARY MATTER, THE COURT HAS PERSONAL JURISDICTION OVER PETTY:

In diversity cases such as this, a district court looks to the state's law in which it sits to determine whether it has personal jurisdiction over foreign defendants. *See Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Therefore, this Court will look to New York law to determine whether it may exercise personal jurisdiction over the Defendants.

Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990); *Pichardo v. Zayas*, 122 A.D.3d 699, 702, 996 N.Y.S.2d 176, 180 (2d Dept. 2014); *see also Wells Fargo Bank Minnesota, N.A. v. ComputerTraining.Com, Inc.*, No. 04-CV-0982, 2004 U.S. Dist. LEXIS 12911, 2004 WL 1555110, at *2-3 (S.D.N.Y. July 9, 2004). In addition, a defendant may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if he engages in the following acts either in person or through an agent *and* such acts relate to an asserted claim: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act outside the state but injures

a person or property in the state; or (4) owns, uses, or possesses any real property in the state.  N.Y.

C.P.L.R. § 302(a).  <u>Giuliano v. Barch</u>, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396, at

*10-11 (S.D.N.Y. Mar. 31, 2017).

Here, on September 16, 1994, Petty committed a felony in the state of New York, in this

judicial district, when he kidnaped and savagely raped Ms. Hough.  Additionally, on August 19,

2021, six days after Ms. Hough filed the instant lawsuit, Petty voluntarily subjected himself to

jurisdiction in this District when he pled in the complaint for, 1:21-cv-04677-EK-RLM, <u>Petty v.

New York State et al</u>. that he is a resident of the State of New York residing at 123-40 Inwood

Street, Jamaica, New York 11436.  *See* Declaration of Plaintiff's Counsel, Tyrone Blackburn

("Blackburn Decl."), ¶¶ 12; Exhibit F to Blackburn Decl.).

## II.     THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST PETTY PURSUANT TO FRCP 55 FOR FAILURE TO TIMELY RESPOND TO PLAINTIFF'S AMENDED COMPLAINT:

Federal Rule of Civil Procedure ("FRCP") Rule 55(a) ("Rule 55") provides that "[w]hen a

party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

*See also*, Local Civil Rules of the Eastern District of New York ("Local Rules") Rule 55.1 ("Local

Rule 55.1").

After the Clerk issues a Certificate of Default Judgment, where there is no sum certain, the

non-defaulting party is required to apply or move the Court for entry of default judgment.  Rule

55(b)(2); Local Rules Rule 55.2(b) ("Local Rule 55.2"); Individual Motion Practice Rules of Judge

Eric N. Vitaliano ("Judge's Rules") Section III.  F.  Thus, FRCP 55 provides a two-step process

for obtaining a default judgment.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("[h]aving

obtained a [certificate of] default, a plaintiff must next seek a judgment by default under Rule 55(b)).

Where a party fails to plead or otherwise defend an action, it is within the district court's discretion to enter a default judgment. *United States v. Brow*, 267 F. App'x 96, 97 (2d Cir. 2008). In the instant matter, on September 15, 2021, at 6:25 P.M. PST, Plaintiff's process server personally served Plaintiff's Summons and Amended Complaint on Petty at his residence located at 23483 Park Colombo Calabasas, CA 91302.  (*See* Declaration of Plaintiff's Process Server, Robert Diaz ("Diaz Decl."), ¶¶ 4 & 7; Exhibit A to Diaz Decl.).  Service was proper pursuant to FRCP Rule 4(e) ("Rule 4").  Specifically, Petty is not an infant, incompetent, or an active member of the military or someone who previously waived service.  Rule 4(e); (*see*, Declaration of Tyrone A. Blackburn ("Blackburn Decl."), ¶ 3; Exhibit A to the Blackburn Declaration).  The process server properly delivered a copy of the Summons and Amended Complaint to Defendant personally.  Rule 4(e)(2)(A); (*see* Diaz Decl., at ¶ 4).

When the Process Server approached Defendants' Residence, Petty refused to answer the door despite seeing him in the window.  (Diaz Decl., at ¶ 11).  Thus, the Process Server announced who he was, that Petty was being served with process, and then left the documents at the front door of Defendants' Residence.  (*Id*., ¶ 11).  This is proper service under federal, California, and New York Law.  *See Khourie v. Sabek,* 220 Cal.App.3d 1009, 1015, 269 Cal.Rptr. 687 (1990) ("It is sufficient to leave service papers outside of a locked door if the resident refuses to accept the papers or to open the door for the process server") (*citing Berdux v. Project Time & Cost, Inc.*, 669 F. Supp.  2d 1094, 1103 (N.D. Cal. 2009); *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 169 F. App'x 45, 46 (2d Cir. 2006) (holding that under New York law, it is well settled that where a party refuses to accept service, it can be left in his general vicinity).  The

process server also accurately identified Petty as 5'10, 200 lbs.,[5] Male, approximately 40 years old, with black hair and brown eyes.[6]  At the bottom, the Summons and Amended Complaint was properly served upon Petty.

Upon receiving service of the Summons and Amended Complaint on September 15, 2021, Petty's twenty-one (21) day period to respond began.  FRCP Rule 12(a)(1)(A)(i).  Thus, Petty had until October 6, 2021, to answer the Amended Complaint.  Petty indisputably missed his deadline.  Nonetheless, Plaintiff afforded him an extra five days to respond before submitting a request to the Clerk to issue a Certificate of Default Judgment.  On October 19, 2021, pursuant to Plaintiff's October 11, 2021, request for a Certificate of Default Judgment against the Defendants, the Clerk issued a Certificate of Default Judgment against Petty for failing to appear or otherwise defend the action.  (*See* Dkt. No. 19).

It is evident that Petty failed to timely respond to Plaintiff's Amended Complaint or otherwise defend the action.  Not only was Defendant Petty personally served, but this action had also garnered significant media attention when it was commenced on August 13, 2021.  Yet, Petty failed to timely respond or otherwise defend the action.  Indeed, even though Petty, very likely if not invariably had notice of this action since August 13, 2021, the filing and service of the Amended Complaint afforded him almost two months to retain counsel to defend him in this matter.  Petty is certainly no novice to the judicial process and even has an action just a few doors

---

[5] In former Defendant Maraj's Declaration in Support of her Motion for Leave to file a late letter requesting a pre-motion conference in anticipation of a motion to dismiss the Amended Complaint ("Maraj Decl.") [Dkt. No. 17, 17-5], Maraj states that her husband is 5'9, and weighs 175 lbs.  (Maraj Decl., at ¶ 3).   The differences between 5'10 and 5'9 and 200 lbs. vs. 175 lbs. are de minimis and negligible.

[6] Even if Petty was not the person served, which Plaintiff vehemently denies, Plaintiff's Counsel Tyrone Blackburn performed an investigation to determine Defendants' Residence is Defendants' dwelling or usual place of abode.  (See Declaration of Tyrone Blackburn.  The Process Server determined that Petty was present in the window to Defendants' residence when he effectuated service.  The fact that Petty attempted to reject service also indicates that he was indeed the person on which the Summons and Amended Complaint was served.  Or, in the unlikely event, it was not Petty; the person appeared to be a person of suitable age (40) and discretion who resided at Defendants' Residence.

down from Judge Vitaliano's Courtroom.  (See Blackburn Decl.).  As such, and for the reasons stated below, the Court should enter a default judgment against Petty.

### III.   THE FACTORS FOR ENTERING DEFAULT JUDGMENT AGAINST PETTY WEIGH HEAVILY IN FAVOR OF GRANTING PLAINTIFF'S INSTANT APPLICATION:

While entering default judgment is within the district court's discretion, there is a strong preference for deciding cases on the merits.  *Green*, 420 F.3d 99, 104 (2d Cir. 2005).  Nonetheless, this is **not** one of those cases.

On a motion to vacate a default judgment, the defaulting party bears the burden of proof. *Time Warner Cable of New York v. Cabada*, No. 97 CV 4172 (SJ), 1997 WL 797533, at *1 (E.D.N.Y. Dec. 31, 1997) *(citing Artmatic USA Cosmetics v. Maybelline Co.,* 906 F.Supp. 850, 853–54 (E.D.N.Y.1995).  Under Rule 55(c), "[t]he court may set aside default for good cause…." When the defaulted defendant opposes default judgment, courts treat the opposition as a motion to vacate the default entry and examine whether good cause exists to vacate the entry.  *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

Because Rule 55(c) does not define "good cause," the Second Circuit has established three criteria to decide whether a default judgment should be entered or vacated.  *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y.  Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted).  "These criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Bricklayers*, 779 F.3d 182, 186 (2d Cir. 2015) (*citing Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir.2013)).

A. *Petty Is Unlikely To Satisfy His Burden To Show That His Failure to Timely Respond Or Otherwise Defend the Instant Action Was Not Willful Nor That He Has A Meritorious Defense To All, If Any, Of the Causes of Action Against Him.*

**First**, in the context of default, the Second Circuit has held that "willfulness" refers to conduct that is "more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); Bricklayers, 779 F.3d at 186. "Willfulness" does not require a showing "bad faith;" instead, "'it is sufficient to conclude "that defendant defaulted deliberately." *Bricklayers*, 779 F.3d at 187 (*quoting Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 621 (2d Cir. 1998)).

A defendant's default is willful if the defendant was properly served yet failed to appear, answer, or otherwise respond to the complaint. *See, e.g.*, *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507–08 (2d Cir. 1991) (finding willfulness where the defendant failed to appear for fear of being indicted); *see also*, *S.E.C. v. Breed*, No. 01-cv-7798 (CSH), 2004 WL 1824358, at *8–9 (S.D.N.Y. Aug. 13, 2004) (finding willfulness where the defendant was properly served but answered **two weeks after** the due date) (emphasis added); *Westmark Dev. Corp. v. Century Sur. Co.*, 199 F.R.D. 491, 496 (W.D.N.Y. 2011) (finding willfulness where the defendant neglected to respond to the third-party complaint, among other things).

Here, it is Petty's burden to prove that his delay was not willful and deliberate. However, as described above and in the Process Server's Declaration, Petty was properly served. It had been over three weeks since he was required to respond to the Amended Complaint. Additionally, his counsel did not file a notice of appearance until October 25, 2021. Thus, like *Breed*, given that his response was three weeks past due, Petty's failure to respond or otherwise defend the action should be deemed **willful**.

Further, like *Action S.A.*, in March 2022, Petty must appear for his sentencing hearing for failing to register as a sex offender. It is plausible that he believed appearing in this action would

hurt his chances of receiving a reduced sentence.  However, defaulting in a case such as this, where the facts will be deemed true, including those concerning his brutal rape of Plaintiff, is unlikely to have a good impact on the Judge at his sentencing hearing.  Hence, one reason why he may now be possibly attempting to defend this action.  Nonetheless, this indisputably supports an inference of willfulness in failing to respond or otherwise defend this action.

Moreover, even if proper service and his failure to respond or otherwise defend was not sufficient, Plaintiff still cannot fathom any legitimate, good faith, or "good cause" reason(s) for his failure to timely respond or otherwise defend the instant action.  Because media sources began reporting on the instant action since its commencement on August 13, 2021, it seems very likely that he knew about the action well before he was required to respond.  Petty is no novice to the judicial process and should have retained an attorney within the month between commencement and service.  The fact that he did not retain one until almost three weeks after his response was due is **outrageous**.  As such, the Court should find that Petty willfully failed to respond or otherwise defend the instant action.

To add, Petty's wife, former Defendant Maraj, retained counsel, who filed a notice of appearance over ten days before him.  Thus, it is **specious**, at best, to conclude Petty's failure to timely respond or otherwise defend the action was not willful and deliberate.

**Second**, with respect to the existence of a meritorious defense, a defaulting defendant "must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see*, *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (holding that a defense is meritorious if it is good at law so that the factfinder has a determination to make).  However, upon entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations of

14

liability, except those relating to damages. *Aguilar v. E-Z Supply Corp.*, No. 06CV6790SLTRER, 2008 WL 11438039, at *1 (E.D.N.Y. Mar. 13, 2008), *report and recommendation adopted*, No. 06-CV-6790 SLT RER, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008). "Where a defendant **fails to answer** the complaint, courts are **unable** to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, **this factor weighs in favor of granting a default judgment**." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) (emphasis added) (*quoting Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood*, No. 11–CV–46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012); *see*, *Mack Financial Servs. v. Poczatek*, No. CV 10-3799 JS AKT, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, No. 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011); *see also*, *F.T.C. v. 1263523 Ontario, Inc.*, 205 F.Supp.2d 218, 221 (S.D.N.Y. 2002).

Because Petty failed to respond to the complaint, all well-pleaded facts in the Amended Complaint are deemed admitted. The second factor for refusing to vacate default judgment or enter default judgment unquestionably weighs in favor of granting default judgment against Petty. Even if such was not the case, however, since Petty accepted a plea deal for raping Plaintiff Hough, he seems unlikely to have meritorious defenses. Moreover, the evidence concerning his harassment of Plaintiff through Makk Balla Brim's blood gang members is so clear that it is highly doubtful he has a meritorious or complete defense.

It is likely that Petty acted willfully and deliberately in failing to respond or otherwise defend the instant action. However, given that counsel has now appeared on his behalf, Petty will likely make an argument supporting such was not the case, as is his burden. The second factor weighs in favor of granting default judgment, as all well-pleaded facts are deemed admitted. And

15

as described below, they constitute legitimate causes of action.  As such, the first two factors weigh in granting default judgment.  Even if Plaintiff would not be prejudiced by not entering default judgment, the first two factors weighing in her favor are grounds to enter a default judgment. *Bricklayers*, 779 F.3d 182, 187 (2d Cir. 2015) (holding that where the first two factors weigh in favor of default judgment, the Court does not need to address whether prejudice exists).

      B. *Plaintiff Will Be Greatly Prejudiced By The Court's Failure To Enter Default Judgment Against Petty.*

As stated above, the third factor that Courts look to in deciding whether to vacate or decline to enter a default judgment weighs heavily in Plaintiff's favor.

Delay alone is insufficient to establish prejudice. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993).  To establish prejudice in the context of a default, there must be a showing that "the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."  *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (*citing Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983)).

Here, there are several ways in which Plaintiff will be prejudiced by the failure of the Court to enter a default judgment.

**First**, Petty's counsel's appearance in the action ten days after his wife was suspicious. Upon information and belief, a long-time colleague and friend of former Defendant Maraj's counsel – filed a notice of appearance.  (*See* Dkt. No. 23).  Thus, it appears that Petty's appearance was strategically planned with former Defendant Maraj.  The reasons could range from, *inter alia*, running up Plaintiff's litigation costs to ensuring that their stories are consistent – even if untrue. Petty's continuance in this action will "provide greater opportunity for fraud."

**Second**, as conceded by former Defendant Maraj [Dkt. No. 17, 17-5, ¶ 3], the parties are married.  This likely means that they have **at least** some joint assets.  Petty's failure to retain

counsel to defend until eleven days after former Defendant Maraj's counsel appeared is evidence that they initially did not plan on both attempting to oppose default judgment and defend the action. Perhaps they received erroneous advice regarding Plaintiff's ability to reach their joint assets and are now colluding to defend the instant action. Petty's late appearance could very well be to delay judgment against him for a long enough time so that they can hide their assets. Given the extensive criminal history of Petty, it is very likely that they could be engaging in such sort of fraud. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F.Supp.3d 68 (E.D.N.Y 2020) (holding that Plaintiff would sustain substantial prejudice if the default is vacated because she may no longer have a claim for relief).

**Third**, given Petty's extensive criminal record, it is plausible that other Plaintiffs may sue him. If so, Plaintiff may not be able to collect upon any judgment rendered. *See 77 Charters, Inc. v. SYC Realty LLC*, No. CV 2010 01681 SLT, 2012 WL 1077706, at *12 (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, No. 10-CV-1681 SLT MDG, 2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012) (finding prejudice where any further delay could result in the Plaintiff being unable to collect any judgment rendered due to the possibility of other claimants). Additionally, it was recently reported by several news outlets that a lawsuit was filed against Petty for assaulting a security guard in Germany. Upon information belief, there is an active warrant for Petty's arrest in Germany since 2019. (*See* Exhibit G to Blackburn Decl.).

According to the news reports, Petty brutally attacked the head of security guards, Thomas Weidenmuller ("Weidenmuller"), breaking his jaw in 2019 in Germany while Weidenmuller worked as head of security for Maraj's concert. According to the news reports, when Petty approached Weidenmuller, Petty was standing in the presence of Maraj and two of their

bodyguards.  Petty sucker-punched Weidenmuller in the face, and Weidenmuller was hospitalized for ten days, endured eight surgeries on his face, and now has five plates in his jaw.

In light of Petty's most recent dalliance on the wrong side of the law, it is safe to assume that Petty, a two-time convicted felon and current alleged fugitive of the law, will probably be incarcerated in the relatively near future.

**Fourth**, in March 2022, Petty is scheduled to appear for his sentencing hearing for failing to register as a sex offender.  If Petty is thereafter incarcerated, Plaintiff could be prevented from conducting necessary discovery, or it could be more difficult to do so.  In either event, this weighs in favor of finding that Plaintiff would be prejudiced.

**Fifth**, Petty's continued involvement in this action will likely enflame Maraj's fans who believe that Plaintiff is a liar.  Indeed, Plaintiff has been subjected to numerous threats and has been forced to move homes several times.  She lives in fear and will continue to for the remainder of her life.  If the default judgment is not entered against Petty, Plaintiff's well-being will be at greater risk until the action is resolved.  Moreover, if default judgment is not entered, she will eventually run out of funds to move every time her address is posted on the internet or she is contacted at her residence.

For these reasons, among others, the Court should find that Plaintiff would be significantly prejudiced if default judgment is not entered against Petty.


### IV.   PLAINTIFF'S   AMENDED   COMPLAINT   SUFFICIENTLY   PLEADS PLAUSIBLE CAUSES OF ACTION AGAINST PETTY:

Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims.  *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 144 (E.D.N.Y. 2013)

To state a valid claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For Plaintiff, her complaint must contain factual allegations that, if taken as true, would at the least establish that it has plausible claims for intentional infliction of emotional distress under New York law, assault and battery under New York law, and sexual assault under New York law.

### A. *Plaintiff Sufficiently Alleges Intentional Infliction of Emotional Distress Against Defendant Petty under New York Law.*

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must plead: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y.  Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993); *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (outlining test for intentional infliction of emotional distress).  *Frederick v. City of N.Y.*, No. 13-CV-897 (MKB), 2016 U.S. Dist. LEXIS 39828, at 81 (E.D.N.Y. Mar. 25, 2016).

"Those … claims of intentional infliction of emotional distress that have been upheld … were supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff." *Seltzer v. Bayer*, 272 A.D.2d 263, 264-265, 709 N.Y.S.2d 21 (2000).  "[S]tate courts have sustained some emotional distress claims, against a motion to dismiss, that appear to allege conduct that is somewhat less than 'utterly intolerable in a civilized society.'" *See Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996) (internal citations omitted).

"Cases in which courts have sustained claims for intentional infliction of emotional distress…all involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *see, e.g., Flamm v. Van Nierop*, 56 Misc.2d 1059, 291 N.Y.S.2d 189, 190–91 (N.Y.Sup.1968) (recurring physical threats and harassing phone calls); *Macey v. NYSEG*, 80 A.D.2d 669, 436 N.Y.S.2d 389, 391–92 (3d Dep't 1981) (defendant electric company refused to restore Plaintiff's electricity unless she legally separated from her husband); *Sullivan v. Board of Educ.*, 131 A.D.2d 836, 517 N.Y.S.2d 197, 199, 200 (2d Dep't 1987) (defamation and threat of bringing falsified charges used to coerce resignation of tenured professor); *Kaminski v. UPS*, 120 A.D.2d 409, 501 N.Y.S.2d 871, 872, 873 (1st Dep't 1986) (false accusation of theft, false imprisonment, verbal abuse, and threat of prosecution resulted in coerced confession and resignation); *Halperin v. Salvan*, 117 A.D.2d 544, 499 N.Y.S.2d 55, 57–58 (1st Dep't 1986) (malicious prosecution; false accusations of criminal conduct); *Bialik v. E.I. DuPont De Nemours & Co.*, 142 Misc.2d 926, 539 N.Y.S.2d 605, 606 (N.Y.Sup.1988) (Plaintiff's complaint about unsafe working conditions resulted in improper disciplinary action against him, false accusation that he was responsible for accident that resulted in death of one woman, termination, discrimination after reinstatement, and second termination).

Here, Petty's conduct towards Plaintiff was extreme and outrageous, including but not limited to sexual assault, rape, harassment, and intimidation.  (*See* Amended Complaint.  ¶¶ 124-29).  The recent harassment and intimidation include Plaintiff being contacted by Petty's attorney and threats through Petty's friend, associate, and upon information and belief, fellow gang member, Black.  (*Id*. at ¶¶ 110-11, 117-120).  The aforementioned actions go beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized community, satisfying the first

prong of the test presented in *Howell*.   Similar to *Seltzer*, which all highlight the longstanding systematic pattern of deliberate and malicious harassment of Plaintiff to demonstrate intent and meet the second prong of the test, here, Petty intentionally committed the actions with the intent to deliberately inflict humiliation, mental anguish, and emotional and physical distress upon Plaintiff, and done that in reckless disregard of such consequences to Plaintiff.  *Seltzer*, 272 A.D.2d at 264-265 (finding that defendant was liable intentional infliction of emotional distress where there was "a pattern of harassment, intimidation, humiliation and abuse, causing him unjustified demotions, suspensions, lost pay and psychological and emotional harm over a period of years").

Regarding the third prong of the test, as a direct and proximate result of said extreme and outrageous conduct by Petty, Plaintiff suffers humiliation, mental anguish, disassociation, suicidal ideation, and emotional and physical distress, and have been hurt and injured in her health, both mentally and physically, strength, activity, and her ability to lead an everyday life without mental anguish.  (*See* Amended Complaint, ¶¶ 116 & 124-29).   Finally, the fourth prong of the test is met as Petty's actions have caused uproar amongst Maraj's fans and Makk Ball Brim's gang members, resulting in threats via the internet and in person.  (*See Id*., at ¶¶ 104-07, 112-14, 117-21, 124-29). Such has caused and will continue to cause Plaintiff great mental and physical pain and suffering for the rest of her life. (*Id*.).

Therefore, Plaintiff properly pled her first cause of action against Petty.  The facts coupled with Petty's sworn admission of attempted rape are irrefutable, and Petty would be hard-pressed to convince a jury in the EDNY that his actions did not satisfy the elements of intentional infliction of emotional distress.

B. *Plaintiff Has Sufficiently Plead A Claim for Assault and Battery Against Defendant Petty Under New York Law.*

An "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact. *United National Insurance Co. v. Waterfront N.Y.  Realty*, 994 F.2d 105, 108 (2d.  Cir.1993).  A "battery" is an intentional wrongful physical contact with another person without consent.  *See United National Insurance Co.* at 108 (2d Cir. 1993); see *Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir.1979), citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom.  Employer – Officer John, # 1765 Badge Number v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Merzon v. County of Suffolk*, 767 F.Supp. 432, 448 (E.D.N.Y.1991); *Coopersmith v. Gold*, 172 A.D.2d 982, 984, 568 N.Y.S.2d 250, 252 (3d Dep't 1991); 6 N.Y.Jur.2d – Assault § 1, at 194 (1990).  The Second Circuit has held that the terms "assault" and "battery" do not change meaning due to the degree of violation.  *United National Insurance Co.*, 994 F.2d at 108 (2d Cir. 1993).  **Indeed, the slightest unlawful touching of another constitutes battery**.  *Id*.

To recover damages for battery, Plaintiff must prove that there was bodily contact, that the contact was offensive, and that Defendant intended to make contact without Plaintiff's consent.  *See Holtz v. Wildenstein & Co.*, 261 A.D.2d 336, 693 N.Y.S.2d 516;  *Bastein v. Sotto*, 299 A.D.2d 432, 433, 749 N.Y.S.2d 538, 539 (App. Div. 2002).

Here, Petty committed battery against Plaintiff as he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person.  (*See* Amended Complaint, ¶¶ 31-49 & 130-137).  On April 5, 1995, during his plea hearing for raping Plaintiff, Petty **ADMITTED** to committing several acts of battery.  (¶¶ 20; Exhibit L to Blackburn Decl.) The following are direct quotes from a copy of the certified transcript of the April 5, 1995, plea hearing:

- THE COURT: By pleading guilty, are you admitting that on or about September 16, 1994, in the County of Queens, being a male, you attempted to engage in sexual intercourse with Jennifer Haugh, a female, by means of forcible compulsion; is that correct?

- THE DEFENDANT[7]:  Yes.

- THE COURT:  Now, where did that take place?

- THE DEFENDANT:  123-40 Elm Street.

- THE COURT: What's located at that address?

- THE DEFENDANT:  My grandmother's house.

- THE COURT:  And were you there with –

- THE DEFENDANT:  My grandmother.

- THE COURT:  And –

- THE DEFENDANT:  Jennifer[8].

- THE COURT:  Were you in a room alone with her?

- THE DEFENDANT:  Yes.

- THE COURT:  What did you attempt to do on that occasion?

- THE DEFENDANT:  I attempted to rape her.

- THE COURT:  And how did you attempt to do that?

- THE DEFENDANT:  By having sex with her.

- THE COURT:  Okay.  Well, you just told me that you attempted to have sexual intercourse with her by means of forcible compulsion.  And could you tell me what it is that you did that you attempted to do that involved force on your part?

- THE DEFENDANT: I grabbed her and thrown her on to the bed, and tried to rape her.

- THE COURT:  How tall are you?

- THE DEFENDANT:  Six-one.

---

[7] Referring to Defendant Kenneth Petty.
[8] Referring to Plaintiff Hough.

- THE COURT:  How tall was she at the time?

- THE DEFENDANT:  I don't know.

- THE COURT:  Well, are you bigger than she is?

- THE DEFENDANT:  Yes.

- THE COURT:  Heavier than she is?

- THE DEFENDANT:  No.

- THE COURT:  About the same weight?

- THE DEFENDANT:  Yes.

- THE COURT: You say you grabbed her with your hands or arms?

- THE DEFENDANT:  Yes.

- THE COURT:  What part of your body did you grab her with?

- THE DEFENDANT:  With my hands.

- THE COURT:  You grabbed her arms?

- THE DEFENDANT:  Yes.

- THE COURT:  And you got on top of her?

- THE DEFENDANT:  Yes.

- THE COURT:  All right.

- SNAO:  Do you remember when you were interviewed by the assistant district attorney the day that you were arrested?

- THE DEFENDANT:  Yes.

- SNAO:  You signed a form allowing the police to go into your house?

- THE DEFENDANT:  Yes.

- SNAO:  And on that form, it said that they were allowed to look for a knife, a long knife?

24

- THE DEFENDANT:  Yes.

- SNAO: Did you hold that long knife when you had Jennifer Haugh in the bedroom with you?

- THE DEFENDANT:  Yes.

- SNAO:  Did you use that when you tried to throw her down on to the bed?

- THE DEFENDANT:  Yes.

- SNAO:  All in the room?

- THE DEFENDANT:  Yes.

As detailed above, Petty admits to grabbing Plaintiff with his hands.  Petty admits to throwing Plaintiff on the bed.  Petty admits to using a long knife to assist in throwing Plaintiff on the bed.  Plaintiff has never consented to the aforementioned bodily contacts with Petty.  Petty acted with the knowledge of or with reckless disregard that his conduct was sure to cause injury and humiliation to Plaintiff and intended to cause fear, physical injury, pain, and suffering to Plaintiff.  He admittedly did so with the use of a knife.

These facts, coupled with Petty's own sworn admissions, are irrefutable, and Petty would be hard-pressed to convince a jury in the EDNY that he did not commit assault and battery against Plaintiff.

C. *Plaintiff Pleads A Viable Claim for Sexual Assault Against Defendant Petty Under New York Law.*

Allegations of sexual intercourse by forcible compulsion, if proven, potentially constitute criminal rape under New York law.  See New York Penal Law § 130.35(1) ("A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion.").  "In the civil context, the common meanings of 'assault' and 'battery'

subsume all forms of tortious menacing and unwanted touching." *See Girden*, 262 F.3d at 203, quoting *United National Insurance Co.*, at 108 (2d Cir. 1993) and (*citing* 6A N.Y. Jur. 2d Assault – Civil Aspects § 2. Rape indisputably encompasses civil assault and battery under New York law). *See United National Insurance Co.*, 994 F.2d at 108; *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 106 (E.D.N.Y. 2020).

As described in sub-section B, Plaintiff pleads a viable claim for assault and battery. This is supported by Petty's admissions on April 5, 1995, as detailed above. Defendant's assault and battery included using a long knife (the same long knife Petty admitted to using to force Plaintiff onto his bed) and physically forcing Plaintiff to engage in sexual intercourse without her consent.

It is important to note that Petty was initially charged with first-degree rape. Petty did not take a plea deal because he was innocent and decided to take an extended vacation in prison. He took a plea deal because he **KNEW HE WAS GUILTY OF RAPING PLAINTIFF**. Upon information and belief, Petty consulted with his defense counsel at the time and assessed the facts of the rape charge. Upon information and belief, Petty and his defense counsel at the time reviewed the evidence in possession of the prosecutors, which included an oral admission from Petty to the police that Plaintiff was indeed in his home. This admission occurred within hours of raping Plaintiff. Additionally, according to Petty's admission during his April 5, 1995, plea hearing, he granted permission to the police to enter his home to search for the knife Plaintiff said he used to rape her. Upon information and belief, Petty and his defense counsel made a strategic legal decision that it would be in Petty's best interest to accept a plea deal for attempted rape which carried a reduced sentence of 4 years, rather than risk being found guilty of first-degree rape[9] and

---

[9] Under New York Penal Code section 130.35, you will be charged with rape in the first degree if you do one of the following: (1). Engage in sexual intercourse with another person by forcible compulsion. Forcible compulsion means to intentionally compel either: (1) by the use of physical force; or (2) by a threat, express or implied, which places a person in fear of immediate death or physical injury to himself or herself [or another person] or in fear that he or she

serving a sentence of 25 years.  In the face of these facts, an objectively reasonable person/juror would **<u>NOT</u>** find that Petty pled guilty to attempted rape because he was an innocent altar boy who was being wrongfully accused of rape.

In the end, Plaintiff pleads a viable claim for sexual assault pursuant to New York law. (*See* Amended Complaint., ¶¶ 31-49 & 138-46).

### V.   IF THE COURT ENTERS DEFAULT AGAINST PETTY, PLAINTIFF SEEKS AN INQUEST HEARING TO DETERMINE DAMAGES:

Plaintiff's damages are both emotional, physical, and monetary.  Plaintiff was diagnosed with Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder with psychotic features and was also receiving mental health/psychotherapy services.  In addition to the emotional damages from the actions of Petty, Plaintiff has been required to incur significant costs in moving several times.  Due to the complex nature of the damages, we request an evidentiary or inquest hearing on the same.

### <u>CONCLUSION</u>

For the reason above, Plaintiff Hough respectfully requests the Court to find Petty in default for his intentional failure to timely answer or move in this action and schedule an inquest hearing to determine damages.

---

[or another person] will immediately be kidnapped.  See Penal Law § 130.00(8); Penal Law §15.05(1).  The definition has been modified by adding the term "intentionally" in the first line to reflect the holding of People v. Williams, 81 NY2d 303 (1993).  Here, as admitted to during his April 5, 1995, plea hearing, Petty engaged in acts of forcible compulsion when he admitted to using a LONG KNIFE to force Plaintiff onto the bed.

Date: February 14, 2022,

Respectfully Submitted,

*Tyrone A. Blackburn, Esq.*

Tyrone A. Blackburn, Esq.