UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JENNIFER HOUGH,

                    *Plaintiff*,

                -- against --

ONIKA TANYA MARAJ, AKA ("NICKI
MINAJ") and KENNETH PETTY, AKA
("ZOO").

                   *Defendants*.
--------------------------------------------------------X

Case No. 21-cv-04568-ENV-JRC

**FORMER DEFENDANT ONIKA TANYA MARAJ AND HER COUNSEL JUDD BURSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER AGAINST PLAINTIFF JENNIFER HOUGH'S COUNSEL TYRONE BLACKBURN**

JUDD BURSTEIN, P.C.
260 Madison Avenue, 15th Floor
New York, New York 10016
(212) 974-2400
*Attorneys for Onika Tanya Maraj
and Judd Burstein*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ......................................................................................1

STATEMENT OF THE FACTS ..................................................................6

    A.    MR. BLACKBURN FILES THE CASE AGAINST MS. MARAJ ONLY BECAUSE SHE IS WEALTHY AND FAMOUS ...................................................7

    B.    MR. BLACKBURN DENIES MS. MARAJ'S COUNSEL'S REASONABLE REQUEST FOR A BRIEF ADJOURNMENT AND INSTEAD USES HIS DENIAL OF THE REQUEST TO SECURE HIMSELF MEDIA ATTENTION .......................................................................11

    C.    MR. BLACKBURN RECEIVES HIS FIRST NOTICE THAT ANY EFFORT TO SEEK A DEFAULT JUDGMENT WOULD BE FRIVOLOUS .........................12

    D.    MR. BLACKBURN AGAIN UNREASONABLY REFUSES TO LITIGATE ON THE MERITS .......................................................................12

    E.    MR. BLACKBURN REVEALS THAT HIS GOAL IN THE CASE IS TO FORCE MS. MARAJ INTO A SETTLEMENT .................................................13

    F.    MR. BLACKBURN EVIDENCES HIS BAD FAITH IN A MOTION HE FILES TO SECURE A DEFAULT JUDGMENT AGAINST MR. PETTY ...................14

    G.    MR. BLACKBURN RECEIVES EXPLICIT AND DETAILED NOTICE THAT THE COURT DID NOT HAVE PERSONAL JURISDICTION OVER MS. MARAJ .......................................................................16

    H.    MR. BLACKBURN ACCUSES MR. BURSTEIN OF PERJURY ...................18

    I.    MR. BLACKBURN RECEIVES NOTICE THAT THE KEY FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT ARE FALSE .................18

    J.    MR. BLACKBURN PRESSES FORWARD WITH A FRIVOLOUS MOTION FOR A DEFAULT JUDGMENT .......................................................19

    K.    MS. MARAJ SERVES MR. BLACKBURN WITH A DETAILED RULE 11 MOTION .......................................................................20

    L.    THE AMENDED COMPLAINT IS DISMISSED AS AGAINST MS. MARAJ .......................................................................21

i

M.     MR. BLACKBURN CONFIRMS HIS BAD FAITH BY HIS CONDUCT FOLLOWING THE DISMISSAL OF MS. MARAJ ...........................................21

ARGUMENT....................................................................................................................25

POINT I

MR. BLACKBURN SHOULD BE SANCTIONED UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER FOR PURSUING A DEFAULT JUDGMENT AGAINST MS. MARAJ ...........................................................................................................................25

POINT II

MR. BLACKBURN SHOULD BE SANCTIONED FOR HIS OUTRAGEOUS AND FALSE PERSONAL ATTACKS ON MR. BURSTEIN .........................................................................27

CONCLUSION...............................................................................................................29

## TABLE OF AUTHORITIES

<u>CASES</u>

*Adams-Borden v. North Shore Univ. Hospital*,
  Case No. 2:21-cv-03466-BMC (E.D.N.Y. 2021) ............................................................14

*Am. Transit Ins. Co v. Bilyk*,
  514 F. Supp.3d 463 (E.D.N.Y. 2021) ..............................................................................26

*Aybar v. Aybar*,
  169 A.D.3d 137 (2d Dep't 2019) ....................................................................................17

*Azkour v. Rest*,
  2014 U.S. Dist. LEXIS 204798 (S.D.N.Y. May 30, 2014)..............................................28

*Cumberbatch v. Funeral Home*,
  Case No. 1:20-cv-00201-LB (E.D.N.Y. 2021) ................................................................13

*Cunningham v. Mendenwaldt*,
  Case No. 1:21-cv-03391-WFK-VMS (E.D.N.Y. 2021) ...................................................14

*Donovan v. Goyrkhman, et al.*,
  Index. No. 655307/2019 (N.Y. Cty. Sup. Ct. 2021) ........................................................14

*Durand v. Crown Heights Ctr. For Nursing & Rehabilitation*,
  Case No. 1:20-cv-04771-EK-PK (E.D.N.Y. 2021) ..................................................... 13-14

*Eisemann v. Greene*,
  204 F.3d 393, 396 (2d Cir. 2000)....................................................................................25

*Galonsky v. Williams*,
  1997 U.S. Dist. LEXIS 19570 (S.D.N.Y Dec. 9, 1997) ..................................................27

*Govindharajan v. Tata Consultancy Servs.*,
  Case No. 1:19-cv-10017-RA (S.D.N.Y. 2020)................................................................14

*Huebner v. Midland Credit Mgmt.*,
  897 F.3d 42, 55 (2d Cir. 2018)........................................................................................25

*Jones v. Fox Rothschild LLP*,
  Case No. 2:20-cv-06312-SDW-LDW (D.N.J.)................................................................14

*McCullough v. World Wrestling Entm't, Inc.*,
  2016 U.S. Dist. LEXIS 156459 (D. Conn. Nov. 10, 2016) .............................................27

*Reichmann v. Neumann*,
    553 F. Supp. 2d 307 (S.D.N.Y. 2008)............................................................................27

*Richards v. Ayusman Sen*,
    825 F. Supp. 2d 1259 (S.D. Fla. 2010) .......................................................................27

*Riggins v. Interfaith Med. Ctr.*,
    Case No. 1:19-cv-05317-RML (E.D.N.Y. 2021).............................................................13

*Rosiello v. Richmond University Med. Ctr.*,
    Case No. 1:20-cv-04746-FB-JRC (E.D.N.Y. 2021) ......................................................13

*Scott-Iverson v. Indep. Health Ass'n*,
    2016 U.S. Dist. LEXIS 173716 (W.D.N.Y. Dec. 15, 2016)..........................................28

*Smith v. Bosley Hair Restoration*,
    Case No. 1:20-cv-08489-JGK (S.D.N.Y. 2021) .............................................................14

*Smith v. Westchester Cty. Dep't of Corr.*,
    2013 U.S. Dist. LEXIS 132006 (S.D.N.Y. Sep. 16, 2013)............................................28

*Solis v. Wholley*,
    Case No. 1:21-cv-00619-BCM (S.D.N.Y. 2021).............................................................14

*Taylor v. City of Jersey City*,
    Case No. 2:19-cv-20662-KM-JBC (D.N.J. 2021) ..........................................................13

*United States v. Barnaby*,
    Case. No. 1:18-cr-00033-NGG-4 (E.D.N.Y.)....................................................................2

*United States v. Seltzer*,
    227 F.3d 36, 42 (2d Cir. 2000).......................................................................................27

*Weingarten v. CBS*,
    Case No. 1:20-cv-02598-JPC-KNF (S.D.N.Y. 2021)......................................................14

*Wenz v. Ascensia Diabetes Care US Inc.*,
    Case No. 2:20-cv-002342-BRM-JAD (D.N.J. 2021) ......................................................13

*Wolters Kluwer Fin. Servs. v. Scivantage*,
    564 F.3d 110, 114 (2d Cir. 2009)....................................................................................25

*Yukos Capital S.A.R.L. v. Feldman*,
    977 F.3d 216, 235 (2d Cir. 2020)....................................................................................25

STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1927 .................................................................................................... 5-6, 25

CPLR 301 .......................................................................................................... 16-17, 26

CPLR 302 .......................................................................................................... 17, 25-26

Fed. R. Civ. P. 11 ..................................................................................................... *passim*

Rule 1.16 of the New York Rules Professional Conduct ............................................... 13

Rule 3.3 of the New York Rules of Professional Conduct ............................................ 20

Former Defendant Onika Tanya Maraj ("Ms. Maraj")[1] and, to a limited extent, her counsel, Judd Burstein ("Mr. Burstein"), submit this Memorandum of Law in support of their Motion for Sanctions, pursuant to 28 U.S.C. § 1927 and the Court's inherent power, against Plaintiff Jennifer Hough's ("Plaintiff") counsel, Tyrone Blackburn ("Mr. Blackburn").

## INTRODUCTION

Mr. Blackburn's conduct in this case has been disgraceful.  He should be severely punished for it – **by both an award of fees and costs, and a referral to this Court's Attorney Disciplinary Committee** – so that, hopefully, other lawyers will understand that they have an obligation to their clients, the Court, opposing counsel, and the legal profession itself not to pursue bad faith, frivolous, and indeed extortionate litigation in such a reprehensible manner.

By way of example, consider the following:

**"Nicki Minaj Part of Big New York Gang Involved in Guns, Drugs and Rap"**

**"Nicki Minaj Lawyer Accused Of Stalking Rival Attorney's Wife"**

These are the types of headlines which Ms. Maraj and Mr. Burstein, have been unfairly subjected to by reason of the extraordinarily reckless, extraneous, and false accusations which Plaintiff's attorney, Mr. Blackburn, has made in publicly filed Court documents.

The disgraceful conduct which led to the headlines quoted above demonstrates that neither the litigation privilege, his belated dismissal of the Amended Complaint against Ms. Maraj, nor **his even more recent acknowledgments that his accusations were baseless** should insulate Mr. Blackburn from the consequences of his bad faith assault upon Ms. Maraj and (far less importantly) Mr. Burstein.

---

[1]     Ms. Maraj was voluntarily dismissed from this action.  (Dkt. No. 49).

1

**First**, in October 2021, Mr. Blackburn filed a motion for a default judgment against **Ms. Maraj's husband,** Defendant Kenneth Petty ("Mr. Petty") which included an **unequivocal** and false accusation of "fact" that **Ms. Maraj** is a member of the "Makk Ballers," a street gang whose members, according to an indictment filed in this District, "have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and committed acts of violence, including robbery and assault, as well as other crimes." (Superseding Indictment in *United States v. Barnaby*, Case. No. 1:18-cr-00033-NGG-4 (E.D.N.Y.) (Dkt. No. 71)). Given that (a) Mr. Blackburn had no evidence in his possession which would have remotely supported even an inference that Ms. Maraj belonged to the gang, and (b) the allegation was entirely irrelevant to the issue of whether a default judgment should be entered against Mr. Petty, Mr. Blackburn surely acted in a bad faith effort to generate extremely negative media coverage about Ms. Maraj which also depicted Mr. Blackburn as a lawyer who was seeking to bring her to justice.

**Now, almost three months after he made his false accusation against Ms. Maraj, Mr. Blackburn has finally admitted that he had no evidence whatsoever supporting his unequivocal claim that she belongs to the Makk Ballers.** After receiving a draft version of this motion (as to which no safe-harbor period is available to him because this motion is not made pursuant to Rule 11), Mr. Blackburn has modified his accusation so that he is now making it on "information and belief." (*See* Dkt. No. 61, at ¶¶ 16-17). However, this effort to defend the indefensible only serves to confirm Mr. Blackburn's bad faith because no one could reasonably conclude that the alleged basis for his "information and belief" supports the allegation he has made.

According to Mr. Blackburn's amended allegation, his supposed information and belief is based solely upon the following: "As seen on an Instagram live video currently up on Maraj's Instagram page, both Maraj and Petty were seen associating with members of the Makk Ballers

set of the Bloods Gang," and that "[u]pon information and belief, Petty can be visibly seen posing and throwing up gang signs." (*Id*.). At a recent conference before Magistrate Judge Cho, Mr. Blackburn then explained his understanding of what the video shows:

> Your Honor, Mr. Petty published a video on Instagram that says, and I'm paraphrasing here, gang shit, gang shit, heavy on the Macs, heavy on the Macs. And he throws up the gang sign for Mac Baller Brims. So one could assume that he's a member of the gang if he's saying gang shit, gang shit, heavy on the Macs. And I'll be more than happy to provide that to the Court."

(Dkt. No. 65, January 31, 2022 Transcript, at p. 5:16-22).

**Mr. Blackburn's failed effort to backpedal only serves to confirm his utter bad faith**. At most, and assuming *arguendo* that he has accurately characterized this video, Mr. Blackburn perhaps had a weak basis for "assuming" something about Mr. Petty. But he could not have possibly concluded in good faith that the video supported the assumption that Ms. Maraj is a gang member. **Plainly, Mr. Blackburn inexcusably added Ms. Maraj into the mix solely because he understood that she was his ticket to media attention**.

Mr. Blackburn's reckless, bad faith accusation is all the more appalling because, in her December 31, 2021 response to Plaintiff's motion for a default judgment against her, Ms. Maraj denied the accusation of gang membership under oath and explained in detail that the people in the video were fans (a few of whom – not gang members – she knew from the neighborhood) who had gathered around her when she and her husband stopped to view a street mural of Sean Bell on their way to visit Mr. Petty's grandmother with their baby. (Dkt. No. 43-8, at ¶¶ 6-8). Further, Ms. Maraj's account of the facts is confirmed by the video itself.

Yet after all of this, Mr. Blackburn took no steps to even modify his accusation until he knew from a January 26, 2022 draft of this sanctions motion that he was going to be called to account for it. And, even then, he did not acknowledge his inadequate modification in a

3

straightforward manner.  Instead, on January 28, 2022, he merely filed an amended Declaration in support of his motion for default judgment against Ms. Maraj **even though he had already dismissed the case against her**.[2]  Worse still, he did not identify or explain the changes in his amended Declaration, thereby forcing the reader to compare the two four-page documents side by side to identify his changes.

**Second,** while one would think that it would be impossible for Mr. Blackburn to act with more bad faith than he did so in accusing Ms. Maraj of membership in the Makk Ballers, he did in fact descend further into the muck with a January 21, 2022 letter to the Court (Dkt. No. 55) in which he launched an outrageous and completely basely attack upon Mr. Burstein that was plainly designed solely to harass him and tar his reputation.

Mr. Blackburn's January 21, 2022 letter discussed a November 3, 2021 email which Mr. Burstein had sent to Mr. Blackburn and Mr. Blackburn's former co-counsel, Steven Gordon ("Mr. Gordon") after Mr. Burstein had received an unsolicited email from someone alerting him to a comment by Mr. Gordon's wife in response to a YouTube video.[3]  Mr. Blackburn stated:

> An example of [Mr. Burstein's] deplorable behavior stems from his sick obsession with Mr. Gordon's wife.  Mr. Burstein went scrummaging through the comments section of youtube posts in search of comments posted by Mrs. Gordon.  Not only was his act of cyberstalking Mrs. Gordon creepy, but it was also weird, and beneath the dignity of this profession.

---

[2]     Notably, Mr. Blackburn did not amend his October 27, 2021 Declaration (Dkt No. 25-4) or his November 8, 2021 Declaration (Dkt. No. 32-1), submitted in support of Plaintiff's motion for default judgment against Mr. Petty and in opposition to Mr. Petty's motion to vacate the certificate of default, respectively, which contain the same bad faith gang allegations against Ms. Maraj.  (*See* Dkt. Nos. 25-4, at ¶¶ 16-18; 32-1 at ¶¶ 19-21).

[3]     The entirely innocent circumstances surrounding the appropriate emails which Mr. Burstein sent on a single day are discussed in the accompanying February 2, 2022 Declaration of Judd Burstein ("Burstein Dec."), at ¶¶ 5-14.

Mr. Gordon has now made clear in an email to Mr. Burstein that Mr. Blackburn acted with extreme bad faith when he made that accusation.  Referring to the portion of Mr. Blackburn's letter quoted above, Mr. Gordon stated:

I write to confirm the following:

1.   I **did not see Mr. Blackburn's letter before he sent it;**

2.   **I would have objected to these comments if I had seen the letter before it was sent** (although I had no control over anything which Mr. Blackburn ultimately filed with the Court);

3.   **I do not in any way agree with them; and**

4.   **I never at any time said anything to Mr. Blackburn even to suggest that I agreed with the views he expressed in his letter**[.]

(Exhibit N to the Burstein Dec.) (Emphasis in original).[4]

**No lawyer should be permitted to walk away unscathed after making an allegation of this kind – especially because Mr. Blackburn knew that it would find its way into the public domain due to the media and other attention paid to the docket in this case**.  As discussed *infra*, Mr. Blackburn's bad faith in making this accusation is further confirmed by his belated effort to avoid the consequences of his conduct by submitting a "Notice" withdrawing his January 21, 2022 letter in a thoroughly dishonest manner which does not acknowledge the initial impropriety of his accusation.

If ever there were a case for imposing sanctions under 28 U.S.C. § 1927 and the Court's inherent power, this is that case.  From the beginning of this case, when Mr. Blackburn filed a complaint which was nonsensical in its factual allegations against Ms. Maraj and plainly motivated

---

[4]      Mr. Gordon's email also states: "As we have also discussed, I was not lead counsel in the case against Ms. Maraj and I had no control over statements of facts ultimately submitted in Mr. Blackburn's filings."  (*Id*.).  Based upon these representations, no sanctions are being sought against Mr. Gordon.

solely to prey upon her wealth and fame, continuing through (and after) Mr. Blackburn's "sick obsession" comments about Mr. Burstein, Mr. Blackburn has engaged in conduct for which there is no other explanation than that he has acted with bad faith.  Indeed, Mr. Blackburn unreasonably pursued his frivolous default judgment motion against Ms. Maraj, for which sanctions are sought here pursuant to 28 U.S.C. § 1927, only to abandon that motion without offering a single response to any of Ms. Maraj's arguments raised in her opposition brief.  The only inference to be drawn from Mr. Blackburn's frivolous pursuit of a default judgment (and subsequent abandonment of the motion) is that he acted in bad faith, given that Mr. Burstein had served Mr. Blackburn with prior Rule 11 sanctions motions which had detailed why such a motion was frivolous.  As described below, there are also many other facts demonstrating his overwhelming bad faith

The scope of Mr. Blackburn's frivolous and bad faith conduct has been breathtaking, extending far beyond the egregious examples of it described above.  Further, an award of sanctions under § 1927 and the Court's inherent power is particularly necessary in light of Mr. Blackburn's statements that he is going to refile the Amended Complaint in another jurisdiction.  In other words, he is arrogantly and incomprehensibly contending that his conduct in this case was appropriate.  He should not be permitted to walk away from this Court believing that he is free to victimize Ms. Maraj a second time with the same baseless claims.

### STATEMENT OF THE FACTS

The facts relevant to a determination of this motion are set forth in the Burstein Dec., the exhibits thereto, and documents available through this Court's ECF website.  They fall into two categories: (a) facts describing the specific conduct which Ms. Maraj alleges was frivolous, and (b) facts demonstrating Mr. Blackburn's bad faith.

A.    **MR. BLACKBURN FILES THE CASE AGAINST MS. MARAJ ONLY BECAUSE SHE IS WEALTHY AND FAMOUS**

While Ms. Maraj does not seek sanctions based upon the filing of the Complaint and the Amended Complaint, those pleadings nonetheless provide compelling evidence of Mr. Blackburn's bad faith because, standing alone, they make clear that that Ms. Maraj was sued only because she is a very wealthy and famous person who happened to marry Mr. Petty.  This is the only inference that one can reasonably draw from the following allegations in the Amended Complaint about events alleged to have transpired **after** Plaintiff was allegedly raped by Mr. Petty in 1994:

    a.    She "was constantly beaten and verbally abused in the street and her home [by unnamed people] because everyone wanted her to drop the charges against Petty."  (Amended Complaint (Dkt. No. 8), at ¶ 70);

    b.    On the same day Mr. Petty pleaded guilty, she "was beaten at home" because she had not convinced the Court to drop the charges against Mr. Petty.  (*Id.*, at ¶ 74);

    c.    Thereafter, Plaintiff was subjected to "constant beating, and verbal abuse at home," causing her to run away from New York and move to Florida to live with her uncle, "whom she thought would protect her."  (*Id.*, at ¶ 75);

    d.    Instead, **her uncle raped her**, causing her to move out of his home.  (*Id.*, at ¶ 76);

    e.    After the rape by her uncle:

> Plaintiff was mentally and emotionally destroyed and attempted to find value and kindness in anything she could—partying, drugs, living in the streets, in and out of shelters.  Plaintiffs' [*sic*] self-worth was at zero, her emotions were empty, and she was lost.

> Plaintiff moved around a lot because she was too afraid to go back to New York for fear of someone recognizing her.  Plaintiff had four children, numerous failed relationships, and never knew a true home in her entire life.

7

(*Id.*, at ¶¶ 77-78);

f.      By 2016, Plaintiff had turned her life around and married.  "She was finally beginning to learn to be happy and love herself."  (*Id.*, at ¶ 79);

g.      In November of 2018, she learned from the internet that Ms. Maraj and Mr. Petty "were dating."  (*Id.*, at ¶ 81);

h.      Thereafter, also in November of 2018, Ms. Maraj, **not referring to Plaintiff by name**, responded to a social media "comment," by stating "'Kenny was 15, she was 16 and, in a relationship, but go awf [off] Internet.'"  (*Id.*, at ¶ 82);

i.      As a result of this single comment, Plaintiff decided to **voluntarily identify herself publicly** by engaging in a YouTube interview so that she could tell "her side of the story."  (*Id.*, at ¶ 83);

j.      According to the Amended Complaint, nothing occurred during the ensuing year until November 2019, when Ms. Maraj allegedly stated on her radio show – "that Petty was 15 years old but now added that he was 'wrongly accused,' 'he did not have bail money,' and said that Plaintiff had 'written a letter recanting her statement' but would face 90 days in jail if Plaintiff had done so – which was all false."  (*Id.*, at  ¶ 84); and

k.      The Amended Complaint makes clear that **Ms. Maraj did not mention Plaintiff's name during this broadcast** because it alleges that "[t]hese statements by [Ms. Maraj] put social media in a frenzy trying to figure out who Plaintiff was...."  (*Id.*, at ¶ 86).

Hence, as of November 2019, Plaintiff had not sued Mr. Petty, her family, or her uncle.  To the contrary, she was married and "beginning to learn to be happy and love herself."  (*Id.*, at ¶ 79).

**However, there was a crucial event that Plaintiff left out of her chronology**: the fact that Ms. Maraj married Mr. Petty in October 2019.  For it was only after she learned of the marriage that Plaintiff realized that she had a potential deep pocket in Ms. Maraj which she was intent upon exploiting.  And it was only then – **27 years after her encounter with Mr. Petty** – that she suddenly decided that **only** Mr. Petty and Ms. Maraj had harmed her – not the uncle who raped her, not the family members who beat and abused her, nor any of the people who undoubtedly hurt her during her years of "partying, drugs, [and] living in the streets [and] in and out of shelters."

When one then adds in the specific allegations against Ms. Maraj in the Amended Complaint, it becomes even more clear that she was named as a defendant because of who she is, rather than what she did.  Consider for example, the following allegations in the Amended Complaint, which appear under the heading "**KENNETH PETTY AND NICKI MINAJ INTIMIDATE AND HARASS PLAINTIFF**":

> In 2018, Defendant Minaj posted that she was doing a turkey giveaway in Queens, New York, on Rockaway Blvd. and 147th street.  This attracted much attention given how big of a star Defendant Minaj is, and since Queens was her hometown.
>
> On November 25, 2018, Defendant Minaj posted a picture of her and Petty, the man who raped Plaintiff at knifepoint.  It appeared that they were dating, and in the photo, they were throwing up gang signs.
>
> Toward the end of November, Defendant Minaj posted another picture of her and Petty and replied to a comment stating, "Kenny was 15, she was 16 and, in a relationship, but go awf Internet."

(*Id.*, at ¶¶ 80-82).

No one could contend in good faith that these allegations support a claim that Ms. Maraj was intimidating and harassing Plaintiff.  Indeed, how would Ms. Maraj have even known that Plaintiff would be following or viewing her Instagram page?[5]

However, the best evidence that Ms. Maraj was named as a defendant for who she is as opposed to what she did is the Amended Complaint as a whole.  Apart from allegations concerning a benign telephone call (*id.*, at ¶¶ 89-92), it is bereft of even a single allegation of any direct conduct by Ms. Maraj.  Rather, it irrationally assumes that Ms. Maraj was behind the third-party conduct alleged in the Amended Complaint – apparently because she was concerned about her husband.  Further, most of the conduct alleged in the Amended Complaint – supposed offers of money to Plaintiff – would not have been actionable even if Ms. Maraj had directly communicated those offers.  Indeed, the only threats supposedly communicated directly to Plaintiff were alleged threats from third parties allegedly communicated to Plaintiff's brother who then allegedly communicated them to Plaintiff.  Yet, the Amended Complaint does not allege that the brother ever mentioned Ms. Maraj's name to Plaintiff.

Mr. Blackburn's motive in bringing this case is further demonstrated by the fact that, shortly after filing the Amended Complaint, he and Plaintiff appeared on a daytime talk show, *The Real*, to discuss her case.  (*See* https://thereal.com/videos/full-interview-jennifer-hough-on-nicki-minaj-and-kenneth-petty-i-m-tired-of-being-afraid/).

---

[5]     Moreover, as Mr. Blackburn knew, the allegation concerning the November 25, 2018 photo referenced in the Amended Complaint – **but conveniently not attached to it** – was false because the photo does not show Ms. Maraj throwing up **any** hand sign, gang or otherwise.  (Exhibit K to the Burstein Dec.).

**B.    MR. BLACKBURN DENIES MS. MARAJ'S COUNSEL'S REASONABLE REQUEST FOR A BRIEF ADJOURNMENT AND INSTEAD USES HIS DENIAL OF THE REQUEST TO SECURE HIMSELF MEDIA ATTENTION**

On October 11, 2021, just five days after the date by which Mr. Blackburn contended a response to the Amended Complaint was due, he filed a Request for a Certificate of Default from the Clerk of the Court.  (Dkt. No. 15).

Just two days later, on October 13, 2021, Mr. Burstein sent Mr. Blackburn an email asking him to withdraw his request for a certificate of default and instead agree to an extension of time to just November 1, 2021 for Ms. Maraj to answer or move against the Amended Complaint.  (Exhibit E to the Burstein Dec.).  Mr. Blackburn responded as follows: "You can file your opposition and explain to the court why your client believes that her and her husband are above the law.  I do not consent to an extension."  (*Id.*).

But for what happened next, Mr. Blackburn's refusal to grant a request that would be a matter of course for almost any other lawyer could fairly be viewed as him merely exercising his right to be discourteous.  However, subsequent events show that he refused Mr. Burstein's request because he wanted to use it as an excuse to secure media attention for himself.  The next day, October 14, 2021, *The Daily Beast* posted an article which Mr. Blackburn surely planted:

> Hough's attorney, Tyrone Blackburn, says he received an email Thursday night from attorney Judd Burstein on Minaj's behalf—in which he requested that Blackburn withdraw the petition and grant an extension to respond.
>
> "I said NO!" Blackburn told The Daily Beast in an email.  "I told him to prepare his opposition to my request for default judgment and explain to the court why his client and her husband believe they're both above the law."

(Exhibit F to the Burstein Dec.).

To be clear, Ms. Maraj does not contend that Mr. Blackburn should be sanctioned specifically for this conduct.  But it is nonetheless probative on the issue of whether he has pursued this litigation in good faith.

## C.    MR. BLACKBURN RECEIVES HIS FIRST NOTICE THAT ANY EFFORT TO SEEK A DEFAULT JUDGMENT WOULD BE FRIVOLOUS

On October 15, 2021, the day after Mr. Blackburn denied Mr. Burstein's request for a brief extension of time, Mr. Burstein filed a motion seeking permission to file a late letter asking for a pre-motion conference.  (Dkt. No. 17).  The Memorandum of Law and proposed Pre-Motion Conference Letter submitted in support of that motion explained why a motion for a default judgment would be frivolous, including because there was no merit to the Amended Complaint. (Dkt. No. 17-6, at p. 8; Dkt. No. 17-2, at pp. 3-4).

Of particular relevance for the purposes of this motion is the fact that Ms. Maraj's October 15, 2021 motion put Mr. Blackburn on notice that he could not reasonably expect to secure a default judgment in the case or, indeed avoid dismissal, if only on the ground of improper venue.

## D.    MR. BLACKBURN AGAIN UNREASONABLY REFUSES TO LITIGATE ON THE MERITS

On Tuesday, October 19, 2021, the Clerk's Office refused to enter a default against Ms. Maraj.  (*See* October 19, 2021 Docket Entry).  Mr. Burstein therefore wrote to Mr. Blackburn asking: "In light of the Clerk's Office's denial of a request for a Certificate of Default, will you enter a stipulation to extend my time to answer or move against the Complaint to Friday?"  (Exhibit M to the Burstein Dec.).  Without providing any explanation, Mr. Blackburn simply replied: "No." (*Id*.).  Again, Ms. Maraj does not seek sanctions for Mr. Blackburn's refusal of counsel's request standing alone.  Nonetheless, his answer is relevant in assessing his overall bad faith  because, by that time, Ms. Maraj's pending motion for permission to file a late pre-motion conference letter should have put Mr. Blackburn on notice that he had zero chance of prevailing on a motion for a default judgment against Ms. Maraj.

## E.    MR. BLACKBURN REVEALS THAT HIS GOAL IN THE CASE IS TO FORCE MS. MARAJ INTO A SETTLEMENT

On October 28, 2021, all counsel attended a Zoom conference to meet each other and discuss, in general, how the case would go forward.  (Burstein Dec., at ¶ 4).  It was not a settlement meeting.  (*Id*.).  Incredibly, after pleasantries were exchanged, Mr. Blackburn's initial statement was, in words and substance, that he would like to settle the case.  (*Id*.).  This was an extraordinary statement for a plaintiff's attorney to make at the very beginning of a case, and even more surprising because Mr. Blackburn was pursuing a default judgment for $20 million in damages. (Dkt. No. 15-1, at ¶ 7).  Mr. Blackburn thus made clear that his primary goal was to obtain money from Ms. Maraj through a settlement.

We also note that our research indicates that filing lawsuits to secure a settlement is Mr. Blackburn's *modus operandi*, **as it does not appear that he has ever tried a case**.  Rather, all of his cases have been either voluntarily terminated or settled.[6]  *See Wenz v. Ascensia Diabetes Care US Inc.*, Case No. 2:20-cv-002342-BRM-JAD (D.N.J. 2021) (settled); *Taylor v. City of Jersey City*, Case No. 2:19-cv-20662-KM-JBC (D.N.J. 2021) (settled); *Riggins v. Interfaith Med. Ctr.*, Case No. 1:19-cv-05317-RML (E.D.N.Y. 2021) (settled); *Cumberbatch v. Funeral Home*, Case No. 1:20-cv-00201-LB (E.D.N.Y. 2021) (settled); *Rosiello v. Richmond University Med. Ctr.*, Case No. 1:20-cv-04746-FB-JRC (E.D.N.Y. 2021) (settled); *Durand v. Crown Heights Ctr. For*

---

[6]    Two days after Ms. Maraj was dismissed from this case, Ms. Faenza and Mr. Snizek requested permission to file a motion to withdraw as Plaintiff's counsel on the basis of Rules 1.16(c)(1), (7) and (8) of the New York Rules of Professional Conduct.  (Dkt. No. 47).  The Court granted their motion without requiring submission of motion papers, so one can only surmise as to the specifics of the motion.  However, a plaintiff's co-counsel moving to withdraw pursuant to those last two subsections of Rule 1.16 (a client failing to cooperate making the representation difficult and the inability to work with co-counsel) after a mere **six weeks** speaks volumes.  We chose not to seek sanctions against Ms. Faenza and Mr. Snizek because we concluded, after reflection, that they had acted responsibly in withdrawing as counsel.

13

*Nursing & Rehabilitation*, Case No. 1:20-cv-04771-EK-PK (E.D.N.Y. 2021) (settled); *Cunningham v. Mendenwaldt*, Case No. 1:21-cv-03391-WFK-VMS (E.D.N.Y. 2021) (Dkt. No. 17) (case voluntarily dismissed after the parties' counsel "met and conferred, and [] decided to resolve this matter out of court"); *Adams-Borden v. North Shore Univ. Hospital*, Case No. 2:21-cv-03466-BMC (E.D.N.Y. 2021) (settled); *Solis v. Wholley*, Case No. 1:21-cv-00619-BCM (S.D.N.Y. 2021) (Dkt. No. 26) (case voluntarily dismissed without prejudice to state law claims, after Mr. Blackburn's counsel agreed to withdraw all federal claims insofar as "plaintiff [could not] meet the threshold to assert a federal wage and hour claim"); *Govindharajan v. Tata Consultancy Servs.*, Case No. 1:19-cv-10017-RA (S.D.N.Y. 2020) (court granted motion to compel arbitration and dismissed the action); *Weingarten v. CBS*, Case No. 1:20-cv-02598-JPC-KNF (S.D.N.Y. 2021) (voluntarily dismissed); *Smith v. Bosley Hair Restoration*, Case No. 1:20-cv-08489-JGK (S.D.N.Y. 2021) (voluntarily dismissed); *Donovan v. Goyrkhman, et al.*, Index. No. 655307/2019 (N.Y. Cty. Sup. Ct. 2021) (voluntarily discontinued approximately five months after Mr. Blackburn appeared in the case); *see also Jones v. Fox Rothschild LLP*, Case No. 2:20-cv-06312-SDW-LDW (D.N.J.) (Dkt. Nos. 55, 60) (court granted motion to dismiss some claims, with leave to file an amended complaint as to others, but rather than file an amended complaint, Mr. Blackburn's client prematurely filed an appeal which the Third Circuit dismissed for lack of appellate jurisdiction).

**F.    MR. BLACKBURN EVIDENCES HIS BAD FAITH IN A MOTION HE FILES TO SECURE A DEFAULT JUDGMENT AGAINST MR. PETTY**

On October 28, 2021, Mr. Blackburn filed a motion seeking a default judgment against Mr. Petty.  That motion is highly probative on the issue of his bad faith for three reasons:

14

**First**, even though he was supposedly seeking a judgment against Mr. Petty, the first two paragraphs of Mr. Blackburn's October 27, 2021 Memorandum of Law in support of his motion demonstrate that his real goal was Ms. Maraj's money:

> **This case is about whether fame and fortune make one immune to the law**.  On September 16, 1994, Plaintiff Jennifer Hough's ("Plaintiff" or "Ms. Hough") life changed forever.  No one should ever go through what she did on that day.  But it is part of Ms. Hough's story.  A part that she wishes she did not remember.  A part for which she has blamed herself for over twenty-seven years.  **In or about November 2018, Defendant Onika Tanya Maraj, aka "Nicki Maraj" ("Defendant Maraj"), used her celebrity status to force Ms. Hough to revisit that day**.  **She used her fame to defame and denigrate Ms. Hough to rehabilitate her husband, Defendant Kenneth Petty's ("Defendant Petty") tarnished reputation**.  On that September day in 1994, Defendant Petty did the unspeakable.  He violently raped Ms. Hough; ultimately, leading to his arrest and incarceration for four years while he was sixteen.  Indeed, the prosecutors saw his crime as so heinous that even when he accepted a plea deal, Defendant Petty was charged as an adult and required to register as a sex offender for the remainder of his life.

> **Defendant Maraj is a multi-platinum selling and Grammy-nominated music artist.  In or about 2018, Defendant Maraj began dating Defendant Petty.  He is her teenage sweetheart, and fellow gang member.  When Defendant Maraj's relationship with Defendant Petty became public, her relationship with a rapist and killer led to much criticism by fans and others on the internet.  Accordingly, Defendant Maraj took to the airwaves – or, more precisely, twitter – to lie about what happened on September 16, 1994.  She could not help but let her "Twitter fingers" spread lies about Ms. Hough**.

(Dkt. No. 25, at pp. 5-6) (Emphasis supplied).

Plainly, these claims about Ms. Maraj were entirely irrelevant to whether a default judgment should be entered against Mr. Petty and can only be explained as a manifestation of Mr. Blackburn's true goal of placing Ms. Maraj at the center of the case solely because of her celebrity status.

**Second**, as noted *supra*, Mr. Blackburn's October 27, 2021 Declaration in support of that motion affirmatively, **and without qualification**, alleged that Ms. Maraj was a member of the Makk Baller gang.  (Dkt. No. 25-4, at ¶ 16).  As also explained above, Mr. Blackburn has now

15

admitted that he had no facts in his possession to support this accusation.  Indeed, he did not even have sufficient facts to support making the allegation on information and belief.  In addition to the fact that he had no supporting evidence, Mr. Blackburn's accusation was also entirely irrelevant to a motion for a default judgment against **Mr. Petty**.

It is thus clear that Mr. Blackburn's gratuitous accusation that Ms. Maraj belongs to a vicious street gang was included solely to create a media storm which might pressure Ms. Maraj to settle.  Mr. Blackburn was half right.  His accusation was widely publicized in the media.  (*See* Exhibit L to the Burstein Dec.).  However, he was unsuccessful in forcing Ms. Maraj to settle.

**Third**, Mr. Blackburn also submitted a letter, attached as Exhibit H to his October 27, 2021 Declaration, which he had sent to the federal judge overseeing Mr. Petty's criminal case in California.  (Dkt. No. 25-10).  In that letter, Mr. Blackburn claimed that in October 2020, "Ms. Hough received a frantic call from her brother, who informed her that **Petty and Nicki Minaj put a hit out on Ms. Hough's life** and warned Ms. Hough to move since they now know where she lived."  (Dkt. No. 25-10) (Emphasis supplied).  Incredibly, Mr. Blackburn sent this letter on September 3, 2021, one day after he filed the Amended Complaint in this case.  (Dkt. No. 8).  Yet, neither the original Complaint nor the Amended Complaint contain this allegation.

## G.   MR. BLACKBURN RECEIVES EXPLICIT AND DETAILED NOTICE THAT THE COURT DID NOT HAVE PERSONAL JURISDICTION OVER MS. MARAJ

On November 5, 2021, Mr. Burstein served a Rule 11 motion upon Mr. Blackburn providing a detailed explanation of the reasons why, regardless of whether Ms. Maraj had been properly served, it was frivolous to assert that the Court had personal jurisdiction over her.  (Exhibit G to the Burstein Dec., at pp. 8-15).  As of that date, Mr. Blackburn had never suggested that he was asserting that Ms. Maraj was subject to the personal jurisdiction of the Court pursuant to CPLR

301.[7]   To the contrary, the Amended Complaint alleged that Ms. Maraj was a resident and domiciliary of California and it then went on to identify specific sections of CPLR 302 which purportedly permitted the Court to exercise personal jurisdiction over Ms. Maraj.

Hence, there was no reason to address jurisdiction under CPLR 301 in the November 5, 2021 motion.   Nonetheless, Mr. Blackburn was given notice that any such claim would also be frivolous:

> Defendant has sought to carefully distinguish assertions of jurisdiction which are frivolous as a matter of law from the **facts** demonstrating that Defendant is not subject to the Court's personal jurisdiction.   Hence, if Plaintiff and her counsel do not withdraw the Amended Complaint, Defendant will offer indisputable proof that, *inter alia*, (a) she has not lived in New York for many years, (b) she has a California Driver's License, (c) she files California tax returns, (d) she does not own any businesses which are registered to transact business in New York, and (e) she does not own real property in New York.

(*Id.*, at p. 8 n.6) (Emphasis in original).

Ms. Maraj cannot seek Rule 11 sanctions based upon this motion because (a) she withdrew it in favor of a far more detailed Rule 11 motion served upon Plaintiff and her counsel on January 9, 2022, and (b) Mr. Blackburn dismissed the Amended Complaint as against Ms. Maraj three days later on January 12, 2022.   (Exhibit J to the Burstein Dec.).   Nonetheless, Mr. Blackburn's refusal to withdraw these accusations by November 26, 2021, the end of the safe-harbor period for the November 5, 2021 motion, provides further evidence of his bad faith, particularly in light of the fact that he continued pursuing his motion for a default judgment against Mr. Petty even after dismissing Ms. Maraj from the case.

---

[7]   CPLR 301, which states "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore," incorporates the bases for general jurisdiction in New York.   *See Aybar v. Aybar*, 169 A.D.3d 137, 143 (2d Dep't 2019) ("General jurisdiction in New York is provided for in CPLR 301[.]").

## H.   **MR. BLACKBURN ACCUSES MR. BURSTEIN OF PERJURY**

In the course of the motion practice concerning whether a default judgment should be entered against Mr. Petty, Mr. Blackburn unconscionably, albeit incomprehensibly, accused Mr. Burstein of having lied to the Court because Mr. Burstein was supposedly concerned about a malpractice action against him.   The details of this accusation are set forth in an entirely appropriate Rule 11 motion which was served upon Mr. Blackburn on November 10, 2021. (Exhibit H to the Burstein Dec.).  Given the enormity of his subsequent misconduct, this reckless accusation is proffered only as yet another example of Mr. Blackburn's bad faith conduct.

## I.   **MR. BLACKBURN RECEIVES NOTICE THAT THE KEY FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT ARE FALSE**

On December 8, 2021, Mr. Burstein provided Mr. Blackburn with a document which disproved the Amended Complaint's fundamental allegation that Plaintiff was so unnerved and terrified by Ms. Maraj that she constantly moved residences and changed telephone numbers out of fear for her life.  (*See* Exhibit I to the Burstein Dec., at Exhibit A thereof).  The document in question was an August 31, 2020 text message which Plaintiff sent to Ms. Maraj, stating: "US Marshalls [*sic*] are asking questions!!!  They showed up at my house." (*Id.*).

As Mr. Burstein explained:

**This single document unequivocally puts the lie to Plaintiff's claims against Defendant. If, as she alleges, Plaintiff moved and changed her telephone number because she was in fear for her life by reason of threats made by people supposedly working for Defendant, Plaintiff would never have sent a text message to Defendant revealing the telephone number which she claims to have been hiding.**

This is not a situation where a plaintiff has made some arguably inconsistent statements which might be used at a trial for impeachment purposes. Nor is this a case where a plaintiff alleges that she made a contradictory statement to a third party because she was afraid. Rather**, this text message destroys the foundation of Plaintiff's case against Defendant because Plaintiff voluntarily sent it to Defendant, thereby revealing her phone number to the one person from whom**

18

**she was supposedly seeking to hide it.  In fact, the only hiding in this case is Plaintiff's hiding of crucial facts.**

Further, this text message wholly contradicts Paragraph 108 of the Amended Complaint, which alleges that "the U.S. Marshals showed up at the Plaintiff's husband's job," and that she then "called the U.S. Marshals." This inconsistency cannot be just a mistake; it demonstrates that the text message Plaintiff sent to Defendant was a failed effort to convince Defendant to pay Plaintiff off so that she would not say anything negative to the Marshals about Defendant's husband. Either (a) the Marshals actually did come to Plaintiff's home, in which case she has falsely claimed that they came to her husband's office so that she can avoid revealing this damning text message, or (b) as alleged in the Amended Complaint, the Marshals did go to her husband's office and Plaintiff therefore lied to Defendant in the mistaken belief that Defendant would pay Plaintiff not to answer their questions.

(Exhibit I to the Burstein Dec., at ¶¶ 6-9) (Emphasis in original).[8]

In addition, Mr. Burstein referred Mr. Blackburn to a March 2021 interview which Plaintiff gave to *The Daily Beast* in which she contradicted key allegations in the Amended Complaint. (Exhibit I to the Burstein Dec., at ¶¶ 10-19).  These discrepancies are detailed in Exhibit D to Mr. Burstein's December 31, 2021 Declaration in opposition to Plaintiff's motion for a default judgment against Ms. Maraj.  (Dkt No. 43-5).

**J.    MR. BLACKBURN PRESSES FORWARD WITH A FRIVOLOUS MOTION FOR A DEFAULT JUDGMENT**

Even in the face of this new evidence, Mr. Blackburn pressed ahead with a motion for a default judgment against Ms. Maraj, which he filed on December 17, 2021.  (Dkt. No. 41).  As

---

[8]    Mr. Burstein provided this information in a Rule 11 motion directed **only** to Plaintiff, stating: "We are not seeking sanctions against Plaintiff's counsel in this motion because they too may be victims of Plaintiff's lies.  However, if they continue to defend the Amended Complaint, Defendant will seek sanctions against them.  Hopefully, as professionals, they will be as appalled by Plaintiff's lies as I am and take appropriate action."  (Exhibit I to the Burstein Dec., at ¶ 23 n.3). Regrettably, Mr. Blackburn continued to prosecute the case, and the text message and supporting evidence confirming the phone number from which it was sent belonged to Plaintiff (also provided to Mr. Blackburn on December 8, 2021) were filed as part of Ms. Maraj's opposition to Plaintiff's motion for a default judgment against her.  (*Compare* Exhibit I to the Burstein Dec., at Exhibits A and B thereof, *with* Dkt. Nos. 43-4 and 43-10; *see also* Dkt. No. 43-1, at ¶ 6).

explained below, the motion was so frivolous that no reasonable lawyer would have pursued it, as there was **zero chance** that it would be granted.  Moreover, in an incredibly shocking show of bad faith, Mr. Blackburn's motion  repeated his false allegations that Ms. Maraj was a gang member, and again submitted Mr. Blackburn's September 2, 2021 letter to the federal judge overseeing Mr. Petty's criminal case in California in which Mr. Blackburn alleged that Plaintiff's brother had told her that Ms. Maraj had put "a hit" out on Plaintiff.  (Dkt. No. 41-1, at ¶¶ 16, 18-19).

Incredibly, Mr. Blackburn also submitted a Declaration from Plaintiff which did not mention, much less try to account for, the text message which Mr. Burstein had provided him on December 8, 2021.  (*See* Dkt. No. 41-2).  Instead, he filed a Declaration in which Plaintiff yet again alleged that "[t]hree days after moving in August 2020, U.S. Marshal Roy Wright showed up at my husband's job.  I called U.S. Marshal Wright, and he stated that someone had called to report that I was being harassed and they were worried about my safety.  The Marshal offered me witness protection."  (Dkt. No. 41-2, at ¶¶ 24-25).

In other words, Mr. Blackburn submitted a Declaration with key allegations which he knew were untrue because, by that time, he had been provided with a text message from his own client which contradicted them.  Instead of correcting the record, as he was required to do under Rule 3.3(a)(1) of the New York Rules of Professional Conduct, he did the opposite.

## K.   MS. MARAJ SERVES MR. BLACKBURN WITH A DETAILED RULE 11 MOTION

On January 9, 2022, Ms. Maraj served Mr. Blackburn with a Rule 11 motion which, fortunately for him, restarted the safe-harbor clock on a range of issues, including, most importantly, personal jurisdiction.  (Exhibit J to the Burstein Dec.).

**L.      THE AMENDED COMPLAINT IS DISMISSED AS AGAINST MS. MARAJ**

Three days after the sanctions motion was served (and without filing any papers in reply in support of Plaintiff's motion for a default judgment against Ms. Maraj), Mr. Blackburn filed a Notice of Dismissal pursuant to Fed. R. Civ. P. 41 dismissing the Amended Complaint as against Ms. Maraj without prejudice.  (Dkt. No. 46).

**M.      MR. BLACKBURN CONFIRMS HIS BAD FAITH BY HIS CONDUCT FOLLOWING THE DISMISSAL OF MS. MARAJ**

Had this case ended as to Ms. Maraj with the dismissal of the Amended Complaint as against her, Mr. Blackburn could have reasonably, albeit unsuccessfully, argued that his frivolous conduct had been the product of negligence.  However, his outrageous conduct following the dismissal of Ms. Maraj demonstrates that he has at all times acted in bad faith.  In particular, notwithstanding the detailed Rule 11 motion which had been served upon him on January 9, 2021, Mr. Blackburn has stated that he is going to refile the same frivolous lawsuit in another jurisdiction. *See, e.g.*,  https://www.billboard.com/business/legal/nicki-minaj-accuser-refiling-harassment-lawsuit-california-1235021174/ (Mr. Blackburn "confirmed that the case would be refiled in California"); https://www.complex.com/music/jennifer-hough-voluntarily-dismisses-harassment-lawsuit-against-nicki-minaj ("'The case was voluntarily dismissed as to Nicki in NY,' Hough's lawyer, Tyrone Blackburn, told Complex…. 'This does not mean that Nicki Minaj is in the clear,' Blackburn added.  'In fact, she's probably in a worst position now than prior to when the case started.  So, I would say, stay tuned.'").

Mr. Blackburn's conclusion that he can move to a second jurisdiction with a frivolous pleading just because he dismissed it in the first jurisdiction within the safe-harbor period is a manifestation of his bad faith belief that Rule 11 applies only if he is caught red-handed.

Further, in an effort to deter Mr. Burstein from filing a sanctions motion, Mr. Blackburn made the inexcusably ugly and false claim that Mr. Burstein has a "sick obsession with Mr. Gordon's wife.  Mr. Burstein went scrummaging through the comments section of youtube posts in search of comments posted by Mrs. Gordon.  Not only was his act of cyberstalking Mrs. Gordon creepy, but it was also weird, and beneath the dignity of this profession."  (Dkt. No. 55, at pp. 1-2).  As noted above, Mr. Gordon has debunked this accusation, confirming that he does not in any way agree with Mr. Blackburn and that he never provided Mr. Blackburn with any basis to make the accusation.  (Exhibit N to the Burstein Dec.).[9]  Hence, the only explanation for Mr. Blackburn's accusation is that he was seeking to embarrass and upset Mr. Burstein in the hope that Mr. Burstein would back down from his intended sanctions motion for which he was requesting a briefing schedule to be ordered by the Court.  (*See* Dkt. Nos. 50, 54, and 57).

Mr. Blackburn's recent effort to escape sanctions for having made this accusation further confirms his bad faith.  On January 30, 2022, Mr. Blackburn filed "Notice of Withdrawal" of his January 21, 2022 letter, claiming that Mr. Gordon had requested that he insert the objectionable language into his January 21, 2022 letter to the Court.  (Dkt. No. 63).  Yet again, Mr. Blackburn was dishonest with the Court.

According to Mr. Blackburn, he made his false accusation against Mr. Burstein because Mr. Gordon had asked him to do so and that he was withdrawing it because (a) a draft version of this motion had been sent to Mr. Blackburn in which Mr. Burstein made it "abundantly clear that Mr. Burstein did not independently search for Mrs. Gordon's comments on YouTube," and (b) Mr. Burstein's disclosure of a private November 23, 2021 email chain with Mr. Gordon called "into

---

[9]     The entirely benign facts underlying Mr. Blackburn's claims are set forth in the Burstein Dec., at ¶¶ 5-14.

question Mr. Gordon's claims in docket #53 that Mr. Burstein's 'Your wife' email almost forced Mr. Gordon to withdraw from this action out of fear for his 'family's safety and privacy.'" (Dkt. No. 63 at pp. 1, 3). Mr. Blackburn's belated **and dishonest** effort to justify his conduct only confirms that he still refuses to take responsibility for his disgraceful conduct:

On January 26, 2022, Mr. Burstein sent an email to Mr. Blackburn and Mr. Gordon concerning a briefing schedule for this sanctions motion, stating that his office would be emailing a draft of this motion that same evening as discussed in his January 20, 21 and 24, 2022 letters to the Court. (Dkt. Nos. 50, 54 and 57). In this email, Mr. Burstein stated that his "view on scheduling depends upon whether you are prepared (after reading my papers) to withdraw all of the false claims which you have made about my supposed sick obsession with Steven's wife...." (Exhibit O to the Burstein Dec.).

In response to this email, Mr. Blackburn did not state that he had made his accusation at Mr. Gordon's request. Indeed, it is clear that Mr. Gordon did not make such a request of him because Mr. Gordon responded to Mr. Burstein's email by explicitly denying responsibility for Mr. Blackburn's letter, and Mr. Blackburn did not dispute that denial. (*Id.*).

Instead, Mr. Blackburn further demonstrated his bad faith by stating only that he would agree to submit "a joint letter withdrawing some the language used to describe your actions and intentions towards Mrs. Gordon," if Mr. Burstein agreed to apologize for "leaking an email" to the media which expressed his opinion of Mr. Blackburn. (*Id.*).

In response to these emails, Mr. Burstein expressed his view to Mr. Gordon that "you are mistaken in your apparent belief that you and Tyrone are separate entities and that you can distance yourself from what the other says just by remaining silent." (Exhibit P to the Burstein Dec.). Mr. Burstein then went on to address Mr. Blackburn's offer, stating:

23

I expressed my OPINION of you just as you have done about me.  I am not going to apologize for that.  Nor do I ask you to apologize to me.  But I think making an accusation that would be actionable but for the litigation privilege is very different."

(*Id*.).

In response, Mr. Blackburn doubled down:

Did you contact the husbands or wives of the other commenters of the YouTube video Mrs. Gordon commented on?  The answer is no.  After you were asked to cease commenting on, and referencing your opposing counsel's wife, you ignored it and did it again the day after.  So your actions were creepy and very very weird, and one would and could view your very weird creepy action as cyberstalking.  I am sorry if you cannot see that.

I provided my terms for a withdrawal (**which I do not believe is warranted**), and you have rejected it.

(*Id*.) (Emphasis supplied).

Mr. Blackburn's response was both frivolous and false.

In the first instance, Mr. Blackburn was not telling the truth in claiming that "[a]fter you were asked to cease commenting on, and referencing your opposing counsel's wife, you ignored it and did it again the day after."  To the contrary, the only emails sent were sent on November 3, 2021.  (Burstein Dec., at ¶¶ 11-14).

Moreover, the request to which Mr. Blackburn was referring actually demonstrates that Mr. Blackburn never believed that Mr. Burstein had a "creepy," "weird" and "sick obsession" with Mr. Gordon's wife.  To the contrary, on November 3, 2021, the same day on which Mr. Burstein wrote to Mr. Gordon about his wife, Mr. Blackburn sent an email stating: "**I see you're in a playful mood tonight [Mr. Burstein].  I am certain you don't mean an[y] harm….**  I would hope that this would be the last email concerning [Mr. Gordon's wife.]"  (Exhibit D to the Burstein Dec.) (Emphasis supplied).  This was the last time Mr. Gordon's wife's comments were ever mentioned

24

in this case until they were raised in Mr. Gordon's and Mr. Blackburn's January 21, 2022 letters. (*See* Dkt. Nos. 53 and 55; Burstein Dec., at ¶ 14).

## ARGUMENT

## POINT I

### MR. BLACKBURN SHOULD BE SANCTIONED UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER FOR PURSUING A DEFAULT JUDGMENT AGAINST MS. MARAJ

The Court has the "inherent power" to impose sanctions when there is "clear and convincing evidence of bad faith." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).  Pursuant to 28 U.S.C. § 1927, the Court may also sanction an attorney for "mutipl[ying] the proceedings . . . unreasonably and vexatiously."  To impose sanctions under either the Court's inherent power or § 1927, the Court must find "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (Internal quotation marks and citation omitted).  With respect to the first prong, "[c]onduct is entirely without color when it lacks any legal or factual basis," but "is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).  With respect to the second prong, the Court can infer the attorney was acting in bad faith "when a party undertakes frivolous actions that are completely without merit." *Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 55 (2d Cir. 2018) (Internal quotation marks and citation omitted).

Here, it is clear that Plaintiff's motion for a default judgment was entirely frivolous because (a) as explained both in Ms. Maraj's November 5, 2021 sanctions motion (Exhibit G to the Burstein Dec., at pp. 8-15) and in her opposition to Plaintiff's motion for a default judgment against her (Dkt. No. 43, at pp. 11-15), the Amended Complaint's theories of jurisdiction under CPLR 302

25

were facially deficient, and (b) the Amended Complaint alleged that Ms. Maraj is both a California domiciliary and a resident of that state, thereby precluding a claim of jurisdiction under CPLR 301.

But the motion for a default judgment was frivolous for other reasons.

**First**, as Ms. Maraj argued at the outset of the case and also in opposition to Plaintiff's motion for a default judgment, there was no basis whatsoever, and certainly not a colorable one, to conclude that the Eastern District of New York was a proper venue for any claims against Ms. Maraj. Significantly, Mr. Blackburn never even sought to answer Ms. Maraj's argument on these issues.

**Second**, no attorney could have reasonably believed that there was **any** chance that Plaintiff could prevail on a motion for a default judgment against Ms. Maraj because the **only** "fact" supporting a default judgment was that, **assuming that she was properly served**, Ms. Maraj missed the deadline for responding to the Amended Complaint by seven days. But even if true, the law is crystal clear that a plaintiff "'is not entitled to a default judgment as a matter of right'" simply because a party is in default. *Am. Transit Ins. Co v. Bilyk*, 514 F. Supp.3d 463, 471 (E.D.N.Y. 2021) (citation omitted). Since, as demonstrated in Ms. Maraj's Memorandum of Law in Opposition to Plaintiff's Motion for a Default Judgment, there were no other facts, or any case law, supporting Plaintiff's motion, it was plainly frivolous. Rather than repeat those arguments, here, we respectfully refer the Court to the parties' Memoranda of Law in connection with Plaintiff's motion for entry of a default judgment against Ms. Maraj, as well as the declarations and exhibits (Dkt. Nos. 41 through 41-4 (Plaintiff's moving papers) and 43 through 43-12 (Ms. Maraj's opposition papers), because they demonstrate the frivolity of Plaintiff's motion.

Turning to the issue of bad faith, it has been amply established by the Statement of Facts set forth above and in the Burstein Dec. Moreover, the case law supports a conclusion of bad faith

based upon those facts. *See McCullough v. World Wrestling Entm't, Inc.*, 2016 U.S. Dist. LEXIS 156459, at *37-38 (D. Conn. Nov. 10, 2016) ("Baseless claims that are included in a complaint as part of a media campaign to pressure the defendant with negative public relations have been found to evidence bad faith and improper purpose on the part of filing counsel."); *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 321 (S.D.N.Y. 2008) ("[The plaintiff's] lawyers, by failing to investigate any of the obvious and accumulating clues to the truth, violated their duty as officers of the court."); *Galonsky v. Williams*, 1997 U.S. Dist. LEXIS 19570, at *18 (S.D.N.Y Dec. 9, 1997) ("[T]he overall circumstances of this case indicate that Mr. Kraft filed these baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement. While the Court certainly [cannot] ordinarily punish a lawyer for talking to the press …, it is appropriate to consider the press conference held by counsel in assessing the issue of his good faith in filing frivolous claims and motions…."); *see also Richards v. Ayusman Sen*, 825 F. Supp. 2d 1259, 1264 (S.D. Fla. 2010) ("[The plaintiff's] counsel's persistence in proceeding with this litigation despite the lack of personal jurisdiction indicates that § 1927 sanctions may be warranted in this case.").

## POINT II

### MR. BLACKBURN SHOULD BE SANCTIONED FOR HIS OUTRAGEOUS AND FALSE PERSONAL ATTACKS ON MR. BURSTEIN

The Court has an inherent power "to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation." *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). "[W]hen the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." *Id.*

Mr. Blackburn should be sanctioned for his false and insulting claims about Mr. Burstein's supposed "sick obsession" with, and "creepy" "cyberstalking" of, Mr. Gordon's wife. As a general rule, lawyers should not waste a Judge's time with complaints about what one of them says about another – even if it is untrue or unfair. But falsely accusing Mr. Burstein of having a "creepy," "sick obsession" with Mr. Gordon's wife that has led him to "cyberstalk" her is very different – particularly in a high-profile case such as this one where there is intense media scrutiny of the Court's docket. No lawyer should find himself the victim of the headlines which Mr. Blackburn surely knew he would cause by making these outlandish and false accusations in a public filing.

Courts within this Circuit have not hesitated to sanction extreme conduct such as Mr. Blackburn's. *See Scott-Iverson v. Indep. Health Ass'n*, 2016 U.S. Dist. LEXIS 173716, at *36-37 (W.D.N.Y. Dec. 15, 2016) (where the plaintiff's affidavit stated the defendant's counsel's behavior demonstrated "that he is without a question a racist and a bully," the Court stated "[i]rrelevant and obnoxious slurs and insults directed against opposing attorneys are subject to sanctions including a fine") (Emphasis in original); *Smith v. Westchester Cty. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 132006, at *18-19 (S.D.N.Y. Sep. 16, 2013) (concluding the plaintiff's attorney was subject to sanctions under the Court's inherent authority where the plaintiff's counsel accused the county attorney of unethical conduct, and made "unsupported allegations of misconduct" that "were clearly antagonistic, egregious and made in bad faith"); *see also Azkour v. Rest*, 2014 U.S. Dist. LEXIS 204798, at *2-7 (S.D.N.Y. May 30, 2014) (sanctioning *pro se* plaintiff who, after being warned not to make any further statements that could be construed as offensive or threatening, accused the defendant's counsel of not being of "sound judgment and mental capacity," concluding "[p]laintiff needs to understand that personal insults have no place in legal proceedings").

28

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Maraj and Mr. Burstein respectfully request that the Court impose sanctions under 28 U.S.C. § 1927 and its inherent powers against Mr. Blackburn.

Dated: New York, New York
　　　February 2, 2022

Respectfully submitted,

JUDD BURSTEIN, P.C.


By: _____ /s/ Judd Burstein
　　　Judd Burstein
　　　Emily C. Finestone
260 Madison Avenue, 15th Floor
New York, New York 10016
(212) 974-2400
(212) 974-2944 (Fax)
jburstein@burlaw.com
efinestone@burlaw.com
*Attorneys for Onika Tanya Maraj
and Judd Burstein*

29