# EXHIBIT # A

Former Defendant Onika Tanya Maraj a/k/a Nicki Minaj ("Ms. Maraj")[1] and, to a limited extent, her counsel, Judd Burstein ("Mr. Burstein") submit this Memorandum of Law in support of their Motion for Sanctions, pursuant to 28 U.S.C. § 1927 and the Court's inherent power, against Plaintiff Jennifer Hough's ("Plaintiff") counsel, Tyrone Blackburn and Steven Gordon.

## INTRODUCTION

**"Nicki Minaj Part of Big New York Gang Involved in Guns, Drugs and Rap"**

**"Nicki Minaj Lawyer Accused Of Stalking Rival Attorney's Wife"**

These are the types of headlines which Ms. Maraj and Mr. Burstein, have been unfairly subjected to by reason of the extraordinarily reckless, extraneous, and false accusations which Plaintiff's attorneys, Tyrone Blackburn ("Mr. Blackburn") and Steven Gordon ("Mr. Gordon"), have made in publicly filed court documents.

Their conduct has been disgraceful, and neither the litigation privilege nor their belated dismissal of the Amended Complaint against Ms. Minaj can insulate them from their sanctionable conduct.

If ever there were a case for imposing sanctions under 28 U.S.C. § 1927 and the Court's inherent power, this is that case.  From the beginning of this case, when Plaintiff's attorney, Mr. Blackburn, filed a complaint which was nonsensical in its factual allegations against Ms. Maraj and plainly motivated solely to prey upon her wealth and fame, continuing through the false and outrageous accusations by Mr. Blackburn and his co-counsel, Steven Gordon ("Mr. Gordon"), that Mr. Burstein has a "creepy" and "sick obsession" with Mr. Gordon's wife which has led him to "cyberstalk" her, thereby supposedly putting Mr. Gordon in "fear for the safety of [his] family,"

---

Defendant was voluntarily dismissed from this action.  (Dkt. No. 49).

1

Mr. Blackburn and Mr. Gordon have engaged in conduct for which there is no other explanation than that they have acted with bad faith.

The scope of their frivolous and bad faith conduct has been breathtaking.  Just by way of example:

a.  They filed a motion for a default judgment against **Ms. Maraj's husband** which gratuitously and falsely accused **Ms. Maraj** of membership in the "Makk Ballers," a street gang whose members, according to an indictment filed in this District, "have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and committed acts of violence, including robbery and assault, as well as other crimes."  (Superseding Indictment in *United States v. Barnaby*, Case. No. 1:18-cr-00033-NGG-4 (E.D.N.Y.) (Dkt. No. 71)).  Given that (a) they had **no facts** in their possession which would have remotely supported even an inference that Ms. Maraj belonged to the gang, and (b) the allegation was entirely irrelevant to the issue of whether a default judgment should be entered against Ms. Maraj's husband, Mr. Blackburn and Mr. Gordon acted in a bad faith effort to generate extremely negative media coverage about Ms. Maraj which also depicted Mr. Blackburn as a lawyer who was seeking to bring her to justice;[2]

---

[2]  Mr. Gordon has recently confirmed, albeit unintentionally, the impropriety of these accusations by contending that they were appropriately based **solely** upon pictures of Ms. Maraj purportedly using gang signs.  Notably, Mr. Gordon does not offer any support for his contention that it is, in fact, a gang sign.  Further, as discussed *infra*, the assumption that any person of color who flashes a gang sign must be a member of a gang has been condemned as racist stereotyping. Moreover, a two-minute internet search would have revealed that Ms. Maraj's occasional use of gang hand signs as a joke or for artistic reasons plainly has nothing to do with her belonging to a gang.

b.      The Amended Complaint's central claim against Ms. Maraj was that she had so terrified Plaintiff with threats of physical violence that Plaintiff had moved homes and changed her telephone number on multiple occasions.  Yet, Mr. Blackburn and Mr. Gordon knew that this linchpin allegation was false because they were provided with indisputable evidence that, at a time when she was supposedly in hiding because Ms. Maraj had been threatening her with physical harm, Plaintiff had voluntarily sent Ms. Maraj her telephone number in the hope that Ms. Maraj would communicate with her;

c.      They pursued a default judgment against Ms. Maraj knowing that it had no chance of success because, *inter alia*, Ms. Maraj was not subject to the Court's jurisdiction. Indeed, they contended with no basis in law or fact that Ms. Maraj was subject to long-arm personal jurisdiction under CPLR 302, and then when their failure to conduct any inquiry whatsoever was exposed, let alone a reasonable one, they falsely argued that they had voluntarily dismissed because they had learned new facts;

d.      In an effort to preclude a motion for sanctions against them and to cause Mr. Burstein reputational harm, they sent letters to the Court which included knowingly false and injurious accusations against him, such as that he had threatened and "cyberstalked" Mr. Gordon's wife due to a supposed "sick obsession" with her;[3] and

---

[3]    As Mr. Burstein explains in his accompanying Declaration and is set forth in detail below, Mr. Gordon's accusation is particularly unwarranted.  Because Mr. Gordon had been recently employed by Mr. Burstein, Mr. Burstein had sent him a private email – well after his supposed "cyberstalking" of his wife – trying to explain to him why he was on a dangerous path by

e.      Mr. Gordon has now taken to threatening litigation against a blogger whom he believes may be participating with Mr. Burstein in "an intelligent scheme to defame my client and I."  (Exhibit P to the accompanying Declaration of Judd Burstein ("Burstein Dec.")).

There is no place for this type of conduct in our courts.  Mr. Gordon and Mr. Blackburn should be severely punished for it – by both an award of fees and costs, and a referral to this Court's Attorney Disciplinary Committee – so that, hopefully, other lawyers will understand that they have an obligation to their clients, the Court, opposing counsel, and the legal profession itself not to pursue bad faith, frivolous, and indeed extortionate litigation in such a reprehensible manner.

Further, an award of sanctions under § 1927 and the Court's inherent power is particularly necessary in light of Mr. Gordon's and Mr. Blackburn's statements that they are going to refile the Amended Complaint in another jurisdiction.  In other words, they are arrogantly and incomprehensibly contending that their conduct in this case was appropriate.  They should not be permitted to walk away from this Court believing that they are free to victimize Ms. Maraj a second time with their same baseless claims.

## STATEMENT OF THE FACTS

The facts relevant to a determination of this motion are set forth in the Burstein Dec., the exhibits thereto, and documents available through this Court's ECF website.  They fall into two categories: (a) facts describing the specific conduct which Ms. Maraj alleges was frivolous, and (b) facts demonstrating Mr. Gordon's and Mr. Blackburn's bad faith.

## A.    MR. BLACKBURN FILES THE CASE AGAINST MS. MARAJ ONLY BECAUSE SHE IS WEALTHY AND FAMOUS

---

continuing to pursue a default judgment against Ms. Maraj.  Mr Gordon responded by stating: "I appreciate your thoughtful and supportive words…."  (Exhibit L to the Burstein Dec.).

While Ms. Maraj does not seek sanctions based upon the filing of the Complaint and the Amended Complaint, those pleadings nonetheless provide compelling evidence of Mr. Blackburn's bad faith because, standing alone, they make clear that that Ms. Maraj was sued only because she is a very wealthy and famous person who happened to marry Defendant Kenneth Petty ("Mr. Petty").[4]  This is the only inference that one can reasonably draw from the following allegations in the Amended Complaint about events alleged to have transpired **after** Plaintiff was allegedly raped by Mr. Petty in 1994:

a.    She "was constantly beaten and verbally abused in the street and her home [by unnamed people] because everyone wanted her to drop the charges against Petty." (Amended Complaint (Doc. No. 8), at ¶ 70);

b.    On the same day Mr. Petty pleaded guilty, she "was beaten at home" because she had not convinced the Court to drop the charges against Mr. Petty.  (*Id*., at ¶ 74);

c.    Thereafter, Plaintiff was subjected to "constant beating, and verbal abuse at home," causing her to run away from New York and move to Florida to live with her uncle, "whom she thought would protect her."  (*Id*., at ¶ 75);

d.    Instead, **her uncle raped her**, causing her to move out of his home.  (*Id*., at ¶ 76);

e.    After the rape by her uncle:

Plaintiff was mentally and emotionally destroyed and attempted to find value and kindness in anything she could—partying, drugs, living in the streets, in and out of shelters.  Plaintiffs' (*sic*) self-worth was at zero, her emotions were empty, and she was lost.

Plaintiff moved around a lot because she was too afraid to go back to New York for fear of someone recognizing her.  Plaintiff had four

---

[4]    Mr. Gordon did not participate in the drafting of the pleadings.  However, he cannot escape liability for them because he signed on early in the case and vigorously pursued the Amended Complaint when he surely knew it was frivolous.

children, numerous failed relationships, and never knew a true home
in her entire life.

(*Id.*, at ¶¶ 77-78);

f.      By 2016, Plaintiff had turned her life around and married. "She was finally
beginning to learn to be happy and love herself." (*Id.*, at ¶ 79);

g.      In November of 2018, she learned from the internet that Ms. Maraj and Mr. Petty
"were dating." (*Id.*, at ¶ 81);

h.      Thereafter, also in November of 2018, Ms. Maraj, **not referring to Plaintiff by
name**, responded to a social media "comment," by stating "'Kenny was 15, she was
16 and, in a relationship, but go awf [off] Internet.'" (*Id.*, at ¶ 82);

i.      As a result of this single comment, Plaintiff decided to **voluntarily identify herself
publicly** by engaging in a YouTube interview so that she could tell "her side of the
story." (*Id.*, at ¶ 83);

j.      According to the Amended Complaint, nothing occurred during the ensuing year
until November 2019, when Ms. Maraj allegedly stated on her radio show – "that
Petty was 15 years old but now added that he was 'wrongly accused,' 'he did not
have bail money,' and said that Plaintiff had 'written a letter recanting her
statement' but would face 90 days in jail if Plaintiff had done so – which was all
false." (*Id.*, at  ¶ 84); and

k.      The Amended Complaint makes clear that **Ms. Maraj did not mention Plaintiff's
name during this broadcast** because it alleges that "[t]hese statements by [Ms.
Maraj] put social media in a frenzy trying to figure out who Plaintiff was...." (*Id.*,
at  ¶ 86)

6

Hence, as of November 2019, Plaintiff had not sued Mr. Petty, her family, or her uncle.  To the contrary, she was married and "beginning to learn to be happy and love herself."

**However, there was a crucial event that Plaintiff left out of her chronology**: the fact that Ms. Maraj married Mr. Petty.  For it was only after she learned of the marriage that Plaintiff realized that she had a potential deep pocket in Ms. Maraj which she was intent upon exploiting.  And it was only then – **27 years after her encounter with Mr. Petty** – that she suddenly decided that only Mr. Petty and Ms. Maraj had harmed her – not the uncle who raped her, not the family members who beat and abused her, nor any of the people who undoubtedly hurt her during her years of "partying, drugs, [and] living in the streets [and] in and out of shelters."

When one then adds in the specific allegations against Ms. Maraj in the Amended Complaint, it becomes even more clear that she was named as a defendant because of who she is, rather than what she did.  Consider for example, the following allegations in the Amended Complaint, which appear under the heading "**KENNETH PETTY AND NICKI MINAJ INTIMIDATE AND HARASS PLAINTIFF**":

> In 2018, Defendant Minaj posted that she was doing a turkey giveaway in Queens, New York, on Rockaway Blvd. and 147th street. This attracted much attention given how big of a star Defendant Minaj is, and since Queens was her hometown.
>
> On November 25, 2018, Defendant Minaj posted a picture of her and Petty, the man who raped Plaintiff at knifepoint. It appeared that they were dating, and in the photo, they were throwing up gang signs.
>
> Toward the end of November, Defendant Minaj posted another picture of her and Petty and replied to a comment stating, "Kenny was 15, she was 16 and, in a relationship, but go awf Internet."

(Complaint, at ¶¶ 80-82)

No one could contend in good faith that these allegations support a claim that Ms. Maraj was intimidating and harassing Plaintiff. Indeed, how would Ms. Maraj have even known that Plaintiff would be following or viewing her Instagram page?[5]

However, the best evidence that Ms. Maraj was named as a defendant for who she is as opposed to what she did is the Amended Complaint as a whole. In summary, apart from allegations concerning a benign telephone call (Dkt. No. 8, at ¶¶ 89-92), it is bereft of even a single allegation of any direct conduct by Ms. Maraj. Rather, it irrationally assumes that Ms. Maraj was behind the third-party conduct alleged in the Amended Complaint – apparently because she was concerned about her husband. Further, most of the conduct alleged in the Amended Complaint – supposed offers of money to Plaintiff – would not have been actionable even if Ms. Maraj had directly communicated those offers. Indeed, the only threat supposedly communicated directly to Plaintiff were alleged threats from third-parties allegedly communicated to Plaintiff's brother who then allegedly communicated them to Plaintiff. Yet, the Amended Complaint does not allege that the brother ever mentioned Ms. Maraj's name to Plaintiff.

Mr. Blackburn's motive in bringing this case is further demonstrated by the fact that, shortly after filing the Amended Complaint, he and Plaintiff appeared on a daytime talk show, *The Real*, to discuss her case. (*See* https://thereal.com/videos/full-interview-jennifer-hough-on-nicki-minaj-and-kenneth-petty-i-m-tired-of-being-afraid/).

**B.** **MR. BLACKBURN DENIES MS. MARAJ'S COUNSEL'S REASONABLE REQUEST FOR A BRIEF ADJOURNMENT AND INSTEAD USES HIS DENIAL OF THE REQUEST TO SECURE HIMSELF MEDIA ATTENTION**

---

[5] Moreover, as Mr. Blackburn knew, the allegation concerning the November 25, 2018 photo referenced in the Amended Complaint – **but not attached to it** – does not show Ms. Maraj throwing up **any** hand sign, gang or otherwise. As for Mr. Petty, it appears that he is doing something with his fingers. However, as discussed in the Burstein Dec. and as shown by Exhibit M thereto, Mr. Petty was not "throwing up" a hand sign used by his purported gang, the Makk Ballers.

On October 11, 2021, just five days after the date by which Mr. Blackburn contended a response to the Amended Complaint was due, he filed a Request for a Certificate of Default from the Clerk of the Court.  (Dkt. No. 15).

Just two days later, on October 13, 2021, Mr. Burstein sent Mr. Blackburn an email asking him to withdraw his request for a certificate of default and instead agree to an extension of time to just November 1, 2021 for Ms. Maraj to answer or move against the Amended Complaint.  (Exhibit E to the Burstein Dec.).  Mr. Blackburn responded as follows: "You can file your opposition and explain to the court why your client believes that her and her husband are above the law.  I do not consent to an extension."  (*Id.*).

But for what happened next, Mr. Blackburn's refusal to grant a request that would be a matter of course for almost any other lawyer could fairly be viewed as him merely exercising his right to be discourteous.  However, subsequent events show that he refused Mr. Burstein's request because he wanted to use it as an excuse to secure media attention for himself.  The next day, October 14, 2021, *The Daily Beast* posted an article which Mr. Blackburn surely planted:

> Hough's attorney, Tyrone Blackburn, says he received an email Thursday night from attorney Judd Burstein on Minaj's behalf—in which he requested that Blackburn withdraw the petition and grant an extension to respond.
>
> "I said NO!" Blackburn told The Daily Beast in an email. "I told him to prepare his opposition to my request for default judgment and explain to the court why his client and her husband believe they're both above the law."

(Exhibit F to the Burstein Dec.).

To be clear, Ms. Maraj does not contend that Mr. Blackburn should be sanctioned for this conduct.  But it is nonetheless probative on the issue of whether he has pursued this litigation in good faith.

C.    **MR. BLACKBURN RECEIVES HIS FIRST NOTICE THAT ANY EFFORT TO SEEK A DEFAULT JUDGMENT WOULD BE FRIVOLOUS**

On October 15, 2021, the day after Mr. Blackburn denied Mr. Burstein's request for a brief extension of time, Mr. Burstein filed a motion seeking permission to file a late letter seeking a pre-motion conference.   The Memorandum of Law and proposed Pre-Motion Conference Letter submitted in support of that motion explained why a motion for a default judgment would be frivolous, including because there was no merit to the Amended Complaint.   (Dkt. No. 17-6, at p. 8; Dkt. No. 17-2, at pp. 3-4).

Of particular relevance for the purposes of this motion is the fact that Ms. Maraj's October 15, 2021 motion put Mr. Blackburn and later, Mr. Gordon, on notice that they could not reasonably expect to secure a default judgment in the case or, indeed avoid dismissal, if only on the ground of improper venue.[6]

D.    **MR. BLACKBURN AGAIN UNREASONABLY REFUSES TO LITIGATE ON THE MERITS**

On Tuesday, October 19, 2021, the Clerk's Office refused to enter a default against Ms. Maraj.   (*See* October 19, 2021 Docket Entry).   Mr. Burstein therefore wrote to Mr. Blackburn asking: "In light of the Clerk's Office's denial of a request for a Certificate of Default, will you enter a stipulation to extend my time to answer or move against the Complaint to Friday?" (Exhibit Q to the Burstein Dec.).   Without providing any explanation, Mr. Blackburn simply replied: "No." (*Id.*).   Again, Ms. Maraj does not seek sanctions for Mr. Blackburn's refusal of counsel's request. Nonetheless, his answer is relevant in assessing the totality of Plaintiff's counsel's conduct

---

[6]    Mr. Gordon had not filed a Notice of Appearance in the case as of the date on which this motion was filed.   However, he subsequently sent Mr. Burstein an email on October 21, 2021 acknowledging that he had reviewed it.   (Exhibit R to the Burstein Dec.).

because, by that time, Ms. Maraj's pending motion should have put Mr. Blackburn on notice that he had zero chance of prevailing on a motion for a default judgment against Ms. Maraj.

### E.   MR. BLACKBURN AND MR. GORDON REVEAL THAT THEIR GOAL IN THE CASE IS TO FORCE MS. MARAJ INTO A SETTLEMENT

Shortly after Mr. Burstein appeared in the case (Dkt. No. 16), Mr. Gordon filed a Notice of Appearance as co-counsel for Plaintiff (Dkt. No. 18).

Thereafter, on October 28, 2021, all counsel attended a Zoom conference to meet each other and discuss, in general, how the case would go forward.  (Burstein Dec., at ¶ 24).  It was not a settlement meeting.  Incredibly, after pleasantries were exchanged, Mr. Blackburn's initial statement was, in words and substance, that he would like to settle the case.  (*Id*., at ¶ 25).  This was an extraordinary statement for a plaintiff's attorney to make at the very beginning of a case, and even more surprising because Mr. Blackburn was pursuing a default judgment for $20 million in damages.  (Dkt. No. 15-1, at ¶ 7).  Mr. Blackburn thus made clear that his and Mr. Gordon's primary goal was to obtain money from Ms. Maraj through a settlement.

We also note that our research indicates that filing lawsuits to secure a settlement is Mr. Blackburn's *modus operandi*, **as it does not appear that he has ever tried a case**.  Rather, all of his cases have been either voluntarily terminated or settled.[7]  *See Wenz v. Ascensia Diabetes Care US Inc.*, Case No. 2:20-cv-002342-BRM-JAD (D.N.J. 2021) (settled); *Taylor v. City of Jersey*

---

[7]   Indeed, two days after Ms. Maraj was dismissed from this case, Ms. Faenza and Mr. Snizek requested to file a motion to withdraw as Plaintiff's counsel on the basis of Rules 1.16 (c)(1), (7) and (8) of Professional Conduct (Dkt. No. 47).  The Court granted their motion without requiring submission of motion papers, so one can only surmise as to the specifics of the motion.  However, a plaintiff's co-counsel moving to withdraw pursuant to those last two subsections of Rule 1.16 (a client failing to cooperate making the representation difficult and the inability to work with co-counsel) after a mere **six weeks** speaks volumes.  We chose not to seek sanctions against Ms. Faenza and Mr. Snizek because we concluded, after reflection, that they had acted responsibly in withdrawing as counsel.

*City*, Case No. 2:19-cv-20662-KM-JBC (D.N.J. 2021) (settled); *Riggins v. Interfaith Med. Ctr.*, Case No. 1:19-cv-05317-RML (E.D.N.Y. 2021) (settled); *Cumberbatch v. Funeral Home*, Case No. 1:20-cv-00201-LB (E.D.N.Y. 2021) (settled); *Rosiello v. Richmond University Med. Ctr.*, Case No. 1:20-cv-04746-FB-JRC (E.D.N.Y. 2021) (settled); *Durand v. Crown Heights Ctr. For Nursing & Rehabilitation*, 1:20-cv-04771-EK-PK (E.D.N.Y. 2021) (settled); *Cunningham v. Mendenwaldt*, Case No. 1:21-cv-03391-WFK-VMS (E.D.N.Y. 2021) (Dkt. No. 17) (case voluntarily dismissed after the parties' counsel "met and conferred, and [] decided to resolve this matter out of court"); *Adams-Borden v. North Shore Univ. Hospital*, No. 2:21-cv-03466-BMC (E.D.N.Y. 2021) (settled); *Solis v. Wholley*, Case No. 1:21-cv-00619-BCM (S.D.N.Y. 2021) (Dkt. No. 26) (case voluntarily dismissed without prejudice to state law claims, after Mr. Blackburn's counsel agreed to withdraw all federal claims insofar as "plaintiff [could not] meet the threshold to assert a federal wage and hour claim"); *Govindharajan v. Tata Consultancy Servs.*, Case No. 1:19-cv-10017-RA (S.D.N.Y. 2020) (court granted motion to compel arbitration and dismissed the action); *Weingarten v. CBS*, Case No. 1:20-cv-02598-JPC-KNF (S.D.N.Y. 2021) (voluntarily dismissed); *Smith v. Bosley Hair Restoration*, Case No. 1:20-cv-08489-JGK (S.D.N.Y. 2021) (voluntarily dismissed); *Donovan v. Goyrkhman, et al.*, Index. No. 655307/2019 (N.Y. Cty. Sup. Ct. 2021) (voluntarily discontinued approximately five months after Mr. Blackburn appeared in the case); *see also Jones v. Fox Rothschild LLP*, Case No. 2:20-cv-06312-SDW-LDW (D.N.J.) (Dkt. Nos. 55, 60) (court granted motion to dismiss some claims, with leave to file an amended complaint as to others, but rather than file an amended complaint, Mr. Blackburn's client prematurely appealed, which the Third Circuit dismissed for lack of appellate jurisdiction).

**F.    MR. BLACKBURN AND MR. GORDON EVIDENCE THEIR BAD FAITH IN A MOTION THEY FILE TO SECURE A DEFAULT JUDGMENT AGAINST MR. PETTY**

On October 28, 2021, Mr. Blackburn and Mr. Gordon filed a motion seeking a default judgment against Mr. Petty. That motion is highly probative on the issue of their bad faith for four reasons:

**First**, even though they were supposedly seeking a judgment against Mr. Petty, Mr. Blackburn's and Mr. Gordon's real target was Ms. Maraj's money. This is made clear by the first two paragraphs of the October 27, 2021 Memorandum of Law which they submitted in support of the motion:

> **This case is about whether fame and fortune make one immune to the law**. On September 16, 1994, Plaintiff Jennifer Hough's ("Plaintiff" or "Ms. Hough") life changed forever. No one should ever go through what she did on that day. But it is part of Ms. Hough's story. A part that she wishes she did not remember. A part for which she has blamed herself for over twenty-seven years. **In or about November 2018, Defendant Onika Tanya Maraj, aka "Nicki Maraj" ("Defendant Maraj"), used her celebrity status to force Ms. Hough to revisit that day**. **She used her fame to defame and denigrate Ms. Hough to rehabilitate her husband, Defendant Kenneth Petty's ("Defendant Petty") tarnished reputation**. On that September day in 1994, Defendant Petty did the unspeakable. He violently raped Ms. Hough; ultimately, leading to his arrest and incarceration for four years while he was sixteen. Indeed, the prosecutors saw his crime as so heinous that even when he accepted a plea deal, Defendant Petty was charged as an adult and required to register as a sex offender for the remainder of his life.
>
> **Defendant Maraj is a multi-platinum selling and Grammy-nominated music artist. In or about 2018, Defendant Maraj began dating Defendant Petty. He is her teenage sweetheart, and fellow gang member. When Defendant Maraj's relationship with Defendant Petty became public, her relationship with a rapist and killer led to much criticism by fans and others on the internet. Accordingly, Defendant Maraj took to the airwaves – or, more precisely, twitter – to lie about what happened on September 16, 1994. She could not help but let her "Twitter fingers" spread lies about Ms. Hough**.

(Dkt. No. 25, at pp. 5-6) (Emphasis supplied).

Plainly, these claims about Ms. Maraj were entirely irrelevant to whether a default judgment should be entered against Mr. Petty and can only be explained as a manifestation of Mr.

Blackburn's and Mr. Gordon's true goal of placing Ms. Maraj at the center of the case solely because of her celebrity status.

**Second**, in that Memorandum of Law, Mr. Blackburn and Mr. Gordon claimed that "Defendant Maraj, and Defendant Petty are members of the Makk Ballers set of the Bloods Gang." (*Id.*, at p. 5, n.1).  Mr. Blackburn then expanded upon this same claim in his October 27, 2021 Declaration which he submitted in support of the motion:

> On October 23, 2021, four days prior to this declaration, and two days prior to Petty's counsel making an appearance in this case, Petty and Maraj were both in this district, in Jamaica Queens, New York. As seen on an Instagram live video currently up on Maraj's Instagram page, **both Maraj and Petty were seen associating with members of the Makk Ballers set of the Bloods Gang.  Petty and Maraj are both members of this gang**.

(Dktc. No. 25-4, at ¶ 16).

The allegation of Ms. Maraj's supposed gang membership is not even made on information and belief.  The unqualified assertion of supposed "fact" demonstrates Mr. Blackburn's and Mr. Gordon's utter bad faith because they were making a potentially devastating accusation against a public figure even though (a) they had absolutely no factual basis for baldly claiming that Ms. Maraj was a member of the Makk Baller's gang, (b) even if Ms. Maraj had been a member (which she is not), that "fact" would have been entirely irrelevant to whether a default judgment should be entered against only Mr. Petty, and (c) the October 23, 2021 "appearance" occurred after the filing of the Amended Complaint, making it even more irrelevant.

Given the foregoing, it is clear that Mr. Blackburn's and Mr. Gordon's entirely gratuitous accusation that Ms. Maraj belongs to a vicious street gang was included solely to create a media storm which might pressure Ms. Maraj to settle.  Mr. Gordon and Mr. Blackburn were half right. Their accusation was widely publicized in the media (Exhibit N to the Burstein Dec.).  However, they were unsuccessful in forcing Ms. Maraj to settle.

14

In a January 21, 2022 letter to the Court (Dkt. No. 53) in response to Mr. Burstein's letter requesting a briefing schedule from the Court (Dkt. No. 50), Mr. Gordon further demonstrated his and Mr. Blackburn's bad faith in accusing Ms. Maraj of gang membership by attaching, as Exhibit A to his letter (Dkt. No. 53-1), a picture of Ms. Maraj purportedly flashing a gang sign. This explanation makes it even worse for Mr. Gordon and Mr. Blackburn, because (a) after researching on the internet to find all the hand signals associated with the Makk Ballers and the Bloods, I have not found any support for the claim that the hand signal which Ms. Maraj is using in this obvious publicity photo is related to these gangs (*see* Burstein Dec., at ¶ 40), and (b) it is different than the hand signals appearing in the pictures which Mr. Blackburn and Mr. Gordon used last October to allege that Ms. Maraj was a gang member.  (Dkt. No. 25-11).  Moreover, as explained in the Burstein Dec., at ¶¶ 38-40, the other hand signals in those photos do not match hand signals associated with the Makk Ballers or the Bloods either.

More importantly, a two-minute internet search for "youtube Nicki Minaj gang signs" would have yielded videos in which Ms. Maraj or other performers use gang signs as jokes or for artistic reasons. *See*, *e.g.*, https://www.youtube.com/watch?v=IVlThD8sm_w; https://www.youtube.com/watch?v=JwAnH6PLimo; https://www.youtube.com/watch?v=OrSadmwmmAs; and https://www.youtube.com/watch?v=-fZ7Gb532Ew.

In essence, then, Mr. Gordon has justified his and Mr. Blackburn's outrageous accusation **solely** by assuming that since she is a person of color, Ms. Maraj must be a gang member because she has been photographed supposedly using gang signs.  Mr. Gordon should be ashamed of this effort to justify his and Mr. Blackburn's accusation.  As pointed out by Art Acevado, former Chief of Police of Austin & Houston, Texas and Chief California Highway Patrol, past president of

Major Cities Chiefs and National Latino Peace Officers Association: "More evidence of the ignorance and racism in our nation. If a person of color 'throws up sign' it must be gang signs." https://twitter.com/artacevedo/status/1271880621321838592?lang=en; *see also* https://www.chicagoreporter.com/peace-signs-gang-signs-and-criminalizing-people-color ("'There's some glaring cultural illiteracy when the top law enforcement officer installed by the governor of Missouri is accused of throwing up gang signs….'").[8]

**Third**, Mr. Gordon and Mr. Blackburn also submitted a letter, attached as Exhibit H to Mr. Blackburn's October 27, 2021 Declaration, which Mr. Blackburn had sent to the federal judge overseeing Mr. Petty's criminal case in California.  (Dkt. No. 25-10)  In that letter, Mr. Blackburn claimed that in October 2020, "Ms. Hough received a frantic call from her brother, who informed her that **Petty and Nicki Minaj put a hit out on Ms. Hough's life** and warned Ms. Hough to move since they now know where she lived."  (Dkt. No. 25-10) (Emphasis supplied).  Incredibly, Mr. Blackburn sent this letter on September 3, 2021, one day after he filed the Amended Complaint in this case.  (Dkt. No. 8).  Yet, neither the original Complaint nor the Amended Complaint contain this allegation.

**Fourth**, Mr. Blackburn and Mr. Gordon expressly argued in the motion that Mr. Petty was subject to the personal jurisdiction of the New York courts.  (Dkt. No. 25, at p. 9)  Yet, as discussed *infra*, no such argument was made in their motion seeking a default judgment against Ms. Maraj – thereby further undermining Mr. Gordon's false claim to the Court that he and Mr. Blackburn had decided to dismiss the Amended Complaint because they had learned of new facts showing that the Court lacked personal jurisdiction (Dkt. No. 53, at pp. 2-3).

---

[8]    To be clear, Mr. Blackburn's or Mr. Gordon's race, whatever they may identify as, does not absolve them from fostering racial stereotypes.

## G.   MR. BLACKBURN AND MR. GORDON RECEIVE EXPLICIT AND DETAILED NOTICE THAT THE COURT DID NOT HAVE PERSONAL JURISDICTION OVER MS. MARAJ

On November 5, 2021, Mr. Burstein served a Rule 11 motion upon Mr. Blackburn and Mr. Gordon providing a detailed explanation of the reasons why, regardless of whether Ms. Maraj had been properly served, it was frivolous to assert that the Court had personal jurisdiction over her. (Exhibit G to the Burstein Dec., at pp. 8-15).   As of that date, neither Mr. Blackburn nor Mr. Gordon had ever suggested that they were asserting that Ms. Maraj was subject to the personal jurisdiction of the Court pursuant to CPLR 301.[9]   To the contrary, the Amended Complaint alleged that Ms. Maraj was a resident and domiciliary of California and it then went on to identify specific sections of CPLR 302 which purportedly permitted the Court to exercise personal jurisdiction over Ms. Maraj.

Hence, there was no reason to address jurisdiction under CPLR 301 in the motion. Nonetheless, Mr. Blackburn and Mr. Gordon were given notice that any such claim would also be frivolous:

> Defendant has sought to carefully distinguish assertions of jurisdiction which are frivolous as a matter of law from the **facts** demonstrating that Defendant is not subject to the Court's personal jurisdiction.   Hence, if Plaintiff and her counsel do not withdraw the Amended Complaint, Defendant will offer indisputable proof that, *inter alia*, (a) she has not lived in New York for many years, (b) she has a California Driver's License, (c) she files California tax returns, (d) she does not own any businesses which are registered to transact business in New York, and (e) she does not own real property in New York.

(*Id*., at p. 8, n.6) (Emphasis in original)

---

[9]   CPLR 301, which states "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore," incorporates the bases for general jurisdiction in New York.  *See Aybar v. Aybar*, 169 A.D.3d 137, 143 ("General jurisdiction in New York is provided for in CPLR 301[.]").

Ms. Maraj cannot seek Rule 11 sanctions based upon this motion because (a) she withdrew it in favor of a far more detailed Rule 11 motion served upon Plaintiff and her counsel on January 9, 2022, and (b) Mr. Gordon and Mr. Blackburn dismissed the Amended Complaint as against Ms. Maraj three days later on January 12, 2022.  (Exhibit K to the Burstein Dec.).  Nonetheless, Mr. Gordon's and Mr. Blackburn's refusal to withdraw these accusations by November 26, 2021, the end of the safe-harbor period for this motion, provides further evidence of their bad faith.

## H.  MR. BLACKBURN AND MR. GORDON ACCUSE MR. BURSTEIN OF PERJURY AND COLLUSION WITH MR. PETTY'S COUNSEL

In the course of the motion practice concerning whether a default judgment should be entered against Mr. Petty, Mr. Gordon and Mr. Blackburn unconscionably accused Mr. Burstein of gross misconduct, including that he lied to the Court because he was concerned about a malpractice action against him and that he had been "colluding" with Mr. Petty's counsel.

The details of these accusations are set forth in an entirely appropriate Rule 11 motion which was served upon Mr. Gordon and Mr. Blackburn.  (Exhibit H to the Burstein Dec.).  Given the enormity of their subsequent misconduct, these reckless allegations are proffered only as yet another example of Mr. Gordon's and Mr. Blackburn's bad faith conduct.

## I.  MR. BURSTEIN PRIVATELY IMPLORES MR. GORDON TO CONVINCE MR. BLACKBURN TO ABANDON THE EFFORT TO SECURE A DEFAULT JUDGMENT AGAINST MS. MARAJ AND OFFERS NOT TO SEEK ANY SANCTIONS IF THEY DO SO

As explained in the Burstein Dec., Mr. Gordon had worked as an associate in Mr. Burstein's firm for a few months in 2021.  After Mr. Gordon entered this case, he imparted some private information to Mr. Burstein (not disclosed on this motion) which suggested to him that he may have been unfair in his assessment of Mr. Gordon.

18

Hence, on November 23, 2021, Mr. Burstein sent Mr. Gordon a private personal email which implored him to drop his pursuit of a default judgment against Ms. Maraj because it was sanctionable, stating, in relevant part:

> The bottom line here is that there is a better chance of you getting sanctioned than there is of getting default judgment against Nicki. I really do not want to go down that route….
>
> In my view, it makes sense to do a reset. You and Tyrone should abandon your effort to secure a default against Nicki with an understanding that, if asked, both of us will only say publicly that we discussed the matter and have agreed that it makes more sense to get to the merits of the case. I would also agree not to file any sanctions motions based upon any past filings.
>
> Please do not mistake this offer as coming from a place of weakness or concern about the case; it is not. I am just trying to give you the benefit of my experience. One of the dangers of being a young talented lawyer (and I think you may fall into that category) is that your skills will often outstrip your judgment for many years. That is when you are most at risk of making a mistake with lasting negative consequences,

(Exhibit L to the Burstein Dec.).[10]

Mr. Gordon responded to this email by stating: "I appreciate your thoughtful and supportive words. Tyrone … and I will take your propositions under advisement." (*Id.*). Neither Mr. Gordon nor Mr. Blackburn ever responded to Mr. Burstein's offer. (Burstein Dec., at ¶ 35).

## J.  MR. GORDON AND MR. BLACKBURN RECEIVE NOTICE THAT THE KEY FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT ARE FALSE

On December 8, 2021, Mr. Burstein provided Mr. Gordon and Mr. Blackburn with a document which disproved the Amended Complaint's fundamental allegation that Plaintiff was so unnerved and terrified by Ms. Maraj that she constantly moved residences and changed telephone numbers out of fear for her life. The document in question was an August 31, 2020 text message

---

[10]    Exhibit L to the Burstein Dec. has been redacted to remove extraneous information which should remain private. Presumably, Mr. Gordon will not respond in a way that requires disclosure of presently redacted portions of the email correspondence.

which Plaintiff sent to Ms. Maraj, stating: "US Marshalls [*sic*] are asking questions!!!  They

showed up at my house."

As Mr. Burstein explained:

> **This single document unequivocally puts the lie to Plaintiff's claims against Defendant**. **If, as she alleges, Plaintiff moved and changed her telephone number because she was in fear for her life by reason of threats made by people supposedly working for Defendant, Plaintiff would never have sent a text message to Defendant revealing the telephone number which she claims to have been hiding.**
>
> This is not a situation where a plaintiff has made some arguably inconsistent statements which might be used at a trial for impeachment purposes. Nor is this a case where a plaintiff alleges that she made a contradictory statement to a third party because she was afraid. Rather**, this text message destroys the foundation of Plaintiff's case against Defendant because Plaintiff voluntarily sent it to Defendant, thereby revealing her phone number to the one person from whom she was supposedly seeking to hide it.  In fact, the only hiding in this case is Plaintiff's hiding of crucial facts.**
>
> Further, this text message wholly contradicts Paragraph 108 of the Amended Complaint, which alleges that "the U.S. Marshals showed up at the Plaintiff's husband's job," and that she then "called the U.S. Marshals." This inconsistency cannot be just a mistake; it demonstrates that the text message Plaintiff sent to Defendant was a failed effort to convince Defendant to pay Plaintiff off so that she would not say anything negative to the Marshals about Defendant's husband. Either (a) the Marshals actually did come to Plaintiff's home, in which case she has falsely claimed that they came to her husband's office so that she can avoid revealing this damning text message, or (b) as alleged in the Amended Complaint, the Marshals did go to her husband's office and Plaintiff therefore lied to Defendant in the mistaken belief that Defendant would pay Plaintiff not to answer their questions.

(Exhibit I to the Burstein Dec., at ¶¶ 6-9).[11]

---

[11]    Mr. Burstein provided this information in a Rule 11 motion directed **only** to Plaintiff, stating "We are not seeking sanctions against Plaintiff's counsel in this motion because they too may be victims of Plaintiff's lies.  However, if they continue to defend the Amended Complaint, Defendant will seek sanctions against them. Hopefully, as professionals, they will be as appalled by Plaintiff's lies as I am and take appropriate action."  (Exhibit I to the Burstein Dec., at ¶ 23 n.3). Regrettably, Mr. Gordon and Mr. Blackburn pressed on with the case, and the text message and supporting evidence confirming the phone number from which it was sent belonged to Plaintiff (which was provided to Mr. Blackburn and Mr. Gordon on December 8, 2021) were filed as part of Ms. Maraj's opposition to Plaintiff's motion for a default judgment against her.  (*Compare*

In addition, Mr. Burstein referred Mr. Gordon and Mr. Blackburn to a March 2021 interview which Plaintiff gave to *the Daily Beast* in which she contradicted key allegations in the Amended Complaint.   (Exhibit I to the Burstein Dec., at ¶¶ 10-19).   These discrepancies are detailed in Exhibit D to Mr. Burstein's December 31, 2021 Declaration in opposition to Plaintiff's motion for a default judgment against Ms. Maraj.  (Dkt No. 43-5).

**K.   MR. GORDON AND MR. BLACKBURN PRESS FORWARD WITH A FRIVOLOUS MOTION FOR A DEFAULT JUDGMENT**

Even in the face of this new evidence, Mr. Gordon and Mr. Blackburn pressed ahead with a motion for a default judgment against Ms. Maraj, which they filed on December 17, 2021.  (Dkt. No. 41).  As explained below, their motion was so frivolous that no reasonable lawyer would have pursued it, as there was **zero chance** that it would be granted.  Moreover, in an incredibly shocking show of bad faith, they repeated their false allegations that Ms. Maraj was a gang member, and again submitted Mr. Blackburn's September 2, 2021 letter to the federal judge overseeing Mr. Petty's criminal case in California in which Mr. Blackburn alleged that Plaintiff's brother had told her that Ms. Maraj had put "a hit" out on Plaintiff.  (Dkt. No. 41-1, at ¶¶ 16, 18-19).

Incredibly, Mr. Blackburn and Mr. Gordon also submitted a Declaration from Plaintiff which did not mention, much less try to account for, the text message which Mr. Burstein had provided them on December 8, 2021.  (*See* Dkt. No. 41-2).  Instead, they filed a Declaration in which Plaintiff yet again alleged that

> [t]hree days after moving in August 2020, U.S. Marshal Roy Wright showed up at my husband's job. I called U.S. Marshal Wright, and he stated that someone had called to report that I was being harassed and they were worried about my safety. The Marshal offered me witness protection.

---

Exhibit I to the Burstein Dec., at Exhibits A and B thereof, *with* Dkt. Nos. 43-4 and 43-10; *see also* Dkt. No. 43-1, at ¶ 6).

(Dkt. No. 41-2, at ¶¶ 24-25).

In other words, Mr. Gordon and Mr. Blackburn submitted a Declaration with key allegations which they knew were untrue because they had been provided with a text message from their own client which contradicted them. Instead of correcting the record, as they were required to do under Rule 3.3(a)(1) of the New York Rules of Professional Conduct, they did the opposite.

**L.     MS. MARAJ SERVES PLAINTIFF AND HER COUNSEL WITH A RULE 11 MOTION**

On January 9, 2022, Ms. Maraj served Plaintiff and her counsel with a Rule 11 motion which, fortunately for them, restarted the safe-harbor clock for them on a range of issues, including, most importantly, personal jurisdiction.

**M.     THE AMENDED COMPLAINT IS DISMISSED AS AGAINST MS. MARAJ**

Three days after the sanctions motion was served (and without filing any papers in reply in support of Plaintiff's motion for a default judgment), Mr. Blackburn filed a Notice of Dismissal pursuant to Fed. R. Civ. P. 41 dismissing the Amended Complaint as against Ms. Maraj without prejudice.

**N.     MR. GORDON AND MR. BLACKBURN CONFIRM THEIR BAD FAITH BY THEIR CONDUCT FOLLOWING THE DISMISSAL OF THE AMENDED COMPLAINT**

Had this case ended as to Ms. Maraj with the dismissal of the Amended Complaint, Mr. Blackburn and Mr. Gordon could have reasonably, albeit unsuccessfully, argued that their frivolous conduct was the product of negligence. However, their outrageous conduct following the dismissal of the Amended Complaint demonstrates that they have at all times acted in bad faith.

**First**, during oral argument on Plaintiff's motion for a default judgment against Mr. Petty, Mr. Gordon gave the Court a false explanation of why he and Mr. Blackburn had dismissed the Amended Complaint as against Ms. Maraj:

> [W]e voluntarily dismissed Defendant Maraj because she had shown evidence that we believe demonstrates that jurisdiction is not proper in this court.  So as is our duty once we had evidence of that, we had to voluntarily dismiss the case under Rule 11….

(Dkt. No. 52, January 20, 2022 Transcript, at pp. 32:23-33:3).

In his January 21, 2022 letter to the Court, Mr. Gordon contended that the new evidence to which he was referring was the December 30, 2021 Declaration which Ms. Maraj submitted in opposition to the motion for a default judgment.  (Dkt. No. 53, at pp. 2-3).  However, Mr. Gordon also acknowledged that it

> is true that, in a purported sanctions motion dated November 5, 2021, Mr. Burstein alleged that personal jurisdiction was frivolously alleged. Mr. Burstein, however, did not provide evidence to support his statement until submitting [Ms. Maraj's Declaration].  Indeed, Mr. Burstein is seeking that the Court sanction Plaintiff and her counsel for not believing his statement.  Once evidence was provided, on January 12, 2022, Plaintiff voluntarily dismissed against [Ms. Maraj], despite having her default.

(Dkt. No. 53, at pp. 2-3)

This is an outrageous and false response which only serves to further confirm Mr. Gordon's and Mr. Blackburn's bad faith.

Mr. Gordon would have this Court believe that, as of November 5, 2021, he and Mr. Blackburn understood and agreed that if Ms. Maraj had merely provided a Declaration confirming the facts recounted in the motion sent to them on November 5, 2021, dismissal of the Amended Complaint would be mandated.  Yet, while Ms. Maraj's Declaration was filed on December 31, 2021, it took Mr. Gordon and Mr. Blackburn twelve days to dismiss the Amended Complaint, and only **after** they were served with a sanctions motion.

Hence, Mr. Gordon has admitted that he and Mr. Blackburn knew on or about December 31, 2021 that, as Mr. Gordon informed the Court, they had duty under Rule 11 to dismiss the Amended Complaint as against Ms. Maraj, but that they were nonetheless content to seek a default

23

judgment unless and until they concluded that they might be sanctioned.  This **admitted** conduct is an example of extreme bad faith because a lawyer's Rule 11 obligations are not dependent upon whether another lawyer makes a complaint.  If a lawyer **knows** that he has a Rule 11 obligation to dismiss a Complaint, he is not entitled to wait to see if he can get away with not doing so.  Plainly, Rule 11's safe-harbor provision is designed to give an attorney the opportunity to consider whether an opposing lawyer has correctly alleged that a filing is frivolous.  It is not intended to give lawyers a free pass to engage in frivolous conduct simply because no one notices.  Mr. Gordon's admission that he and Mr. Blackburn **knew** that they had an obligation to dismiss the Amended Complaint as against Ms. Maraj **before** they were served with the January 9, 2022 sanctions motions, but did not do so, is an admission of bad faith.

Further, since, according to Mr. Gordon, he and Mr. Blackburn **knew** that if allegations made by an officer of the Court were true (*i.e.,* the representations made by Mr. Burstein in his November 5, 2021 sanctions motion), they would be obligated to dismiss the Complaint, they acted in bad faith by not acknowledging that fact and asking for a sworn statement from Ms. Maraj, as early as November 5, 2021.  Instead, they wasted the Court's time (including requiring it to prepare for a December 8, 2021 oral argument) in the vain hope that Mr. Burstein had been lying to them for almost two full months.

In addition, another portion of Mr. Gordon's January 21, 2021 letter shows that his and Mr. Blackburn's *post hoc* justification for not dismissing the Amended Complaint as against Ms. Maraj before January 12, 2022 is a sham because Ms. Maraj's December 30, 2021 Declaration was irrelevant to the reasons why, according to Mr. Gordon, it had previously been reasonable for him and Mr. Blackburn to allege that Ms. Maraj was subject to the Court's jurisdiction.  According to Mr. Gordon:

> Nonetheless there are several objectively reasonable reasons why the allegation that this Court had personal jurisdiction over [Ms. Maraj]. First, as conceded by [Mr. Petty], her husband is a resident of New York. Second, her husband owns property in New York. Third, [Ms. Maraj] is considered a "New York" based "rapper" from Queens County. Fourth, this is not the first time that OTM has been sued in New York.

(Dkt. No. 53, at p. 3).

This argument is so absurd that it only serves to further confirm Mr. Gordon's and Mr. Blackburn's bad faith:

a.   The Amended Complaint alleges that Ms. Maraj is both domiciled in California and a resident of that State. (Dkt. No. 8, at ¶¶ 5, 12). It therefore makes no sense for Mr. Gordon to claim that he and Mr. Blackburn believed that Ms. Maraj was subject to the Court's jurisdiction because her husband is purportedly a New York resident;

b.   Mr. Gordon's and Mr. Blackburn's claim that Ms. Maraj was properly served with the Summons and Complaint was explicitly predicated upon the allegations that Mr. Petty was served at his and Ms. Maraj's residence in California. (*See, e.g.*, Dkt. Nos. 14; 20, at p. 1; 25, at p. 10; 25-2, at ¶¶ 3-7; 32-3, at ¶¶ 3-7; and 41-1, at ¶¶ 6-7). If Mr. Blackburn and Mr. Gordon believe that Mr. Petty resided in New York, why did they insist that he resided in California?

c.   No one, even a non-lawyer, could believe that Ms. Maraj was a New York resident or otherwise subject to the Court's jurisdiction simply because she originally comes from Queens; and

d.   The claim that the Court has jurisdiction over Ms. Maraj because "this is not the first time that [Ms. Maraj] has been sued in New York" is nonsensical because there are only three federal cases other than this case where Ms. Maraj has been sued in

New York.  Not surprisingly, **none** of these cases involved a claim that Ms. Maraj was subject the general jurisdiction of the New York courts.

**Second**, notwithstanding the detailed Rule 11 motion which had been served upon him and Mr. Blackburn on January 9, 2021, Mr. Gordon and Mr. Blackburn have both stated that they are going to refile the same frivolous lawsuit in another jurisdiction.  (Dkt. No. 56, at p. 1; *see* https://www.billboard.com/business/legal/nicki-minaj-accuser-refiling-harassment-lawsuit-california-1235021174/ (Mr. Blackburn "confirmed that the case would be refiled in California").  Again, the notion that they can move to a second jurisdiction with a frivolous pleading just because they dismissed it in the first jurisdiction within the safe-harbor period is another manifestation of their bad faith belief that Rule 11 applies only if they are caught red-handed.

**Third**, in an effort to deter Mr. Burstein from filing a sanctions motion, Mr. Gordon and Mr. Blackburn have made a host of disturbing and utterly false accusations about Mr. Burstein designed to publicly harm his reputation.  The most outrageous of these allegations has led to internet articles with headlines such as "Nicki Minaj Lawyer Accused Of Stalking Rival Attorney's Wife."  (*See* Burstein Dec., at ¶ 5).

On January 21, 2022, Mr. Gordon responded to Mr. Burstein's request for a briefing schedule on this motion by claiming, *inter alia*, that Mr. Burstein had made an "ad hominem" attack upon "**even my wife,** to gain an advantage in this litigation. **Mr. Burstein baselessly attempted to threaten that my wife had waived our marital communications privilege, insinuating that he would seek to invade one of the most private relationships in my life. Accordingly, for my family's safety and privacy, I was almost forced to withdraw from this action.**"  (Dkt. No. 53, at p. 3) (Emphasis in Original).

Later that day, Mr. Blackburn joined in, contending: "**An example of [Mr. Burstein's]**
**deplorable behavior stems from his sick obsession with Mr. Gordon's wife. Mr. Burstein**
**went scrummaging through the comments section of youtube posts in search of comments**
**posted by Mrs. Gordon. Not only was his act of cyberstalking Mrs. Gordon creepy, but it**
**was also weird, and beneath the dignity of this profession.**" (Dkt. No. 55, at pp. 1-2) (Emphasis
supplied).

These vile attacks are entirely false, but they understandably led to the disturbing (and
misleading) articles about Mr. Burstein.   As explained in Mr. Burstein's accompanying
Declaration, the true facts are as follows:

a.  On November 3, 2021, someone sent an **unsolicited** email to Mr. Burstein's
office's email address, with the subject field: "Steven Gordon's wife spreading
lied on Youtube," stating in the body of the message that "Steven Gordon's
wife, Ciardone Franklin, is going around on Youtube with libelous statements
about Nicki Minaj."[12]  (Exhibit A to the Burstein Dec.).

b.  The email contained a screenshot of a comment from a "Ciardone Franklin,"
which discussed the motion which Mr. Burstein had filed seeking permission
to file a late letter seeking a premotion conference. It made factual claims,
including the following:

> **Nicki was the one who reached out to Jennifer.  Nicki re-lit the**
> **fame on this by spreading a lie in a comment to a tweet in**
> **November/December 2018.   And then the harassment and**
> **infliction of emotional distress was caused by Nicki, Petty and**
> **their cohorts**…. [W]hile lawyers may sometimes permit their
> opposition to file a late response, they do not do so where the
> opposition is seeking to file a motion to dismiss as a late response.

---

[12]   Given Ms. Maraj's fame and devoted fan base, Mr. Burstein's office has constantly
received unsolicited emails from her fans wanting to provide him with helpful information.

It would be bordering on malpractice to do so.  **The only late response that lawyers agreed to allow is the filing of an Answer. There are too many other misleading and/or false statements by [Mr. Burstein] to list them all.  But believe [Mr. Burstein's] bullshit if you want.**

(*Id.*)

c.  Mr. Burstein's initial response was to ask his office manager: "Is this really his wife?"  (Exhibit A to the Burstein Dec.)

d.  Mr. Burstein's associate (copied on the email chain) then wrote him, stating that Ms. Franklin was indeed Mr. Gordon's wife because she had found her and Mr. Gordon's wedding website.  (Exhibit A to the Burstein Dec.).

e.  Shortly thereafter, Mr. Burstein sent Mr. Gordon an entirely appropriate email, stating only:

> Steven:
>
> I am not sure you are aware of your wife's posts on social media. While they raise a number of issues, I am reminding you out of courtesy that she is not covered by the litigation privilege, and to the extent she is relating discussions with you, she may have waived the marital communications privilege.  There is no need for you to respond to this email because it's up to the two of you to decide what is or is not appropriate and then bear the consequences of your decisions, if any.

(Exhibit C to the Burstein Dec.).

f.  A few hours later, Mr. Burstein sent a short second email to Mr. Blackburn and Mr Gordon, stating:  "I went back to Steven's wife's post today, as I realized that she stated that  '[t]he only late response that lawyers agreed to allow is the filing of an Answer.'  If there was such an offer by Plaintiff's counsel, I was unaware of it.  And if Steven's wife has accurately recounted the facts, is that offer still on the table?"  (Exhibit D to the Burstein Dec., at p. 1).

28

g. **Those were the only two emails which Mr. Burstein ever sent regarding Mr. Gordon's wife, and he never mentioned Mr. Gordon's wife again, much less tried to reach out to or otherwise "cyberstalk[ed]" her by "scrummaging through the comments section of youtube posts in search of comments posted by Mrs. Gordon."** (Dkt. No. 55, at pp. 1-2).[13]

## ARGUMENT

### POINT I

**PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER FOR PURSUING A DEFAULT JUDGMENT AGAINST MS. MARAJ**

The Court has the "inherent power" to impose sanctions when there is "clear and convincing evidence of bad faith." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). Pursuant to 28 U.S.C. § 1927, the Court may also sanction an attorney for "mutipl[ying] the proceedings . . . unreasonably and vexatiously." To impose sanctions under either the Court's inherent power or § 1927, the Court must find "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (Internal quotation marks and citation omitted). With respect to the first prong, "[c]onduct is entirely without color when it lacks any legal or factual basis," but "is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). With respect to the second prong, the Court can infer the attorney was acting in bad faith "when a

---

[13]    Mr. Gordon and Mr. Blackburn have made additional scurrilous claims against Mr. Burstein which are detailed and rebutted in the Burstein Dec.

party undertakes frivolous actions that are completely without merit." *Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 55 (2d Cir. 2018) (Internal quotation marks and citation omitted).

Here, it is clear that Plaintiff's motion for a default judgment was entirely frivolous because (a), as explained both in Ms. Maraj's November 5, 2021 sanctions motion (Exhibit G to the Burstein Dec., at pp. 8-15), and in her opposition to Plaintiff's motion for a default judgment against her (Dkt. No. 43, at pp. 11-15), the Amended Complaint's theories of jurisdiction under CPLR 302 were facially deficient, (b) the Amended Complaint alleged that Ms. Maraj is both a California domiciliary and a resident of that state, thereby precluding a claim of jurisdiction under CPLR 301, and (c) Mr. Gordon's *post hoc* attempt to manufacture reasons why he and Mr. Blackburn believed the Court had jurisdiction over Ms. Maraj is belied by the facts and common sense.

But the motion for a default judgment was frivolous for other reasons.

**First**, as Ms. Maraj argued at the outset of the case and also in opposition to Plaintiff's motion for a default judgment, there was no basis whatsoever, and certainly not a colorable one, to conclude that there was a basis for venue in the Eastern District of New York. Significantly, Mr. Blackburn and Mr. Gordon never even sought to answer Ms. Maraj's argument on these issues.

**Second**, no attorney could reasonably believe that there was **any** chance that Plaintiff could prevail on a motion for a default judgment against Ms. Maraj because the **only** "fact" supporting a default judgment was that, **assuming that she was properly served**, Ms. Maraj missed the deadline for responding to the Amended Complaint by seven days. But even if true, the law is crystal clear that a plaintiff "'is not entitled to a default judgment as a matter of right'" simply because a party is in default. *Am. Transit Ins. Co v. Bilyk*, 514 F. Supp.3d 463, 471 (E.D.N.Y. 2021) (citation omitted). Since, as demonstrated in Ms. Maraj's Memorandum of Law in

Opposition to Plaintiff's Motion for a Default Judgment, there were no other facts, or any case law, supporting Plaintiff's motion, it was plainly frivolous. Rather than repeat those arguments, here, we respectfully ask the Court to read the parties' Memoranda of Law in Opposition to Plaintiff's motion for entry of a default judgment against Ms. Maraj, as well as the supporting declarations and exhibits (Dkt. Nos. 43, 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8, 43-9, 43-10, 43-11, 43-12), because they demonstrate the frivolity of Plaintiff's motion.

Turning to the issue of bad faith, it has been amply established by the Statement of Facts set forth above and as set forth in the Burstein Dec. Moreover, the case law supports a conclusion of bad faith based upon those facts. *See McCullough v. World Wrestling Entm't, Inc.*, 2016 U.S. Dist. LEXIS 156459, at *37-38 (D. Conn. Nov. 10, 2016) ("Baseless claims that are included in a complaint as part of a media campaign to pressure the defendant with negative public relations have been found to evidence bad faith and improper purpose on the part of filing counsel."); *Galonsky v. Williams*, 1997 U.S. Dist. LEXIS 19570, at *18 (S.D.N.Y Dec. 9, 1997) ("[T]he overall circumstances of this case indicate that Mr. Kraft filed these baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement. While the Court certainly [cannot] ordinarily punish a lawyer for talking to the press ..., it is appropriate to consider the press conference held by counsel in assessing the issue of his good faith in filing frivolous claims and motions...."); *see also Reichmann v. Neumann*, 553 F. Supp. 2d 307, 321 (S.D.N.Y. 2008) ("[The plaintiff's] lawyers, by failing to investigate any of the obvious and accumulating clues to the truth, violated their duty as officers of the court."); *Richards v. Ayusman Sen*, 825 F. Supp. 2d 1259, 1264 (S.D. Fla. 2010) ("[The plaintiff's] counsel's persistence in proceeding with this litigation despite the lack of personal jurisdiction indicates that § 1927 sanctions may be warranted in this case.").

31

<u>POINT II</u>

**MR. BLACKBURN AND MR. GORDON SHOULD BE SANCTIONED FOR THEIR OUTRAGEOUS AND FALSE PERSONAL ATTACKS ON MR. BURSTEIN**

The Court has an inherent power "to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation." *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). "[W]hen the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." *Id*.

Mr. Blackburn and Mr. Gordon should be sanctioned for their false and insulting claims about Mr. Burstein's supposed "sick obsession" with, and "cyberstalking" of, Mr. Gordon's wife. They have then further confirmed their bad faith by additional false and/or gratuitous accusations which they have made in an effort to deter the filing of this sanctions motion. For example, as explained in the Burstein Dec., at ¶ 43, Mr. Blackburn is not correct in claiming that Mr. Burstein "has been on the receiving end of over ten sanctions motions dating back to the early 1990s and as recent as 2018." (Dkt. No. 55, at p. 1).[14] Similarly, Mr. Gordon is wrong in claiming that he

---

[14]    More importantly, in over 40 years of practicing law, Mr. Burstein has been sanctioned once, and the sanctions were overturned on appeal. *See Revson v. Cinque & Cinque*, 221 F.3d 71 (2d Cir. 2000) (reversing imposition of sanctions on Mr. Burstein, stating "conduct cited by the district court as grounds for the imposition of sanctions, individually or in the aggregate does not in our view support the sanctions imposed"). Further, the Judge who sanctioned Mr. Burstein, Hon. Denny Chin (prior to his appointment to the Second Circuit), subsequently wrote a letter on Mr. Burstein's behalf, stating, in relevant part: "Not only were you a superb advocate in representing your clients [in subsequent proceedings before Judge Chin], you were respectful and courteous, both to the Court and your adversaries." (Exhibit O to the Burstein Dec.).

received "accusations of criminal conduct by Plaintiff [sic] and her counsel as a means to get an advantage in this civil action."  (Dkt. No. 53, at p. 1 n.1).[15]

As a general rule, lawyers should not waste a Judge's time with complaints about what one of them says about another – even if it is untrue or unfair.  But falsely accusing Mr. Burstein of putting Mr. Gordon in fear for the safety of his family because he has a "sick obsession" with Mr. Gordon's wife that has led him to "cyberstalk" her is very different – particularly in a high-profile case such as this one where there is intense media scrutiny of the Court's docket.  No lawyer should find himself the victim of the headlines which Mr. Gordon and Mr. Blackburn surely knew they would cause by making these outlandish accusations in public filings.  They should bear some consequences for their actions.

Courts within this Circuit have not hesitated to sanction extreme conduct such as Mr. Gordon's and Mr. Blackburn's.  *See Scott-Iverson v. Indep. Health Ass'n*, 2016 U.S. Dist. LEXIS 173716, at *36-37 (W.D.N.Y. Dec. 15, 2016) (where the plaintiff's affidavit stated the defendant's counsel's behavior demonstrated "that he is without a question a <u>racist and a bully</u>," Court stated "[i]rrelevant and obnoxious slurs and insults directed against opposing attorneys are subject to sanctions including a fine") (Emphasis in original); *Smith v. Westchester Cty. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 132006, at *18-19 (S.D.N.Y. Sept. 16, 2013) (concluding the plaintiff's attorney

---

[15]   Mr. Gordon apparently mistook Mr. Burstein's reference in an email to the possible applicability of the crime/fraud exception to the attorney-client privilege in this case as an accusation that he had committed a crime.  Mr. Gordon would be well advised in the future to research the law before jumping to unfounded conclusions because (a) the crime/fraud exception does not require probable cause to believe that a crime has been committed, *see, e.g., Lynch v. City of New York*, 2021 U.S. Dist. LEXIS 213938, *24 (S.D.N.Y. Nov. 4, 2021), and (b) Rule 3.4(e) of the Rules of Professional Conduct only provides that a lawyer may not "present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." Nonetheless, as Mr. Burstein makes clear in his Declaration, he was not in fact accusing Mr. Gordon of committing a crime.  (Burstein Dec., at ¶ 43).  Nor could he have been reasonable understood as having done so.

was subject to sanctions under the Court's inherent authority where the plaintiff's counsel accused the county attorney of unethical conduct, and made "unsupported allegations of misconduct" that "were clearly antagonistic, egregious and made in bad faith"); *see also Azkour v. Rest*, 2014 U.S. Dist. LEXIS 204798, at *2-7 (S.D.N.Y. May 30, 2014) (sanctioning pro se plaintiff who, after being warned not to make any further statements that could be construed as offensive or threatening, accused the defendant's counsel of not being of "sound judgment and mental capacity," concluding "[p]laintiff needs to understand that personal insults have no place in legal proceedings").

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court impose sanctions under 28 U.S.C. § 1927 and its inherent powers against Mr. Blackburn and Mr. Gordon.


Dated: New York, New York
      January __, 2022

Respectfully submitted,

JUDD BURSTEIN, P.C.,

By: /s/ Judd Burstein
    Judd Burstein
    Emily C. Finestone
260 Madison Avenue, 15th Floor
New York, NY 10016
(212) 974-2400
jburstein@burlaw.com
efinestone@burlaw.com

*Attorneys for Former Defendant Onika Tanya Maraj, AKA Nicki Minaj*