**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

JENNIFER HOUGH,

               Plaintiff,

    -against

ONIKA TANYA  MARAJ, AKA
("NICKI MINAJ") an individual,
KENNETH PETTY, AKA ("ZOO"),
an individual

               Defendants.

---

Case No. 21-CV-04568

MEMORANDUM OF LAW IN OPPOSITION TO MARAJ AND HER COUNSEL JUDD BURSTEIN'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER AGAINST PLAINTIFF JENNIFER HOUGH'S COUNSEL TYRONE BLACKBURN

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
*Attorney for Plaintiff Hough*
*And Tyrone Blackburn*

1

## INTRODUCTION

**Sanctions Standards Under § 1927 and the Court's Inherent Power**:

Law Governing Motion for Sanctions under 28 U.S.C. Section 1927 28 U.S.C. Section 1927 provides that: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. The Court of Appeals has held that sanctions under Section 1927 are appropriate only "when there is a finding of conduct constituting or akin to bad faith." Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997); accord Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016); Konits v Karahalis, 409 F. App'x 418, 423-24 (2d Cir. 2011) (summary order); State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004); In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000); Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991).

Before imposing sanctions under 28 U.S.C. Section 1927 and reaching the conclusion that an attorney acted in bad faith, a court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000), quoting Agee v. Paramount Commc'ns Inc., 114 F.3d 395, 398 (2d Cir. 1997) (internal quotation marks omitted)); see also Sorenson v. Wolfson, No. 16-1224, 683 Fed. Appx. 33, 2017 U.S. App. LEXIS 4591, 2017 WL 1043073 at *3 (2d Cir. March 16, 2017) (summary order) ("An award of sanctions under this provision requires a showing that an 'attorney's actions are so completely without merit as to require the conclusion that they must

2

have been undertaken for some improper purpose such as delay.'" (citation omitted)); Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power."). Bryant v. AB Droit Audiovisuels, 2017 U.S. Dist. LEXIS 85028, at *8-9 (S.D.N.Y. June 2, 2017).

Here, the court will find that the arguments put forth by Maraj and Burstein to justify the imposition of sanctions under 28 U.S.C. Section 1927 28 U.S.C. are without merit.  Maraj and Burstein are urging the court to issue sanctions against Mr. Blackburn because he filed a default motion against Maraj **AFTER** Maraj defaulted; and because Mr. Blackburn characterized Burstein's "Your Wife" email as being a weird and creepy act of cyberstalking **BEFORE** Burstein revealed how he discovered the comments.

This is nothing more than a **billing exercise disguised as a sanctions motion**.  Burstein knows this motion has no merit, yet he engages in this blatant act of harassment to delay this case improperly and fill his coffers.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion in clear bad faith.

I. **Former Plaintiff's Co-Counsel Steven Gordon Colluded With Burstein, Usurping His Ethical Obligations to Plaintiff Jennifer Hough**:

Upon information and belief, Steven Gordon has a drug addiction. (see, Declaration of Tyrone A. Blackburn ("Blackburn Decl."), ¶ 4-6).  Plaintiff and Mr. Blackburn were not privy to this fact when Gordon joined this case in October 2021.  To spare Gordon's estranged wife any unintended embarrassment, we will not detail how Gordon's addiction has impacted his family or anyone outside of this case.   However, I will detail how his purported addiction and selfless acts led Gordon to forgo his ethical duties to represent Plaintiff's interests.

3

Furthermore, as detailed below, we believe that Gordon was working as a double agent to assist Burstein in his defense of former Defendant Maraj.   This is evident from Gordon's inexplicable refusal to turn over the details of all the secret communications he had with Burstein behind the backs of Mr. Blackburn and Plaintiff, as well as Gordon's failure to provide Plaintiff with offers presented to him in secret by Burstein.

Gordon Incessantly called Plaintiff:

Unbeknownst to Mr. Blackburn, Gordon called Plaintiff incessantly, Monday through Sunday, crying and complaining about the harassing messages he was receiving from Maraj's fans. (**Blackburn Decl. ¶ 10-11**). Gordon's calls were not limited to complaints concerning his hurt feelings, Gordon also disclosed unsolicited graphic details of his acts of adultery.  (**Blackburn Decl. ¶ 12**).

Gordon's incessant calls were even more problematic because Gordon was aware of the vulnerable mental and emotional state Plaintiff is in because of the actions of Defendant Petty and Maraj.  (**Blackburn Decl. ¶ 13**). The sheer weakness Gordon displayed caused Plaintiff to forgo her healing process and assume the role of a mother figure or caretaker to pacify Gordon and provide him with the self-confidence he so desperately lacks.  (**Blackburn Decl. ¶ 14**).

Failing to Disclose Offers and Communications From Burstein to Plaintiff and Mr. Blackburn:

According to Burstein's January 26, 2022, proposed sanction motion, Burstein and Gordon had several secretive conversations where Burstein provided Gordon with offers never disclosed to Mr. Blackburn or Plaintiff.  Burstein writes in relevant part:

> "Mr. Burstein privately implores Mr. Gordon to convince Mr. Blackburn to abandon the effort to secure a Default Judgment against Ms. Maraj and offers not to seek any sanctions if they do so." (**Blackburn Decl. ¶ 17, Exhibit A**).

This offer was not presented to Mr. Blackburn or Plaintiff.  Upon information and belief, Gordon's failure to disclose this offer was a deliberate act orchestrated by Gordon and Burstein to harm Plaintiff's case.  Burstein sent Mr. Blackburn over thirty emails since making his appearance in the case on October 14, 2021.  Burstein could have easily included Mr. Blackburn in the secret discussions he was having with Gordon.  Presumably, Burstein and Gordon both failed to inform Mr. Blackburn, and Plaintiff of Maraj's offers to Plaintiff to justify Burstein's filing of this frivolous sanctions motion.

In his January 26, 2022, proposed sanction motion, Burstein went on to say,

> "After Mr. Gordon entered this case, he imparted some private information to Mr. Burstein (not disclosed on this motion) which suggested to him that he may have been unfair in his assessment of Mr. Gordon." (**Blackburn Decl. Exhibit A**).

In footnote 10, Burstein references Exhibit L, an email in which Burstein "redacted to remove extraneous information which should remain private.  Presumably, Mr. Gordon will not respond in a way that requires disclosure of presently redacted portions of the email correspondence[1]" (**Blackburn Decl. Exhibit A**).   Upon information and belief, Gordon may have revealed to Burstein that he has a drug addiction and was in the process of committing adultery.

Posing as his wife and posting a comment under a YouTube post:

After being terminated by Plaintiff, Gordon admitted to drafting the YouTube comment allegedly written by Mrs. Gordon.  (**Blackburn Decl. ¶ 19**).  Gordon also revealed that he posted the comment himself under Mrs. Gordon's name. (**Blackburn Decl. ¶ 20**). Shortly after impersonating his wife and creating this YouTube post, Burstein sent the "Your Wife" email to Mr. Blackburn, Gordon, Mr. Isser, and several Burstein's law practice members.  (**Blackburn**

---

[1] This sentence may have been a subtle threat by Burstein to Gordon to get Gordon to continue to violate the ethical duties Gordon had for Plaintiff.

**Decl. ¶ 21, Exhibit B**).  Gordon called Mr. Blackburn and requested his assistance in getting Burstein to cease sending group emails concerning Gordon's wife.

As any co-counsel would, Mr. Blackburn obliged and came to the defense of Gordon and Mrs. Gordon.  In the "Your Wife" email, Burstein conveniently failed to provide any context surrounding his discovery of the YouTube comment.  Burstein did not reveal how he allegedly learned of the YouTube comment until January 26, 2022. (**Blackburn Decl. ¶ 23, Exhibit A**). Irrespective of how it makes Burstein feel, it was very weird to have an opposing counsel send an email with the subject "Your Wife" to a group of attorneys.

At the time, Mr. Blackburn was not aware that Gordon had orchestrated the YouTube comment post and possibly the email sent to the group by Burstein.  Considering the recent discovery of Burstein and Gordon's bromance, it would be safe to assume the YouTube post and the "Your Wife" email were planned between Gordon and Burstein to set up Mr. Blackburn and Plaintiff.  As evidence from January 26, 2022, proposed sanction motion, Burstein and Gordon spoke on multiple occasions throughout these proceedings without the knowledge and presence of Mr. Blackburn and Plaintiff.  In the face of this fact, it is inexplicable why Burstein did not address the YouTube comment with Gordon in private, as he had done with so many other secret conversations they had.

Refusing To Provide Plaintiff With All Email And Text Communications With Burstein:

In forgoing his duty to disclose all matters to Plaintiff Hough, Gordon has refused and continues to refuse to turn over the full detail of all communications he had with Burstein throughout his involvement in this case.  As mentioned above, Plaintiff Hough and Mr. Blackburn were unaware that Gordon had ongoing secret conversations with Burstein concerning Plaintiff and Mr. Blackburn.

6

Upon information and belief, Gordon selflessly secured a deal with Burstein in exchange

for an email dated January 28, 2022, where he states, in relevant part

> " I write to confirm the following:
> 1. I did not see Mr. Blackburn's letter before he sent it;
> 2. I would have objected to these comments if I had seen the letter before it was sent (although I had no control over anything which Mr. Blackburn ultimately filed with the Court);
> 3. I do not in any way agree with them; and
> 4. I never at any time said anything to Mr. Blackburn even to suggest that I agreed with the views as expressed in his letter;
>
> As we have also discussed, I was not lead counsel in the case against Ms. Maraj, and I had no control over statements of facts ultimately submitted in Mr. Blackburn's filings.
>
> I appreciate the fact that you and your client have accepted my explanations as set forth above and have acknowledged that, in my role as Mr. Blackburn's co-counsel, I never acted in bad faith and that I had a good faith belief in the truth of Ms. Hough's factual allegations."

this is evidence that a secret deal was struck between Burstein and Gordon.  (**Blackburn Decl. ¶ 26, Exhibit C**).  It is also important to note that this was an email with no declaration from Gordon swearing to the truth of the statements therein under penalty of perjury.  It serves as another example of Gordon's selfish, self-serving dishonesty.

II.    Burstein's Has a Storied History of Defending Sanctions Motions:

When sanctioning Burstein, Judge Denny Chin of the Southern District of New York held, "Mr. Burstein engaged in what can only be described as "Rambo lawyering," as he repeatedly employed *inappropriate tactics in an effort to intimidate and harass Mr. Cinque into resolving this matter on terms that Ms. Revson and Mr. Burstein himself found acceptable*. Revson v. Cinque & Cinque, P.C., 49 F. Supp. 2d 686, 686 (S.D.N.Y. 1999).

Unfortunately, Burstein has not learned anything from the sanctions he received from Judge Chin.  In fact, throughout his limited involvement in this case, Burstein has resorted to his

same "Rambo lawyering" to get Mr. Blackburn and Plaintiff Hough to resolve this matter on terms that Maraj and Burstein deem acceptable.  This cash grab, disguised as a sanction motion, is the latest act of Rambo lawyering by Burstein.  Burstein wrote over thirty pages of gobbledygook crying about Plaintiff's insistence on utilizing the tools available to her under the law to ensure that Maraj was held accountable for her actions.

III.    Response to Maraj and Burstein's baseless and self-serving Misstatement of Facts:

A.    <u>Mr. Blackburn Files The Case Against Maraj Only Because She Is Wealthy And Famous</u>:

Mr. Blackburn filed suit against Maraj based on Maraj's actions.  Maraj conveniently left out the timeline of events that started with Petty's March 4, 2020, arrest in their cherrypicked regurgitation of the amended complaint.

Upon information and belief, on March 4, 2020, Defendant Petty was arrested and charged with failing to register as a sex offender in California.  On March 8, 2020, Barry Dukes ("Dukes"), a friend of Petty and Maraj, reached out to Plaintiff on social media after not speaking with Plaintiff for over 25 years.   Upon information and belief, between March 4, 2020, and March 9, 2020, Defendant Petty provided Duke with Maraj's phone number so Duke could connect Maraj and Plaintiff on the phone.  (**Blackburn Decl. ¶ 32, Exhibit D**). March 9, 2020, Maraj contacts Plaintiff and encourages her to recant her 1994 rape claim against Petty.  In her December 30, 2021 Declaration, Maraj provided a clear motive for conspiring with Dukes and Petty to get Plaintiff to recant her 1994 rape claim when she said,

> "A few days after the arrest, Barry, an old acquaintance from the Queens neighborhood in which we grew up, and known to all of us as "Black," reached out to me to say that Plaintiff wanted to speak to me about what happened in 1994.  I did not call Plaintiff.  Rather, as I recall what happened, Black connected Plaintiff and me through his phone.  As any wife would do in that situation, I told her that I had been informed that she wanted to speak with me about taking back her accusation." (**Blackburn Decl. ¶ 34, Exhibit E**).

8

To some, this conspiracy may be viewed as happenstance. Still, the events that occurred before March 9, 2020, and shortly after that add context that exposes an orchestrated act aimed at aiding Mr. Petty and Maraj while harassing, bribing, discrediting, and threatening Plaintiff. From 2018 to 2019, after Maraj announced her relationship with two-time convicted felon Petty, she went on a defamatory campaign calling Plaintiff's 1994 rape claims a lie and making every excuse[2] in the book to justify two-time convicted felon Petty's criminal past. In light of this hate campaign, it is inexplicable for Maraj to want to speak with the woman she believed lied on her husband.

Fast forward to August 6, 2021, after Plaintiff rejected Maraj, Petty, and Duke's coercion to recant her 1994 rape claim against Petty, two-time convicted felon Petty accepts a plea deal for failing to register as a sex offender. On or about August 12, 2021, Dukes published a video on his Instagram page threatening Plaintiff's life. The video went on to say:

> "Jon Wayne tv coming soon tell that bitch she will be exposed case over now 20k, huh,"
>
> "u know u don't fucked uped,"
>
> "Jon wayne tv,"
>
> "you lying ass bitch, 20 thousand,"

Dukes ends the montage with a photo of two guns circled, with the words "be safe out here lol" written on the photo. (**Blackburn Decl. ¶ 43, Exhibit F**).

Upon information and belief, Maraj never denounced Dukes' death threat and admitted that he is her confidant from her neighborhood in Jamaica, Queens, New York. Upon information and belief, Maraj seemed to support Dukes' threat after she posted an Instagram story offering up

---

[2] Upon information and belief, Maraj has a reputation for supporting sex offenders. In November 2017, Maraj's brother, Jelani Maraj, was convicted of endangering the welfare of a child and predatory sexual assault on a child younger than 13. Upon information and belief, Jelani consistently raped his 11-years-old stepdaughter until she was 15-years old. Jelani is now serving 25 years to Life in New York State prison. Upon information and belief, Maraj paid for Jelani's attorneys and orchestrated a public relations campaign attempting to discredit the 11-year-old female victim. Upon information and belief, Carol Maraj, Maraj's mother, went online to paint the 11-year-old victim as promiscuous.

$50,000.00 for someone in the streets to do a hit job for her.  A few weeks later, a member of the Makk Balla Brim's ("MBB") blood gang threatened to harm Plaintiff on social media[3] when they posted the following: "Jennifer if you see this, the Makks are coming to get you."  (**Blackburn Decl. ¶ 45, Exhibit G**).

Before filing suit, Plaintiff ensured the court's jurisdiction over Maraj through her ownership of a residence in this district located at 967 Middle Bay Dr. Baldwin, NY 11510. Furthermore, upon information and belief, Maraj operated her "Queens Radio" program out of Queen's, New York, which is in this district.  Finally, upon information and belief, the following business is owned by Maraj and is listed as having an address in the state of New York:  Pink Friday Films, Inc: Corporation # 4404714.

As part of her opposition to Plaintiff's motion for default judgment, Maraj clarified her ownership of the property located at 967 Middle Bay Dr. Baldwin, NY 11510.  According to Maraj, the property is her mother's residence, and Maraj is the "Grantor, but not the trustee, of a trust which owns a house on Long Island in which my mother lives."  (**Blackburn Decl. ¶ 48, Exhibit E**).

Shortly after learning this new information, Plaintiff withdrew her claims against Maraj in New York and has decided to refile against Maraj in a district where this case might have been brought, California.  If *when a suit is commenced*, Plaintiff has a right to sue in that district, independently of the wishes of Defendant, it is a district "where [the action] might have been brought." Am. Tel. & Tel. Co. v. Milgo Elec. Corp., 428 F. Supp. 50, 54 (S.D.N.Y. 1977).

This decision by Plaintiff to withdraw the action against Maraj in New York and refile in California was **not** made in bad faith.  It is the Plaintiff's right to hold Maraj accountable for her

---

[3] Upon information and belief, Maraj is an honorary member or sympathizer of MBB, and Defendant Petty is an admitted member, honorary member, or sympathizer of MBB.

actions and participation in the harm that was visited upon the Plaintiff by Dukes, Maraj, and two-time convicted felon Petty.

B.  Mr. Blackburn Refuses Maraj's Request For an Adjournment:

There is no requirement under the law that mandates counsel to extend any "courtesies" to the opposing side.  Especially when the opposing side deliberately thumbed their nose at the litigation (as was the case here), and had their associate, Barry Dukes, threaten Plaintiff's life.

As it pertains to the quote from the Daily Beast referenced by Burstein, it was an answer to a reporter's question.  Unlike Burstein, Mr. Blackburn is not in the business of **intentionally** leaking emails to reporters.  On or about January 12, 2022, in an act beneath the dignity of this profession and in line with his reputation to engage in Rambo lawyering, Mr. Burstein sent an email attacking Mr. Blackburn and former Plaintiff's counsels as "bottom feeders."  (**Blackburn Decl. ¶ 59, Exhibit L**).  Then, in a desperate quest for media attention, presumably, to breathe life into his waning practice, Burstein **intentionally** leaked that email to TMZ. (**Blackburn Decl. ¶ 60, Exhibit M**).

C.  Mr. Blackburn Receives Notice that Motion to Seek Default Would Be Frivolous:

Rule 55 of the Federal Rules of Civil Procedure governs the issuance of default judgments and permits the court to enter a judgment against a defendant who fails to defend an action brought against it. Perez v. Sajovic, No. 14 CV 1922 (NGG)(RML), 2014 U.S. Dist. LEXIS 171185, at *4 (E.D.N.Y. October 20, 2014).

There is no crystal ball that can determine how a court would rule on a motion for default, especially when faced with a party that has shown clear disregard and disrespect to the judiciary

and the process of law.  The court determines the outcome of a motion for Default Judgment, **<u>NOT</u>** Burstein.

D.  <u>Mr. Blackburn Refuses to Litigate on the Merits</u>:

Once again, Burstein is wasting the court's time by blubbering over his displeasure of hearing the word NO.  Plaintiff exercised her right to continue to pursue a default judgment in the face of what Plaintiff viewed as an error by the clerk's office, and this court granted Plaintiff that right.

E.  <u>Mr. Blackburn reveals that his goal in the case is to force Ms. Maraj into a settlement</u>:

Once again, Burstein intentionally mischaracterizes a zoom meeting he was **NOT** originally invited to but ***begged*** to be included in.  The purpose of the zoom meeting was to provide Plaintiffs' counsel and Mr. Isser with an opportunity to meet face to face and exchange pleasantries, since to date, Mr. Isser was the only defense counsel that engaged with Plaintiff's counsel in a respectful and collegial manner.

The call lasted **<u>less</u>** than five minutes, and it was a good faith effort to establish a rapport with Mr. Isser.  Mr. Blackburn made it clear that his goal was to establish a "respectable relationship" amongst the opposing teams.  Mr. Blackburn said if we could accomplish that, then we can possibly go to our clients to seek out a resolution.

It is well established that public policy favors settlement because a negotiated compromise of a dispute avoids potentially costly, time-consuming litigation and preserves scarce judicial resources; courts could not function if every dispute required a trial.  In addition, there is a societal benefit in recognizing the autonomy of parties to shape their own solution to a controversy rather than having one judicially imposed.  <u>New York v. Saint Francis Hosp.</u>, 289 F. Supp. 2d 378, 380 (S.D.N.Y. 2003).

Burstein's failed attack of Mr. Blackburn's litigation record only displays the ugliness and disingenuous way he engaged in this litigation.   Plaintiff does not doubt that she could succeed on the merits against Maraj and two-time convicted felon Petty.   Plaintiff chose to exercise her rights to pursue a default judgment due to Petty and Maraj's intentional decision to default.

F.   Mr. Blackburn Evidences His Bad Faith In A Motion He Files To Secure A Default Judgment Against Mr. Petty:

Once again, Burstein is wasting the court's time by sobbing over Plaintiff's description of Maraj in the default judgment against Petty.   There is no basis in law (Burstein does not cite to any) that prohibits a party from detailing the background and the actions of all parties involved in the litigation.   Maraj played an important role in Petty's default, as he stated in his declaration dated November 5, 2021.   According to Petty,

> "After learning about the Amended Complaint, I diligently sought to obtain counsel and spoke with a number of lawyers about representing me in this action (my New York lawyer does not do this type of civil litigation).  Because, however I am married to a wealthy celebrity, lawyers I spoke with asked for outrageous fees and sought exorbitant retainers (such as $100,000).  During this time, my wife, a co-defendant in this action, also was seeking to obtain counsel and was in the process of retaining Judd Burstein, Esq. to represent her in this action.  Mr. Burstein had agreed to help me obtain counsel.  Due, however, to a miscommunication between Mr. Burstein and my wife, my wife and I both mistakenly believed that Mr. Burstein had been retained and was looking for counsel for me." (**Blackburn Decl. ¶ 52, Exhibit D**).

Upon information and belief, neither Petty nor Maraj has rheumatoid arthritis.   Therefore it is safe to assume the hand gestures they make in the photos are gang signs affiliated with the Makk Balla Brims Gang.   This conclusion is aided by the fact that two-time convicted felon Petty published a video on his Instagram account stating:

> "Gang Shit, Gang Shit, Gang Shit, Heavy on the Makk, Heavy on the Makk …" while making the same hand gesture Maraj is making in the attached photos in (**Blackburn Decl. ¶ 53, Exhibit H**). (**Blackburn Decl. ¶ 54, Exhibit I**).

Ms. Maraj's purported gang affiliation can be reasonably assumed from the rap lyrics of her song "Yikes," which states in relevant part:

> "Woke up, the price of coke up (woo, woo)
> I just hit'em with the low cut, then call my folks up (Folks)
> Somebody 'bout to get poked up, go call a tow truck (Tow)
> All that talkin' out your neck
> Might Just get your throat cut (Ooh, ooh)
> This a MAKK Truck, not a black truck (woo)
> When we move, tell'em, back up, click, click, clack, duck
> Hella bands, pull up, stashed up super facts up
> All you bitches Rosa Parks, uh-oh, get your ass up, uh" (**Blackburn Decl. ¶ 55, Exhibit J**).

Furthermore, when asked by one of her fartz[4] on Twitter, if two-time felon Petty enjoyed the song, Maraj stated, "of course you know he enjoyed the Makk Truck lyric," presumably referring to the lyrics from "Yikes" previously mentioned.

Maraj's assumed membership with the Makk Balla Brims is predicated from her **ACTIONS**!  Before dating Petty in 2018, Maraj had never posted anything related to the Makk Balla Brims to her social media.  Once Petty came into her life, Maraj turned into a phony "gangsta," losing all sense of self and adopting the identity of two-time convicted felon Petty.

G.  <u>Mr. Blackburn Receives Explicit and Detailed Notice That The Court Did Not Have Personal Jurisdiction Over Ms. Maraj</u>**:**
Once Plaintiff learned that Maraj did not possess property in this jurisdiction, she voluntarily withdrew her cause of action against Maraj within the 21-day safe harbor provision afforded to her under the law.

---

[4] Upon information and belief, Fartz is the name of Ms. Maraj's delusional fan base.

H.  Accuses Mr. Burstein Of Perjury:

Again, Burstein wasted the court's time by bedwetting over a suggestion that Burstein had self-interested motives for his actions.  Burstein's self-interested motives are evidenced by his wasting the court's time with this poorly briefed nonsensical motion for sanctions.

I.  Mr. Blackburn Receives Notice That the Key Factual Allegations in the Amended Complaint Are False:

Once again, Burstein is wasting the court's time complaining about Plaintiff's refusal to adopt Burstein's interpretation of a single text message purportedly sent by Plaintiff to Maraj.  It is settled law that a Plaintiff is the master of her complaint, NOT Burstein.

It is well established that Plaintiff is the "master of his complaint" and may characterize his causes of action as he pleases. *See Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.* 341 F.3d 644, 651 (7th Cir. 2003); *Porzilli v. CBS Inc.,* 1998 U.S. Dist. LEXIS 10689, No. Civ. A. 97-897, 1998 WL 398243, at *13 (D.N.J. July 13, 1998). Hochroth v. William Penn Life Ins. Co., 2003 U.S. Dist. LEXIS 22816, at *3-4 (S.D.N.Y. Dec. 18, 2003).

J.  Mr. Blackburn Presses Forward with a Frivolous Motion for a Default Judgment:

The default motion against Maraj was not frivolous.  Maraj defaulted, and Plaintiff exercised her right to pursue a motion for default judgment.  The court granted Plaintiff's request to file a motion for default judgment.  **Plaintiff did nothing wrong**!

In the relevant part, CPLR 3215 permits a plaintiff to seek a default judgment against a defendant who has failed to answer or appear (*see* CPLR 3215[a], [f]; *Giovanelli v Rivera,* 23 AD3d 616, 804 NYS2d 817 [2005]). Jones v. Corley, 2006 NY Slip Op 9178, ¶ 1, 35 A.D.3d 381, 381, 825 N.Y.S.2d 534, 535 (App. Div.).

15

K.   Mr. Blackburn Confirms his Bad Faith By His Conduct Following The Dismissal of Ms. Maraj:

The United States Supreme Court recognized long ago that starting litigation all over again does not constitute legal prejudice. *See Jones v. Securities & Exchange Commission*, 298 U.S. 1, 19, 80 L. Ed. 1015, 56 S. Ct. 654 (1936) ("The general rule is settled for the federal tribunals that a plaintiff possesses the unqualified right to dismiss his complaint . . . unless some plain legal prejudice will result to the Defendant other than the mere prospect of a second litigation upon the subject matter.") D'Alto v. Dahon Cal., Inc., 100 F.3d 281, 283 (2d Cir. 1996).

After receiving new information concerning Maraj's lack of property ownership in this district, Plaintiff decided to withdraw the case against Maraj in New York to refile it in California.

Maraj did not file an answer in this action before Plaintiff's voluntary withdrawal of her claims against Maraj pursuant to Fed. R. Civ.P. 41(a)(1)(A)(i).  Federal Rule 41(a)(1) of Civil Procedure permits voluntary dismissal of an action by the plaintiff "without court order" by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Upon the Plaintiff's timely filing of said notice, Rule 41(a)(1)(B) provides that: [u]nless the notice . . . states otherwise, the dismissal is without prejudice." Fed. R. Civ. P. 41(a)(1)(B). As the Second Circuit has observed, "[i]n such a case, the plain text of the rule provides that dismissal 'is without prejudice,' and affords no discretion in this respect to the district court." *See Youssef v. Tishman Constr. Corp.*, 744 F.3d 821, 823-24 (2d Cir. 2014). *Accord Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir.1999) ("[W]e and other courts have said . . . that a court has no discretion to exercise once a Rule 41(a)(1) dismissal is filed.").

Furthermore, because a voluntary dismissal is effective upon filing, no court order is technically required. The notice "automatically terminates the action," leaving the parties "as

though no action had been brought." *Commercial Space Mgmt. Co.*, 193 F.3d at 1077 (citation and footnote omitted). *See also Marex Titanic, Inc. v. Wrecked and Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir.1993) (voluntary dismissal is "self-executing, *i.e.*, it is effective at the moment the notice is filed with the clerk and no judicial approval is required"). Lindquist v. Carroll, Civil Action No. 3:15 - CV - 0870 (CSH), 2015 U.S. Dist. LEXIS 148681, at *3-5 (D. Conn. November 3, 2015).

The statute of limitations for Plaintiff to refile is California has not expired, and it is Plaintiff's right to pursue any legitimate cause of action against Maraj.

IV. **Argument Point I is loaded with misplaced case law that highlights Burstein's bad faith in filing this baseless motion, as well as his desperate attempt to soak up whatever's left of Maraj's retainer**:

Burstein's case selection would be laughable if it weren't so embarrassing. He selected supporting cases where the Second Circuit Court of Appeals either overturned the District Courts sanction, refused to overrule the District Courts decision not to sanction, or (as was the case in a handful of cases) affirmed the imposition of sanctions due to the attorney's failure to obey a court order. **None of which is present in this case**.

**Yukos Capital S.A.R.L. v. Feldman**:

The Second Circuit Court of Appeals refused to overturn the District court's decision NOT to impose sanctions against the defense counsel. In its opinion, the second circuit cited the United States Supreme Court when it stated, "the Supreme Court has made clear that courts should impose sanctions pursuant to their inherent authority **only in rare circumstances**. *See Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.") Yukos Capital S.A.R.L. v. Feldman, 977 F.3d 216, 235 (2d Cir. 2020).

Here, sanctions are not warranted because Burstein is upset that Plaintiff ignored his baseless request to forego her rights to pursue a default motion against Maraj after Maraj **intentionally** defaulted.

Burstein's perplexing inclusion of this case only highlights his abuse of process and the fact that he vexatiously multiplied this litigation for the sole purpose of bleeding the balance of Maraj's retainer.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion in bad faith.

**Eisemann v. Greene**:

Once again, Burstein selects another case from the Second Circuit, which chose NOT to impose sanctions on a party's counsel.  The selection of this case lends credence to the fact that Burstein filed this motion for sanctions in bad faith and did so for the sole purpose of harassing Mr. Blackburn and soaking up whatever's left of Maraj's retainer.

In Greene, the second circuit held the following: "In imposing sanctions in the instant case, the District Court found bad faith on the part of Eisemann's counsel.  The Court stated that Eisemann's motion for reconsideration was:

> The latest manifestation of [her] counsel's belief, displayed repeatedly throughout this case, that upon any motion by his adversary, he has 'no choice' but to respond by interposing a similar motion of his own. The inevitable effect of this tactic can only be to increase the burdens on the Court and all counsel for no proper purpose, as the record of this case amply demonstrates.

The only other reason cited by the Court for the imposition of sanctions is the fact that counsel "persisted" with his motion for reconsideration after he had been forewarned by the Judge's law clerk during the telephone conference that counsel's contentions were on their face inappropriate for reconsideration. The Court stated that "this disregard of the applicable standards

for reconsideration, coupled with the patent invalidity of the legal arguments presented in plaintiff's motions, make clear that the motion was brought in bad faith."

A District Court's imposition of sanctions is reviewed for abuse of discretion. See <u>Schlaifer Nance</u>, 194 F.3d at 333. However, this standard of review "is not as simple as it may appear at first blush." <u>Id</u>. Indeed, recently we have observed that troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power or under a variety of rules . . . is that the trial court may act as accuser, fact-finder and sentencing Judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed. <u>Mackler Prods. v. Cohen</u>, 146 F.3d 126, 128 (2d Cir. 1998). Thus, although we are mindful that "the decision to impose sanctions is uniquely within the province of a district court, we nevertheless need to ensure that any such decision is made with restraint and discretion." <u>Schlaifer Nance</u>, 194 F.3d at 334.

The District Court did not make sufficiently specific factual findings to support its conclusion that Eisemann's motion for reconsideration, or any other motion filed in the course of this litigation, was "entirely without color and . . . taken for reasons of harassment or delay or for other improper purposes." <u>Dow Chem. Pacific Ltd.</u>, 782 F.2d at 344. Instead, the Court's conclusory determination that Eisemann's motion was filed in bad faith rested almost entirely on its lack of merit. It is sometimes possible to infer bad faith from the meritlessness of a motion. See <u>Schlaifer Nance</u>, 194 F.3d at 338. But absent greater specificity from the District Court, the failure to meet the standards of Local Rule 6.3--a proper basis for denial of her motion for reconsideration--is not, without more, a proper basis for the imposition of sanctions on Eisemann's counsel.

19

Moreover, imposing sanctions, in part, for failing to heed the Court's "advice" as to whether a motion is appropriate amounts to establishing an unacceptable requirement that parties obtain the Court's prior authorization before filing a motion.  Although we have recognized that "it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion," Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 39 (2d Cir. 1995), we have made it clear that "the judge may not require that the court's permission be secured at such a conference before a party may file the motion." Milltex, 55 F.3d at 39; see also MacDraw, 73 F.3d at 1256 n.2 (same); *Richardson,* 825 F.2d 647 at 652 ("**Absent extraordinary circumstances, . . . a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure**.")."

In the circumstances presented, we are required to conclude that the **District Court's determination of bad faith, and its imposition of sanctions on Eisemann's counsel, was an abuse of discretion**. Accordingly, the District Court's order of August 27, 1998, is reversed insofar as it imposed sanctions on Eisemann's counsel. Eisemann v. Greene, 204 F.3d 393, 396-97 (2d Cir. 2000).

Here, unlike Eisemann, Plaintiff filed only one motion.  That motion was filed based squarely on the actions and deliberate inaction of Maraj.  This court did not ask Plaintiff not to file the motion for default judgment; this court **APPROVED** Plaintiff's request to file the motion.

Burstein's baffling reliance on this case only highlights his abuse of process and the fact that he vexatiously multiplied this litigation for the sole purpose of bleeding the balance of Maraj's retainer.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion in bad faith.

**Wolters Kluwer Fin. Servs. v. Scivantage**:

In <u>Wolters</u>, the Second Circuit Court of Appeals held that "the district court imposed two non-monetary sanctions on the law firm: one for voluntarily dismissing the suit in the Southern District of New York and one for using deposition transcripts in an action filed in the District of Massachusetts. **Both sanctions had to be overturned**."

As it pertains to "bad faith," the court of appeals in Wolters stated: "[b]ad faith is personal" and "may not automatically be visited" on others. <u>Browning Debenture Holders' Comm. **v**. DASA Corp.</u>, 560 F.2d 1078, 1089 (2d Cir. 1977). Accordingly, absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is unjustified. See <u>Milltex Indus. Corp. **v**. Jacquard Lace Co.</u>, 55 F.3d 34, 38 (2d Cir. 1995) ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.") (internal quotation marks omitted).  With regard to the Rule 41 dismissal, a plaintiff who has not been served with an answer or motion for summary judgment has an "unfettered right voluntarily and unilaterally to dismiss an action." <u>Thorp **v**. Scarne</u>, 599 F.2d 1169, 1175 (2d Cir. 1979).

Dismissal of a suit may be disruptive and annoying, but it is permitted by the rules:

> [P]laintiffs tend to dismiss actions that do not look promising while defendants generally want to obtain an adjudication on the merits in precisely the same cases. [But as] long as the Plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for us to judge.

<u>Wolters Kluwer Fin. Servs. v. Scivantage</u>, 564 F.3d 110, 112 (2d Cir. 2009).

As is the case in Wolters, Plaintiff and Mr. Blackburn did NOT engage in bad faith for simply exercising her right pursuant to Rule 41 to withdraw this action in this court so it can be refiled in California.

Burstein's hodgepodge of purported evidence of Mr. Blackburn's "bad faith" only serves to highlight his abusing process and the fact that he vexatiously multiplied this litigation for the

sole purpose of bleeding the balance of Maraj's retainer.  Mr. Blackburn implores the court to

impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for

intentionally filing this baseless motion in bad faith.

**Huebner v. Midland Credit Mgmt**:

In Huebner, sanctions were imposed on counsel under FRCP 16(f)(1)(B), 16(f)(1)(C), 28

U.S.C 1927, and 15 U.S.C. 1692k(a)(3).  For the purposes of this motion, I will only assess the

court's argument under 28 U.S.C 1927.

The court held,

> "The district court cited numerous frivolous and vexatious actions by Poltorak PC attorneys over the course of this litigation. Poltorak himself, for example, had misrepresented to the court that Elliott told Huebner that he could only dispute his debt in writing. After the district court pointed this out, Poltorak moved to recuse Judge Cogan, citing the Judge's ownership stake in a common investment fund, even though Canon 3C of the Judicial Code of Conduct and Advisory Opinion 106 expressly state that this sort of financial interest does not create a conflict. Poltorak PC also later changed its theory of the case, arguing first that Elliott, by trying to clarify Huebner's bewildering answers to her questions, had somehow misled him, and second that Midland failed to report Huebner's debt properly to the credit reporting agencies.

> At summary judgment, the district court correctly concluded that the first claim "had no basis in the FDCPA," *Huebner*, 2016 U.S. Dist. LEXIS 156246, 2016 WL 6652722, at *4, and that the second was plainly untrue. It also noted that Poltorak PC time and time again filed letters exceeding the court's page limit and ignored procedures set out in the court's protective order. *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 52-53, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (upholding "the assessment of attorney-s fees as a sanction for . . . disobedience of the court-s orders and the attempt to defraud the court itself"). The district court thus had good reason to conclude that Poltorak PC "unreasonably and vexatiously" multiplied the proceedings in this case under 28 U.S.C. § 1927. *Kim*, 884 F.3d at 106." Huebner v. Midland Credit Mgmt., 897 F.3d 42, 55-56 (2d Cir. 2018).

As previously stated, unlike the attorney in Heubner, Mr. Blackburn filed only one motion.

That motion was filed based squarely on the actions and deliberate inaction of Maraj, and this court

**APPROVED** Plaintiff's request to file the motion.

Burstein's bewildering reliance on this case only highlights his abuse of process and the fact that he vexatiously multiplied this litigation for the sole purpose of bleeding the balance of Maraj's retainer.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion in bad faith.

**Am. Transit Ins. Co v. Bilyk**:

Once again, Burstein's inexplicably relied on a case law that supports Mr. Blackburns' position.  This mysterious case selection only serves to highlight Burstein's intentional abuse of process and the fact that he vexatiously multiplied this litigation to keep the balance of Maraj's retainer.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion in bad faith.

In Bilyk, Judge Cogan initially denied Plaintiff's motion for default judgment against defendants citing Plaintiff's failure to clearly state a claim.  "A court cannot grant a default judgment on a complaint that fails to state a claim.  The motion for a default judgment is therefore denied and the case is dismissed."  Am. Transit Ins. Co. v. Bilyk, No. 19-cv-5171 (BMC), 2020 U.S. Dist. LEXIS 234040, at *3 (E.D.N.Y. Dec. 12, 2020).

On a motion for reconsideration, Judge Cogan reversed himself and awarded Plaintiff's motion for reconsideration after Plaintiff properly detailed their cause of action.  "The present motion does the work that should have been done in the complaint, or, at the very least, in the default judgment motion.  Upon this new showing, I conclude that there is adequate proof to establish defendants' liability on Plaintiff's RICO and fraud claims, but not as to the duplicative unjust enrichment claims.  However, the Plaintiff's showing also underscores that these defendants

23

were not properly joined.  Accordingly, the motion for reconsideration is granted, the order denying the motion for default judgment is vacated, and the motion for default judgment is granted in part, subject to the filing fee condition described below, imposed to remedy the improper joinder." Am. Transit Ins. Co. v. Bilyk, 514 F. Supp. 3d 463, 467-68 (E.D.N.Y. 2021).

In this case, the court was not required to issue a decision on Plaintiff's motion for default judgment.  Plaintiff exercised her right to withdraw her action against Maraj in New York with the intent to refile in California.  However, Plaintiff asks the court to follow Judge Cogan's lead and grant the default judgment against Defendant Petty.

**McCullough v. World Wrestling Entm't, Inc**.:

In McCullough the court DENIED the Defendant's request for sanctions against the Plaintiff for deliberately violating the court's instructions.  "WWE notes that, contrary to this Court's instructions at the June 8 status conference, Kyros and co-counsel declined to remove numerous paragraphs from the Amended Complaint that bear little to no relevance to the Osborne's death."

Mr. Burstein surreptitiously cherrypicked one sentence from the court's opinion in McCullough which states,

> "Baseless claims that are included in a complaint as part of a media campaign to pressure the Defendant with negative public relations have been found to evidence bad faith and improper purpose on the part of filing counsel. *See Galonsky v. Williams*, 96 CIV. 6207, 1997 U.S. Dist. LEXIS 19570, 1997 WL 759445 at *6 (S.D.N.Y. December 10, 1997) (noting "baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement"). And at least one other district court has sanctioned counsel for the deliberate inclusion of inflammatory content in a pleading after receiving a prior warning against doing so. *See Marceaux v. Lafayette City-Parish Consol. Gov't*, 614 Fed. Appx. 705, 2015 WL 3544648, at *1-3 (5th Cir. 2015) (affirming imposition of Rule 11 sanctions where counsel because asserted in an amended complaint "the same impertinent, immaterial, and scandalous allegations . . . which they had been warned," by the district court not to include)."

24

Mr. Burstein conveniently left out the following unfavorable portion of the courts opinion:

> "Although it is perhaps a close question, the Court finds that no Rule 11 sanction is merited for counsel's disregard of the Court's comments at the June 8 conference."

Here, as previously stated, Plaintiff and Mr. Blackburn did not violate any court order or comment regarding this litigation.  The mere fact that Burstein is relying on this case indicates his bad faith in filing this frivolous motion.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion.

**<u>Galonsky v. Williams</u>**:

Once again, Burstein inexplicably relies on case law that is NOT analogues to this case. This witless case selection only serves as another example of Burstein's intentional abuse of process and the fact that he vexatiously multiplied this litigation to line his pockets with the balance of Maraj's retainer.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion in clear bad faith.

In Galonsky v. Williams, Judge Martin issued sanctions against Plaintiff's counsel due to Plaintiff's counsel's disobedience of the court's warning that filing an amended complaint would result in the imposition of sanctions.

> "The sanctions to be imposed arise from a course of conduct which began with the filing of a state court action in New Jersey that was preceded by a settlement demand of $ 2.9 million and which culminated in counsel's filing of a motion for leave to file an amended complaint in this action to add a new plaintiff, after having been told by the Court in a pre-motion conference that the amendment would not be allowed and warned that the Court might well impose sanctions if

such a motion were filed". <u>Galonsky v. Williams</u>, 96 Civ. 6207 (JSM), 1997 U.S. Dist. LEXIS 19570, at *2 (S.D.N.Y. December 9, 1997).

Here, Plaintiff did not disobey a court order, prohibition, or instruction.  In fact, the opposite occurred in this case.  This court granted Plaintiff's request to proceed with a motion for default judgment against Maraj after she intentionally defaulted.

**<u>Richards v. Ayusman Sen</u>**:

Burstein inexplicably relies on case law that is NOT analogues to this case.  Even more perplexing is that this case is from a District Court in Florida and has no bearing on the Courts in this District.

Burstein failed to mention the fact that the Court in <u>Ayusman Sen</u>, issued a paperless order DENYING Defendant's Motion for Sanctions.  The Court held that "Plaintiff's counsel's decision to refile this action, while ill-advised, did not rise to the level of objective bad faith. See Amlong & Amlong v. Denny's, Inc., 500 F.3d 1230, 1239-40 (11th Cir. 2007)." <u>Richards v. Ayusman Sen</u>, 825 F. Supp. 2d 1259, 1260 (S.D. Fla. 2010).

Again, Burstein's cretinous decision to select this case only serves as another example of his intentional abuse of process and the fact that he vexatiously multiplied this litigation for the sole purpose of lining his pockets with the balance of Maraj's retainer.  Mr. Blackburn implores the court to impose sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent power against Burstein for intentionally filing this baseless motion in clear bad faith.

26

**V.    As was the case in Argument Point I, Argument Point II is also loaded with misplaced case law and further highlights Burstein's bad faith in filing this baseless motion, as well as his desperate attempt to soak up whatever's left of Maraj's retainer**:

**United States v. Seltzer**:

Burstein remains true to form and inexplicably relies on another case that is NOT analogues to this case.  In Seltzer, the district court imposed sanctions because Seltzer allegedly had disrupted and delayed the proceedings and violated the court's prior order. United States v. Seltzer, 227 F.3d 36, 40-41 (2d Cir. 2000).  Here, as previously stated, Plaintiff filed a motion for default judgment with the court's permission.  Plaintiff and Mr. Blackburn did not improperly delay the proceedings, in fact, Maraj intentionally delayed the proceedings when she defaulted.  As evidenced by their weak facts and reliance on questionable caselaw, Maraj and Burstein are further delaying the proceedings by improperly filing this baseless motion for sanctions.

The second circuit vacated the district court's sanctions in Seltzer and remanded it for further proceedings. The order of the district court is VACATED, and the case is REMANDED to the district court for proceedings consistent with this opinion.  United States v. Seltzer, 227 F.3d 36, 43 (2d Cir. 2000).

**Smith v. Westchester Cty. Dep't of Corr**:

In Smith, the court-imposed sanctions against the Plaintiffs' counsel based on actions that are not present in this case.  In Smith, the court held,

> "Deem's unsupported allegations of misconduct by Brady were clearly antagonistic, egregious, and made in bad faith. Allegations of "intentional or reckless spoliation" and "repeated misstatements to the Court" are accusations of unethical conduct in derogation of Brady's professional integrity. When presented as facts, as Deem did here, such allegations clearly rise to the level of sanctionable conduct.
> Deem's bad faith permeated this litigation beyond his motion for reconsideration. For example, in a letter dated May 3, 2011, Deem accused Brady of making "grave misrepresentations" and "not dealing at arms' length with Mr. Smith while he was represented *pro se*., In that same letter, Deem stated:

27

Plaintiff respectfully submits that the defendants' omission of all members of the ERT in their Rule 26(a) Disclosure, the submission of a doctored video, and the submission of falsified affidavits were part of a scheme designed by Westchester County and carried out by Ms. Brady to mislead the Court into believing that the ERT only consisted of three or four members, rather than eight, in order to hoodwink the Court into dismissing Plaintiff's meritorious claims.

At a conference held shortly thereafter, I stated:

I think, Mr. Deem, that of the two, you are the responsible one for ratcheting up the personal attacks, I do. There is nothing that Ms. Brady has done that resembles the word lies or misrepresentations at all.

At the end of the conference, I asked "Mr. Deem, in particular, to ratchet down the personal attacks. It is not welcome in this Court." In continuing to claim that Brady made misstatements to the Court after I found none, Deem allowed his antagonism toward Brady to cloud his legal judgment. Deem's unyielding determination to cast Brady in a negative light, despite my repeated admonitions to ratchet down the personal attacks, demonstrates his continued bad faith in litigating this action. On this basis alone, Deem is subject to sanctions under the Court's inherent authority."

Smith v. Westchester Cnty. Dep't of Corr., 2013 U.S. Dist. LEXIS 132006, at *18-20 (S.D.N.Y. Sep. 16, 2013).

Here, after learning that Gordon lied about his wife's writing and submitting the comments under the YouTube post, and after Burstein provided clarification surrounding how he allegedly first learned about Mrs. Gordon's YouTube comments, Mr. Blackburn filed a motion to withdraw docket entry # 55 which is a letter dated January 21, 2022.  "[A] litigant's **obligations** with respect to the contents of . . . papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment, Subdivisions (b) and (c). Bunnell v. Haghighi, 183 F. Supp. 3d 364, 372-73 (E.D.N.Y. 2016).

**Azkour v. Rest**:

In another case that is not remotely analogous to this case, the court in Azkour v. Rest held that "the Court repeatedly instructed Plaintiff that he may not make offensive statements about Defendant's counsel. (Civil Rights Case Doc. Nos. 19, 164.) Plaintiff's pattern of violating those instructions strongly supports the inference that Plaintiff was acting in bad faith, with an intent to harass and annoy Defendant's counsel. Azkour v. Rest, 2014 U.S. Dist. LEXIS 204798, at *6 (S.D.N.Y. May 30, 2014).

Here, Plaintiff and Mr. Blackburn did not violate any prior instruction from this Court.  As stated earlier, upon learning that Gordon lied about his wife allegedly drafting and posting the YouTube comment and allegedly being in fear for her safety, and after Burstein revealed how he allegedly learned of the purported Youtube post by Mrs. Gordon, Mr. Blackburn filed a motion to withdraw the filing from the record.

In this district, courts have routinely held that attempts to withdraw potentially inaccurate material are sufficient to avoid sanctions.  Accordingly, the Court finds that Paukman's attempt to withdraw sufficiently met the requirements to "avoid sanction." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327-28 (2d Cir. 1995); *see Carruthers*, 450 F. Supp. 2d at 306 ("So as long as the plaintiff takes some step leading to the withdrawal of the offending claim—whether offering to withdraw the claim or moving for leave to withdraw them—Rule 11 will be satisfied, even if it takes longer for the requirements of Rule 41 to be completed."); *Lindner v. Am. Exp. Corp.*, No. 06 Civ. 3834 (JGK), 2009 U.S. Dist. LEXIS 970, 2009 WL 54493, at* 1 (S.D.N. Y. January 8, 2009). Thompson v. Steinberg, 2021 U.S. Dist. LEXIS 166006, at *18-19 (S.D.N.Y. Sep. 1, 2021).

VI.   **Conclusion**:

In the end, there is no colorable evidence of bad faith on behalf of Mr. Blackburn.  The lawsuit against Maraj was filed based on her own actions after she decided to insert herself in a conspiracy to get Plaintiff to recant her 1994 rape claim against two-time convicted felon Petty.  The motion for default judgment was properly filed against Maraj due to her intentional act of refusing to answer or defend this lawsuit after Petty was properly served and after she was mailed a copy amended complaint to her residence.  Finally, Docket entry #55 was not filed in bad faith or to harm Burstein.  At the time it was filed,  Burstein had not disclosed how he learned of Mrs. Gordon's YouTube comment.  Furthermore, Gordon did not disclose that he had orchestrated the YouTube comment and lied about being afraid for his family after Burstein's "Your Wife" email.

This motion is a complete waste of the court's time and the court's resources.  The only person benefitting from this bad faith motion is Burstein.  He lined his pockets at the expense of his unassuming client and to waste the Court's valuable resources.


Dated: March 25, 2022

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: 347-342-7432
TBlackburn@TABlackburnlaw.com

30