UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JENNIFER HOUGH,

                   *Plaintiff,*

           -- against --

ONIKA TANYA MARAJ, AKA ("NICKI
MARAJ") and KENNETH PETTY, AKA
("ZOO"),

                *Defendants.*
------------------------------------------------------X

Case No. 21-cv-04568-ENV-JRC

**REPLY DECLARATION
OF JUDD BURSTEIN**

      **JUDD BURSTEIN** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct.

      1.      I am a member of the Bar of this Court and the sole shareholder of Judd Burstein, P.C., attorneys for former Defendant Onika Tanya Maraj ("Ms. Maraj").

      2.      I submit this Reply Declaration in support of Ms. Maraj's and my (collectively, "Movants") motion for sanctions ("Sanctions Motion") against Plaintiff Jennifer Hough's ("Ms. Hough") counsel, Tyrone Blackburn ("Mr. Blackburn").

      3.      Mr. Blackburn's response to the Sanctions Motion brings to mind Joseph Welch's famous response to an outlandish accusation made by Senator Joseph McCarthy against Mr. Welch's client during the 1954 Army-McCarthy Hearings: "Until this moment, Senator, I think I never really gauged your cruelty or your recklessness…. You have done enough. Have you no sense of decency?"

**A.    MR. BLACKBURN HAS ENGAGED IN ADDITIONAL BAD FAITH CONDUCT BY MAKING A NEW BASELESS AND DISGUSTING ATTACK UPON MS. MARAJ WHICH IS EVEN MORE INCENDIARY THAN HIS FALSE ACCUSATION THAT SHE BELONGS TO A GANG**

4.    Faced with a claim that he should be sanctioned because, *inter alia*, of his entirely irrelevant accusation – made without any evidentiary support – that Ms. Maraj belongs to a murderous street gang, one would have expected Mr. Blackburn to limit his response to an explanation why that allegation was appropriate or at least made in good faith.  He did not do so.

5.    Instead, he did something far worse: **he has now outrageously alleged that Ms. Maraj supports the  sexual abuse of children**:

> Upon information and belief, Maraj has a reputation of supporting sex offenders.
>
> In November 2017, Maraj's brother, Jelani Maraj, was convicted of endangering the welfare of a child and predatory sexual assault on a child younger than 13.
>
> Upon information and belief, Jelani consistently raped his 11-year-old stepdaughter until she was 15-years old.
>
> Jelani is now serving 25 years to Life in New York State prison.
>
> Upon information and belief, Maraj paid for Jelani's attorneys and orchestrated a public relations campaign attempting to discredit the 11-year-old female victim.
>
> Upon information and belief, Carol Maraj, Maraj's mother, went online to paint the 11-year-old victim as promiscuous.

(Declaration of Tyrone A. Blackburn, dated March 25, 2022 ("Blackburn March 25 Dec."), at ¶¶ 35-40)

6.    Before turning to the reasons why this new accusation is so appalling and indefensible, I first want to make clear that Ms. Maraj is not going to dignify it by submitting a sworn denial.  She is not going to allow Mr. Blackburn to create a factual dispute by making an outrageous accusation for which he has no support and which in any event is entirely irrelevant. Contrary to Mr. Blackburn's apparent view, the phrase "information and belief" is not a talisman

which shields him from sanctions.  It is not a license for him to make wild accusations when there are no underlying facts which provide a rational basis even for information and belief.

7.      Here, the only **fact** that Mr. Blackburn has alleged is that NBC New York published an article which reported that Ms. Maraj's brother was convicted five years ago for raping an eleven-year-old girl.  (Blackburn March 25 Dec., at ¶ 36 n.2)  **At most**, the article provides a basis for Mr. Blackburn to allege on information and belief that the defendant in that case was Ms. Maraj's brother and that he was in fact convicted of that crime.

8.      However, if the Court reads the article cited by Mr. Blackburn (annexed hereto as Exhibit 1), it will see that it does not provide **any basis** for Mr. Blackburn's assertion, on information and belief, that (a) "[Ms.] Maraj paid for [Ms. Maraj's brother's] attorneys and orchestrated a public relations campaign attempting to discredit the 11-year-old female victim," and (b) "[Ms.] Maraj's mother[] went online to paint the 11-year-old victim as promiscuous." (Blackburn March 25 Dec., at ¶¶ 39-40)  Rather, the article only states that [Ms.] Maraj's brother's "**lawyers** said the rape allegations were concocted by the girl's mother as part of a scheme to get [Ms. Maraj] to pay $25 million in hush money."  (Exhibit 1 hereto, at 2) (Emphasis supplied)  Mr. Blackburn's reliance upon the article as the basis for his "information and belief" pleading is the height of bad faith.[1]

9.      Moreover, Mr. Blackburn's allegation is yet another example of his practice of filing papers containing incendiary accusations which are completely irrelevant and obviously designed to harass Ms. Maraj and tarnish her reputation.  Mr. Blackburn surely included this outrageous accusation knowing that the media will likely report on the lie, thereby creating the

---

[1]      I note that even if Ms. Maraj did pay for her brother's lawyers, her decision to help a sibling accused of a terrible crime would not give rise to any possible inference that she is therefore an advocate of pederasty.

very reputation which he had no basis for alleging in the first place.  The fact that Mr. Blackburn has repeated the same conduct upon which the Sanctions Motion is partially based – this time with an even more horrific accusation – demonstrates that he acted in bad faith the first time around.

10.     Finally on this issue, Mr. Blackburn's bad faith is further confirmed by the fact that, as a matter of logic, merely stating that someone has a "reputation" for certain conduct is meaningless unless one identifies those who have been claiming that the conduct actually occurred or have at least relayed that they have heard other people making the claim.  Here, Mr. Blackburn does not identify **anyone** who has ever accused Ms. Maraj of supporting sex offenders or who has claimed to have heard others relay that accusation second-hand.  It is therefore obvious that Mr. Blackburn, fueled by undeniable bad faith, created Ms. Maraj's supposed reputation out of whole cloth.

**B.     MR. BLACKBURN HAS ENGAGED IN ADDITIONAL AND SHOCKING BAD FAITH CONDUCT BY ACCUSING ME OF HAVING ENGAGED IN A CONSPIRACY WITH STEVEN GORDON TO HARM MS. HOUGH**

11.     Instead of trying to avoid sanctions for having made the knowingly false accusation that I have engaged in deviant behavior directed toward the wife of his former co-counsel, Steven Gordon ("Mr. Gordon"), Mr. Blackburn has chosen to file answering papers which, without any factual basis whatsoever, falsely accuse me of misconduct that would mandate my disbarment if true.  His recklessness is breathtaking.

12.      According to Mr. Blackburn:

a.     Mr. Gordon was working with me "as a double agent" to assist me in my defense of Ms. Maraj.  (Mr. Blackburn's Memorandum of Law in Opposition to the Sanctions Motion ("Blackburn MOL"), at 4);

b. Mr. Gordon and I had "several secretive conversations" during which I supposedly "provided [him] with offers never disclosed to Mr. Blackburn or [Ms. Hough]." (*Id*.);

c. Mr. Gordon and I hid our supposedly secret discussions "to justify [my] filing of this frivolous sanctions motion." (*Id*., at 5); and

d. Mr. Gordon and I somehow colluded on the events which led to Mr. Blackburn's accusation that I had a "creepy" "sick obsession" with Mr. Gordon's wife which led me to "cyberstalk" her. According to Mr. Blackburn, Mr. Gordon actually wrote the YouTube post attributed to his wife, and I knew that he had done so. But that is just the start of his fantastical account of the facts:

> At the time, Mr. Blackburn was not aware that Gordon had orchestrated the YouTube comment post and possibly the email sent to the group by Burstein. Considering the recent discovery of Burstein and Gordon's bromance, it would be safe to assume the YouTube post and the "Your Wife" email were planned between Gordon and Burstein to set up Mr. Blackburn and [Ms. Hough].

(*Id*., at 6)

13. Mr. Gordon and his wife have executed Declarations, annexed hereto as Exhibits 2 and 3, in which they deny the allegation that Mr. Gordon wrote the post. While I believe that they are telling the truth, I have no knowledge of what transpired between them. I can only state, as I do now, that the allegations concerning my supposed improper conduct vis a vis Mr. Gordon are unequivocally false and that Mr. Blackburn has zero facts in his possession which could conceivably give rise to an inference of misconduct on my part. His accusation that I violated my most basic ethical duties as an attorney is therefore inexcusable.

14. **First**, I did **not** use Mr. Gordon as a "double agent" to assist me on behalf of Ms. Maraj to the detriment of Ms. Hough or for any other reason. As shown by Exhibit 4 hereto, the

**totality** of my email communications with Mr. Gordon (other than Exhibit 15 hereto)[2] to which Mr. Blackburn was not a party from October 18, 2021, when Mr. Gordon filed his Notice of Appearance as co-counsel for Ms. Hough (Dkt. No. 18), and 10:45 a.m. on January 27, 2022, when I received his e-filed letter to the Court informing it that Ms. Hough had discharged him (Exhibit 5 hereto; *see* Dkt. No. 59), we had no surreptitious communications.[3]

15.    **Second**, while I do not know whether Mr. Gordon disclosed to Mr. Blackburn the substance of our few separate communications with each other, Mr. Blackburn has no rational basis for alleging that Mr. Gordon and I agreed to keep those communications secret.  The only communications with Mr. Gordon which I have redacted are contained within one email chain which I disclosed to Mr. Blackburn in a prior version of the Sanctions Motion which I served upon him prior to deciding not to seek sanctions against Mr. Gordon.  I have annexed the redacted version of that email chain hereto as Exhibit 15.  If the Court requests me to do so, I will file an unredacted version of that exhibit so that it can see that, **as I informed Mr. Blackburn when I disclosed the communications to him**, the redacted portions of the emails (a) were personal in

---

[2]    I have also partially redacted some of the emails which are included within Exhibit 4 hereto because those emails precipitated the email exchange between Mr. Gordon and me which is annexed hereto as Exhibit 15.  They too contain personal information communicated about the period of time Mr. Gordon spent in my firm's employ – information which is unrelated to this litigation and which did not include any admission of drug use or infidelity by Mr. Gordon.  As with Exhibit 15 hereto, I will provide an unredacted copy of Exhibit 4 hereto if the Court requests that I do so.

[3]    I do not believe that Mr. Gordon and I ever exchanged text messages.  Nor did I find any such messages on my cell phone.  However, I believe that Mr. Gordon and I may have had some telephone calls just between us early in the case to address scheduling issues, and I also recall trying to convince him on one occasion, unsuccessfully, that his and Mr. Blackburn's motion for a default judgment against Ms. Maraj would never succeed.  However, when there are multiple lawyers representing opposing clients, it is impractical, and highly unusual, to insist upon conference calls with all counsel present any time that an issue needs to be discussed.  Rather, each lawyer assumes that the opposing lawyer will convey to his or her co-counsel what was discussed.

nature concerning issues that arose during the brief period of time during which Mr. Gordon was employed by my firm, and (b) did not include any admission by Mr. Gordon "that he has a drug addiction and was in the process of committing adultery." (Backburn MOL, at 5)  Mr. Blackburn's ugly speculation – which proceeds on the wholly unwarranted and outrageous assumption that I lied to him – shows yet again that he erroneously believes that there are no limits upon what he can assert in a court submission regardless of the facts or whether he is acting solely to harm and harass someone.

16.     **Third,** Mr. Blackburn has wholly undermined his argument by positing that the redacted portions of the emails reflect Mr. Gordon's disclosure to me of his supposed drug addiction and infidelity because those disclosures would have been collateral to any relevant issue in this case and therefore could not possibly have harmed Ms. Hough.  Moreover, it makes no sense that Mr. Gordon would voluntarily reveal information to me that I could then possibly use against him.[4]

17.     **Fourth**, while I find it hard to believe that Mr. Gordon drafted a YouTube comment in the name of his wife, I have no firsthand knowledge of whether that accusation is true.  However, I can unequivocally state that if Mr. Gordon did draft the comment and falsely represent that it had been posted by his wife, I had no knowledge of that fact.  Mr. Blackburn does not have any remotely reasonable or good faith basis for suggesting to the contrary.

18.     **Fifth**, Mr. Blackburn's claim that the YouTube post and what he has denominated as the "Your Wife email" "were planned between Gordon and [me] to set up Mr. Blackburn and [Ms. Hough]" (*id*., at 6) is nonsensical because it requires the Court to conclude that (a) the

---

[4]     Needless to say, I would never engage in such conduct even if I had the opportunity to do so.

YouTube post was created and the related emails were sent on November 3, 2021 (*see* Exhibits A-D to my February 2, 2022 Declaration in support of the Sanctions Motion ("Moving Dec.")), with (b) the knowledge or at least anticipation that Mr. Blackburn (i) would voluntarily dismiss the Amended Complaint as against Ms. Maraj more than two months later on January 12, 2022 (**a decision solely within his purview as lead counsel**), and (ii) then accuse me of "cyberstalking," etc. nine days later in a letter to the Court in which he improperly made a merit-based argument in response to my mere request for a briefing schedule on this Sanctions Motion.

## C.    MR. BLACKBURN'S CRUEL ATTACK UPON MR. GORDON PROVIDES ADDITIONAL AND COMPELLING PROOF OF HIS BAD FAITH

19.     Neither Ms. Maraj nor I have standing to seek sanctions against Mr. Blackburn because of his attack upon Mr. Gordon.  However, that attack is nonetheless very relevant because it confirms that Mr. Blackburn has acted throughout this case without regard to the truth, his professional obligations as a member of the Bar, or any sense of a responsibility to refrain from making baseless accusations against others which are potentially devastating them.

20.     Regardless of whether any of it is true (and I do not believe that it is), Mr. Blackburn's attack upon Mr. Gordon is worse than a breach of his duties and obligations as a member of the Bar; it is inhuman because it bears no relevance whatsoever to the question of whether Mr. Blackburn should be sanctioned.  Rather, Mr. Blackburn has assaulted Mr. Gordon with accusations which, in addition to threatening his career, are so personal that they should never have been presented in a public filing.

21.     The only explanation for Mr. Blackburn's conduct vis a vis Mr. Gordon is spite and cruelty.  Indeed, if any part of Mr. Blackburn's allegations about Mr. Gordon is true, that fact would make his conduct even more egregious because he would thereby be seeking to harm someone whom he believes to be emotionally troubled.  Mr. Blackburn's gratuitous use of the

judicial process to attempt to destroy Mr. Gordon's career, reputation **and marriage** is beyond shocking.

22.     Mr. Blackburn's conduct is also reprehensible because Mr. Gordon is not a party to this Sanctions Motion.  Hence, he attacked Mr. Gordon assuming that Mr. Gordon would not have a vehicle to defend himself publicly.  As it turned out, Mr. Blackburn was mistaken because, as a matter of fundamental decency, I took it upon myself to give Mr. Gordon that opportunity.

23.     In anticipation of Mr. Blackburn falsely alleging that my submission of Declarations from Mr. Gordon and his wife evidence some sort of collusion, I have attached, as Exhibit 6 hereto, all my communications with Mr. Gordon since receiving Mr. Blackburn's answering papers on March 25, 2022.  As the Court can see, I made clear to Mr. Gordon that (a) I was not asking him and/or his wife to provide me with declarations, (b) I did not believe that I needed them to reply to Mr. Blackburn's answering papers, and (c) I would not edit anything he provided to me because I did not believe that it would be appropriate for me to do so.  I did see one draft of Mr. Gordon's Declaration and, as the Court can see from one of the emails attached hereto as part of Exhibit 6, I made no substantive comments other than pointing out my belief that he had not remembered some communications we may have had at the outset of the case.

**D.     MR. BLACKBURN HAS DEMONSTRATED HIS BAD FAITH BY REFUSING TO WITHDRAW HIS NEW ALLEGATIONS EVEN THOUGH I OFFERED HIM AN OPPORTUNITY TO DO SO**

24.     Mr. Blackburn's new attacks upon Ms. Maraj, Mr. Gordon and me are all the more inexcusable because I gave him the opportunity to withdraw them before they did any damage. Hence, after receiving his answering papers on March 25, 2022, I sent an email to Mr. Blackburn, stating:

Tyrone:

By reason of the Court's bundling rule, your reply papers will not be filed until Monday.  I therefore want to give you an opportunity to amend your opposition to my motion to remove (a) your accusations against Steven Gordon and (b) the new accusation concerning Nicki's brother and her supposed "reputation of supporting sex offenders."   If you want to adjust the motion schedule by a week to delete these portions of your response, I am amenable.  If not, I will rely upon your refusal of this offer as an additional ground for sanctions.

Your inflammatory accusations concerning Steven's alleged personal problems and his supposed interactions with your client are entirely irrelevant to the motion and I just do not understand why you would include them for any reason other than for the improper purpose of inflicting some sort of revenge upon him.  I do not have any personal knowledge about Steven's interactions with others or the personal problems which you allege.  However, even if everything you say is true, it would be morally wrong for you to tar a young lawyer with these kinds of accusations when they are entirely gratuitous.  I have been practicing law for more than 40 years, so my reputation will weather your sanctionable "sick obsession" comments about me.  But if you force me to file your opposition papers, anyone contemplating hiring Steven in the future as an employee or as an attorney will likely find these accusations when they do a Google search on him.  Why would you do this to him when the accusations add nothing to your response to the motion?  Indeed, if they are true, that would be **more** of a reason not to include them because doing so would only unnecessarily cause him additional emotional damage.  I have no allegiance to or even fondness of Steven.  I am just looking at this from a decency perspective.

You should also withdraw the new allegation against Nicki because it is both entirely gratuitous and nonsensical.  How is a supposed "reputation" for protecting sex offenders relevant here?  Why do you say that she undertook a PR campaign when you have no evidence of anything she did in that regard?  Moreover, the fact that someone might pay for her own brother's defense counsel does not show support for sex offenders in general.  Using the term "information and belief" is not a license for ugly speculation

Tyrone, there is a difference between expressing an opinion and making factual allegations.   Your response's invective about my supposed cretinous and bedwetting, etc., discussion of the case law is an opinion.  I think your choice to use that language in a court filing is inappropriate and likely sanctionable, but you are nonetheless only expressing a personal opinion with which the Court can agree or disagree without knowledge of underlying facts.  But your comments about Steven and Nicki are entirely different because you are abusing the litigation privilege to make gratuitous **factual** statements which cannot be tested without a full factual inquiry unavailable to them at this time.

Please just take a step back and do the right thing.

(Exhibit 12 hereto) (Emphasis in original)

10

25.     Evidencing his utter bad faith, Mr. Blackburn never took me up on my offer.

**E.     MR. BLACKBURN'S DEFENSE OF HIS "SICK OBSESSION" ACCUSATION CONFIRMS HIS UTTER BAD FAITH**

26.     If Mr. Blackburn had, at one point in time, somehow actually believed that he had a good faith basis for claiming that I had a "creepy" "sick obsession" with Mr. Gordon's wife which led me to "cyberstalk" her, he surely no longer has any basis for believing that.  Hence, if he were acting in good faith now, he would unequivocally confess error, while explaining why he had reasonably believed the accusation was truthful at the time it was made. Instead, he has gone in the opposite direction by making additional outrageous and false accusations and excuses.

27.     **First**, he still refuses to explicitly withdraw the accusation.  Instead, he has inexcusably chosen not to argue in favor of it.  He had an obligation to do more.

28.     **Second**, he contends that he did nothing wrong "because [he] characterized Burstein's 'Your Wife' email as being a weird and creepy act of cyberstalking **BEFORE** Burstein revealed how he discovered the comments."  (Blackburn MOL, at 3) (Emphasis in original)  But this argument is fundamentally and knowingly dishonest because:

a.     Mr. Blackburn contends that his accusation was based solely upon his belief that, prior to learning of the true circumstances surrounding the email, "it was very weird to have an opposing counsel send an email with the subject 'Your Wife' to a group of attorneys."  (*Id*., at 6)  Plainly, a supposed belief that my conduct was "weird" did not remotely justify an accusation that I had a "creepy" and "sick obsession," etc.;

b.     His contemporaneous conduct demonstrates that he never believed that there was anything "weird," much less "creepy" or "sick," about my conduct.  This is made

clear by the email he sent me on the same day that I had sent what he has denominated as the "Your Wife" email.  It stated:

> **I see you're in a playful mood tonight Judd.  I am certain you don't mean an[y] harm**, but I think it's a little inappropriate to talk about another man[']s wife.  I would hope that this would be the last email concerning Mrs. gordon [*sic*] who is not a party to this action, and who, from the looks of her comment, was only contributing to a conversation which several other random individuals commented on.

(Exhibit D to the Moving Dec., at 1) (Emphasis supplied);

c.    He now also acknowledges by his silence that I adhered to his request, and that I never mentioned Mr. Gordon's wife again.  As such, he could not possibly have believed that I had evidenced a creepy sick obsession which resulted in me cyberstalking her;

d.    His claim that he reevaluated the issue concerning Mr. Gordon's wife once he was apprised of all the surrounding facts is false because Mr. Gordon sent me an email (with a copy to Mr. Blackburn) on January 26, 2022, stating, *inter alia*, that "**I did not say that you had an obsession with my wife**[.]"  (Exhibit 7 hereto) (Emphasis supplied); and

e.    Mr. Blackburn has further admitted that, as of January 26, 2022 he had all the relevant facts in his possession by reason of a proposed sanctions motion which I had sent him on that date.  (Blackburn MOL, at 6)  Nonetheless, he refused my request at that time that he withdraw the accusation, instead contending that he had fairly characterized my conduct based upon his knowingly false claim that I had continued to write Mr. Gordon about his wife after he had asked me not to do so.  (Exhibit 8 hereto)  As a result, Mr. Blackburn forced me to seek sanctions to clear

12

my name.  Worse still, he then waited until he served his answering papers on March 25, 2022 for an April 2022 bundled filing of the Sanctions Motion before implicitly acknowledging that his accusation was false.

29.     **Third**, Mr. Blackburn also argues that Mr. Gordon's email to me – now confirmed in Mr. Gordon's Declaration (Exhibit 2 hereto at ¶ 22), stating that (a) Mr. Blackburn attacked me without Mr. Gordon's foreknowledge and approval, (b) Mr. Gordon would never have approved the letter if he had seen it, and (c) he "never at any time said anything to Mr. Blackburn even to suggest that [he] agreed with the views as expressed in his letter" (Exhibit N to the Moving Dec.) (emphasis omitted) – "is evidence that a secret deal was struck between Burstein and Gordon." (Blackburn MOL, at 7) This is yet another false claim for which Mr. Blackburn has no good faith basis because Mr. Gordon's email makes it clear that I agreed not to seek sanctions against him because he confirmed that Mr. Blackburn had not attacked me based upon information or opinions conveyed to him by Mr. Gordon.

30.     To dispel any doubt on this issue, I have annexed, as Exhibit 9 hereto, all my communications with Mr. Gordon concerning his email and my agreement not to seek sanctions against him.  I note that all of these communications took place **after** Mr. Gordon had been discharged by Ms. Hough.  Further, as the Court can see, Mr. Gordon did not disclose any information to me which might conceivably be viewed as privileged or confidential even though he was no longer representing Ms. Hough at the time.

31.     **Fourth**, Mr. Blackburn seeks to justify his false accusation against me because I sent an email to him on January 12, 2022 attacking him and his co-counsel (including Mr. Gordon at the time) as "bottom feeders" and then, "[i]n a desperate quest for media attention, presumably,

to breathe life into his waning practice," I "intentionally leaked [the email] to TMZ." (Blackburn March 25 Dec., at ¶¶ 59-60)

32.    In the first instance, I want to make clear that I did **not** leak the email to TMZ.  The article attached as Exhibit M to the Blackburn March 25 Dec. is not to the contrary, as it states only that "We've seen an email Burstein sent to H[o]ugh's lawyer[.]"  Nor, as reflected in the article, did I ever speak to anyone at TMZ about the email.  Mr. Blackburn ignores the fact that I have a high-profile client who was receiving copies of relevant communications in the case and who had reasons of her own to seek to vindicate her reputation by attacking Mr. Blackburn.  While I am ethically barred from disclosing how the email found its way to TMZ, I can unequivocally state (which I do) that it did **not** come from me.  Indeed, when I am representing a celebrity such as Ms. Maraj, I purposefully avoid interacting with the media unless my client (or the client's public relations team) asks me to do so.  Here, I was not asked to communicate with TMZ and did not do so.

33.    More importantly, though, even if I had leaked the email (which was substantively fair in any event), that would not have justified Mr. Blackburn's vile accusation against me.

**F.    MR. BLACKBURN HAS FURTHER CONFIRMED THAT HE HAD NO GOOD FAITH BASIS FOR ALLEGING THAT MS. MARAJ IS A MEMBER OF THE MAKK BALLERS GANG**

34.    Incredibly, **Mr. Blackburn has acknowledged that he falsely accused Ms. Maraj of membership in the Maak Baller gang**:

a.    Commencing in October 2021, he repeatedly alleged, as an unqualified statement of fact (*i.e.*, not on information and belief), that Ms. Maraj was a full-fledged member of the Makk Ballers gang.  (*See* Movants' February 2, 2022 Memorandum

14

of Law in support of the Sanctions Motion ("Moving MOL"), at 15, quoting Dkt. No. 25, at pp. 5-6);

b.  Then, after dismissing the case against Ms. Maraj, he abandoned his unequivocal accusation of gang membership by filing a purported "amendment" to the default judgment motion he had abandoned.  In this amendment, he claimed only on "information and belief" that Ms. Maraj belongs to the Makk Ballers.  (Dkt. No. 61, at ¶¶ 16-17); and

c.  Now, **buried within a footnote**, he has disavowed even his watered-down allegation of gang membership by claiming only that "[u]pon information and belief, [Ms.] **Maraj is an honorary member or sympathizer** of [the Makk Ballers]."  (Blackburn MOL, at 10 n.3) (Emphasis supplied)

35.  Mr. Blackburn makes no effort to explain why he has abandoned any claim that Ms. Maraj belongs to the gang, much less why he made the allegation in the first place.  To the contrary, he has essentially admitted that he **never** had any basis for believing, much less alleging in a federal complaint, that Ms. Maraj is a member of the Makk Ballers.  Nonetheless, he continued to make that claim commencing in October 2021 and only then disavowed it in a small footnote more than five months later.  Mr. Blackburn should not be permitted to engage in this sort of outrageous, injurious conduct without consequences.

## G.  MR. BLACKBURN'S NEW UNSEEMLY PERSONAL ATTACKS UPON ME PROVIDE AN ADDTIONAL REASON TO IMPOSE SANCTIONS

36.  Mr. Blackburn's answering papers sink to new lows in his effort to denigrate and insult me.  Viewed in isolation, they would not merit the time required to litigate a sanctions motion.  However, they are nonetheless so over-the-top that they provide yet another reason to conclude that Mr. Blackburn has acted with such bad faith as to warrant sanctions.

37.     **First**, Mr. Blackburn has made the outrageous and baseless claim that I have pursued sanctions as a pretext for earning unnecessary fees from Ms. Maraj.  (*See* Blackburn MOL, at 3 ("This is nothing more than a **billing exercise disguised as a sanctions motion**") (Emphasis in original); 17 ("Burstein['s] … desperate attempt to soak up whatever's left of [Ms.] Maraj's retainer"); 18 ("Burstein[]" has acted for "the sole purpose of bleeding the balance of [Ms.] Maraj's retainer" and "soaking up whatever's left of [Ms.] Maraj's retainer"); 20 ("Burstein[]" has acted for "the sole purpose of bleeding the balance of [Ms.] Maraj's retainer"); 21-22 (same); 23 (same, and "he vexatiously multiplied this litigation to keep the balance of [Ms.] Maraj's retainer"); 25 ("[H]e vexatiously multiplied this litigation to line his pockets with the balance of [Ms.] Maraj's retainer"); and 27 ("Burstein[]" is engaged in a "desperate attempt to soak up whatever's left of [Ms.] Maraj's retainer"))

38.     This is not a benign accusation. Rather, Mr. Blackburn is accusing me of violating Rule 1.5 of the Rules of Professional Conduct by charging Ms. Maraj an excessive fee.  This is an inexcusable accusation given that Mr. Blackburn has no factual basis for making it.  Indeed, the opposite is true because **I am not charging Ms. Maraj for my work on this motion**, and my firm will only be paid if the Court awards fees for the time spent on it.[5]  My primary reason for pursuing this Sanctions Motion (which is why I am not charging Ms. Maraj for it) is my belief that reputable lawyers who care about the integrity of the advocacy process have a fundamental obligation to protect it by seeking to hold lawyers such as Mr. Blackburn accountable.  Moreover, given the extent of Mr. Blackburn's misconduct, I am ethically bound by Rule 8.3(a) of the Rules of

---

[5]     If the Court only awards fees for my work defending Ms. Maraj in this case, those monies will be paid to Ms. Maraj.

Professional Conduct to report it either to "a tribunal or other authority empowered to investigate or act upon" it.

39.     **Second**, although a Reply Memorandum of Law is unnecessary because Mr. Blackburn has neither properly opposed nor rebutted the case law cited in the Moving MOL, the disgraceful manner in which Mr. Blackburn has insulted me in making his legal arguments is also probative of his bad faith.  (*See* Blackburn MOL, at 12 ("Burstein is … blubbering"); 15 ("Burstein wasted the [C]ourt's time by bedwetting"); 25 ("[Burstein's] witless case selection"); and 26 ("Burstein's cretinous decision to select this case")[6]

## H.    MR. BLACKBURN HAS PROVIDED A DEMONSTRABLY FALSE EXPLANATION OF WHY HE VOLUNTARILY DISMISSED THE AMENDED COMPLAINT AS AGAINST MS. MARAJ

40.     In response to the contention that he voluntarily dismissed the Amended Complaint as against Ms. Maraj as a ruse so that he could file the same frivolous complaint in another jurisdiction (*see* Moving MOL, at 21-22), Mr. Blackburn has of course argued that he dismissed solely due to jurisdictional reasons, as opposed to substantive ones:

---

[6]     Citing an almost 23-year-old case, *Revson v. Cinque & Cinque, P.C.*, 49 F. Supp. 2d 686 (S.D.N.Y. 1999), Mr. Blackburn also claims that I have a "storied history of defending sanctions motions."  (Blackburn MOL, at 7)  I am not seeking sanctions based upon this absurd claim, but I do note that Mr. Blackburn has inexcusably failed to alert the Court to the fact that the decision in *Revson* was reversed on appeal.  221 F.3d 71 (2d Cir. 2000).  More importantly, the Judge who sanctioned me, the Honorable Denny Chin (prior to his appointment to the Second Circuit), subsequently wrote a letter on my behalf, stating, in relevant part:

> Since the Revson case, you have appeared before me in two substantial matters[.] […] Not only were you a superb advocate in representing your clients, you were respectful and courteous, both to the Court and your adversaries.
>
> […] [I]t is my view that your conduct in Revson should not deter any court from favorably considering your application for admission.  Indeed, I am confident that you would make a capable and honorable member of any Bar.

(Exhibit 10 hereto)

Before filing suit, [Ms. Hough] ensured the court's jurisdiction over [Ms.] Maraj through her ownership of a residence in this district located at 967 Middle Bay Dr. Baldwin, NY 11510.  Furthermore, upon information and belief, Maraj operated her "Queens Radio" program out of Queen's [*sic*], New York, which is in this district.  Finally, upon information and belief, the following business is owned by [Ms.] Maraj and is listed as having an address in the state of New York: Pink Friday Films, Inc: Corporation # 4404714.

As part of her opposition to [Ms. Hough's] motion for default judgment, [Ms.] Maraj clarified her ownership of the property located at 967 Middle Bay Dr. Baldwin, NY 11510.  According to [Ms.] Maraj, the property is her mother's residence, and [Ms.] Maraj is the "Grantor, but not the trustee, of a trust which owns a house on Long Island in which my mother lives...."

Shortly after learning this new information, [Ms. Hough] withdrew her claims against [Ms.] Maraj in New York and has decided to refile against Maraj in a district where this case might have been brought, California.

(Blackburn MOL, at 10)

41.    Plainly, Mr. Blackburn has the right to argue that he did in fact dismiss the Amended Complaint as against Ms. Maraj solely because he learned that he had been mistaken in believing that Ms. Maraj was subject to the Court's jurisdiction.  Nor should a lawyer be sanctioned merely for making a mistake about the Court's jurisdiction.

42.    But Mr. Blackburn has done something vastly different: he has given a demonstrably false explanation (which he has to know is false) of the reasons why he concluded that the Court lacked jurisdiction – thereby demonstrating that he did in fact dismiss what he knew was a frivolous pleading so that he might refile it in another jurisdiction.

43.    **First**, Mr. Blackburn's initial explanation of the reason he concluded that the Court lacked jurisdiction over Ms. Maraj was very different than the one he now proffers.  In January 2022, Mr. Gordon sent a letter to the Court in which he claimed that he and Mr. Blackburn had changed their position on jurisdiction because Ms. Maraj's December 30, 2021 Declaration in opposition to Ms. Hough's motion for a default judgment showed that Ms. Maraj had no

connection of any kind to New York State.   (Dkt. No. 53, at 2-3)   Mr. Gordon's letter
acknowledged that I had provided all this information to him and Mr. Blackburn in November
2021, but contended that they had appropriately waited to dismiss the Amended Complaint against
Ms. Maraj until they received the information in the form of a sworn statement from Ms. Maraj.
(*Id*.)   Mr. Blackburn received a copy of this letter via ECF, and never disavowed it nor claimed
that Mr. Gordon was mistaken as to the reason he and Mr. Gordon had decided to dismiss the
Amended Complaint as against Ms. Maraj.

44.     **Second**, Mr. Blackburn's primary excuse – that he only realized that the court
lacked personal jurisdiction once he learned that Ms. Maraj did not own a home in Baldwin, New
York – is an outright lie because:

a.     Mr. Blackburn had never claimed that Ms. Maraj was subject to the Court's
jurisdiction because she owned the Baldwin home.  Rather, in a December 17, 2021
Declaration, he claimed that, prior to filing the Original Complaint, he had
determined that the home was owned by **Mr. Petty**, making it "reasonable to
assume that – at the very least – the parties, as husband and wife, are both domiciled
in New York" (Dkt. No. 41-1, at ¶¶ 14-15);

b.     Even his claim about Mr. Petty's ownership of the home was a post-hoc fraudulent
excuse because (a) the Original Complaint, filed on August 13, 2021, alleged that
"Defendant Minaj and Petty are both residents of California" (Dkt. No. 1, at ¶ 8),
(b) he wrote to the Court on August 31, 2021, asking for an extension of time to
serve the summons and complaint because Ms. Maraj's and Mr. Petty's "home
address is not publicly listed" (Dkt. No. 7), and (c) his September 2, 2021 Amended

Complaint alleged that Ms. Maraj and Mr. Petty were also domiciled in California (Dkt. No. 8, at ¶ 5); and

c.  On November 5, 2021, I served Mr. Blackburn with a Rule 11 motion which put him on notice that ownership of real property in New York does not create personal jurisdiction unless there is a relationship between the property and the plaintiff's claim for relief.  (*See* Memorandum of Law attached as part of Exhibit 11 hereto, at 15)

45.  **Third**, Mr. Blackburn could not possibly have believed that Ms. Maraj operated "Queen Radio" out of Queens merely because the name includes the word "Queen" (*see* Blackburn MOL, at 10) – particularly because a five-minute internet search reveals that (a) "Queen" was the name of Ms. Maraj's 2018 studio album (*see* Exhibit 13 hereto), and (b) "Queen Radio" was a podcast hosted by Ms. Maraj from Los Angeles.[7]  This absurd argument demonstrates that Mr. Blackburn is desperately trying to provide an alternative explanation for his dismissal of the case as against Ms. Maraj.  Moreover, on November 5, 2021, I put Mr. Blackburn on notice that even if Ms. Maraj did operate a business in New York, it would not provide a basis for personal jurisdiction under CPLR 302(a)(1) because Ms. Hough's claims for relief were unrelated to any business operated by Ms. Maraj. (*See* Memorandum of Law attached as part of Exhibit 11 hereto, at 9)  Hence, he could not possibly have continued to maintain the case in New York for this reason

46.  **Fourth**, Mr. Blackburn also could not possibly have continued to believe as of January 2022 that jurisdiction could be predicated upon Ms. Maraj's purported ownership of Pink Friday Films, Inc. (*see* Blackburn MOL, at 10) because, as with Queen Radio, he was on notice as

---

[7]     *See* https://www.youtube.com/watch?v=BwSdoUTNYPk.

of November 5, 2021 that the operation of a business unrelated to the claims made by Ms. Hough would not subject Ms. Maraj to the Court's jurisdiction. Moreover, Mr. Blackburn has misrepresented the facts because the New York Secretary of State's website shows that Pink Friday Films is a Delaware Corporation which is operated from California, and which has no New York Office. (Exhibit 14 hereto) Rather, the New York address listed for the company is that of its agent for service of process. To be clear, I am not contending that Mr. Blackburn should be sanctioned because he read a document too quickly. Rather, he should be sanctioned because he has falsely claimed that he relied upon Ms. Maraj's ownership of Pink Friday Films in concluding that the Court had personal jurisdiction over her.

**WHEREFORE**, for the foregoing reasons, together with those urged in Movants' moving papers, your Declarant prays for Order sanctioning Mr. Blackburn pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

Executed on April 11, 2022 in the State of Connecticut, Fairfield County.

_____
JUDD BURSTEIN

21