EXHIBIT 11

**Judd Burstein**

| | |
|---|---|
| **From:** | Judd Burstein |
| **Sent:** | Friday, November 5, 2021 5:12 PM |
| **To:** | Tyrone Blackburn; Steven Gordon |
| **Cc:** | Steven D. Isser; Peter B. Schalk; Emily Finestone; Victor Weberman |
| **Subject:** | Hough v. Maraj, Et al., 21-civ-04568 |
| **Attachments:** | Sanctions Notice of Motion.pdf; Sanctions MOL.pdf |

Please see the attached.

Judd Burstein

Judd Burstein, P.C.

260 Madison Avenue

15th Floor

New York, New York 10016

(212) 974-2400

(212) 974-2944 (Fax)

(917) 687-2981 (Cell—Best number)

**MY APOLOGIES IN ADVANCE FOR ANY TYPOGRAPHICAL AND/OR GRAMMATICAL ERRORS.  I AM A TERRIBLE TYPIST AND PROOFREADER – PARTICULARLY WHEN I AM DRAFTING AN EMAIL UNDER TIME PRESSURE.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JENNIFER HOUGH,

                *Plaintiff*,

         -- against--

ONIKA TANYA MARAJ, AKA ("NICKI
MINAJ") and KENNETH PETTY, AKA
("ZOO"),

             *Defendants*.
--------------------------------------------------------X

Docket No. 21-cv-04568-ENV-JRC

**<u>NOTICE OF MOTION</u>**

**SIRS**:

       **PLEASE TAKE NOTICE** that, after the expiration of the time period prescribed by Fed. R. Civ. P. 11(c)(2), Defendant Onika Tanya Maraj ("Defendant") will move this Court for an Order granting sanctions against Plaintiff Jennifer Hough's ("Plaintiff") counsel, Tyrone A. Blackburn, Esq., because the September 2, 2021 Amended Complaint (Doc. No. 8) ("Amended Complaint") contains claims and other legal contentions which are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

       The grounds for this motion are that Plaintiff's assertions of personal jurisdiction as to Defendant, as well as Count V of the Amended Complaint, are frivolous within the meaning of Rule 11(b)(2) for the reasons set forth in the accompanying draft Memorandum of Law.

Dated:  New York, New York
        November 5, 2021

                                         Yours, etc.,

                                         JUDD BURSTEIN, P.C.

                                         By:  /s/ Judd Burstein
                                              Judd Burstein (JB-9585)
                                         260 Madison Avenue, 15th Floor
                                         New York, New York 10016
                                         Tel.: (212) 974-2400
                                         Fax: (212) 974-2944
                                         jburstein@burlaw.com
                                         *Attorneys for Defendant Onika Tanya Maraj*

2

Defendant Onika Tanya Maraj ("Defendant") submits this Memorandum of Law in support of her motion seeking sanctions against Plaintiff Jennifer Hough's ("Plaintiff") counsel, Tyrone A. Blackburn, Esq., pursuant to Fed. R. Civ. P. 11.[1]

## INTRODUCTION

This case is a disgrace -- filed by a lawyer who, in pursuit of some cheap publicity, rushed to file a pleading asserting outlandishly false allegations against Defendant. Regrettably, it is too early in this proceeding to seek sanctions against Plaintiff and her counsel for their irresponsible and false factual allegations because that would require the Court to make evidentiary findings. However, Plaintiff's counsel's unquestionable failure to research basic principles of law -- most of which any first-year lawyer should know without research -- can be resolved now with respect to the issues of personal jurisdiction and one of the three Claims for Relief asserted against Defendant in the Amended Complaint (Exhibit A to the accompanying Declaration of Judd Burstein ("Burstein Dec.")).[2]

**No lawyer who took just a few hours to conduct rudimentary legal research could possibly represent to the Court that the Amended Complaint's assertion of personal**

---

[1]     As of the date on which this motion was served, Defendant is seeking sanctions only against Tyrone Blackburn because he was the only lawyer appearing for Plaintiff at the time that the Amended Complaint was filed.  No sanctions are sought against his co-counsel, Steven Gordon, because he entered his appearance in this case after the filing of the Amended Complaint.  However, it may well be that a subsequent submission arguing for the sufficiency of the Amended Complaint may expose Mr. Gordon to Rule 11 sanctions.  Should that occur, Defendant will file a separate Notice of Motion.

[2]     We are not seeking sanctions at this point for the other two other Claims for Relief asserted against Defendant (Amended Complaint, Counts VI and VII) because, due to the confusing and self-contradictory nature of her pleading, we do not understand what Plaintiff she is actually alleging.  Hence, we cannot determine whether these Claims for Relief are sanctionable until, if this case goes forward, we receive Plaintiff's response to the motion to dismiss which we will be filing.

jurisdiction (necessary for a default judgment) and Count V thereof "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law...." Fed. R. Civ. P. 11(b)(2) **Indeed, the Amended Complaint bears far more resemblance to a pleading drafted by a** *pro se* **plaintiff than it does work of a lawyer paying heed to his Rule 11 obligations**.

This case is putatively founded upon Defendant Kenneth Petty's ("Mr. Petty") 1995 conviction for an attempted rape of Plaintiff, which Plaintiff alleges was an actual rape which took place in 1994. In fact, Plaintiff's true target is Defendant, a hugely successful and famous recording artist **who was only 12 years old in 1994** and who obviously had no involvement in anything Mr. Petty may have done 27 years ago.[3] Rather, Defendant has been sued by Plaintiff for the "crime" of being a rich celebrity -- capable of paying a judgment -- who fell in love with and married Mr. Petty.

The truth here is that when Plaintiff learned that Defendant had married Mr. Petty in 2019, she almost immediately concocted a get-rich scheme. She then found a lawyer who was willing to eschew his professional obligations in favor of the media attention which comes from suing one of the must successful and famous recording artists in the world -- apparently believing he could exploit what he mistakenly assumed was Defendant's fear of negative publicity.

---

[3] While this motion necessarily focuses in part upon the significant distinctions between the allegations against Defendant and the allegations against her husband, Defendant does not believe that Plaintiff's allegation about the alleged events in 1994 are true. In fact, she has no doubt that her husband is telling the truth in claiming that his encounter with Plaintiff was consensual and that, as a scared 16-year-old from a poor neighborhood, he pleaded guilty because he was too afraid of a lengthy sentence. Unfortunately, his story is all too familiar in our minority communities.

For example, what other inference can one reasonably draw from the following allegations in the Amended Complaint about events alleged to have transpired **after** Plaintiff was allegedly raped in 1994:

a.   She "was constantly beaten and verbally abused in the street and her home [by unnamed people] because everyone wanted her to drop the charges against Petty." (September 2, 2021 Amended Complaint (Doc. No. 8) ("Amended Complaint"), annexed as Exhibit A to the Declaration of Judd Burstein ("Burstein Dec."), at ¶ 70);

b.   On the same day Mr. Petty pleaded guilty, she "was beaten at home" because she had not convinced the Court to drop the charges against Mr. Petty.  (*Id.*, at ¶ 74);

c.   Thereafter, Plaintiff was subjected to "constant beating, and verbal abuse at home," causing her to run away from New York and move to Florida to live with her uncle, "whom she thought would protect her."  (*Id.*, at ¶ 75);

d.   Instead, **her uncle raped her**, causing her to move out of his home.  (*Id.*, at ¶ 76);

e.   After the rape:

Plaintiff was mentally and emotionally destroyed and attempted to find value and kindness in anything she could—partying, drugs, living in the streets, in and out of shelters. Plaintiffs' (*sic*) self-worth was at zero, her emotions were empty, and she was lost.

Plaintiff moved around a lot because she was too afraid to go back to New York for fear of someone recognizing her. Plaintiff had four children, numerous failed relationships, and never knew a true home in her entire life.

(*Id.*, at ¶¶ 77-78);

f.   By 2016, Plaintiff had turned her life around and married.  "She was finally beginning to learn to be happy and love herself."  (*Id.*, at ¶ 79);

3

g.      In November of 2018, she learned from the internet that Defendant and Mr. Petty "were dating." (*Id*., at ¶ 81);

h.      Thereafter, also in November of 2018, Defendant, **not referring to Plaintiff by name**, responded to a social media "comment," by stating "'Kenny was 15, she was 16 and, in a relationship, but go awf [off] Internet.'" (*Id*., at ¶ 82);

i.      As a result of this single comment, Plaintiff decided to **voluntarily identify herself publicly** by engaging in a YouTube interview so that she could tell "her side of the story." (*Id*., at ¶ 83);

j.      According to the Amended Complaint, nothing occurred during the ensuing year until November 2019, when Defendant allegedly stated on her radio show -- "that Petty was 15 years old but now added that he was 'wrongly accused,' 'he did not have bail money,' and said that Plaintiff had 'written a letter recanting her statement' but would face 90 days in jail if Plaintiff had done so – which was all false."[4] (*Id*., at ¶ 84); and

k.      The Amended Complaint makes clear that **Defendant did not mention Plaintiff's name during this broadcast** because it alleges that "[t]hese statements by Defendant Minaj put social media in a frenzy trying to figure out who Plaintiff was...." (*Id*., at ¶ 86)

Hence, as of November 2019, Plaintiff had not sued Mr. Petty, her family or her uncle. To the contrary, she was married and "beginning to learn to be happy and love herself."

---

[4]     The proof will show that, other than perhaps not having written an actual letter (about which she may have been mistaken), the rest of the statements attributed to Defendant in Paragraph 84 of the Amended Complaint are true.

**However, there was a crucial event that Plaintiff has left out of her chronology**: the fact that, on October 19, 2019, Defendant announced that she had married Mr. Petty. (Exhibit B to the Burstein Dec.) For it was only after she learned of the marriage that Plaintiff realized that she had a potential deep pocket in Defendant which she was intent upon exploiting.[5]  And it was only then -- **27 years after her encounter with Mr. Petty** -- that she suddenly decided that someone must take responsibility for the emotional injuries she claims to be suffering:

Was it her uncle, who engaged in incest by raping her?

Was it her family for having beaten and abused her?

Was it any of the people who undoubtedly hurt her during her years of "partying, drugs, living in the streets, in and out of shelters?"

Indeed, was it even Mr. Petty, whom she did not pursue for 27 years -- plainly because she did not believe he had any money?

 **Of course not.**

Instead, Plaintiff claims that the true villain here is Defendant, someone with whom she spoke only once at her (Plaintiff's) request but who just happens to be the only person of means in this drama. If this case goes forward, the proof will show that, in pursuit of her attempt at a "hold-up" of Defendant, Plaintiff has not hesitated to lie and her counsel has failed to conduct even a

---

[5]        If this case moves forward, Defendant will prove, *inter alia*, that (a) it was Plaintiff who sought out Defendant who then, out of concern her for husband, agreed to speak with her on the telephone, (b) Defendant never "offered to fly Plaintiff to Los Angeles," and (c) she never asked, much less directed **anyone** to threaten Plaintiff or offer her a bribe to convince her to retract her allegation against Mr. Petty. Indeed, **when Plaintiff, in a clear effort to extract money from Defendant during their single telephone conversation, told Defendant that Mr. Petty's problems were also "her problems," Defendant vigorously disagreed, emphatically stating that her husband was "on his own" when it came to Plaintiff**.

rudimentary investigation of the facts.  One particularly egregious example of her mendacity and her attorney's irresponsibility is her allegation, at Paragraphs 108-09 of the Amended Complaint, that the United States Marshals Office "offered [her] witness protection."  As her counsel would have learned if he had merely undertaken a Google search for "qualifications for witness protection program" and then clicked on the link to the "Witness Security" section of the United States Justice Department Manual (the first ".gov" link at the top of the search results), Plaintiff is not eligible for witness protection, which the Marshals Office has no authority to grant in any event.  (*See* Exhibit C to the Burstein Dec.)

To be clear, Defendant is not engaging in "victim shaming" here or remotely suggesting that **if her allegations are true**, Plaintiff has not suffered greatly.  Further, while she believes Mr. Petty's insistence that his encounter with Plaintiff was consensual, Defendant is not contending that he should be immune from liability if he did what Plaintiff claims he did.  But that is an issue for Mr. Petty; **not Defendant**.  She has been named as a defendant in this case for the wrong reasons: as a potential source of money and as a public relations vehicle for her counsel.

In making this point, Defendant is also not suggesting that an attorney's motives have to be pure.  The ability to collect on a judgment is an important factor for an attorney to consider in deciding whether to take on a client.  Also, there is nothing inherently wrong with a lawyer considering the public relations benefits which might inure to his benefit if he signs on as counsel.  But those considerations must be secondary considerations taken into account **after** a lawyer concludes that he or she can move forward consistent with his or her Rule 11 obligations.  That plainly did not happen here.

## STATEMENT OF THE FACTS

The limited facts relevant to a determination of this motion are set forth in the Burstein Dec.

## ARGUMENT

## POINT I

## THE GOVERNING RULE 11 LAW

Rule 11(c)(2) provides:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Defendant has met these procedural requirements because (a) this motion is being filed separately from any other motion in the case, (b) it was served upon counsel for Plaintiff on November 5, 2021 (Burstein, Dec., at ¶ __), more than 21 days prior to its filing, and (c) a pre-filing version of this Memorandum of Law (Exhibit D to the Burstein Dec.) was served upon Plaintiff's counsel along with the Notice of Motion.

Turning to the test for the sanctions sought on this motion, "'[a]n argument constitutes a frivolous legal position for purposes of Rule 11[(b)(2)] . . . if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands.'" *Benistar Admin Servs. v. Wallach*, 2021 U.S. Dist. LEXIS 62954, at *9-10 (E.D.N.Y. Jan. 13, 2021) (Citation omitted).

## POINT II

## PLAINTIFF'S PERSONAL JURISDICTION ALLEGATIONS ARE FRIVOLOUS

Notwithstanding that a plaintiff is not obligated to affirmatively plead personal jurisdiction in a complaint, Plaintiff's counsel has nonetheless chosen to do so.  Unfortunately, much like a *pro se* plaintiff instead of a responsible member of the Bar, he has adopted a "throw it against the wall and see what sticks" approach completely untethered to any of the facts alleged in the Amended Complaint.  The frivolity of these personal jurisdiction allegations is palpable.[6]

"In a diversity action, personal jurisdiction over a defendant is determined by the law of the forum in which the Court sits."  *Paciotti S.P.A. v. Dellamoda, Inc.*, 2019 U.S. Dist. LEXIS 217763, at *4 (S.D.N.Y. Dec. 13, 2019).  Hence, since the Amended Complaint alleges that Defendant is both a resident and domiciliary of California (Exhibit A to the Burstein Dec., at ¶¶ 5, 12), CPLR 302 governs here.

The Amended Complaint's allegations of personal jurisdiction appear to be an effort to paraphrase -- sometimes erroneously -- portions of CPLR 302:

> This Court has personal jurisdiction over Defendants under and consistent with the Constitutional requirements of Due Process in that Defendants, acting directly or through their agents, intermediaries, or apparent agents, committed one or more of the following:
>
> i.       The transaction of any business within the state;

---

[6]       Defendant has sought to carefully distinguish assertions of jurisdiction which are frivolous as a matter of law from the **facts** demonstrating that Defendant is not subject to the Court's personal jurisdiction.  Hence, if Plaintiff and her counsel do not withdraw the Amended Complaint, Defendant will offer indisputable proof that, *inter alia*, (a) she has not lived in New York for many years, (b) she has a California Driver's License, (c) she files California tax returns, (d) she does not own any businesses which are registered to transact business in New York, and (e) she does not own real property in New York.

ii.    The making of any contract within the state;

iii.   The commission of a tortious act within this district...; and

iv.    The ownership, use, or possession of any real estate situated within this state.

(Amended Complaint, at ¶ 3)[7]

As we now discuss, these allegations of personal jurisdiction are objectively frivolous as a matter of law.

## A.    "THE TRANSACTION OF ANY BUSINESS WITHIN THE STATE"

"[T]ransact[ing] any business within [New York State]" does **not** confer jurisdiction under CPLR 302(a)(1), and Plaintiff's claim to the contrary is frivolous.  "It is not enough that a non-domiciliary defendant transact business in New York to confer long-arm jurisdiction. In addition, the plaintiff's cause of action must have an 'articulable nexus' or 'substantial relationship' with the defendant's transaction of business here...."  *D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298-99 (2017).  The Amended Complaint does not allege that Defendant has transacted any business in New York, let alone any business that has a nexus with any cause of action alleged therein.

## B.    "THE MAKING OF ANY CONTRACT WITHIN THE STATE"

Plaintiff's assertion of jurisdiction based upon "[t]he making of any contract within the state," is even more frivolous than her first jurisdictional allegation because CPLR 302 has no such

---

[7]    The Amended Complaint alleges that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, which is both nonsensical and a further demonstration of Plaintiff's counsel's abject failure to meet his Rule 11 obligations.  However, we believe that the Amended Complaint does allege sufficient facts to permit the Court to piece together a basis for diversity jurisdiction.

provision.  In any event, the Amended Complaint does not allege that Defendant ever "made" such a contract, much less one that bears any relationship to any cause of action alleged by Plaintiff.

## C.   **"THE COMMISSION OF A TORTIOUS ACT WITHIN THIS DISTRICT"**

Consistent with our obligation to accurately present the governing law, we first note that Plaintiff's counsel has placed too much of a burden upon his client by alleging that she has the burden of demonstrating a "tortious act within this **district**...."  (Emphasis supplied)  Out of an excess of caution, however, we will assume that Plaintiff was inartfully seeking to invoke CPLR 302(a)(2), which confers jurisdiction over a person who "commits a tortious act within the state."

Even if read generously, the Amended Complaint is frivolous because "CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *see Aaron Consulting Co., LLC v. Snap Sols. LLC*, 2018 U.S. Dist. LEXIS 163284, at *16-17 (E.D.N.Y. Sep. 20, 2018) ("'Section 302(a)(2) has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act.'") (Citation omitted).

Here, the closest the Amended Complaint comes to alleging that Defendant committed a tort within the State is the allegation that "[i]n 2018, Defendant Minaj posted that she was doing a turkey giveaway in Queens, New York, on Rockaway Blvd. and 147th street."  (Amended Complaint, at ¶ 80)  Putting aside the fact that giving away turkeys is not a tort, tweeting about it from an undisclosed location is not even an allegation that **any** conduct took place in New York.

10

Undoubtedly, Plaintiff will seek to rely upon the fact that jurisdiction under CPLR 302 can also be predicated upon the acts of a defendant's agent. However, even if the Amended Complaint can be read as clumsily relying upon an agency theory, it is still frivolous.

Counts V and VI of the Amended Complaint each allege that "Defendant's associates approached Plaintiff's family members in New York." (Amended Complaint, at ¶¶ 160, 168) This is the sole agency allegation in these Counts: that (a) unnamed people, (b) purportedly acting as Defendant's agents, (c) "approached" unnamed members of Plaintiff's family, (d) at some unspecified point in time. The notion that this is a non-frivolous allegation of a tort in New York is bewildering:

**First**, jurisdiction based upon the conduct of an agent requires far more than an allegation of conduct by unnamed "associates" of a defendant. Rather, a plaintiff must allege that "'the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018). The Amended Complaint cannot be rationally read as even implicitly making such an allegation.

**Second**, as best we can tell, Plaintiff's claim that Defendant's purported agents "approached Plaintiff's family members in New York" is tied to the allegation in Paragraph 93 of the Amended Complaint which states that "two people reached out to a family member stating there is an offer of $500,000.00 from Defendant Minaj if Plaintiff wrote a letter recanting her rape claim against Petty." Count VII of the Complaint describes this alleged encounter as "Bribery of Plaintiff by approaching the Plaintiff's family members in New York, offering $500,000.00 in exchange for Plaintiff

11

recanting her 1994 rape claim against Defendant." (*Id.*, at ¶ 175(ii))  For a number of reasons, any assertion of jurisdiction under CPLR 302(a)(2) based upon this allegation is frivolous.

The supposed criminal "bribery" alleged by Plaintiff is not a tort under New York law because a "private right of action may [only] be implied [into a statute] where the 'plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute[,] and the creation of such a right would be consistent with the legislative scheme.'" *Caul v. Petco Animal Supplies, Inc.*, 2021 U.S. Dist. LEXIS 184652, at *8 (E.D.N.Y. Sep. 27, 2021).  In the case of the crime of bribery, the recipient of a bribe or an offer of a bribe is plainly not "one of the class for whose particular benefit the statute was enacted" -- thereby precluding a tort claim for bribery under New York law.[8]

The conduct alleged by Plaintiff would not, in any event, amount to bribery under Article 215 of the Penal Law because:

a.    The crime of bribery requires proof of "*an agreement or understanding that (a) the testimony of such witness will thereby be influenced....*" *Matter of Simels*, 94 A.D.3d 108, 112 (1st Dep't 2012) (Emphasis in original).  Here, the Amended Complaint alleges that Plaintiff never entered in any such agreement or understanding with anyone;

---

[8]    If Plaintiff were alleging that Defendant's conduct amounted to commercial bribery in violation of Article 180 of the Penal Law, she might escape sanctions on this one point because there is a single outlier 22 year-old Fourth Department case, rejected by the First and Second Departments, as well as every federal court which has addressed the issue, holding that there is an independent tort of commercial bribery of a plaintiff's employee, or agent, etc. *Niagara Mohawk Power Corp. v. Freed*, 265 A.D.2d 938, 939 (4th Dep't 1999).  However, as discussed above, the Amended Complaint does not allege commercial bribery or the bribery of someone other than Plaintiff.

12

b.  Proof that the bribe recipient was "a witness or a person about to be called as a witness in any action or proceeding," Penal Law § 215.00, is also required.  Here, apart from the underlying 1995 prosecution of Mr. Petty, the only "action or proceeding" referenced in the Amended Complaint is a prosecution against him "for failing to register as a sex offender in California" in violation of 18 U.S.C. § 2250. (Amended Complaint, at ¶ 87)  As she acknowledges in the Amended Complaint, at ¶ 160, n.7, Plaintiff could not possibly have been "a witness or a person about to be called as a witness" in that proceeding, let alone a proceeding in New York, because Mr. Petty's guilt or innocence of the underlying crime is not a defense to a charge under 18 U.S.C. § 2250;

c.  All torts recognized in New York require proof that the defendant's wrongful conduct was the proximate cause of actual damages suffered by the plaintiff.  *See, e.g.*, *Cisse v. S.F.J. Realty Corp.*, 256 A.D.2d 257, 258 (1st Dep't 1998).  Here, it is inconceivable that this supposed unsuccessful offer of a bribe could have proximately caused Plaintiff any cognizable damages; and

d.  Plaintiff's failure to allege causation is further exacerbated by the Amended Complaint's implicit admission that any damages suffered by Plaintiff in this regard were not caused by Defendant's purported agents.  Rather, the Amended Complaint, at ¶ 93, alleges that Plaintiff's brother told her during a telephone call that **a different member of their family** had been offered a bribe.  Plaintiff then "hung up, distraught that Defendant Minaj's (*sic*) instructed her associates to contact her brother, and her brother would even relay such a message." (*Id*.)  In other words,

13

any damages purportedly suffered by Plaintiff came at the hands of her brother and his hearsay account of what supposedly had occurred.  Indeed, interpreting the Amended Complaint in this matter is unduly generous to Plaintiff because she does not allege that Defendant instructed her associates to reach out to her brother. Rather, Plaintiff  is, at best, alleging that she interpreted her brother's statement as implying something other than what he allegedly told her.

**Third**, and finally, Count VII of the Amended Complaint, which seeks damages for intentional infliction of emotional distress, alleges that Defendant "[i]ntimidat[ed] Plaintiff's family in New York with threats of physical bodily harm if Plaintiff did not recant her 1994 rape claim. These threats resulted in Plaintiff's moving out of Georgia to a remote location in the State of Florida."  (Amended Complaint, at ¶ 175(v))

However, the body of the Amended Complaint alleges that Plaintiff moved from Georgia to Florida solely because an unidentified person asked her daughter, **at an event in Georgia**, whether she knew Mr. Petty.  (*Id*., at ¶112)  It was only "**[a]fter this incident** [that] Plaintiff **again** feared for her and her family's safety, so she moved again, this time to Florida." (*Id*., at ¶ 113) (Emphasis supplied)

In any event, this conclusory allegation falls far short of meeting Plaintiff's pleading burden under Fed. R. Civ. P. 8(a).  *See Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, 2018 U.S. Dist. LEXIS 114679, at *41 (E.D.N.Y. July 6, 2018) ("[P]laintiff's conclusory allegation that Parker 'was undoubtedly using his physical size and imposing presence to intimidate the Plaintiff' is insufficient.").

D.      **"THE OWNERSHIP, USE, OR POSSESSION OF ANY REAL ESTATE SITUATED WITHIN THIS STATE"**

Plaintiff's allegation that the Court has jurisdiction over Defendant based upon "[t]he ownership, use, or possession of any real estate situated within this state" is also frivolous. Jurisdiction under CPLR 302(a)(4) is available only where a claim for relief "directly implicate[s]" a defendant's "ownership, possession or use" of real property which is alleged as the predicate for jurisdiction. *See Marie v. Altschuler*, 30 A.D.3d 271, 272 (1st Dep't 2006). Here, Plaintiff does not even identify any real property, much less any property which bears any relationship to the claims for relief asserted in the Amended Complaint.

## POINT III

## COUNT V OF THE AMENDED COMPLAINT IS FRIVOLOUS

Count V of the Amended Complaint seeks damages under both California and Georgia law against both Defendants for "Harassment and Witness Intimidation."  It is frivolous and sanctionable.

Evidencing a failure to research basic choice of law principles, Plaintiff's counsel appears to believe that plaintiffs have the right to pick and choose from a smorgasbord of different States' laws which he or she believes may be available.  He is wrong because a "federal district court sitting in diversity applies the substantive law of the forum state, including that state's choice of law rules." *Am. Empire Surplus Lines Ins. Co. v. Concord Restoration*, 2021 U.S. Dist. LEXIS 141338, at *15, n.14 (E.D.N.Y. July 28, 2021).  Here, as explained below, that would be Georgia.

> The [New York] default rule for conduct-regulating tort rules is *lex loci delicti* – to apply the law of the place of the tort.  The logic of the rule is straightforward: generally, "that jurisdiction has the greatest interest in regulating behavior within its borders...."  New York courts have determined that when the "conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong

is considered to be the place where the last event necessary to make the actor liable occurred...."  Thus, as plaintiffs contend, the law of the jurisdiction in which a plaintiff suffers loss from fraud would usually apply.

*AHW Inv. P'ship v. CitiGroup Inc*., 980 F. Supp. 2d 510, 522-23 (S.D.N.Y. 2013).

Plaintiff alleges that she "felt the bulk of Defendant's action in the states of Georgia and New York." (Amended Complaint, at ¶ 6)  However, the body of the Amended Complaint makes it clear that the only harm which Plaintiff alleges she suffered in New York was in 1994.  She does not even allege that she has been present in New York during the period of time, commencing in 2018, in which Defendant supposedly wronged her.  Rather, Plaintiff alleges that she lived in Georgia from 2016 until she moved to Florida in or about October 2020.  (Amended Complaint, at ¶¶ 79, 112)  Hence, Plaintiff's allegations concerning California law are irrelevant because only Georgia law applies here.

Count V of the Amended Complaint seeks damages against Defendant for "Harassment and Witness Intimidation" pursuant to the "Georgia's harassment statute."[9]  However, there is no applicable "harassment statute" in Georgia.  There is a criminal offense of "stalking," which is committed when a defendant "follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."  O.C.G.A. § 16-5-90.  But there is no private right of action under that statute.

Georgia law has long held that a "[v]iolation of a criminal statute does not always give rise to civil liability....  [B]ut, civil liability may be authorized where the legislature has indicated a

---

[9]       Even though he included the term in the Amended Complaint, Plaintiff acknowledges that "[t]here is no civil cause of action for witness intimidation."  (Amended Complaint, at p. 21, n.6)

strong public policy for imposing a civil as well as criminal penalty for a violation of a penal statute." *Key v. Grant*, 238 Ga. App. 818 (1991). However, "the indication that the legislature meant to 'impos[e] a civil as well as criminal penalty' must be found in *the provisions of the statute* at issue, not extrapolated from the public policy the statute generally appears to advance." *Anthony v. Am. Gen. Fin. Servs.*, 287 Ga. 448, 455 (2010) (Emphasis in original).

Consistent with these principles of law, the Court in *Troncalli v. Jones,* 237 Ga. App. 10, 12 (1999), held that there is no private right of action under § 16-5-90:

> The enactment of O.C.G.A. § 16-5-90, which defines the crime of stalking, did not automatically create a tort of stalking. It is well settled that "the violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is injured thereby...."
>
> * * *
>
> Here, although O.C.G.A. § 16-5-90 establishes the public policy of the state, nothing in its provisions creates a private cause of action in tort in favor of the victim.

In *Murphy v. Balajan*, 282 Ga. 197 (2007), the Georgia Supreme Court held that a different penal statute did not give rise to a private cause of action, and explicitly adopted *Troncalli* in its opinion:

> Where the breach of a statutory duty can result in criminal liability, the statute is penal in nature and "'the violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is [purportedly] injured thereby....'" "[C]ivil liability may be authorized where the legislature has indicated a strong public policy for imposing a civil as well as criminal penalty for violation of a penal statute...." There is no indication that the legislature intended to impose civil liability in addition to the criminal sanctions set forth in a statute where, as here, nothing in the provisions of the statute creates a private cause of action in favor of the victim purportedly harmed by the violation of the penal statute. ***Troncalli v. Jones*, 237 Ga. App. 10 (1)(514 SE2d 478)(1999)(enactment of criminal stalking statute did not create a tort of stalking); Vance v. T. R. C., 229 Ga. App. 608 (1) (a) (494 SE2d 714) (1997)**....

*Id*., at 201 (Emphasis supplied).

Further, the United States District Court for the Northern District of Georgia relied upon *Troncalli* in also holding that there is no private right of action under § 16-5-90. *Martin v. Lenbrook Square in Buckhead Ret. Cmty.*, 2005 U.S. Dist. LEXIS 57334, at *9 (N.D. Ga. Feb. 28, 2005).

Accordingly, it will be impossible for Plaintiff's counsel to show that Count V of the Amended Complaint is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

## CONCLUSION

For the foregoing reasons, together with those set forth in the Burstein Dec., the Court should grant Defendant's motion for sanctions against Plaintiff's counsel.

Dated:  New York, New York
        November 5, 2021

Respectfully submitted,

JUDD BURSTEIN, P.C.


By:    /s/ Judd Burstein
        Judd Burstein (JB-9585)
    260 Madison Avenue, 15th Floor
    New York, New York 10016
    Tel.: (212) 974-2400
    Fax: (212) 974-2944
    jburstein@burlaw.com
    *Attorneys for Defendant Onika Tanya Maraj*

18