EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER HOUGH,<br><br>     Plaintiff,<br><br> -against<br><br><br>STEVEN NICHOLIS GORDON,<br>an individual,<br>TSYNGAUZ & ASSOCIATES, P.C.,<br>       Defendants. | **COMPLAINT**<br>Civil Action No. 22-3978<br><br>**JURY DEMANDED** |

  Plaintiff Jennifer Hough ("Hough" or "Plaintiff") brings claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and negligent hiring/retention against Defendant Steven Nicholis Gordon ("Gordon," "Defendant Gordon") and Defendant Tsyngauz & Associates, P.C. ("Corporate Defendant") (collectively "Defendants"), and now alleges as follows:

1.  Plaintiff's claims include, but are not limited to, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligent hiring/retention by Defendants.

2.  Plaintiff seeks to hold Defendants liable under various legal doctrines, including vicarious liability, strict liability, respondent superior, aiding, and abetting liability, and other grounds.

## JURISDICTION AND VENUE

3.  This Court has personal jurisdiction over Defendants under and consistent with the Constitutional requirements of Due Process in that Defendants, acting directly or through their agents or apparent agents, committed one or more of the following:

 a) The transaction of any business within the state;

 b) The making of any contract within the state;

 c) The commission of a tortious act within this district; and

 d) The ownership, use, or possession of any real estate situated within this state.

 e) The Court has supplemental jurisdiction over Plaintiff's related claims under state and local law under 28 USC § 1367(a).

 f) Plaintiff is a resident of the Carolinas, while Defendant's both reside in New York.

1

g) Damages far exceed the $75,000.00 threshold for diversity jurisdiction.

## PARTIES

4. Hough is a resident of the Carolinas and retained the legal services of Defendant's, who are both registered and licensed to practice law in the State of New York.

5. Gordon is a licensed attorney for Corporate Defendants New York-based law firm.



6. Plaintiff hired Gordon to represent Plaintiff in the following case: Hough v. Maraj et al., 1:21-cv-04568-ENV-JRC ("the Case").

7. Corporate Defendant is a commercial litigation firm located in New York. Corporate Defendant assumed the role of respondent superior and is the supervising firm of Gordon.

8. Gordon has been employed with Corporate Defendant since September 2021 and is currently employed by them.

9. The defendants are both domiciled in New York.

## FACTUAL ALLEGATIONS

### Steven N. Gordon Violated His Ethical Duties To Plaintiff Hough

10. Mr. Gordon joined the case on or about October 2021 after Corporate Defendant met with Plaintiff and approved Gordon entering the Case.

11. Upon entering the case, Mr. Gordon signed a co-counseling agreement with Tyrone A. Blackburn, Esq ("Mr. Blackburn").

12. Plaintiff Hough signed the co-counseling agreement.

13. Upon information and belief, Gordon had a drug addiction at the time he joined the case.

2

14. Plaintiff and Mr. Blackburn were not privy to Gordon's drug addiction when Gordon joined the case in October 2021.

15. Upon information and belief, Corporate Defendant knew or should have known of Gordon's drug addiction when Gordon joined the case, yet they failed to warn or inform Plaintiff of this fact.

16. Mr. Blackburn learned of Gordon's drug addiction on March 10, 2022, approximately five months after Gordon joined the case. Gordon's wife, Ciardone Franklin-Gordon ("Franklin-Gordon"), informed Mr. Blackburn of Gordon's drug addiction during dinner at Maiella, located in Long Island City.

17. Upon information and belief, Franklin-Gordon felt it necessary to provide Mr. Blackburn context surrounding Gordon's erratic and questionable behavior.

18. Throughout Gordon's representation of Plaintiff, Gordon engaged in erratic and unethical behavior.

19. Gordon's actions include but are not limited to: Incessantly calling Plaintiff, having secret conversations with opposing counsel, and failing to turn over the details of his conversation with the opposing counsel; intentionally leaking private text communications with Plaintiff to Bloggers and social media users whom Gordon knew attack, harassed and threatened Plaintiff on a daily basis.

### Mr. Gordon's Unprofessional Communications With Plaintiff

20. Unbeknownst to Mr. Blackburn, Gordon called Plaintiff incessantly, crying and complaining about the harassing messages he was receiving from the fans of the Defendants in the case.

21. Upon information and belief, Gordon's calls were not limited to complaints concerning his hurt feelings; Gordon also disclosed unsolicited graphic details of his acts of adultery.

22. Upon information and belief, Gordon disclosed to Plaintiff that he was having an affair with a woman in Columbia, intended to divorce[1] his wife, and file for a Visa to bring his Columbian mistress to the United States.

---

[1] Upon information and belief, Gordon filed for divorce from Franklin-Gordon in Queens County family court in February 2022.

23. Gordon's incessant calls were even more problematic because Gordon was aware of the vulnerable mental and emotional state Plaintiff is in because of the actions of the Defendants in the case.

24. Upon information and belief, the sheer weakness Gordon displayed caused Plaintiff to forgo her healing process and assume the role of a mother figure or caretaker to pacify Gordon and provide him with the self-confidence he desperately lacked.

### Gordon Failed To Disclose Offers And Communications From Opposing Counsel To Plaintiff

25. According to Judd Burstein's ("opposing counsel") January 26, 2022, proposed sanction motion, opposing counsel and Gordon had several secretive conversations where opposing counsel provided Gordon with offers never disclosed to Mr. Blackburn or Plaintiff.

26. Opposing counsel wrote in the relevant part:

> "Mr. Burstein privately implores Mr. Gordon to convince Mr. Blackburn to abandon the effort to secure a Default Judgment against Ms. Maraj and offers not to seek any sanctions if they do so."

27. This offer was not presented to Mr. Blackburn or Plaintiff. Upon information and belief, Gordon's failure to disclose this offer was a deliberate act orchestrated by Gordon to harm Plaintiff's case.

28. In his January 26, 2022, proposed sanction motion, the opposing counsel went on to say,

> "After Mr. Gordon entered this case, he imparted some private information to Mr. Burstein (not disclosed on this motion) which suggested to him that he may have been unfair in his assessment of Mr. Gordon."

29. In footnote 10, the opposing counsel references Exhibit L, an email in which the opposing counsel "redacted to remove extraneous information which should remain private. Presumably, Mr. Gordon will not respond in a way that requires disclosure of presently redacted portions of the email correspondence"

### Gordon Refused To Provide Plaintiff With All Email And Text Communications With The Opposing Counsel

30. In forgoing his duty to disclose all matters to Plaintiff, Gordon has refused and continues to refuse to turn over the full detail of all communications he had with the opposing counsel throughout his involvement in this case.

4

31. As mentioned above, Plaintiff and Mr. Blackburn were unaware that Gordon had ongoing secret conversations with the opposing counsel concerning Plaintiff and Mr. Blackburn.

32. Upon information and belief, Gordon disclosed privileged information to the opposing counsel to selflessly secure a deal with the opposing counsel to avoid a sanctions motion.

### Gordon Violates New York State Unified Court Systems Rules Of Professional Conduct

33. Part 1200 of the New York State Unified Court System Rules of Professional Conduct, Rule 1.6. states as follows:

*Confidentiality of Information*

a) A lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person unless:

i. the client gives informed consent, as defined in Rule 1.0(j);

ii. the disclosure is impliedly authorized to advance the best interests of the client and is either reasonable under the circumstances or customary in the professional community; or

iii. the disclosure is permitted by paragraph b).

"Confidential information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a)protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c)information that the client has requested be kept confidential. "Confidential information" does not ordinarily include (i) a lawyer's legal knowledge or legal research or (i) information that is generally known in the local community or in the trade, field, or profession to which the information relates.

b) A lawyer may reveal or use confidential information to the extent that the lawyer reasonably believes necessary:

i. to prevent reasonably certain death or substantial bodily harm;

ii. to prevent the client from committing a crime;

iii. to withdraw a written or oral opinion or representation previously given by the lawyer and reasonably believed by the lawyer still to be relied upon by a third person, where the lawyer has discovered that the opinion or representation was based on materially inaccurate information or is being used to further a crime or fraud;

iv. to secure legal advice about compliance with these Rules or other law by the lawyer, another lawyer associated with the lawyer's firm, or the law firm;

v. (i) to defend the lawyer or the lawyer's employees and associates against an accusation of wrongful conduct; or (ii) to establish or collect a fee; or

vi. when permitted or required under these Rules or to comply with other laws or court orders.

c) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure or use o use of or unauthorized access to information protected by Rules 1.6, 1.9(c), or 1.18(b).

5

34. Upon information and belief, Gordon intentionally violated his ethical duties as detailed in Rule 1.6 to Plaintiff with the consent and knowledge of Corporate Defendant.

35. On multiple occasions, Defendant's engaged in secret conversations with the opposing counsel for the case.

36. Defendants have failed to reveal the details of said conversations and have consistently rejected requests by Plaintiff and Mr. Blackburn to turn over all written communication between him and the opposing counsel.

37. As a direct result of Defendant's actions, Plaintiff has suffered severe emotional distress, depression, PTSD, lost opportunities, and anxiety.

*Gordon intentionally Disclosed the contents of*
*Private Conversations and Case Strategy with Third Parties*

38. In addition to having secret conversations with the opposing counsel, Gordon intentionally disclosed the contents of a private text conversation between Plaintiff, Mr. Blackburn, and Gordon.

39. Gordon disclosed the contents of a private text conversation to bloggers, and social media users that he knew had a history of harassing, threatening, and intimidating Plaintiff.

40. Gordon knew that sharing privileged information about Plaintiff with these bloggers and social media users would be used to harm, intimidate, and harass Plaintiff – and they did.

41. During his representation of Plaintiff, Plaintiff provided Gordon and Mr. Blackburn with a list of bloggers and social media users that threatened, harassed, and intimidated Plaintiff.

42. Gordon intentionally contacted these bloggers and social media users and provided them with screenshots of Plaintiff's confidential text conversation, as well as details of Plaintiff's case strategy with the sole purpose of harming Plaintiff.

43. Gordon knew that sharing confidential information with bloggers and social media users was wrong, as evidenced by the following Instagram Message to one of the social media users Gordon intentionally disclosed confidential information to:



44. As evidenced by YouTube blogger "Messy Youtuber's" conversation post, she received a message "from group chat that Jennifer [Plaintiff] is in and she is telling what happened.  The only group chat that Plaintiff, Gordon, and Mr. Blackburn were on was the group chat Gordon intentionally revealed to bloggers and social media users:



45. The Messy Youtuber later added the full body of the conversation that was given to her by Gordon. On the post the Messy Youtuber writes "this is how you drop RECEIPTS that you been had":



46. Obviously, the "Receipts" referred to in paragraph 45 came directly from Gordon as it is a screenshot of the confidential text message conversation Gordon had with Plaintiff and Mr. Blackburn. This is evidenced by the fact that Gordon saved Plaintiff's number as "Jennifer Houghs (other number)."

47. Plaintiff was required to change her phone number multiple times throughout the duration of the case as a direct result of the death threats, harassment, and stalking she suffered due to the case.

48. In another post, the Messy Youtuber stated, "This is NOT what you want…. It's more from where that came from!!!!!!!." "#TEAMPETTY #REALRECEIPTS #WHATYOUGOT??!"



49. Paragraph 48 is a continuation of the post from Paragraph 45.

50. Once again, the "more from where that came from" is a clear indication that Gordon revealed additional confidential information to this blogger/ social media user of Plaintiff which has not been revealed yet.

51. Gordon knew the Messy Youtuber was one of the many bloggers and social media users Plaintiff identified as harassing, threatening, and intimidating her, yet he intentionally fed Messy Youtuber information to intentionally harm Plaintiff.

52. Corporate Defendant knew Gordon was engaging in these intentionally harmful acts, and did nothing to stop, or cure the harm Gordon visited upon Plaintiff.

## **Corporate Defendant Is Complicit With Gordons Actions**

53. Upon information and belief, Corporate Defendant encouraged and supported the behavior of Gordon.

54. After learning of Gordon's secret conversations with the opposing counsel, and his intentional failure to disclose to Plaintiff the details of those conversations, Corporate Defendant did not terminate, discipline, or require Gordon to turn over the details of those conversations or their written correspondences.

55. After learning that Gordon had disclosed screenshots of a text conversation between himself, Plaintiff, and Mr. Blackburn, Corporate Defendant did not terminate or discipline Gordon.

56. As a result of their negligence or sheer ignorance, Corporate Defendant miserably failed the responsibilities required of them according to Part 1200 of the New York State Unified Court System Rules of Professional Conduct, RULE 5.1, which states as follows:

### *Responsibilities of Law Firms, Partners, Managers, and Supervisory Lawyers*

a)  A law firm shall make reasonable efforts to ensure that all lawyers in the firm conform to these Rules.
   i.  (1) A lawyer with management responsibility in a law firm shall make reasonable efforts to ensure that other lawyers in the law firm conform to these Rules.
   ii.  (2) A lawyer with direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the supervised lawyer conforms to these Rules.
b)  A law firm shall ensure that the work of partners and associates is adequately supervised, as appropriate.  A lawyer with direct supervisory authority over another lawyer shall adequately supervise the work of the other lawyer, as appropriate.  In either case, the degree of supervision required is that which is reasonable under the circumstances, considering

      factors such as the experience of the person whose work is being supervised, the amount of work involved in a particular matter, and the likelihood that ethical problems might arise in the course of working on the matter.

c)  A lawyer shall be responsible for a violation of these Rules by another lawyer if:

   i.  the lawyer orders or directs the specific conduct or, with knowledge of the specific conduct, ratifies it; or

  ii.  the lawyer is a partner in a law firm or is a lawyer who individually or together with other lawyers possesses comparable managerial responsibility in a law firm in which the other lawyer practices or is a lawyer who has supervisory authority over the other lawyer; and

      1.  knows of such conduct at a time when it could be prevented, or its consequences avoided or mitigated but fail to take reasonable remedial action; or

      2.  in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated.

## COUNT I
### Against Defendant Gordon
### Intentional Infliction of Emotional Distress

57. Plaintiff repeats and realleges by reference all paragraphs above as though fully set forth herein.

58. To state a claim for intentional infliction of emotional distress, a plaintiff must plead: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993); see Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (outlining test for intentional infliction of emotional distress).  Frederick v. City of N.Y., No. 13-CV-897 (MKB), 2016 U.S. Dist. LEXIS 39828, at *81 (E.D.N.Y. March 25, 2016).

59. Defendant Gordon's extreme and outrageous conduct alleged in this Complaint, including but not limited to the intentional disclosure of privileged communications between Gordon and Plaintiff to bloggers and social media harassers of Plaintiff with the sole intent to harm, harass, and intimidate Plaintiff, was intentionally and maliciously committed with intent to deliberately inflict humiliation, mental anguish, and emotional and physical distress upon Plaintiff, and done in wanton and reckless disregard of such consequences to Plaintiff.

60. As a direct and proximate result of said extreme and outrageous conduct by Defendant Gordon,

12

Plaintiff did suffer humiliation, mental anguish, disassociation, suicidal ideation, and emotional and physical distress, and has been hurt and injured in her health, both mentally and physically, strength, activity, and her ability to lead an everyday life without mental anguish. All of which have caused, continue to cause and will continue to cause Plaintiff great mental and physical pain and suffering for the rest of her life.

61. As a result of such severe emotional and mental distress, Plaintiff has been generally, especially, and consequentially damaged in an amount to be established according to evidence.

62. Defendant Gordon's behavior toward Plaintiff was so outrageous as to exceed all reasonable bounds of decency.  Defendant Gordon knew with substantial certainty or should have known that his behavior would cause Plaintiff to be a victim of mental anguish, emotional distress, unwanted harassment, death threats, and suicidal ideation.

63. As Plaintiff's former counsel, Gordon knew with substantial certainty or should have known that his behavior would cause severe emotional distress to Plaintiff.  Gordon aided Plaintiff in securing the services of her therapist.

64. Gordon committed the infliction of emotional, physical, and mental distress willfully and intentionally and by means of coercion, oppression, fraud, and malice and consciously disregarded the Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of exemplary or punitive damages in an amount to be established at trial to meaningfully punish Gordon, thereby deterring similar conduct in the future.

### COUNT II
### Against Defendant's
### Negligent Infliction of Emotional Distress

65. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

66. Negligent infliction of emotional distress requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress. Simpson v. Uniondale Union Free Sch. Dist., 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010); see Higgins, 318 F.3d 422, 425 n.1 (2d Cir. 2003) (stating that to be actionable, intentional and negligent infliction of emotional distress claims must "be based on conduct that

is extreme and outrageous."); <u>Naughright v. Weiss,</u> No. 10 Civ. 8451, 826 F. Supp.  2d 676, 2011 U.S. Dist. LEXIS 133742, at *45-46 (S.D.N.Y. November 18, 2011) ("A cause of action for either intentional or negligent infliction of emotional distress must allege that the defendants' conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Romero v. City of N.Y.</u>, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012)

67. Here, Gordon's actions and Corporate Defendants' inaction rise beyond the threshold of extreme and outrageous.  As previously mentioned, Defendant's acted as a double agent to harm Plaintiff in the case.

68. During his brief representation of Plaintiff, Plaintiff provided Gordon with a list of bloggers and social media users who had harassed, intimidated, and threatened Plaintiff throughout the case.

69. Gordon intentionally disclosed privileged communications with Plaintiff to the list of bloggers and social media users who had harassed, intimidated, and threatened Plaintiff.  Gordon knew or should have known that his unauthorized disclosures would lead these individuals to use the information to harass, intimidate, and threaten Plaintiff.

70. The list of bloggers and social media users provided to Gordon and to whom Gordon made the intentional disclosure, too, used the information provided by Gordon to harass, intimidate, and threaten Plaintiff.

71. In the days, and months preceding his negligent actions, Gordon, his enabling in-laws, associates, and employer worked in concert and engaged in conduct that rise beyond the threshold of extreme and outrageous.  The extreme and outrageous conduct are as follows:

a) Insistently calling and texting Mr. Blackburn to dissuade him from revealing Gordon's actions to the New York State Bar ethics committee, as well as to the Court in the case,

b) Lying in a sworn declaration to the Court in the case,

c) Causing Plaintiff to move residents for fear of having her location disclosed by Gordon to the list of bloggers and social media users who had harassed, intimidated, and threatened Plaintiff,

14

d) Encouraging and or facilitating opportunities for bloggers and social media users to issue death threats to Plaintiff via social media messages and posts.

72. Gordon and Corporate Defendant accepted the responsibility of protecting Plaintiff and Plaintiff's interest as co-counsel for Plaintiff.

73. The purpose of his representation of Plaintiff was to protect Plaintiff from experiencing further injury and to prosecute the case in Plaintiff's interest.

74. On multiple occasions, Defendant's negligently violated the duty they owed Plaintiff Hough.

75. Gordon's actions endangered Plaintiff's life and caused her to fear for her and her family's safety.

76. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life.

## COUNT III
### Against Corporate Defendant
### Aiding and Abetting

77. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

78. An employer cannot be held vicariously liable for the acts of its employees unless those acts were committed while the employees were performing their duties for the express benefit of the employer. *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998); *see also H & H Int'l Corp. v. J. Pellechia Trucking, Inc.*, 119 F.R.D. 352, 353 (S.D.N.Y. 1988). Actions undertaken for personal motives and not in furtherance of the employer's business do not give rise to employer liability. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1318 (2d Cir. 1995).

79. On the other hand, an employer may be liable for false statements maliciously published by its employees in the course of employment. *See Loughry v. Lincoln First Bank*, 67 N.Y.2d 369, 494 N.E.2d 70, 502 N.Y.S.2d 965 (1986). The *Loughry* court also held that punitive damages for the same acts can be assessed against the employer in the presence of its complicity, stating

15

that punitive damages can be imposed on an employer for the intentional wrongdoing of its employees where management has authorized, participated in, consented to, or ratified the conduct giving rise to such damages or deliberately retained the unfit servant. *Id.* at 373.

80. Moreover, the determination of whether a particular act was within the scope of the servant's employment is heavily dependent on factual considerations, and therefore the question is ordinarily one for the jury. *See Riviello v. Waldron*, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979). An employer can also be held liable for an employee's discriminatory act if the employer became a party to it "by encouraging, condoning, or approving it." *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 305, 491 N.Y.S.2d 293, 480 N.E.2d 1075 (1985). EEOC v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d 460, 473 (S.D.N.Y. 1999).

81. Corporate Defendant knew that Gordon was engaging in secret conversations with opposing counsel and had refused to turn over the details to Plaintiff. Upon information and belief, after the Corporate Defendant learned of Gordon's action, they ratified them and supported Gordon's refusal to turn over the details of the conversations and communications he had with opposing counsel.

82. Through numerous emails, the Corporate Defendant learned that Gordon had disclosed screenshots of confidential text conversations to bloggers and social media harassers of Plaintiff. Upon information and belief, after the Corporate Defendant learned of Gordon's intentional actions, they ratified them and refused to instruct Gordon to cease all communications with bloggers and social media harassers of Plaintiff and force Gordon to disclose the details of all communications he had with the bloggers and social media harassers of Plaintiff.

83. "An employer is vicariously liable for its employee's torts, even where the offending employee's conduct was intentional if the acts were committed while the employee was acting within the scope of his or her employment" (*Carnegie v J.P. Phillips, Inc.*, 28 AD3d 599, 600, 815 NYS2d 107 [2006]; *see Elmore v City of New York*, 15 AD3d 334, 335, 790 NYS2d 462 [2005]). Marilyn S. v. Indep. Grp. Home Living Program, Inc., 2010 NY Slip Op 4170, ¶ 2,

16

73 A.D.3d 895, 897, 904 N.Y.S.2d 70, 73 (App. Div.).

84. In summary, upon information and belief, Corporate Defendant knew or should have known that Gordon was engaging in intentional acts that he knew would be harmful to Plaintiff. Corporate Defendant failed to monitor, supervise, train, and reprimand Gordon. Finally, after learning of Gordon's intentional acts, Corporate Defendant failed to rectify Gordon's actions.

85. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life.

## COUNT IV
### Against Corporate Defendant
### Negligent Hiring, Retention, Supervision, and Training

86. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

87. "[W]here an employer cannot be held vicariously liable for torts committed by its employee, the employer can still be held liable under theories of negligent hiring and negligent retention." Sheila C. v. Povich, 11 A.D.3d 120, 781 N.Y.S.2d 342, 350 (App. Div. 2004). Put another way, an employer is responsible for negligently placing an employee in a position to cause foreseeable harm, when the employer knows or should know of the employee's propensity for dangerous behavior. Haddock v. City of New York, 140 A.D.2d 91, 532 N.Y.S.2d 379, 380 (App. Div. 1988), aff'd, 75 N.Y.2d 478, 553 N.E.2d 987, 554 N.Y.S.2d 439 (1990); Detone v. Bullit Courier Serv., Inc., 140 A.D.2d 278, 528 N.Y.S.2d 575, 576 (App. Div. 1988).

88. To state a claim for negligent hiring, retention, supervision, or training, a plaintiff must allege facts indicating that "the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence." Williams v. City of New York, 916 F. Supp. 2d 235, 245 (E.D.N.Y. 2012) (quoting Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004)). Cort v. Marshall's Dep't Store, No. 14-CV-7385 (NGG) (RER), 2015 U.S. Dist. LEXIS 172611, at *12-13 (E.D.N.Y. December 29, 2015).

89. According to Ms. Franklin-Gordon, Gordon had a drug overdose towards the end of summer and the beginning of fall 2021. Upon information and belief, Ms. Franklin-Gordon returned home from a night out with friends, and saw Gordon passed out and bleeding on the living room floor of her and Gordons's home. Shortly after, she called the paramedics, who arrived and attempted to resuscitate Gordon. Gordon was unresponsive to the paramedics, and they had to rush him to the hospital.

90. Upon information and belief, and according to Ms. Franklin-Gordon, for months after the overdose incident, she had to sleep at night with headphones on and an alarm that would wake her up every two hours to monitor Gordon's whereabouts. According to Ms. Franklin-Gordon, Gordon would allegedly sneak out in the middle of the night and head to his drug dealer.

91. Upon information and belief, Mr. Gordon was an employee of Corporate Defendant during this incident.

92. Upon information and belief, Mr. Gordon participates in the Corporate Defendants' employer-sponsored employee benefits plan, including health coverage.

93. Upon information and belief, the cost of the hospital stay and the paramedic's assistance are all covered under the Corporate Defendant's employer-sponsored employee benefits plan.

94. Additionally, aside from his drug overdose during his employment with Corporate Defendant, Gordon was terminated from his employment as an Associate with Judd Burstein, P.C. A simple phone call to Gordon's previous employer would have revealed that Gordon had a pattern, practice, and history of drug use/addiction, as well as highlight Gordons gross incompetence, unethical behavior as an associate, and his inability to be trusted and to have self-control.

95. In addition to Gordon's drug addiction and previous termination, in several emails from Mr. Blackburn, Corporate Defendants were made aware of Gordon's secret communications with the opposing counsel, as well as his intentional and unauthorized disclosure of privileged communications with Plaintiff to bloggers and social media harassers of Plaintiff with the sole intent to harm, harass, and intimidate Plaintiff.

96. Despite this, the Corporate Defendant made the conscious decision to continue Gordon's

18

employment, presumably exposing other unwitting clients of Corporate Defendants to Gordon's gross incompetence and depravity and refusing to turn over to Plaintiff the details of all communications Gordon had with opposing counsel, as well as the details of Gordon's communications and unauthorized disclosures to bloggers and social media harassers of Plaintiff.

97. Upon information and belief, the Corporate Defendant intentionally voided their responsibilities as required by New York State Unified Court System Rules of Professional Conduct, RULE 5.1, which governs lawyers and law firms when they miserably failed to "ensure that the work of partners and associates is adequately supervised, as appropriate."

98. Corporate Defendants are in violation of Rule 5.1 and should be held responsible for violating 5.1 because they had "knowledge of the specific conduct, ratifies it, or … knows of such conduct at a time when it could be prevented, or its consequences avoided or mitigated but fail[ed] to take reasonable remedial action; or in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated."

99. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer physical injury, psychological injury, emotional injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. Plaintiff has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life.

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

    a. For past, present, and future general damages in an amount to be determined at trial;

19

    b.   For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages, and others, in an amount to be determined at trial;

    c.   Any appropriate statutory damages;

    d.   For costs of suit;

    e.   For interest as allowed by law;

    f.   For attorney's fees;

    g.   The cause of action authorized any appropriate punitive or exemplary damages against Defendants;

    h.   For such other and further relief as the Court may deem proper.

Dated: July 7, 2022

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: 347-342-7432
TBlackburn@TABlackburnlaw.com

20