UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
  JENNIFER HOUGH,

                                      Plaintiff,

     -against-

ONIKA TANYA MARAJ (a/k/a NICKI MINAJ) and
KENNETH PETTY (a/k/a ZOO),

                                     Defendants.
-----------------------------------------------------------------------x

MEMORANDUM AND ORDER

No. 21-CV-4568-ENV-JRC

JAMES R. CHO, United States Magistrate Judge:

**Introduction**

Plaintiff Jennifer Hough ("plaintiff") commenced this action against Onika Tanya Maraj (a/k/a Nicki Minaj) ("Maraj")[1] and Kenneth Petty (a/k/a Zoo) ("Petty" and collectively, "defendants") on August 13, 2021. *See* Compl., Dkt. 1. On September 2, 2021, plaintiff amended her complaint. *See* First Am. Compl. ("FAC"), Dkt. 8. In her FAC, plaintiff alleges, *inter alia*, witness intimidation, negligent and intentional infliction of emotional distress, harassment, and assault and battery against defendants. *See id*. at ¶ 1. Plaintiff seeks damages, as well as attorney's fees and costs. *Id*. at Prayer for Relief.

Currently pending before this Court[2] is a motion filed on behalf of Maraj and her counsel

---

[1] On January 12, 2022, plaintiff filed a notice of voluntary dismissal against Maraj, Dkt. 46, which the court granted on January 19, 2022, Dkt. 49. Maraj is no longer a defendant in this case.

[2] This Court issues this decision as an Order, rather than a Report and Recommendation, because Maraj's motion for sanctions is non-dispositive in nature. *See* Fed. R. Civ. P. 72(a). "Magistrate judges have the power to issue sanctions without referral from a district judge." *Schuler v. Liberty Consulting Servs., Ltd.*, No. 20-CV-5779, 2022 WL 1552039, at *8 n.17 (citing *Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. 10-CV-3647, 2017 WL 5515938, at *2 (E.D.N.Y. Mar. 6, 2017) (discussing monetary sanctions as "non-dispositive" and reviewing issuance of sanctions for clear error)). "A magistrate judge to whom a district judge has referred pre-trial matters may

Judd Burstein ("Burstein") for sanctions against plaintiff's counsel, Tyrone Blackburn ("Blackburn"), pursuant to 28 U.S.C. § 1927, and the Court's inherent power. *See* Maraj Mem. of Law in Supp. of Mot. for Sanctions ("Maraj Mem."), Dkt. 69-18. For the reasons set forth below, the Court denies the motion for sanctions.

## Background

The Court recounts the events of this case that are relevant to the instant motion for sanctions. Blackburn has appeared as counsel for plaintiff from the beginning of this action. *See* Compl. filed by Blackburn, Dkt. 1. On September 13, 2021, Maraj was served with the summons and complaint. *See* Dkt. 14. On October 11, 2021, plaintiff requested a certificate of default as to defendants Petty and Maraj. *See* Dkt. 15. On October 14, 2021, Burstein filed a notice of appearance on behalf of Maraj. Dkt. 16. On October 18, 2021, Steven Gordon ("Gordon") filed an appearance as co-counsel on behalf of plaintiff.[3] *See* Dkt. 18.

On October 19, 2021, the Clerk of Court denied plaintiff's request for a certificate of default as to Maraj since a notice of appearance had been filed by Burstein. *See* Denial of Request for Cert. of Def. dated October 19, 2021. On October 19, 2021, following the Clerk's denial, plaintiff filed a motion for reconsideration, and Maraj filed a response in opposition that same day. *See* Dkts. 20, 21. On December 8, 2021, the Court held a hearing on plaintiff's motion for reconsideration of the Clerk's denial of a certificate of default against Maraj. *See* Minute Entry dated December 8, 2021. At the hearing, the Court entered a briefing schedule on plaintiff's motion for default judgment against Maraj. *Id*. On December 17, 2021, plaintiff filed

---

decide non-dispositive motions by issuing a memorandum and order, which is reviewable by the district judge for clear error." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 16 n.1 (S.D.N.Y. 2010).

[3] On January 31, 2022, the Court granted Gordon's motion to withdraw as counsel. *See* Minute Order dated January 31, 2022.

2

her motion for default, Dkt. 41; on December 31, 2021, Maraj filed her opposition, Dkt. 43. On January 12, 2022, plaintiff voluntarily dismissed the claims against Maraj without prejudice.[4] *See* Notice of Voluntary Dismissal, Dkt. 46.

On January 20, 2022, Maraj requested a briefing schedule with respect to her anticipated motion for sanctions against plaintiff and her counsel, Blackburn. *See* Maraj letter, Dkt. 50. Also in the letter, Maraj accused plaintiff and her counsel of dismissing the claims against Maraj in an attempt to evade sanctions under Rule 11 of the Federal Rules of Civil Procedure. *Id*.

In response, Gordon, then co-counsel for plaintiff, filed a letter accusing Burstein of "*in terrorem* litigation tactics." *See* letter dated January 21, 2022, Dkt. 53. Gordon noted that he had received five purported motions for sanctions by email from Burstein. *See id*. In response, Burstein stated that Gordon had made "multiple outrageous and demonstrably false accusations" and, renewed the request for a briefing schedule. *See* letter dated January 21, 2022, Dkt. 54.

On January 21, 2022, Blackburn, counsel for plaintiff, filed a separate letter stating that with respect to the briefing schedule, Burstein did not appear to be "willing to sort through the scheduling conflicts collegially." *See* letter dated January 21, 2022, Dkt. 55. Blackburn's letter went on to accuse Burstein of "deplorable behavior," having a "sick obsession" with Gordon's wife, and "scrummaging through" YouTube for comments made by Gordon's wife. *Id*.

On January 24, 2022, Gordon filed a letter in which he characterized Burstein's request to file a motion for sanctions as "an attempt to delay Plaintiff's re-filing" her claims against Maraj in another district located in California. *See* letter dated January 24, 2022, Dkt. 56. In this letter, plaintiff requested leave to file a cross motion for sanctions against Maraj and her counsel for

---

[4] On May 19, 2022, in light of plaintiff's voluntary dismissal of Maraj from this case (Dkt. 46), the Honorable Eric Vitaliano denied the motion for default judgment against Maraj (Dkt. 41) as moot. *See* Order finding as moot Mot. for Def. Judgment dated May 19, 2022.

3

"vexatiously multiplying and delaying proceedings and for frivolously seeking sanctions based on an improper purpose; to harass and intimidate." *See id*. Three days later, on January 27, 2022, Gordon filed a motion to withdraw as counsel.[5] *See* letter withdrawing as counsel, Dkt. 59. On January 28, 2022, Maraj filed a letter informing that court that she was no longer seeking sanctions against Gordon. *See* letter dated January 28, 2022, Dkt. 62.

On January 30, 2022, Blackburn filed a motion to withdraw his January 21, 2022 letter (Dkt. 55), which the Court granted. *See* Mot. to Withdraw Dkt. 55, Dkt. 63; Order granting Mot. to Withdraw Dkt. 55 dated May 19, 2022. Also in the withdrawal motion, Blackburn asserts that "the claims made in docket entry #55 concerning Mrs. Gordon" were requested to be included in the letter by Gordon. Dkt. 63. Blackburn further explains that he came to know that Burstein had discovered the YouTube video and comment made by Gordon's wife when Burstein received "a random email to his law firm." *Id*. The withdrawal motion accuses Burstein and Gordon of having private conversations, in which Burstein promised not to pursue sanctions against Gordon if plaintiff dropped the motion for default judgment against Maraj. *Id*.

The fully-briefed motion for sanctions was filed on April 11, 2022. *See* Maraj Mot. for Sanctions, Dkt. 69; Mem. of Law in Opposition to Maraj and her counsel Judd Burstein's Motion for Sanctions ("Pl.'s Opp."), Dkt. 70; and Maraj Reply in Supp. of Mot. for Sanctions ("Maraj Reply"), Dkt. 71.

---

[5] On January 31, 2022, the Court held a hearing on Gordon's motion to withdraw as co-counsel for plaintiff, and the Court granted Gordon's motion. *See* Minute Order dated January 31, 2022.

4

**Discussion**

I.   **Inherent Power to Sanction and 28 U.S.C. § 1927**

"Under § 1927, a court may impose sanctions on any attorney who so multiplies the proceedings in any case unreasonably and vexatiously." *Morales v. Constr. Directions LLC*, No. 19-CV-6493, 2021 WL 8317096, at *5 (E.D.N.Y. Aug. 27, 2021) (quoting 28 U.S.C. § 1927) (internal quotation marks omitted). The purpose of Section 1927 is "to deter unnecessary delays in litigation." *Id.* (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). To rule in favor of the moving party under Section 1927, the movant must provide "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay." *Tropp v. Conair*, 845 F. Supp. 2d 485, 490 (E.D.N.Y. 2012).

A party's conduct is considered meritless or without color when "it lacks any legal or factual basis," and conduct "is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Dong Hui Chen v. Thai Greenleaf Rest. Corp.*, No. 21-CV-1382, 2022 WL 18859066, at *3 (E.D.N.Y. Dec. 22, 2022) (internal quotation marks and citation omitted). The bad faith standard of the second prong is interpreted "restrictively" by the Second Circuit and requires a clear showing of bad faith with a high degree of factual specificity in most cases." *Id.* Courts "may infer bad faith when a party undertakes frivolous actions that are completely without merit." *Prescott v. Nationwide Mut. Ins. Co.*, No. 17-CV-6508, 2019 WL 7842538, at *17 (E.D.N.Y. Aug. 27, 2019) (internal quotation marks and citation omitted). "Accordingly, courts have assessed whether to impose 28 U.S.C. § 1927 sanctions under the same standard as inherent power

5

sanctions, and they may be considered together." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407, 2022 WL 17685501, at *7 (E.D.N.Y. July 7, 2022) (citations omitted).

District courts have the inherent "power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation." *Chen*, 2022 WL 18859066, at *3. Examples of conduct considered sanctionable under the court's inherent power are "violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom." *Id*. A court need not make a finding of bad faith before sanctioning an attorney when the attorney "violates a court order or engages in other misconduct that is not undertaken for the client's benefit." *Id*. However, "[b]ecause of the potency of the court's inherent power, courts must take pains to exercise restraint and discretion when wielding it." *Alcon*, 2022 WL 17685501, at *6 (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)).

## II.   Default Judgment against Maraj

Maraj seeks sanctions against Blackburn for filing a "frivolous" motion for default judgment on the grounds that (1) "the Amended Complaint's theories of jurisdiction under CPLR 301 were facially deficient," and (2) "the Amended Complaint alleged that Ms. Maraj is both a [domiciliary and resident of California], thereby precluding a claim of jurisdiction under CPLR 301." Maraj Mem., Dkt. 69-18, at 25-26. Maraj further argues that the motion for default judgment was frivolous because plaintiff had no chance to prevail on the motion where, as here, Maraj missed the deadline to respond to the amended complaint by seven days. *Id*. at 26. As further evidence of bad faith, Maraj directs the Court's attention to a list of actions undertaken by plaintiff, including baseless claims made by plaintiff against Maraj in the FAC as part of a media campaign; plaintiff's counsel's failure to investigate truth of claims made in the FAC; and

6

plaintiff's persistence in proceeding with litigation despite lack of personal jurisdiction. *Id*. at 26-27. Maraj's motion for sanctions against Blackburn stems largely from plaintiff's decision to pursue a motion for default judgment that Maraj considered "frivolous." In support of Maraj's argument, Maraj states, *inter alia*, that plaintiff only filed claims against Maraj because she is "wealthy and famous" and has "deep pockets." Maraj Mem. at 7-9.

The Court finds Maraj's arguments in support of sanctions unavailing. *See Prescott*, 2019 WL 7842538, at *17. Under Section 1927, a claim that fails as a matter of law is not necessarily lacking any basis at all. *See Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999). Maraj argues that she put plaintiff on notice that the motion for default judgment was frivolous; Maraj's pre-motion letter noted that plaintiff sought default judgment in connection with claims in the FAC that lacked merit. *See* Maraj Mem. at 12; *see also*, Mot. for Leave to File Document, Dkt. 17. In response, plaintiff states that it is "[t]he court that determines the outcome of the motion for Default Judgment, **NOT** Burstein." Pl.'s Opp. at 11-12 (emphasis in original).

The Court does not find plaintiff's decision to pursue a motion for default judgment against Maraj sanctionable, notwithstanding Maraj's claim that the motion lacked merit. Here, plaintiff did not have an obligation to withdraw her motion for default judgment against Maraj simply because counsel for Maraj considered the motion "frivolous." Notwithstanding Maraj's belief that a motion for default judgment lacked merit, the Court allowed plaintiff to move forward with the motion for default judgment and entered a briefing schedule in connection with plaintiff's motion. *See* Minute Entry Order dated December 8, 2021.

Even assuming the Court were to agree with Maraj that plaintiff's claims in the FAC lacked merit, in part, based on the absence of personal jurisdiction, plaintiff's efforts to obtain a

7

default judgment against Maraj does not warrant imposing sanctions. Notably, the purported weakness of plaintiff's claims would have made the FAC "relatively straightforward to dispose of" at the motion to dismiss stage. *See Prescott*, 2019 WL 7842538, at \*17. More important, the Court does not find that plaintiff was motivated by an improper purpose by refusing to withdraw her claims or the motion for default against Maraj, even if those claims were weak. *Id*.

Notwithstanding Maraj's argument that plaintiff's motion for default judgment lacked merit, plaintiff arguably had at least some legal and factual support for the claims. *See Tropp*, 845 F. Supp. at 491 (citing *Schlaifer Nance & Co.*, 194 F.3d at 337 ("a claim that fails as a matter of law is not necessarily lacking *any* basis at all") (emphasis in original)). Plaintiff argues that she had a genuine belief that Maraj was subject to this Court's jurisdiction through Maraj's ownership of a residence and business located in New York. *See* Decl. of Tyrone A. Blackburn, Dkt. 70 at ¶¶ 46, 47. However, when plaintiff learned that the property in question was the residence of Maraj's mother, plaintiff withdrew the claims against Maraj. *Id*. at ¶ 50.

Maraj further argues in favor of sanctions because of Blackburn's "bad faith" conduct during the three-month period between the time Maraj's counsel, Burstein, first filed his appearance on October 14, 2021, and plaintiff voluntarily dismissed the claims against Maraj on January 12, 2022. According to Maraj, Blackburn denied Maraj's "reasonable requests" for an extension of time for her to respond to the FAC. *See* Maraj Mem. at 11. Further, Maraj argues that Blackburn used the request for an extension of time, and plaintiff's refusal, to garner media attention. *Id*. Maraj cites an article from the *Daily Beast*, which quotes Blackburn. *Id*. Maraj, however, concedes that, standing alone, Blackburn's actions do not warrant sanctions, but rather

8

they are probative of whether Blackburn was acting in "good faith."[6] *Id*. In response, Blackburn argues that he was not required by law "to extend any courtesies to the opposing side," and that the quote from the *Daily Beast* was merely "an answer to a reporter's question." *See* Pl.'s Opp., Dkt. 70-14, at 11.

While it may be a matter of professional courtesy to consent to an extension of a deadline, here, Blackburn's actions did not rise to the level of a sanctionable offense, nor does the Court read bad faith into Blackburn's refusal to consent to such a request. Blackburn was under no obligation to consent to Maraj's extension request. Further, and more important, regardless of whether Blackburn consented to the request, ultimately the Court, not Blackburn, decides whether to grant extension requests.

Maraj further points to alleged factual discrepancies in the FAC as evidence of "bad faith" (*e.g.*, alleged gang affiliation and claims that plaintiff had to change her residence and her telephone number). Maraj Mem. at 15, 18. However, plaintiff voluntarily dismissed the claims against Maraj shortly after the parties had completed briefing on the motion for default judgment. *See* Notice of Voluntary Dismissal, Dkt. 46. Maraj's efforts, if any, to address those discrepancies did not unduly multiply these proceedings. Maraj did not have to address those allegations in a motion to dismiss nor engage in any discovery in connection with those allegations.

---

[6] Maraj sets forth a series of allegations as evidence of Blackburn's "bad faith." However, Maraj makes clear that she is not seeking sanctions based on those facts. *See, e.g.*, Maraj Mem. at 7 ("Maraj does not seek sanctions based upon the filing of the Complaint and the Amended Complaint . . . ."); *id*. at 11 ("Maraj does not contend that Mr. Blackburn should be sanctioned specifically for this conduct [referring to Blackburn's objection to Maraj's extension request]"); *id*. at 12 ("Maraj does not seek sanctions for Mr. Blackburn's refusal of counsel's request [referring to Burstein's request for an extension to respond to the complaint]").

The Court finds that Maraj has not met her burden to demonstrate "by clear evidence that [Blackburn] acted in bad faith" to multiply these proceedings unreasonably and vexatiously as required by Section 1927 during the three-month period Maraj had to defend against this action. *See Intelli-Check, Inc. v. Tricom Card Techs., Inc.*, No. 03-CV-3706, 2005 WL 3533153, at *10 (E.D.N.Y. Dec. 22, 2005). The Court denies Maraj's motion for sanctions against Blackburn in connection with plaintiff's motion for default judgment.

### III.     Personal Attacks on Burstein

Maraj further asks the Court to impose sanctions against Blackburn pursuant to its inherent power for his "false and insulting claims about Mr. Burstein's supposed 'sick obsession' with, and 'creepy' 'cyberstalking'" of Gordon's wife. Maraj Mem. at 28. Maraj states in her motion that "the only explanation for Mr. Blackburn's accusation" was to "embarrass and upset" Burstein. *Id*. at 22.

Courts have the inherent "power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *Chen*, 2022 WL 18859066, at *3 (quoting *Seltzer*, 227 F.3d at 41) (internal quotation marks and citations omitted). "Sanctions are inappropriate absent clear evidence that the challenged actions are entirely without color . . . and are taken for reasons of harassment or delay or for other improper purposes." *Brewer v. Strillacci*, No. 03-CV-127, 2003 WL 23511730, at *2 (D. Conn. June 4, 2003) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (internal quotation marks and brackets omitted)). As an initial matter, the parties do not argue that Blackburn and plaintiff violated a

court order that would warrant sanctions. Thus, the Court will analyze whether Blackburn has engaged in sanctionable conduct "not inherent to client representation." *Id*.

The offending conduct stems from a letter filed by Blackburn, in which he states:

> An example of [Burstein's] deplorable behavior stems from his sick obsession with Mr. Gordon's wife. Mr. Burstein went scrummaging through the comments section of youtube posts in search of comments posted by Mrs. Gordon. Not only was his act of cyberstalking Mrs. Gordon creepy, but it was also weird, and beneath the dignity of this profession.

*See* letter dated January 21, 2022, Dkt. 55.

In addition to the January 21, 2022 letter, plaintiff and Maraj, through their attorneys, filed a series of letters in connection with a briefing schedule for Maraj's anticipated sanctions motion. The attorneys openly displayed their disdain for each other in those letters. *See, e.g.,* Dkts. 50, 53-57. Given the circumstances surrounding the filing of the parties' multiple letters, it cannot be said that these exchanges were "completely without color." *See Brewer*, 2003 WL 23511730, at *2. Although Blackburn's comments regarding Burstein were likely inflammatory, in the same letter, Blackburn attempted to draw the Court's attention to Burstein's alleged lack of collegiality. Dkt. 55 ("Mr. Burstein has not been willing to sort through the scheduling conflicts collegially.").

Ultimately, the Court need not decide whether the purportedly offensive comments made by Blackburn in his January 21, 2022 letter were "inherent to client representation" because Blackburn's conduct does not rise to the level of conduct that "interferes with the court's power to manage its calendar and the courtroom." *Chen*, 2022 WL 18859066, at *3. While the conduct displayed by Blackburn might be described as antagonistic, his alleged conduct does not compare to other attorney conduct that courts have found sanctionable. *See, e.g., Ransmeier v. Mariani*, 718 F.3d 64, 69 n.2 (2d Cir. 2013) (imposing sanctions on appellant and appellant's

11

attorney for making requests that were "devoid of legal merit" and filing letters that "devolved into personal attacks" on the court and the clerk of court); *Scott-Iverson v. Indep. Health Ass'n*, No. 13-CV-451, 2017 WL 35453 (W.D.N.Y. Jan. 4, 2017) (granting sanctions against plaintiff for repeated remarks during depositions that defense counsel was a "racist" and averring that defense counsel was a "racist" in an affidavit in support of plaintiff's opposition); *Hart v. Blanchette*, No. 13-CV-6458, 2019 WL 1416632, at *33 (W.D.N.Y. Mar. 29, 2019) (imposing sanctions for misrepresentations to the court demonstrating subjective bad faith); *Azkour v. Rest.*, No. 10-CV-4132, 2014 WL 12779561, at *3 (S.D.N.Y. June 2, 2014) (awarding sanctions where *pro se* plaintiff had been "repeatedly instructed [] that he may not make offensive statements about Defendant's counsel").

Notwithstanding the language used, the Court recognizes that Blackburn took steps to rectify the issue. Blackburn subsequently moved to withdraw the January 21, 2022 letter (Dkt. 55) when he learned that, in fact, Burstein had not culled through the online comments himself. Dkt. 63. The Court granted plaintiff's motion to withdraw the January 21, 2022 letter. *See* Dkt. entry dated May 19, 2022; *see also* Pl.'s Mem. at 28.

The Second Circuit has described the determination as to whether to impose sanctions as "one of the most difficult and unenviable tasks for a court." *Schlaifer Nance & Co.*, 194 F.3d at 341. "On the one hand, a court should discipline those who harass their opponents and waste judicial resources by abusing the legal process. On the other hand, in our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules." *Id*. "It is in keeping with the high bar disfavoring the award of sanctions" that this Court denies Maraj's motion for sanctions against Blackburn. *Morales*, 2021 WL 8317096, at *6. However, Blackburn "should not take the denial of the motion for sanctions as

in any way endorsing his behavior." *Brewer,* 2003 WL 23511730, at *2.  The Court reminds Blackburn that, as an attorney, he is "held to a higher standard of conduct in the course of these proceedings." *Id*. (citation omitted).

## Conclusion

For the reasons set forth above, this Court denies the motion for sanctions against Blackburn.

**SO ORDERED**

Dated: Brooklyn, New York
        March 30, 2023

                                         s/ James R. Cho
                                         James R. Cho
                                         United States Magistrate Judge