**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

JENNIFER HOUGH,
                Plaintiff,

   -against-                               Civil Action No. 21-4568

Reply Brief in Further Support of
Motion to Compel Discovery

KENNETH PETTY, AKA ("ZOO"),
an individual
                Defendants.

---

**Reply Brief in Further Support of
Motion to Compel Discovery**

Brief by:

**Tyrone Blackburn, Esq.**

# INTRODUCTION

Defendant Kenneth Petty's opposition to Plaintiff's Motion to Compel is not a legitimate exercise of defense advocacy—it is a calculated attempt to evade basic discovery obligations through obfuscation, procedural distortion, and willful noncompliance. His position is factually inaccurate, legally deficient, and strategically misleading. Rather than engaging in good faith with his obligations under the Federal Rules of Civil Procedure and the directives of this Court, Defendant invokes waiver where none exists, privacy where protective measures are available, and alternative sources where none are effective.

The discovery sought—Defendant's tax returns, employment records, and related financial documents—is not only relevant to Plaintiff's claims for punitive damages, but also essential to testing the truth of Defendant's testimony and assessing his credibility. The record reflects that Plaintiff has acted diligently and repeatedly sought this information both in writing and during Defendant's deposition. Defendant, by contrast, has obstructed discovery at every turn and provided contradictory, implausible, and unsupported accounts of his income, compensation, and work history.

This is precisely the kind of discovery misconduct Rule 37 was enacted to address. The Court has already extended discovery multiple times in recognition of the ongoing deficiencies in Defendant's responses. Magistrate Judge Cho explicitly acknowledged on the record that Defendant's financial condition is discoverable in light of Plaintiff's claim for punitive damages. Defendant's continued refusal to produce the requested documents is prejudicial, unsupported by precedent, and contrary to the principles of fair adjudication.

Plaintiff respectfully urges this Court to uphold the integrity of its discovery orders, enforce the Federal Rules, and prevent further abuse by compelling production, awarding reasonable attorneys' fees and costs, and imposing sanctions proportionate to Defendant's misconduct.

# RELEVANT FACTS & PROCEDURAL HISTORY

I. **PLAINTIFF TIMELY AND PERSISTENTLY SOUGHT THE FINANCIAL DISCOVERY AT ISSUE**

   A. **Defendant's Waiver Argument Is Factually and Legally Baseless**

Defendant's waiver argument rests on a selective and misleading presentation of the procedural timeline. Plaintiff served her First Set of Document Requests on July 31, 2023, which explicitly requested:

- "[A]ll state and federal tax returns from 2017 to present"; and
- "[A] complete employment history from 2017 to 2024, including employer names, supervisors, and dates of employment."

After Defendant objected without substantively responding, Plaintiff issued a Discovery Deficiency Letter dated November 1, 2024, reiterating these demands and referencing his continued non-compliance. At that time, the parties were in the process of scheduling Defendant's deposition—which was rescheduled multiple times due to Defendant's failure to appear. During this period, Magistrate Judge James R. Cho extended the discovery deadline twice, specifically due to the fact that the extension encompassed discovery arising from the deposition. This necessarily included the exact documents Plaintiff demanded both before and after the deposition, particularly given that Defendant's testimony raised new inconsistencies regarding his income. At a January 2025 conference, the Court again extended discovery until February 7, 2025, for the express purpose of resolving "any outstanding discovery issues."

On February 7, 2025, Defendant's counsel emailed Plaintiff's counsel and expressly requested that Plaintiff "hold off" on filing subpoenas or motions, claiming he was working to gather income documentation. Plaintiff relied on this representation. Defendant's current claim that Plaintiff "missed" a deadline is disingenuous and inequitable. The doctrine of waiver does not—and cannot—reward a party for misleading an opponent into deferring motion practice, then using that deferral as a sword. See *Kernisant v. City of New York*, 225 F.R.D. 422, 426 (E.D.N.Y. 2005) (discovery schedules are flexible tools, not procedural traps).

In sum, the Court's orders, Plaintiff's written discovery demands, her deposition questions, the deficiency letter, and ongoing correspondence with defense counsel all confirm that Plaintiff did not waive this discovery. Defendant's assertion to the contrary is not only inaccurate but seeks to punish Plaintiff for exercising restraint and diligence.

B. **The Court's Repeated Extensions Refute Any Claim of Waiver**

Defendant's argument also contradicts the procedural posture of this case. Courts in the Second Circuit retain broad discretion to manage discovery timelines in light of the circumstances of the case. See, e.g., *Kernisant v. City of New York*, 225 F.R.D. 422, 426 (E.D.N.Y. 2005). Here, Magistrate Judge Cho granted three successive discovery extensions, each one accommodating the parties' evolving disputes and scheduling obstacles. Plaintiff's continued requests for Defendant's tax and employment information were raised within each extended period.

It is disingenuous for Defendant to now claim those same extensions somehow cut off Plaintiff's rights. "Waiver" is a narrow and disfavored doctrine when invoked by a party who induced delay or deliberately withheld documents, as Mr. Petty did here.

II. **DEFENDANT'S TAX RETURNS, EMPLOYMENT RECORDS, AND FINANCIAL DATA ARE RELEVANT, NECESSARY, AND MUST BE COMPELLED**
   A. **Defendant's Financial Condition Is Directly Relevant to Punitive Damages**

It is well-established in the Second Circuit that a defendant's financial condition is discoverable when punitive damages are sought. See *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373 (2d Cir. 1988); *EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 120 (W.D.N.Y. 2009); *Hazeldine v. Beverage Media, Ltd.*, No. 94 Civ. 3466, 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1997).

Here, Plaintiff asserts punitive damages based on Defendant's intentional misconduct. As a result, Defendant's income, assets, and employment history are directly relevant to assessing both the amount and effectiveness of any punitive damages award. See *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1119 (2d Cir. 1986) (a defendant's wealth may be considered when assessing punitive damages).

Defendant's contention that such discovery is "premature" is unavailing. Courts regularly permit pretrial discovery of net worth where punitive damages are alleged. See *Pasternak v. Dow Kim*, 275 F.R.D. 461, 463 (S.D.N.Y. 2011) (courts in the Second Circuit "are split on the issue" but many permit such discovery before trial). The rationale is especially compelling where, as here, trial is approaching, and Defendant has actively concealed financial information and contradicted himself under oath.

B. **Defendant's Deposition Testimony Was Evasive, Contradictory, and Demonstrably False**

Defendant's deposition testimony illustrates the precise need for compelled financial disclosure. During his December 19, 2024, deposition, Defendant:

- Initially claimed he had "no income" in 2023;
- Then admitted to receiving over $100,000 that year;
- Then characterized the money as a "gift" from his wife;
- Then claimed he was paid $1,000 per week for managing her tour;
- And yet, produced no documents, bank statements, contracts, or W-2s to support any of these assertions.

This evolving narrative not only strains credibility but demonstrates why financial documents—not unsubstantiated testimony—are essential to resolving these questions. Courts in this District routinely compel production of financial records where deposition testimony is evasive, inconsistent, or implausible. See *Dunkin' Donuts Franchised Rests. LLC v. Grand Cent. Donuts, Inc.*, No. 07-CV-4027, 2009 WL 973363, at *3–4 (E.D.N.Y. Apr. 9, 2009) (compelling production of tax returns following vague testimony about income); *Carmody v. Vill. of Rockville Centre*, No. 05-CV-4907, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007) (compelling disclosure of income records after defendant provided unsubstantiated statements).

C. **Plaintiff Has Met the Heightened Standard for Compelling Tax Returns**

While there is no recognized privilege for tax returns under federal law, courts apply a two-prong test to determine whether they should be disclosed:

1. The information must be relevant to the subject matter; and
2. The information must not be readily obtainable from a less intrusive source.

See *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 149 (E.D.N.Y. 2008); *Trudeau v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. 2006).

Plaintiff satisfies both elements. First, Defendant's tax returns are highly relevant to determining his financial condition in light of Plaintiff's punitive damages claim. Second, the information is not available elsewhere: Defendant has failed to produce W-2s, 1099s, bank records, or even identify his employers—rendering his tax returns the only available source of verified financial data.

Defendant has vaguely offered to produce an "affidavit" listing payments allegedly received, but this self-serving alternative is legally insufficient and procedurally unacceptable. Courts have consistently held that after-the-fact affidavits cannot substitute for properly requested documents where a party has demonstrated evasiveness. See *Malinowski v. Wall St. Source, Inc.*,

No. 09 Civ. 3225, 2011 WL 1226283, at *4 (S.D.N.Y. Mar. 18, 2011) (unsworn statements and affidavits do not excuse production of financial records where deposition testimony was inadequate). Defendant's testimony was not only inadequate—it was contradictory, incomplete, and devoid of evidentiary support. Under these circumstances, production is not just appropriate—it is imperative.

D. **Employment Records Are Independently Discoverable and Necessary**

In addition to tax records, Plaintiff seeks Defendant's employment history from 2017 to present, including:

- The names of all employers or entities for which he worked;
- Dates of employment;
- Job titles and compensation structure; and
- The names and contact information of relevant supervisors.

Defendant has refused to disclose any of this information. His only reference—to a purported management entity called "Pink Personality"—is unaccompanied by documentation, contracts, or any corroboration. This level of opacity obstructs discovery and necessitates judicial intervention.

Courts in this Circuit regularly compel employment records where income, damages, or credibility are at issue. See *Dzanis v. JPMorgan Chase & Co.*, No. 10 Civ. 3384, 2011 WL 5979769, at *5 (S.D.N.Y. Nov. 30, 2011) ("Employment and payroll records are critical in assessing a party's earnings and financial ability"); *EEOC v. Nichols Gas & Oil*, 256 F.R.D. at 120 (compelling employment records in discrimination action where financial ability was in question). Where a party asserts poverty or denies compensation while refusing to identify employers, courts will not hesitate to enforce production orders.

There is no undue burden in compiling a basic employment history, especially for a period during which the Defendant claims to have received no income. The lack of any employer disclosures—combined with contradictory claims of both poverty and substantial payment—demonstrates both the relevance and necessity of full disclosure.

III. **DEFENDANT'S PRIVACY OBJECTIONS ARE UNFOUNDED AND EASILY ADDRESSED**

Defendant's privacy-based opposition to the production of his financial records is both legally and factually unavailing. As courts in this Circuit have consistently held, federal law does not recognize a "tax return privilege" in civil litigation. See *Carmody v. Vill. of Rockville Centre*, No. 05-CV-4907, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007); *Trudeau v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. 2006). While tax returns are treated as confidential, they are not immune from discovery—particularly where, as here, the requesting party has demonstrated both relevance and necessity.

Courts in the Eastern District of New York routinely compel production of tax returns when appropriate procedural protections are in place. These include redaction of irrelevant or sensitive information, limited use designations, and filing under seal. See *Dunkin' Donuts Franchised Rests. LLC v. Grand Cent. Donuts, Inc.*, No. 07-CV-4027, 2009 WL 973363, at *3–4 (E.D.N.Y. Apr. 9, 2009). Plaintiff has explicitly offered to accept all such safeguards, including:

- Confidentiality designations;
- Filing the records under seal or subject to restricted review.

Moreover, Defendant's argument that jointly filed tax returns with his spouse immunize him from disclosure is meritless. Courts in this District have repeatedly compelled the production of joint returns when the information sought pertains solely to the defendant, with appropriate confidentiality safeguards. See *Fierro v. Gallucci*, No. 06-CV-5189, 2009 WL 2958399, at *1 (E.D.N.Y. Mar. 6, 2009).

Tellingly, Defendant has refused to propose any compromise or protective measure—offering only a blanket refusal to disclose the records. This posture suggests the issue is not truly one of privacy, but rather a calculated effort to evade scrutiny and obstruct Plaintiff's pursuit of relevant and probative evidence. Defendant cannot use privacy concerns as both sword and shield. When a litigant places their financial status at issue—as Defendant has, both by denying income and opposing punitive damages—they must accept the basic consequences of discovery.

The Court should find that Defendant's privacy argument does not justify withholding responsive records and that Plaintiff's willingness to accommodate confidentiality measures weighs heavily in favor of compelling disclosure.

IV.  **SANCTIONS AND FEES ARE APPROPRIATE UNDER RULE 37**

Defendant's conduct throughout discovery has been marked by obstruction, delay, and bad faith. He has ignored multiple Court-ordered discovery extensions, misrepresented his financial condition under oath, refused to produce plainly relevant documents, and offered no valid justification for his noncompliance. His actions fall squarely within the scope of Fed. R. Civ. P. 37, which empowers the Court to impose appropriate sanctions and shift the burden of litigation costs to the offending party.

A.  **Attorneys' Fees Are Mandatory Under Rule 37(a)(5)**

Rule 37(a)(5)(A) provides that where a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party…whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the opposing party's position was "substantially justified" or other circumstances make an award unjust. There is no such justification here.

Defendant has persistently flouted his obligations under Rules 26 and 34. He failed to respond substantively to written discovery, ignored a detailed deficiency letter, gave contradictory and implausible testimony during his deposition, and then refused to produce documents that Magistrate Judge Cho expressly confirmed were subject to discovery in light of Plaintiff's punitive damages claim. Defendant's opposition to the motion to compel amounts to little more than an effort to stall discovery and avoid scrutiny.

Courts in this District routinely award attorneys' fees in similar circumstances. See *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (affirming award of sanctions where party failed to produce key discovery); *Distefano v. Law Offs. of Barbara H. Katsos, P.C.*, No. 11-CV-2893, 2017 WL 1968278, at *7 (E.D.N.Y. May 11, 2017) (awarding fees for failure to comply with discovery obligations). Plaintiff respectfully requests a full award of fees and costs incurred in preparing and litigating this motion.

B.  **Additional Sanctions Are Justified Under Rule 37(b)(2)**

Beyond cost-shifting, Defendant's repeated and willful noncompliance warrants further sanctions under Rule 37(b)(2), which permits the Court to impose penalties for failure to obey a discovery order, including:

- An adverse inference instruction, permitting the jury to infer that the withheld records would be unfavorable to Defendant;

- Preclusion of testimony or evidence relating to Defendant's finances, compensation, or employment at trial;
- Contempt sanctions or monetary penalties for continued refusal to comply.

These remedies are well within the Court's discretion where a party obstructs discovery in violation of the Federal Rules and court supervision. See *Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253, 270–71 (2d Cir. 1999) (affirming adverse inference sanction for discovery misconduct); *Distefano*, 2017 WL 1968278, at *7 (imposing sanctions for persistent failure to produce relevant documents).

In light of Defendant's strategic delay, evasive testimony, and unjustified refusal to produce core financial documents, lesser remedies would be insufficient to redress the prejudice to Plaintiff or deter future misconduct. Sanctions are not punitive here—they are necessary to restore fairness, preserve judicial integrity, and ensure that Defendant does not benefit from stonewalling.

## CONCLUSION

Defendant has repeatedly ignored his discovery obligations, contradicted himself under oath, and resisted producing core financial records necessary to fairly adjudicate Plaintiff's claims—particularly her demand for punitive damages. Despite multiple Court extensions and opportunities to comply, Defendant continues to obstruct the discovery process without justification.

Plaintiff, by contrast, has diligently pursued appropriate discovery, conferred in good faith, and followed the Court's procedures at every turn. The record is clear: Defendant's noncompliance is willful, his opposition lacks merit, and the documents at issue are both relevant and essential.

Accordingly, and for all the reasons set forth above, Plaintiff respectfully requests that this Court issue an Order:

1. Compelling Defendant Kenneth Petty to produce all requested tax returns, financial documents, and employment records within seven (7) days;
2. Awarding Plaintiff reasonable attorneys' fees and costs incurred in connection with bringing this Motion, pursuant to Fed. R. Civ. P. 37(a)(5);
3. Imposing sanctions pursuant to Rule 37(b)(2), including but not limited to:
   a. An adverse inference instruction;
   b. Preclusion of financial testimony or evidence at trial; or
   c. Such other appropriate relief to remedy Defendant's noncompliance and deter future misconduct; and
4. Granting such other and further relief as the Court deems just and proper.

Date: March 27, 2025
Brooklyn, New York                                                                                                     Respectfully Submitted,

    */s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160
P: 347-342-7432
E: tblackburn@tablackburnlaw.com